# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

JAMES C. KISTNER
33 Schmarbeck Avenue
Buffalo, New York  14212

       Plaintiff,

v.

THE CITY OF BUFFALO
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York 14202

BRYON LOCKWOOD, individually and in
his capacity as Police Commissioner of the
Buffalo Police Department,
74 Franklin Street
Buffalo, New York  14202

DANIEL DERENDA, individually and in his
capacity as Police Commissioner of the
Buffalo Police Department,
47  Seward Street
Buffalo, New York  14206

LAUREN MCDERMOTT, individually and
in her capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York  14202

JENNY VELEZ, individually and in her
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York  14202

KARL SCHULZ, individually and in his
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York  14202

KYLE MORIARTY, individually and in his
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York  14202

**VERIFIED COMPLAINT
AND JURY DEMAND**

Civil Action No.  18-cv-402

JOHN DOE(S), individually and in his
capacity as a Buffalo Police Officer,
74 Franklin Street
Buffalo, New York  14202

        Defendants.

Plaintiff, James C. Kistner ("Plaintiff" or "Mr. Kistner") by his attorneys, Rupp

Baase Pfalzgraf Cunningham LLC, as and for his verified complaint against defendants, the City

of Buffalo, Buffalo Police Commissioner Bryon Lockwood, Buffalo Police Commissioner

Daniel Derenda, Police Officer Lauren McDermott, Police Officer Jenny Velez, Police Officer

Karl Schulz, Police Officer Kyle Moriarty, and Police Officer(s) John Doe(s) alleges as follows:

## PRELIMINARY STATEMENT

1.        Plaintiff brings this action for compensatory damages, punitive damages,

other damages this Court deems just and proper, and attorneys' fees pursuant to 42 U.S.C.

§§ 1981, 1983, 1985, 1986, and 1988 for violations of his Constitutionally-protected civil rights.

The Constitutionally-protected civil rights violated by defendants include plaintiff's rights to due

process, security in his person, right to free speech, right against false imprisonment, right to

exemption from arbitrary arrest, right to liberty, right to travel and movement, and right against

malicious prosecution.  Mr. Kistner's aforementioned rights are secured by the above-referenced

statutes, the Constitution of the United States, and the common law and the Constitution of the

State of New York.

2.        As set forth in more detail below, the genesis of this complaint is truly

outrageous criminal conduct by the defendants on January 1, 2017.  The date of these underlying

violations of Mr. Kistner's person, freedoms, and civil rights is incongruous.  Most celebrate

New Year's Day with the aspirations of the start of a year with a hand stretched out in friendship

and never in want, or the optimism and opportunity of leaving the past behind and starting anew.

Defendants malicious conduct toward Mr. Kistner stands in stark contract with the usual

symbolism associated with New Year's Day.

3.     Mr. Kistner did in fact enjoy a beautiful start to the new day and the new

year by having breakfast with all of his sons on Schmarbeck Avenue, a short street on the East

Side of Buffalo studded with vacant lots where houses abandoned to crime, poverty, and

disrepair have been demolished.  There, through hard work and faith in himself, Kistner had

worked to acquire and rehabilitate property that, while modest, was suitable to rent to others for a

hard-won livelihood in a hard place.

4.     Mr. Kistner's optimism and sense of opportunity were shattered before

11:00 a.m. that day by the coordinated criminal acts of the defendants.  Video captured on

Mr. Kistner's security cameras, which is attached to and incorporated herein, provides a startling

image of what police misconduct looks like.

5.     As set forth in detail below, while enjoying breakfast on New Year's Day,

Mr. Kistner became aware of two Buffalo police vehicles parked outside one of his rental

properties for a lengthy period of time.  He finished breakfast, and went outside to learn what

was afoot.  His son Earl Kistner followed him outside.

6.      Video described in detail below shows one police vehicle speed off as Mr. Kistner approaches.  He turns to walk to the second vehicle, which abruptly begins pulling away from the curb and into the center of the street, violently striking Mr. Kistner.

7.      At that point, this sordid saga of police misconduct that rises to the very highest level of the Buffalo Police Department truly began.

8.      The defendants did not aid Mr. Kistner after striking him with their vehicle.

9.      Instead, as the video clearly shows, they refused to permit Earl Kistner to telephone an ambulance, which his father requested.  The police violently accosted Earl, seized his cell phone, and threatened and intimidated him to prevent him from obtaining aid for his father, who was laying injured in the street after the violent collision caused his skull to bounce off the pavement.

10.     The Buffalo police should have investigated the collision, ticketing or at least evaluating the fault of the driving officer.

11.     Instead, the four police officers at the scene made a reflexive decision, later ratified by supervisors, and apparently consistent with police department customs and practices, to blame the victim.

4

12.     In a criminal conspiracy to suppress the truth about the collision with Mr. Kistner, the police attempted to silence Mr. Kistner by force, intimidation, and threat. Rather than aid him, or even to apologize, they threatened Mr. Kistner with arrest.

13.     These were not idle threats.  Mr. Kistner was violently handcuffed and hauled to his feet without any medical attention.  The police officers present made sure to prevent any third parties from examining the scene and Mr. Kistner by radioing to cancel any 911 or ambulance calls to the location.  None of the officers present intervened to prevent these – or any of the subsequent – violations of Mr. Kistner's Constitutionally-protected rights.

14.     Mr. Kistner then was transported to Erie County Medical Center, where the false story agreed upon by and between the defendant police officers, with the acquiescence of the other defendants, became apparent when they falsely told ECMC staff that Mr. Kistner had intentionally thrown himself upon a police car.

15.     Defendants' tale suggested that they did not know that their actions were recorded on security cameras, but at least some of defendants had been informed that their actions were recorded.  Upon information and belief, they still felt comfortable lying about the incident because such behavior is consistent with custom and practice among Buffalo police officers, and because their supervisors either condoned or acquiesced in such conduct.

16.     Having been alerted to the situation, Mr. Kistner's attorney traveled to ECMC and requested to see his client.  Defendants, without justification, refused to allow Mr. Kistner to speak with his lawyer.

17.     After receiving minimal medical attention at ECMC – for which he has received bills for thousands of dollars – Mr. Kistner was transported to central booking.

18.     There, the defendants knew that as part of their cover up for the driver of the Buffalo police vehicle that struck Mr. Kistner, he was to receive an appearance ticket and would not enter the inmate population.  The Buffalo police also had no probable cause to believe Mr. Kistner was carrying a weapon or contraband, given the circumstances of his false arrest.

19.     Nonetheless, they conspired for Mr. Kistner to be subjected to a strip search, including a highly invasive and humiliating anal cavity search.  These efforts were designed to humiliate Mr. Kistner, to deter him from exercising his civil rights by force, intimidation, and threat, and to make him too fearful of retaliation to seek redress for defendants' unlawful conduct.

20.     Defendants' efforts to humiliate and intimidate Mr. Kistner, and to cover up the truth of what had happened that morning, were not complete.  They next transported Mr. Kistner back to ECMC, and again lied about the incident, claiming that Mr. Kistner tried to harm himself by jumping on the police vehicle in an effort to have Mr. Kistner silenced by being committed to a mental health ward.

21.     The medical professionals at ECMC quickly evaluated Mr. Kistner and determined that there was no basis for his admission to the mental health ward.  After his hours-long odyssey, he finally was released.

22.     But Mr. Kistner's ordeal was not over.  In a remarkable show of audacity and complete disregard for their self-proclaimed values of respect, integrity, and excellence, defendants charged Mr. Kistner with a *felony* crime based on their fabricated claim that he intentionally damaged the police vehicle, and charged him with harassment to retaliate against him for his exercise of free speech while at ECMC, protesting his illegal arrest, injuries, and humiliating treatment.

23.     As pronounced by the Buffalo Police Department, its primary mission is "to improve the quality of life in the City of Buffalo."  The Department attempts to "accomplish its mission through the cooperative effort of the Police Department and the community."  The Department requires that all of its officers act with respect, integrity, and excellence in all of their actions.

24.     Indeed, the Buffalo Police Department's website sets forth that: (i) the Department "will respect each other as professionals and fellow human beings;" (ii) "Honesty and truth must be the standards in all our interactions with the community and with our members;" and (iii) "We are part of a team dedicated to the safety and protection of our community."

25.     Defendants repeatedly and systematically failed to act in accordance with the primary mission and goals of the Buffalo Police Department.

26.     During the course of these events, defendants falsified records, committed perjury, and otherwise showed a willful, conscious, contempt and disregard not only for Mr. Kistner, but also the United States Constitution, the laws of the State of New York, and basic decency.

27.     These charges were eventually resolved in Mr. Kistner's favor, as demanded by the truth and justice.  However, Mr. Kistner first had to suffer deprivations of his liberty on several more occasions, when he was called into court on the pending charges.

28.     Defendants misjudged their victim with Mr. Kistner, and he now brings this action against the defendants for the injuries that they caused to him, including unlawful deprivations of his Constitutional rights.  He seeks damages from the City of Buffalo and its police department for their abuses and actions in impeding, hindering, and defeating the due course of justice with the intent to deny Mr. Kistner the equal protection of the laws, and for the personal and other injuries described herein.

29.     The Buffalo Police Department's actions on January 1, 2017, by and through the actions of its police officers, violated Mr. Kistner's (1) right against false imprisonment; (2) right against malicious prosecution; (3) right to free speech; and (4) right

against police retaliation when defendants selectively enforced New York State Penal Law § 240.20 (3).

## JURISDICTION

30.     This action is brought under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, and under the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

31.     This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. § 1983.

32.     Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

33.     Pursuant to 28 U.S.C. §1391(b), venue is proper in the Western District of New York because the events forming the basis of plaintiff's verified complaint occurred in this District.

**PARTIES**

34.     At all times hereinafter mentioned, Mr. Kistner was and is a citizen of the State of New York, County of Erie, residing at 33 Schmarbeck Avenue, Buffalo, New York 14212.

35.     Defendant, the City of Buffalo, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at City Hall, 65 Niagara Square, Buffalo, New York 14202.

36.     Defendant, the City of Buffalo, through its Common Council, City Counsel and their officers, agents, servants, employees, and/or their specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the City of Buffalo, including defendants' Derenda, McDermott, Velez, Schulz, Moriarty, and John Doe(s).

37.     Defendant, Byron Lockwood ("Lockwood"), was and is a resident of the County of Erie and State of New York, and is the current Police Commissioner of the Buffalo Police Department. Defendant Lockwood is employed by the City of Buffalo, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Police Commissioner of the City of Buffalo.

38.     Defendant, Daniel Derenda ("Derenda"), was and is a resident of the County of Erie and State of New York, and was the Police Commissioner of the Buffalo Police Department. Defendant Derenda was employed by the City of Buffalo, and was, at all times

10

hereinafter mentioned, acting within the scope of his employment and official capacity as the Police Commissioner of the City of Buffalo.

39.     As the Police Commissioner for the City of Buffalo, defendant Derenda and/or Lockwood was responsible for the hiring, training, supervision, discipline, and conduct of the defendant officers, and is further responsible for setting, reviewing, and/or enforcing the policies and regulations of the Buffalo Police Department.  Defendant Derenda also is responsible for ensuring that the City of Buffalo Police Officers obey the laws of the State of New York and the United States of America.

40.     Upon information and belief, at all relevant times, defendant Derenda and/or Lockwood was a policymaker for the Buffalo Police Department in all matters that are alleged herein, and defendant Derenda and/or Lockwood participated in the promulgation of policies and/or customs for the Buffalo Police Department by defendant the City of Buffalo. Defendant Derenda and/or Lockwood directly was responsible for policy and custom implementation (in whole or in part) at the City of Buffalo Police Department.  In addition, defendant Derenda and Lockwood are being sued in their individual capacity for damages caused by his actions and/or conduct.

41.     Defendant, Lauren McDermott, was and is a resident of the County of Erie, and State of New York.  She was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition,

defendant McDermott is being sued in her individual capacity for damages caused by her actions and/or conduct.

42.     Defendant, Jenny Velez, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Velez was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Velez is being sued in her individual capacity for damages caused by her actions and/or conduct.

43.     Defendant, Karl Schulz, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Schulz was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Schulz is being sued in his individual capacity for damages caused by his actions and/or conduct.

44.     Defendant, Kyle Moriarty, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Moriarty was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Moriarty is being sued in his individual capacity for damages caused by his actions and/or conduct.

45.     Defendant, John Doe(s), was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Doe(s) was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Doe(s) is being sued in his individual capacity for damages caused by his actions and/or conduct.  At the present time, defendant Doe(s) identity is unknown and allegations will be made against defendant Doe(s) until his/her true identity becomes known through discovery.

46.     At all relevant times, defendants, either personally or through their employees, were acting under the color of law and/or in compliance with the official rules, regulations, laws, statutes, policies, customs, ordinances, usages and/or practices of the City of Buffalo.  Defendants' actions and conduct show that they did not, nor could they, reasonably rely upon any existing law.

## FACTUAL BACKGROUND

### Overview

47.     As referenced above, Mr. Kistner was involved in an incident with five Buffalo Police Officers on January 1, 2017.  The incident began at approximately 10:25 a.m. The Buffalo Police Officers that were involved were defendants Lauren McDermott, Jenny Velez, Karl Schulz, Kyle, Moriarty, and John Doe (who remains unidentified).  Specifically, defendant McDermott or Velez intentionally, recklessly, negligently, and/or carelessly drove a

13

Buffalo police vehicle into Mr. Kistner causing serious injuries. Mr. Kistner was not in engaged in any unlawful conduct. After striking Mr. Kistner with the vehicle, defendants McDermott, Velez, Schulz, Moriarty, and John Doe orchestrated a cover up of this New Year's Day motor vehicle accident.

48.     In order to effectuate their cover up, Defendants McDermott, Velez, Schulz, Moriarty, and John Doe engaged in repeated violations of Mr. Kistner's constitutional rights.

49.     Defendants McDermott, Velez, Schulz, Moriarty, and John Doe unlawfully and falsely arrested and maliciously prosecuted Mr. Kistner for causing damage to the police vehicle that ran him over.

50.     When Mr. Kistner used four-letter language to criticize the defendants' unlawful and unconstitutional actions and conduct and to protest his arrest and prosecution for being the victim of a motor vehicle accident, the defendants' unlawfully and unconstitutionally retaliated against Mr. Kistner's constitutionally-protected speech by maliciously prosecuting him for his speech.

51.     Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty, and John Doe also unlawfully falsified records and documents, including Erie County Medical Center admission documents and accusatory instruments, to further cover up the motor vehicle accident and to intimidate and punish Mr. Kistner.

52.     The motor vehicle accident that took place was captured on videotape by a surveillance system that Mr. Kistner helps maintain in his neighborhood.  The officers' unlawful and unconstitutional actions and conduct are clearly shown in the videos.  Accordingly, the allegations of fact partially are derived from four separate video files taken by the surveillance system.  Incorporated by reference herein and attached hereto as Exhibit A is a CD that contains the four video files that show the events that occurred.

**Allegations of Fact**

53.     Mr. Kistner owns and resides at his property located at 33 Schmarbeck Avenue, Buffalo, New York  14212.  That property also includes a separate apartment that was rented to Michael Wolfe on January 1, 2017.  Schmarbeck Avenue is a lightly traveled side street located in an economically depressed area on the East Side of Buffalo, and there are several vacant lots on that street where abandoned structures have been demolished in recent years.

54.     Rachel Glurich owns and resides at 37 Schmarbeck, the property next door to 33 Schmarbeck.  Mr. Glurich is the mother of three of Mr. Kistner's minor children, who reside with her at 37 Schmarbeck.

55.     On the morning of January 1, 2017, Mr. Kistner was eating breakfast with Ms. Glurich, his minor children, and his adult son Earl Kistner at Ms. Glurich's property.

56.     At that time, he observed two marked Buffalo Police Department vehicles pull up outside of his property located at 33 Schmarbeck.

57.     Mr. Kistner observed that there were four Buffalo Police Officers outside of his property, and certain officers were talking to Mr. Kistner's tenant at 33 Schmarbeck, Michael Wolfe.

58.     After finishing breakfast, Mr. Kistner walked out of the 37 Schmarbeck property in order to speak with the officers that were outside of his property and talking with his tenant.  He sought to learn why the police were parked outside of his property.

59.     Mr. Kistner walked across and down Schmarbeck Avenue towards the parked Buffalo police vehicles.

60.     As noted, there were two Buffalo Police Department vehicles parked on Schmarbeck Avenue.  Both were facing north.  The two Buffalo police vehicles are depicted in the picture below, and Mr. Kistner is shown in the picture in the middle of Schmarbeck Avenue and circled in red (the referenced picture is a still screenshot taken from Exhibit A).



61.     Upon information and belief, defendants Schulz and Moriarty were in the police vehicle parked in the middle of Schmarbeck Avenue, which is the police vehicle on the right side of the above-referenced picture.

62.     Upon information and belief, defendants McDermott and Velez were in the police vehicle parked at the curb of Schmarbeck Avenue, which is the police vehicle located on the left side the of the above-referenced picture.

63.     Mr. Kistner walked down Schmarbeck Avenue to speak to these four police officers.

64.     While walking towards the drivers' sides of the police vehicles, he was requesting to speak with the officers.

65.     Upon information and belief, either defendant Schulz or Moriarty responded to Mr. Kistner and stated that they were not talking to anybody and said "we're leaving now."

66.     The Buffalo police vehicle that had defendants Schulz and Moriarty in it then abruptly pulled forward, passed Mr. Kistner, and proceeded north on Schmarbeck Avenue towards Schlenker Street.

67.     After defendants Schulz and Moriarty pulled away, Mr. Kistner walked towards the Buffalo police vehicles in which defendants McDermott and Velez were in, which had remained stationary.  Again, he was asking to speak with defendants McDermott and Velez in order to see what was happening, because police vehicles were parked in front of his property and officers were talking to his tenant.

68.     Upon information and belief, defendant McDermott or Velez was in the driver seat and the other was in the passenger seat.  As Mr. Kistner approached the police vehicle, the driver of the vehicle acknowledged him by smiling.

69.     The defendant driver (who is either defendant McDermott or Velez) then reversed the police vehicle and pulled forward towards Mr. Kistner.  Mr. Kistner, having little

18

time to react, put his arms up to brace against the impact and closed his eyes.  The police vehicle

struck Mr. Kistner and caused him to be violently thrown to the pavement.  Mr. Kistner is shown

being struck by the Buffalo police vehicle in the pictures below.  He is circled in red (the

referenced pictures are still screenshots taken from Exhibit A).





70.     As a result of being struck by the police vehicle and thrown to the ground,

Mr. Kistner's head violently struck the pavement.

71.     Mr. Kistner was knocked under the police vehicle.  He tried to get out from under the vehicle, so that the police vehicle did not run over his legs.  He called to his son, Earl Kistner, who walking down Schmarbeck Avenue towards the police vehicle that had just struck his father.

72.     Mr. Kistner yelled to his son to call 911, so that he could receive medical treatment because he was experiencing serious and significant pain in his head, hands, arms, and shoulders.  Due to the serious and significant pain, Mr. Kistner decided to continue to lay in the street until an ambulance arrived and he could receive medical treatment.

73.     Upon information and believe, defendants McDermott and Velez exited the police vehicle.  The defendant driver stood over Mr. Kistner and told him that if he did not get up off the ground, she was going to arrest him.

74.     Thereafter, defendants Schulz and Moriarty reversed their police vehicle and backed down Schmarbeck Avenue towards the incident.  Defendants Schulz and Moriarty exited their police vehicle and approached Mr. Kistner, who was still laying on the ground after being hit by the police vehicle.

75.     Upon information and belief, defendants Schulz and Moriarty picked Mr. Kistner up off the ground by his arms, and put him in handcuffs.

76.     Excessive and objectively unreasonable force was used when handcuffing Mr. Kistner, with the handcuffs intentionally or negligently fastened too tightly and in a twisted fashion that caused injury to Mr. Kistner's wrists and shoulders, including swelling, incisions, abrasions, numbness, nerve damage, and other injury.

77.     At this time, Mr. Kistner was unlawfully seized and falsely detained.

78.     Defendants Schulz and Moriarty then pushed Mr. Kistner towards their police vehicle.  They put Mr. Kistner into the back of their vehicle.  Once in the backseat, upon information and belief, defendants Schulz and Moriarty told Mr. Kistner he was going to jail.

79.     After placing Mr. Kistner in the backseat of the police vehicle, the officers approached his son, Earl Kistner.

80.     Earl Kistner was on his cell phone trying to call 911 to get an ambulance for his father.

81.     Mr. Kistner's need for medical attention was abundantly evident given the violent nature of the collision and the impact of his head and body onto the paved street.

82.     Upon information and belief, defendants Schulz and Moriarty approached Earl Kistner and seized his cell phone.  Upon information and belief, defendants Schulz and Moriarty pushed Earl Kistner into the street and pushed him back and forth between them.

83.     Upon information and belief, Earl Kistner was prevented from completing his call to 911 for an ambulance to assist his father by defendants Schulz and Moriarty.

84.     Upon information and belief, defendant Schulz or Moriarty made a radio call to dispatch and told dispatch to cancel all 911 calls and cancel all ambulances to their location.

85.     Upon information and belief, shortly after defendants Schulz and Moriarty canceled all calls for ambulances to their location, defendant John Doe, believed to be a supervisory police officer with authority over defendants McDermott, Velez, Schulz, and Moriarty, arrived on the scene.

86.     Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty, and John Doe unlawfully failed to obtain proper medical treatment for Mr. Kistner.

87.     While Mr. Kistner was sitting in the back of defendants Schulz and Moriarty's police vehicle, he yelled to Ms. Glurich to call his attorney, James Ostrowski, Esq.

88.     Upon information and belief, thereafter, defendants Schulz or Moriarty transported Mr. Kistner to Erie County Medical Center ("ECMC").  Upon information and belief, defendants McDermott and Velez followed them to ECMC.

89.     Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty, and John Doe violated the Buffalo Police Department's policies and procedures of documenting and recording a motor vehicle accident that involves a Buffalo police vehicle and/or a Buffalo police officer.

90.     Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty, and John Doe violated the policies and procedures in order to further their conspiratorial cover up of the motor vehicle accident and to avoid any investigation into their actions and conduct.

91.     Upon information and belief, defendants' conspiracy was to avoid disciplinary action against one or more of the defendants based on the happening of the underlying incident itself or the physical condition of the driver at the time of the underlying incident (it is not known how that driver spent New Year's Eve).

92.     On their arrival to ECMC, upon information and belief, defendants McDermott, Velez, Schulz, and Moriarty falsely told ECMC personnel that Mr. Kistner had intentionally thrown himself into the front of the Buffalo police vehicle that was driven by defendant McDermott or Velez.

93.     Mr. Kistner categorically denied that he threw himself into the front of the Buffalo police vehicle and told ECMC personnel that defendants had struck him with their vehicle.

94.     Upon information and belief, during this first visit to ECMC, ECMC personnel determined that Mr. Kistner did not warrant a CPEP (comprehensive psychiatric emergency program) evaluation as his mental status was baseline and there no questions or concerns of suicidality.

95.     Upon information and belief, defendants McDermott, Velez, Schulz, and Moriarty stayed with Mr. Kistner for the entire time period of this first visit to ECMC.

96.     Upon information and belief, defendants McDermott, Velez, Schulz, and Moriarty stayed with Mr. Kistner in order to interfere with and influence his medical treatment and to further their conspiratorial cover up of the motor vehicle accident.

97.     Upon information and belief, defendants McDermott, Velez, Schulz, and Moriarty kept Mr. Kistner in a private room with them.

98.     Upon information and belief, defendants McDermott, Velez, Schulz, and Moriarty allowed only certain ECMC personnel to see Mr. Kistner, and Mr. Kistner was not around the public.

99.     While he was at ECMC, Mr. Kistner used four-letter language to criticize his unlawful and unconstitutional arrest.  He also referred to the defendants and certain ECMC

personnel as "Nazis" or "Feminazis." Mr. Kistner was angry and was protesting being arrested

for being the victim of a motor vehicle accident that was entirely caused by the defendants.


100.     During the first visit, upon information and belief, Mr. Kistner's attorney,

James Ostrowski, Esq., arrived at ECMC in order to see his client.


101.     Upon information and belief, Mr. Ostrowski was prohibited by defendants

from seeing his client, even though defendants were aware that Mr. Ostrowski was Mr. Kistner's

retained attorney and was present at ECMC trying to see Mr. Kistner.


102.     The first visit to ECMC lasted approximately four hours.


103.     Upon information and belief, Mr. Kistner was diagnosed with a forehead

abrasion and closed head injury and released to the defendants' custody.


104.     Upon information and belief, Mr. Kistner's discharge papers were given to

the defendants.


105.     Upon information and belief, defendants McDermott, Velez, Schulz, and

Moriarty transported Mr. Kistner to the Buffalo Police Department Central Booking after his

release from ECMC.

106.    Mr. Kistner then was subjected to a strip search by Buffalo Police Department personnel.

107.    This strip search included but was not limited to a highly invasive and humiliating search of Mr. Kistner's anal cavity.

108.    Upon information and belief, the strip search was done at the request of and/or authorized by defendants McDermott and Velez, given the circumstances and events previously recounted had no reason to suspect that Mr. Kistner may be carrying a weapon or contraband.

109.    However, upon information and belief, defendants McDermott and Velez were aware that Mr. Kistner was going to be given only an appearance ticket and a strip search was not necessary, because Mr. Kistner would not be incarcerated or housed at jail that day.

110.    Upon information and belief, the strip search violated Buffalo Police Department policies and procedures.

111.    After being subjected to the strip search, defendants handed Mr. Kistner an appearance ticket.

112.    Upon information and belief, the appearance ticket charged Mr. Kistner with (i) criminal mischief in the third degree for intentionally damaging the driver's side mirror of the Buffalo police vehicle; and (ii) disorderly conduct.

113.    Mr. Kistner was at central booking for approximately one hour.

114.    After he was given the appearance ticket, upon information and belief, defendants, however, did not release Mr. Kistner.

115.    Defendants McDermott and Velez transported Mr. Kistner back to ECMC.

116.    Upon information and belief, during this transport, defendant McDermott and/or Velez radioed into Buffalo Police Dispatch and requested that their "log" be changed.

117.    Upon information and belief, the "log" for the incident with Mr. Kistner was logged as a motor vehicle accident.

118.    Upon information and belief, defendant McDermott and/or Velez requested that the log be changed from motor vehicle accident to responding to criminal activity.

119.    Upon information and belief, defendant McDermott and/or Velez requested that the log be changed to further conspiratorial cover up of the motor vehicle accident.

27

120.    Upon information and belief, defendant McDermott and/or Velez unlawfully falsified their log.

121.    Upon information and belief, the change in the log violated Buffalo Police Department policies and procedures.

122.    Defendants McDermott and Velez transported Mr. Kistner to ECMC's CPEP (comprehensive psychiatric emergency program) unit.

123.    Upon information and belief, defendant McDermott and/or Velez executed what is commonly referred to as a 9.41 paper or 941 paper in order to admit Mr. Kistner to ECMC's CPEP unit, despite knowing from the prior compelled visit to ECMC that no CPEP visit was required or appropriate.

124.    The 9.41 paper is an emergency admission form. Police Officers are authorized, pursuant to Mental Hygiene Law § 9.41, to take into custody a person that appears to be mentally ill or is conducting himself or herself in a manner that is likely to result in serious harm to the person or others.  The police officer is authorized to remove the person to a comprehensive psychiatric emergency program for admission and/or examination.

125.    Upon information and belief, defendants McDermott and/or Velez were aware that Mr. Kistner had been examined during his first visit to ECMC on January 1, 2017 and ECMC personnel determined that Mr. Kistner did not warrant a CPEP (comprehensive

28

psychiatric emergency program) evaluation as his mental status was baseline and there were no questions or concerns of suicidality.

126.     However, upon information and belief, defendant McDermott and/or Velez unlawfully authorized or attempted to procure Mr. Kistner's admission into ECMC's CPEP unit.

127.     Upon information and belief, defendant McDermott and/or Velez set forth false information in the "9.41 paper" that they executed in order to seek Mr. Kistner's admission to ECMC's CPEP unit.

128.     Mr. Kistner was admitted to ECMC's CPEP unit against his wishes.

129.     Mr. Kistner was not conducting himself in a manner that would likely result in serious harm to himself or others.

130.     Mr. Kistner was evaluated by two ECMC medical providers during his CPEP admission.  One of the providers that Mr. Kistner saw was Xing Jia Cui, M.D.

131.     Upon information and belief, Mr. Kistner advised the ECMC personnel of the events that had taken place earlier that morning, i.e, that defendant McDermott and/or Velez ran him over with a Buffalo police vehicle and then orchestrated a cover up by criminally charging him and then admitted him to ECMC's CPEP unit.

132.    Dr. Cui's determined that "[t]here is clearly no indication for acute psych admission." Dr. Cui determined that Mr. Kistner was rational and logical. Dr. Cui's determination is set forth in his assessment, which is contained within Mr. Kistner's medical records from his admission to the CPEP unit on January 1, 2017 and is incorporated by reference.

133.    Upon information and belief, approximately 10-15 minutes after discussing the situation with Dr. Cui, Mr. Kistner was discharged from ECMC.

134.    Upon information and belief, defendants were aware that, prior to his admission to ECMC's CPEP, there was no indication for Mr. Kistner's admission to ECMC CPEP unit and that their attempt to procure Mr. Kistner's admission was the product of ill will, malevolence, grudge, spite, wicked intention, or conscious disregard of Mr. Kistner's rights.

135.    Upon information and belief, defendants were aware that Mr. Kistner was evaluated at ECMC for CPEP admission during his first visit earlier that day and that ECMC personnel determined that there was no indication for any admission to the CPEP unit.

136.    Nonetheless, defendants falsified information in order to admit Mr. Kistner against his will.

137.     Upon information and belief, Mr. Kistner's admission was unlawful and unconstitutional.

138.     Upon information and belief, defendant McDermott and/or Velez violated Buffalo Police Department policies and procedures in order to admit Mr. Kistner.

139.     Upon information and belief, defendant McDermott and/or Velez authorized Mr. Kistner's admission to ECMC's CPEP unit in order to further their conspiratorial cover up of the motor vehicle accident.

140.     In addition to physical, emotional, and mental injuries, and violations of Mr. Kistner's rights secured by the United States Constitution, the conduct of defendants resulted in Mr. Kistner incurring substantial medical and other bills from ECMC.

## **Criminal Prosecutions**

141.     Even though he was the victim who was struck by the defendants' police vehicle, Mr. Kistner was charged with criminal mischief in the third degree, a class E felony. A copy of the accusatory instrument, sworn to by defendant McDermott, is attached hereto as Exhibit B.

142.     In the complaint, defendant McDermott swore that Mr. Kistner did, with intent to damage the property of another, damage to the drive's side mirror of the Buffalo police patrol vehicle in the amount of more than $250. *See* Exhibit B.

143.    Defendant McDermott swore that Mr. Kistner "did intentionally throw his body into the driver's side mirror of patrol vehicle #473, causing the mirror to become dislodged from the vehicle and also causing the driver's side window to malfunction." *See* Exhibit B.

144.    Mr. Kistner also was charged with disorderly conduct, a violation.  A copy of the accusatory instrument, sworn to by defendant McDermott, is attached hereto as Exhibit C.

145.    Defendant McDermott swore that Mr. Kistner "did use obscene and offensive language toward officers and medical staff" and "said actions by the defendant did cause a public annoyance and alarm." *See* Exhibit C.

146.    Mr. Kistner retained Attorney Ostrowski to defend him against these malicious prosecutions.

147.    Mr. Kistner was required to appear in Buffalo City Court approximately six to 7 times to defend himself.  Each time was a deprivation of his constitutional rights, including his right of liberty without due process of law.

148.    The prosecution of the charges levied by defendants against Mr. Kistner on January 1, 2017 were terminated in Mr. Kistner's favor.

149.    Mr. Kistner served defendants with a Notice of Claim in accordance with the requirements of General Municipal Law § 50.  Mr. Kistner's Notice of Claim was served within 90 days of the claims upon which the instant action is brought.

150.    More than 30 days have elapsed since service of the Notice of Claim and defendants have neglected and refused to make payment.

151.    This action falls within one or more of the exceptions set forth in Article 16 of the Civil Practice Law and Rules.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Unlawful Seizure and Arrest under 42 U.S.C. §1983**
**Against All Defendants**

152.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 151 of this verified complaint as if fully set forth herein.

153.    Defendants  are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. Kistner in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

154.    Defendants were acting under the color of law when Mr. Kistner was arrested.

155.    Defendants did not have probable cause to charge that Mr. Kistner violated Section 145.05(2) or Section 240.20(3) of the New York State Penal Law.

156.    Defendants deprived Mr. Kistner of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

157.    Defendants confined Mr. Kistner when handcuffed him and told him that he was going to jail in the morning of January 1, 2017.

158.    Defendants continuously confined Mr. Kistner for hour after hour on January 1, 2017, until the time of his release from ECMC's CPEP unit on January 1, 2017.

159.    Mr. Kistner was aware of the confinement by defendants and repeatedly advised the officers that he did not consent to the confinement.

160.    The confinement by defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

161.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### Abuse of Process and Malicious Prosecution under 42 U.S.C. §1983
### <u>Against All Defendants</u>

162.     Mr. Kistner incorporates the allegations contained in paragraphs 1 through 161 of this verified complaint as if fully set forth herein.

163.     Defendants unreasonably seized and unlawfully arrested Mr. Kistner in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

164.     Upon information and belief, defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Mr. Kistner for criminal mischief in the third degree and disorderly conduct, acted intentionally, and with malice, to cause Mr. Kistner to be arrested, charged, and prosecuted for those charges, thereby violating Mr. Kistner's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

165.     The prosecution of the charges levied by defendants against Mr. Kistner on January 1, 2017 were terminated in Mr. Kistner's favor.

166.     But for defendants' unlawful and malicious conduct, Mr. Kistner would not have been arrested and/or prosecuted.

167.    Upon information and belief, defendants' actions and conduct were malicious and deprived Mr. Kistner of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his actions were lawful.

168.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE FIRST AMENDMENT
### First Amendment Retaliation under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

169.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 168 of this verified complaint as if fully set forth herein.

170.    Mr. Kistner's speech was noncommercial and conducted on a public right-of-way.

171.    Mr. Kistner's speech is protected by the First Amendment.

172.    Mr. Kistner's speech did not violate any law.

173.     The conduct and actions of defendants were done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts.

174.     But for defendants' retaliatory animus regarding Mr. Kistner's speech, defendants would not have arrested Mr. Kistner.

175.     But for defendants' retaliatory animus regarding Mr. Kistner's speech, defendants would not have issued Mr. Kistner an appearance ticket for allegedly violating Section 145.05(2) or Section 240.20(3) of the New York State Penal Law.

176.     Defendants' conduct and actions were motivated and/or substantially caused by Mr. Kistner's speech by virtue of the statement he made to defendants while he was arrested for being the victim of a motor vehicle accident caused entirely by defendant McDermott or Velez.

177.     Defendants' conduct and actions were done without lawful justification or reason and caused Mr. Kistner injury.

178.     Defendants did not have probable cause that Mr. Kistner violated Section 145.05(2) or Section 240.20(3) of the New York State Penal Law.

179.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

**VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS**
**Negligent Hiring/Failure to Supervise and Train under 42 U.S.C. §1983**
**Against All Defendants**

180.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 179 of this verified complaint as if fully set forth herein.

181.    Prior to January 1, 2017, defendants developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in Buffalo, which caused the violation of Mr. Kistner's rights.

182.    At all relevant times, defendants, the City of Buffalo, Derenda, Lockwood, and supervisory police officer John Doe were aware that defendants McDermott, Velez, Schulz, Moriarty, and John Doe were inadequately trained regarding the First, Fourth, and Fourteenth Amendment, yet defendants, the City of Buffalo, Derenda, and Lockwood maintained a policy or custom of failing to provide defendants McDermott, Velez, Schulz, Moriarty, and John Doe training on the First, Fourth, and Fourteenth Amendment or adequate supervision.

183.    It was the policy, custom, or both of defendants the City of Buffalo, Derenda, and Lockwood inadequately to supervise and train its police officers, including

38

defendants McDermott, Velez, Schulz, Moriarty, and John Doe, thereby failing to prevent the constitutional violations against Mr. Kistner.

184.   Upon information and belief, defendants the City of Buffalo, Derenda, Lockwood, and supervisory police officer John Doe maintained a policy, custom, or practice of retaliating against individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful.

185.   Defendants failed to properly screen its officers and retained officers who have a history of inappropriate and unlawful acts, and defendants have failed to properly train and supervise members of the Buffalo Police Department, and failed to provide training on the proper procedures and policies of the Department, including (i) procedure to report a motor vehicle accident in which an officer was involved and/or caused; (ii) procedure when strip searches are lawful, appropriate, and necessary; (iii) procedure when an individual should be admitted to a CPEP facility/unit; (iv) procedure when to provide necessary medical care; (v) procedure for placing handcuffs on individuals; (iv) procedure to change public records, such as police "logs"; and (v) the procedure for completing accusatory instruments.

186.   Defendants the City of Buffalo, Derenda, Lockwood and supervisory police officer John Doe's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Buffalo and caused the violation of Mr. Kistner's rights alleged herein.

187.    Defendants the City of Buffalo, Derenda, Lockwood and supervisory police officer John Doe also ratified and acquiesced in the unlawful conduct of the other defendants herein, as is evidenced by their failure to discipline the other defendants, by their refusal to properly investigate the underlying motor vehicle accident, and by their granting permission to change the "log" regarding the underlying motor vehicle accident.

188.    As a direct and proximate result of defendant' policies, customs, and practices, Mr. Kistner was damaged and injured at an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### FALSE ARREST AND FALSE
### IMPRISONMENT IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

189.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 188 of this verified complaint as if fully set forth herein.

190.    Defendants intentionally and illegally confined, detained, and/or arrested Mr. Kistner.

191.    Mr. Kistner was conscious of the arrest, detainment, and/or confinement.

192.    Mr. Kistner was subjected to an illegal, false, and unlawful arrest as a result of acts and/or omissions by defendants, and was taken into custody, detained, and confined without probable cause, privilege, or consent.

193.    Defendants knew, or should have known, Mr. Kistner had not broken any law and that there was no probable cause or basis whatsoever in arresting Mr. Kistner and charging him with a violations Section 145.05(2) or Section 240.20(3) of the New York State Penal Law.

194.    Defendants, through any investigation or due diligence, would, and should, have known that Mr. Kistner had not committed any crime.

195.    As a result of defendants' actions and conduct, Mr. Kistner's freedom, liberty, and civil rights were denied, and he was detained and imprisoned against his will and without any good faith basis, reasonable suspicion, or probable case.

196.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### ABUSE OF PROSECUTION AND
### MALICIOUS PROSECUTION IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

197.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 196 of this verified complaint as if fully set forth herein.

198.     Defendants unreasonably seized and unlawfully arrested Mr. Kistner in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

199.     Upon information and belief, defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Mr. Kistner for a violations of Section 145.05(2) or Section 240.20(3) of the New York State Penal Law, acted intentionally, and with malice to cause Mr. Kistner to be arrested, charged, and prosecuted for that violation, thereby violating Mr. Kistner's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

200.     The prosecutions were terminated in Mr. Kistner's favor.

201.     But for defendants' unlawful and malicious conduct, Mr. Kistner would not have been arrested and/or prosecuted.

202.     Upon information and belief, defendants' actions and conduct deprived Mr. Kistner of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that their actions were lawful.

203.     As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### ASSAULT IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

204.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 203 of this verified complaint as if fully set forth herein.

205.    Defendants' actions placed Mr. Kistner in apprehension of imminent harmful and offensive bodily contact.

206.    As a result of defendants' conduct, Mr. Kistner has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

207.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### BATTERY IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

208.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 207 of this verified complaint as if fully set forth herein.

209.    Defendants touched and caused Mr. Kistner to be touched in a harmful and offensive manner.

210.    Defendants did so without privilege or consent from Mr. Kistner.

211.    As a result of defendants' conduct, Mr. Kistner has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

212.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

213.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 212 of this verified complaint as if fully set forth herein.

214.    Defendants conduct was extreme and outrageous and exceeded all reasonable bounds of decency.

215.    Defendants' conduct was intentional and done for the sole purpose of causing severe emotional distress to Mr. Kistner, and arose from defendants' abuse of their position of power.

216.    As a result of defendants' conduct, Mr. Kistner has severe emotional distress and physical and mental injury together with embarrassment, humiliation, shock, fright, and loss of freedom.

217.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

### NEGLIGENCE
### IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

218.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 217 of this verified complaint as if fully set forth herein.

219.    Defendants McDermott and/or Velez was operating her Buffalo police vehicle in a careless, reckless, and negligent manner, and not in an emergency situation.

220.    Upon information and belief, the Buffalo police vehicle was owned by defendant City of Buffalo and defendants McDermott and/or Velez were permissible users.

221.    Upon information and belief, the negligence, carelessness, and recklessness of defendants McDermott and/or Velez, consisted of, but was not limited to: striking plaintiff, failing to stop, fail to pay attention, failed to see what there was to be seen, failed to keep proper lookout, failed to observe plaintiff, failed to observe the rules of the road,

failed to proceed at a prudent speed, failed to keep her vehicle under control at all times, failed to take necessary precautions to avoid the collision, failed to operate her vehicle in a reasonably safe manner, violated the Vehicle and Traffic Law of the State of New York; and was otherwise generally reckless, careless, and negligent.

222.     Upon information and belief, the collision was caused solely by the carelessness, recklessness, and negligence of defendants McDermott and/or Velez without any negligence on the part of the plaintiff.

223.     As a result of the foregoing, Mr. Kistner suffered a serious and permanent injuries, including a serious injury as defined by New York State Insurance Law § 5102(d).

224.     As a result of the foregoing, Mr. Kistner sustained economic loss greater than basic economic loss as defined by New York State Insurance Law § 5102(a).

225.     As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR LIABILITY
### <u>Against Defendant City of Buffalo</u>

226.     Mr. Kistner incorporates the allegations contained in paragraphs 1 through 225 of this verified complaint as if fully set forth herein.

227.    At the time of the incident alleged in the verified complaint, defendants McDermott, Velez, Schulz, Moriarty, and John Doe were acting in their official capacity as members of the Buffalo Police Department and were engaged in actions and conduct during the course and scope of their duties that deprived Mr. Kistner of his constitutional rights and privileges.

228.    As a result of the conduct of d defendants McDermott, Velez, Schulz, Moriarty, and John Doe, defendant City of Buffalo is liable to Mr. Kistner pursuant to the state common law doctrine of respondeat superior.  Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty, and John Doe were acting pursuant to defendants the City of Buffalo and Derenda's policy, custom, or practice, including, but not limited to, being inadequately trained and inadequately supervised on the rights and protections afforded to citizens by the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

229.    As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

### TWELFTH CLAIM FOR RELIEF

### FAILURE TO INTERVENE
### Against All Defendants

230.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 229 of this verified complaint as if fully set forth herein.

231.    Upon information and belief, all law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

232.    On January 1, 2017, defendants McDermott, Velez, Schulz, Moriarty, and John Doe responded to the scene of the incident giving rise to this verified complaint.

233.    Defendants McDermott, Velez, Schulz, Moriarty, and John Doe were made aware of Mr. Kistner's unlawful detention and arrest in contravention of Mr. Kistner's constitutional rights, and they breached their duty to intervene when they aided, abetted, and participated in the scheme to deprive Mr. Kistner of his First, Fourth, and Fourteenth Amendment rights.

234.    Defendants McDermott, Velez, Schulz, Moriarty, and John Doe breach their duty to intervene was the proximate cause of Mr. Kistner's damages by virtue of their failure to act and intervene on Mr. Kistner's behalf while his constitutionally protected rights were infringed.

235.    As a result of defendants' failure to intervene, Mr. Kistner has been damaged in an amount to be determined at trial.

## THIRTEENTH CLAIM FOR RELIEF

## DEFAMATION
## <u>Against all Defendants</u>

236.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 235 of this verified complaint as if fully set forth herein.

237.    Defendants made a defamatory statement which referred to Mr. Kistner.

238.    Specifically, defendants falsely stated that: (i) Mr. Kister "threw himself in front of the police vehicle;" (ii) Mr. Kistner "threw himself on the top of the police car;" and/or (iii) Mr. Kistner "did intentionally throw his body into the driver's side mirror of patrol vehicle #473."

239.    Defendants published and/or communicated their defamatory statement to a third-person, including ECMC personnel.

240.    Defendants' defamatory statement was false.

241.    Defendants' defamatory statement was a substantial factor in causing Mr. Kister damages, harm, and financial loss.

242.    The accusatory instruments, which were swore to by defendant McDermott, contain false and defamatory statements.  Defendant McDermott unlawfully

falsified the accusatory instruments by swearing to untrue statements.  Defendant McDermott

committed perjury in violation of New York State Penal Law § 210.45 by falsifying said

accusatory statements.


243.    As a direct and proximate result of the foregoing, Mr. Kistner was

damaged and injured in an amount to be determined at trial.


## FOURTEENTH CLAIM FOR RELIEF

### FOR OFFICIAL MISCONDUCT, TAMPERING
### WITH EVIDENCE AND SPOLIATION
### Against all Defendants

244.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through

243 of this verified complaint as if fully set forth herein.


245.    Defendants while acting within the scope of their employment, tampered

with, moved, lost, destroyed, edited, and/or otherwise altered material evidence pertaining to the

subject matter of this verified complaint.


246.    That such acts and omissions were done within the scope of their official

duties and contravened proper police procedures used for the preservation of evidence and are

intended to preserve the integrity of the evidence pertaining to a police investigation.

247.     That such acts were done intentionally, or with gross negligence and reckless disregard, thereby obscuring, altering, spoliating, destroying, editing, falsifying, or removing evidence of defendants' unlawful conduct.

248.     As a direct and proximate result of the foregoing, Mr. Kistner was damaged and injured in an amount to be determined at trial.

## FIFTEENTH CLAIM FOR RELIEF

### PUNITIVE DAMAGES
### Against all Defendants Sued in their Individual Capacities

249.     Mr. Kistner incorporates the allegations contained in paragraphs 1 through 248 of this verified complaint as if fully set forth herein.

250.     The foregoing acts were done recklessly, intentionally, wantonly and with gross indifference to the civil rights of Mr. Kistner, thereby entitling him to punitive and exemplary damages from all defendants sued in their individual capacities.

## SIXTEENTH CLAIM FOR RELIEF

### ATTORNEYS' FEES AND COSTS UNDER 42 U.S.C. § 1988
### Against all Defendants

251.     Mr. Kistner incorporates the allegations contained in paragraphs 1 through 250 of this verified complaint as if fully set forth herein.

252.     The foregoing events constitute violations of Mr. Kistner's statutory and constitutional rights, thereby entitling him to attorneys' fees, costs and disbursements as permitted by 28 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

253.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, James C. Kistner, prays for relief and demands judgment as follows:

1.     That Mr. Kistner be awarded compensatory damages against all defendants in an amount to be determined at trial;

2.     That Mr. Kistner be awarded punitive damages against all defendants in an amounted to be determined at trial;

3.     That this Court, pursuant to 42 U.S.C. §1988, issue an order awarding plaintiff reasonable attorneys' fees, together with the costs of this action against all defendants; and

4.    That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:    March 30, 2018
          Buffalo, New York

          **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
          Attorneys for Plaintiff

          _____s/ Sean W. Costello_____
          Sean W. Costello, Esq.
          R. Anthony Rupp III, Esq.
          Patrick D. Leavy, Esq.
          1600 Liberty Building
          Buffalo, New York  14202-3694
          Phone:  (716) 854-3400
          rupp@ruppbaase.com
          costello@ruppbaase.com
          leavy@ruppbaase.com

**VERIFICATION**

STATE OF NEW YORK )
                       : ss.:
COUNTY OF ERIE )

       James C. Kistner, being duly sworn, deposes and says that he is the plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

                                   James C. Kistner, Plaintiff

Sworn to before me this
30th day of March, 2018.

Notary Public

ANTHONY GIROLAMO MARECKI
Notary Public, State of New York
Qualified in Erie County
My Commission Expires June 11, 20 21

54