UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES C. KISTNER,

                  Plaintiff,

      vs.                                            Civil No.:  18-CV-00402

LAUREN McDERMOTT,
JENNY VELEZ,
KARL SCHULTZ,
KYLE MORIARITY, *et al.*,

                  Defendants.
_____

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS <u>McDERMOTT, VELEZ, SCHULTZ, AND MORIARITY</u>

**RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
*Attorneys for Plaintiff, James C. Kistner*
R. Anthony Rupp III
Jill L. Yonkers
Chad A. Davenport
1600 Liberty Building
Buffalo, New York  14202
rupp@ruppbaase.com
yonkers@ruppbaase.com
davenport@ruppbaase.com
(716) 854-3400

## PRELIMINARY STATEMENT

In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court explained that a court should not accept the non-moving party's version of events at the summary judgment stage when the non-movant's version is "blatantly contradicted by the record, so that no reasonable jury could believe it."  *Id*. at 380.  Since then, courts have routinely applied the *Scott* holding and disregarded a non-movant's version of events where that version relies on material facts contradicted by the record or testimony that is incredible as a matter of law.  *See infra*.  To be sure, the *Scott* rule applies with particular force when there is a "videotape capturing the events in question."  *See Scott*, 550 U.S. at 379.

As explained by Mr. Kistner's expert, Dr. Jennifer Yaek, Defendants McDermott, Velez, Schultz, and Moriarity's (collectively referred to as "Defendants") claim that Mr. Kistner intentionally threw himself at Officer McDermott's vehicle relies on facts that could not possibly have been observed by them as well as assertions that are contrary to the laws of physics.  After analyzing the five video recordings of the events in question, Dr. Yaek confirms what any reasonable juror would conclude—that Mr. Kistner was struck by a moving Buffalo Police Department SUV on New Year's Day 2017.  Indeed, the video clearly establishes that Mr. Kistner did not throw himself at the Officer McDermott's vehicle; rather, the video shows that Mr. Kistner was struck by a negligent driver.

Plaintiff submits that the Court should apply the *Scott* rule and reject Defendants' incredible testimony as a matter of law.  Applying the objective facts in the record, this Court should find that Defendants lacked probable cause for the arrest and subsequent prosecution of Mr. Kistner and, therefore, conclude that Defendants violated Mr. Kistner's Fourth Amendment rights as matter of law more than four years ago on New Year's Day.

## FACTUAL AND PROCEDURAL HISTORY

For the convenience of this Court, Plaintiff respectfully directs its attention to the Sworn Declaration of Counsel for Mr. Kistner, R. Anthony Rupp III ("Rupp Decl."), with exhibits; the Sworn Affidavit of Plaintiff's Accident Reconstruction Expert, Dr. Jennifer Yaek ("Yaek Decl."), with exhibits; and the accompanying Statement of Material Facts submitted pursuant to Local Rule 56.1 ("SOF"), for a full narrative of the factual and procedural background relevant to Plaintiff's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). As the moving party, Plaintiff has the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.  Plaintiff can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.  Indeed, one of the principle purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Id*. at 323-24.

Once the moving party has met his burden, to avoid summary judgment, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving part must, through admissible evidence, "designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (internal citations and

quotations omitted); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121

(2d Cir. 1990 ("the non-movant must set forth specific facts showing that there is a genuine issue

for trial").

        When evaluating a summary judgment motion, a fact is "material" only if it

"might affect the outcome of the suit under governing law . . . [f]actual disputes that are

irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). Where, as here, there are two conflicting versions of the facts, Defendants cannot

create a dispute of material fact where their version is discredited by the objective evidence in

the record and no reasonable jury could believe them. *See Scott v. Harris*, 550 U.S. 372, 380-81

(2007). This often occurs where there is video footage of the incident that completely

contradicts testimony relied on by the non-moving party. *Id.*; *see, e.g., Plumhoff v. Rickard*,

572 U.S. 765, 775-76 (2014) (expanding *Scott* and holding that video footage in addition to other

objective evidence in the record conclusively disproved one party's version of the events so that

no reasonable jury could have believed him); *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir.

2007) ("[i]ncontrovertible evidence relied on by the moving party, such as a relevant videotape

whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly

discredits the opposing party's version that no reasonable juror could fail to believe the version

advanced by the moving party"); *Green v. Morse*, No. 00-CV-6533, 2009 WL 1401642, at *9

(W.D.N.Y. May 18, 2009) (Siragusa, D.J.) ("[b]ased upon *Scott*, as well as Judge Larimer's

opinion in *Allaway*, and the cases upon which he relies, the Court concludes that it may

reasonably rely on the video evidence presented in this case in deciding whether to grant

summary judgment on Plaintiff's use of force claim").

Similarly, although all ambiguities and reasonable inferences must be resolved in favor of the non-movant, this Court "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001); *Western World Ins.*, 922 F.2d at 121 (concluding that the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through "mere speculation or conjecture").  In determining whether summary judgment is appropriate, it is settled that the "mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient." *Anderson*, 477 U.S. at 248.  The central issue this Court must decide is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

## ARGUMENT I

### UNDER A RULE 56 STANDARD OF REVIEW, THIS COURT MUST VIEW THE FACTS AND EVIDENCE IN THE LIGHT DEPICTED BY THE VIDEO FOOTAGE THAT CAPTURED THE NEW YEAR'S DAY INCIDENT

Generally, under a Rule 56 motion, when parties present conflicting versions of the facts and evidence, a court must accept the non-movant's version as true.  The general rule does not apply, however, when the moving party contradicts a non-movant's testimonial evidence with video evidence.  *See Scott v. Harris*, 550 U.S. 372 (2007).

In *Scott*, there was a conflict between a plaintiff's testimony that he was driving carefully when injured by an officer in an accident and videotape evidence showing the plaintiff fleeing from the police in a reckless and dangerous manner.  *See id*. at 380-81.  In that case, the Court of Appeals concluded that it was bound to accept the plaintiff's version of the facts under

the rule that a court must view the evidence in the light most favorable to the party opposing

summary judgment.  *See id.*  The Supreme Court reversed, making clear that courts should not

accept the "visible fiction" of self-serving testimony when the testimony is discredited by the

objective evidence in the record:

> When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury
> could believe it, a court should not adopt that version of the facts
> for purposes of ruling on a summary judgment motion. That was
> the case here with regard to the factual issue whether respondent
> was driving in such fashion as to endanger human life.
> Respondent's version of events is so utterly discredited by
> the record that no reasonable jury could have believed him.
> The Court of Appeals should not have relied on such visible
> fiction; it should have viewed the facts in the light depicted by the
> videotape.

*Scott*, 550 U.S. at 381.

 *Scott*'s holding remains intact—when the summary judgment record contains a

video of the relevant events in police-misconduct cases, courts should view the facts *not* with

deference to the non-moving party as traditionally required, but, rather, in the light depicted by

the video itself.  *Scott* and its progeny elevated the truth of the video above any version of events

put forth by the non-moving party.  *See, e.g., Plumhoff*, 572 U.S. at 775-76; *Zellner*, 494 F.3d at

371; *Green*, 2009 WL 1401642, at *9.[1]

 Although the video is clear and unambiguously shows that Kistner did not

intentionally throw himself at the vehicle and, instead, was struck by a negligent driver, Plaintiff

also submits the expert report of Dr. Jennifer Yaek who broke down the video and made that fact

---

[1] The *Scott* rule applies with equal force to Mr. Kistner's state law claims.  *See, e.g., Weinert-Salerno v. Stefanski*, 170 A.D.3d 1601, 1603 (4th Dept. 2019) (concluding that one party's testimony "was incredible as a matter of law" because it was contrary to photographic evidence and, therefore, failed to raise an issue of fact).

even more clear and obvious to the Court.  As explained by Dr. Yaek, Defendants' version of events is blatantly contradicted by the video recordings of the incident.  (*See* Point II, *infra*). Accordingly, Plaintiff submits this Court should apply *Scott* and find that Defendants McDermott, Velez, Schultz, and Moriarity violated Mr. Kistner's Fourth Amendment rights as a matter of law.

## ARGUMENT II

**DEFENDANTS' VERSION OF EVENTS IS SO UTTERLY DISCREDITED BY THE RECORD THAT NO REASONABLE JURY COULD BELIEVE THEM**

It is settled law that a court must disregard testimony from a witness about occurrences that were impossible for the witness to observe or facts that "def[y] physical realities."  *See, e.g., United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992), *cert. denied*, 514 U.S. 1038 (1995) (citations omitted).  Courts have also found that expert testimony that is unrebutted will prevail where the only evidence offered in opposition is self-serving testimony from the non-movant.  *See, e.g., Deutsche Bank AG v. Amba Credit Prods., LLC*, No. 04-CV-5594, 2006 WL 1867497, at *8 (S.D.N.Y. July 6, 2006) (noting that the evidence submitted to rebut the testimony of movant's experts was "flimsy at best" because it "relie[d] primarily on . . . [non-movant's] self-serving assertions"); *Calloway v. Richter*, No. 97-CV-0671, 1998 WL 3430142, at *4 (W.D.N.Y. Dec. 30, 1998) (granting summary judgment in favor of defendants where "the plaintiff ha[d] failed to present any evidence, other than his self-serving, conclusory statements, to rebut defendant's expert's conclusion that the September 3, 1994 letter could not have been written in 1994").[2]

---

[2] New York courts agree that testimony that is contradicted by expert evidence may properly be disregarded in deciding a motion for summary judgment.  *See, e.g., Cinquemani v. Otis Elevator*

As explained below, Defendants' claim that Mr. Kistner threw himself at McDermott's vehicle rests primarily on the testimony of Schultz. However, Schultz's testimony is directly contradicted by the video recordings of the incident and Dr. Yaek's frame-by-frame analysis of each recording. *See infra*. Defendants failed to meet this evidence with their own expert report, and they declined an opportunity to depose Dr. Yaek to challenge the methodology she used to reach her conclusions. In short, Defendants cannot meaningfully contest Mr. Kistner's expert evidence demonstrating that Officer Schultz's testimony is incredible as a matter of law. *See Calloway*, 1998 WL 3430142, at *4.

Preliminarily, Officer Velez testified that she did not witness the subject accident.

> Q:      Did you see that incident?
>
> A:      I did not.
>
> Q:      Okay. So you didn't see the car make contact with Mr. Kistner?
>
> MS. HUGGINS:      Form. You may answer.
>
> A:      I did not see Mr. Kistner make contact with the car.

*See* Rupp Decl., Exhibit I, p. 200:3-9.

In addition, Officer Moriarity could not recall whether he personally observed the incident:

> Q:      [A]s your vehicle was driving away from the incident, did you see anything that was happening behind you?
>
> A:      I remember having a conversation with Karl about how it looked like Mr. Kistner threw himself on the vehicle. I -- I can't remember exactly how it looked because I was so new. I just remember having the conversation with him.

---

*Company*, 179 A.D.3d 588, 588 (1st Dept. 2020); *Espinal v. Trezechahn 1065 Ave. of Americas, LLC*, 94 A.D.3d 611 (1st Dept. 2012) (finding the non-movant's version of the incident "incredible as a matter of law" because the movant's expert established "the incident was mechanically and physically impossible") (citations and quotations omitted).

Ex. H, pp. 109:21-23 – 110:1-5.

> Q:    Were you looking at the driver's side mirror as the collision was made?
>
> MS. HUGGINS:        Form
>
> A:    I don't -- I don't remember.

Ex. H, p. 113:9-12.

Therefore, probable cause to arrest Mr. Kistner for criminal mischief cannot be based on the observations of Velez or Moriarity.

Officer McDermott, the driver of the vehicle that struck Mr. Kistner, asserted in conclusory fashion that Plaintiff "purposely walked towards the vehicle and threw himself into it." SOF, ¶ 22. However, upon further examination, McDermott was unable to articulate any factual observations to support her conclusory assertion. SOF, ¶¶ 23-25. McDermott admitted that she checked her mirrors and looked behind her moments before the accident as she backed up her BPD vehicle (SOF, ¶¶ 16-18); however, she could not recall what direction she was looking when she put her vehicle in drive and started to move forward. SOF, ¶ 23. Indeed, she testified that she did not recall seeing Mr. Kistner after she shifted her vehicle into drive:

> A:    I -- I don't remember the exact moment I first saw him in the street, no.
>
> Q:    Okay.  So it may have been after you were already pulling the SUV forward.
>
> A:    I -- I don't[2] remember the time.
>
> Q:    Okay.  But that means that you don't remember the time, it could have been after you started pulling the SUV forward after backing it up.
>
> A:    I don't -- I don't remember.

Ex. G, pp. 176:15-23 – 177:1.

Therefore, McDermott could not have seen what she claims she saw, and her conclusory assertions and testimony should be disregarded by the Court as a matter of law. *Bellsouth Telecommunications, Inc. V. W.R. Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("conclusory statements are insufficient to raise a triable issue of material fact"); *Issac v. City of New York*, No. 16-CV-4729, 2020 WL 1694300, at *4 (E.D.N.Y. Apr. 6, 2020) (same); *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 661 (W.D.N.Y. 2011) (similar).[3]

Defendants, therefore, must rely on the utterly incredible testimony of Officer Schultz to support their claim that Mr. Kistner intentionally threw himself at McDermott's vehicle. Officer Schultz testified that the BPD vehicle he was riding in as a passenger stopped just before the collision, and that he witnessed the accident through the ***driver's side*** mirror while sitting in the front ***passenger seat***. SOF, ¶ 31. As explained below, Officer Schutz's testimony should be given no weight because it is contradicted by the video evidence and is physically impossible.

First, the video evidence shows that Schultz's vehicle, driven by Officer Moriarity, was still in motion at the time the impact occurred. Yaek Aff., Exhibits C and D. Dr. Yaek performed a frame-by-frame analysis of all available surveillance video and concluded that Schultz's vehicle was still in motion at the time Mr. Kistner was struck by the BPD vehicle driven by McDermott. Yaek Aff., Exhibit B. Schultz's testimony that his vehicle was stopped at or around the time of impact is blatantly contradicted by the video footage of the accident, and, thus, is incredible as a matter of law.

---

[3] This principle has been reiterated by New York courts and applies equally when evaluating Plaintiff's state law claims. *See Zuckerman v. City of New York*, 49 N.Y.2d 557, 562 (1980) ("mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to raise a triable issue of fact).

- 9 -

Second, it would have been physically impossible for Schultz to view the subject incident through the driver's side mirror while sitting in the front passenger seat.  As explained by Dr. Yaek, the Law of Reflection establishes that the angle of reflection equals the angle of incidence.  Yaek Aff., Exhibit B.  Schultz, sitting in the passenger seat, would have viewed the driver's side mirror at a conservative estimate of 30 degrees, and, therefore, would only be able to view objects 30 degrees parallel to the mirror on the opposite side of the vehicle.  *Id*.  Thus, Schultz would have observed lawns and houses on the west side of the roadway, not the subject accident.  *Id*.

While this principle alone sufficiently establishes that it would have been physically impossible for Schultz to view the accident through the driver's side mirror, Dr. Yaek went one step further by re-enacting what Schultz would have observed through a driver's side mirror while sitting in the passenger seat of a 2015 Chevy Tahoe.  Yaek Aff., Exhibits C and D.  Dr. Yaek's testing showed that a passenger of a vehicle looking through a driver's side mirror would not have been able to view the incident that occurred behind the vehicle in the middle of the roadway.  *Id*.  This reenactment further established that Schultz's testimony is incredible as a matter of law since it is physically impossible for him to have seen what he claims he saw.  *Id*.

Third, while it is clear from the video that Mr. Kistner did not throw himself at Officer McDermott's vehicle, Dr. Yaek performed a frame-by-frame analysis of the video, concluding from it that Mr. Kistner maintained a normal walking speed in the moments leading up to the collision and at no point lunged or jumped into the vehicle.  Yaek Aff., Exhibits B, C, and D.

Thus, as explained by Plaintiff's uncontested expert, it is physically impossible for Schultz's version of the events to be true or for him to have seen what he claims to have seen.

The objective evidence in the record demonstrates that no reasonable juror could believe his version of the facts.  (*See* Point I, *supra*).  Defendants arrested Mr. Kistner based on Officer Schultz's alleged observation that Mr. Kistner intentionally threw himself at Officer McDermott's vehicle with an intent to damage the car.  Because the video evidence directly contradicts the alleged facts by the on-scene officers that led to Mr. Kistner's arrest on Schmarbeck Avenue, there is no triable issue regarding Defendants' lack of probable cause, or even arguable probable cause, to arrest Mr. Kistner on January 1, 2017.  Accordingly, as explained below, Defendants are liable for false arrest, false imprisonment, and malicious prosecution, under Federal and New York State law, for arresting and prosecuting Mr. Kistner without probable cause.

## ARGUMENT III

### DEFENDANTS VIOATED MR. KISTNER'S FOURTH AMENDMENT RIGHTS WHEN THEY ARRESTED HIM WITHOUT PROBABLE CAUSE

The elements for false arrest and false imprisonment, under New York and Federal law,[4] are the same:[5]  "(1) defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Tisdale*, 442 F. Supp.3d at 573; *Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 114 (W.D.N.Y. 2020) (an arrest is privileged only if based on

---

[4] Under New York and Federal law, claims for false arrest and false imprisonment have identical elements.  *Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 114 (W.D.N.Y. 2020).

[5] *Solomon*, 449 F. Supp. 3d at 114; *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("[a] § 1983 claim for false arrest . . . including arrest without probable cause, is substantially the same as a claim for false arrest under New York law") (citations omitted); *Tisdale v. Hartley*, 442 F. Supp. 3d 569, 573 (W.D.N.Y. 2020).

probable cause).[6]  The record conclusively demonstrates that no genuine issue of material fact

exists with regard to the first three elements.  (SOF, ¶¶ 38-58; Yaek Aff., Exhibits C and D).  For

the reasons explained below, the uncontested evidence also demonstrates there are no material

facts in dispute that would establish Defendants had probable cause to arrest Mr. Kistner.

        "In general, probable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime."  *Weyant*, 101 F.3d at 852; *Singer v. Fulton County Sheriff*, 63 F.3d 110,

119 (2d Cir. 1995).  Whether an officer had probable cause to proceed with an arrest of an

alleged wrongdoer is measured by an "objectively reasonable" standard.  *Jenkins v. City of New

York*, 478 F.3d 76, 87-88 (2d. Cir. 2007).  Information obtained after an arrest will not support a

finding of probable cause at the time the arrest was made.  *See Loria v. Gorman*, 306 F.3d 1271,

1291 (2d. Cir. 2002).[7]

---

[6] Personal involvement for each of the Defendants identified in this motion is not at issue.
Indeed, the record confirms that Officers Schultz and Moriarity handcuffed Mr. Kistner on
Schmarbeck Avenue.  SOF, ¶ 39.  Officers Schultz and Moriarity drove Mr. Kistner from
Schmarbeck Avenue to ECMC.  SOF, ¶ 51.  Officers McDermott and Velez stayed at ECMC
with Mr. Kistner and drove him to the Erie County Holding Center to have him booked for the
criminal charges.  SOF, ¶ 55.  Officers McDermott and Velez completed the paperwork required
to effect the arrest of Mr. Kistner.  *See* Rupp Decl., Exhibits J, K, L, and M.

[7] For this reason, Plaintiff's motion for summary judgment focuses only on Defendants' criminal
charge against him for criminal mischief in the third degree, as the criminal charge against him
for disorderly conduct was based on Mr. Kistner's conduct at the hospital—*i.e.*, protesting to the
Officers and hospital staff that Defendants falsely arrested him.  *See Wong Sun v. U.S.*, 371 U.S.
471, 484-91 (1963) (observations which derive from suspect in custody after false arrest by
police officers cannot constitute proof against that individual for charges based on conduct while
in police custody).

Mr. Kistner was arrested on Schmarbeck Avenue for criminal mischief in the third degree. Pursuant to New York Penal Law § 145.05, the statute Mr. Kistner was accused of violating, "[a] person is guilty of criminal mischief in the third degree when, with an intent to damage the property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding two hundred fifty dollars." Notably, the statute speaks only to intentional conduct; recklessly damaging the property of another is insufficient. *Compare* N.Y. Pen. L. §§ 145.05(2) *with* 140.00(3).

Thus, in order to have probable cause to arrest Kistner for criminal mischief in the third degree, the officers were required to have sufficient information reasonably to believe that Mr. Kistner intentionally damaged the BPD vehicle and caused damage exceeding $250.00. *See Loria*, 306 F.3d at 1291 ("to have probable cause to arrest or prosecute [plaintiff] for … criminal mischief in the third degree, [defendants] would have to possess sufficient information to support a reasonable belief that [plaintiff] … intentionally collided with [the] car."). For the reasons explained above, they did not. (*See* Point II, *supra*). Officers Velez and Moriarity did not witness the subject accident. Officer McDermott's self-serving testimony is conclusory and incomplete—*i.e.*, her statement that she saw Mr. Kistner purposely throw himself at her vehicle is directly contradicted by her statement that she does not know if she looked forward and saw Kistner after she put her car into drive. (*See* Point II, *supra*). Further, as explained by the uncontested expert opinion of Dr. Yaek, it is physically impossible for Officer Schultz's version of the events to be true. (*See* Point II, *supra*).[8] More importantly, the video evidence directly

---

[8] Under the fellow officer rule, which imputes liability for an arrest without probable cause to all police officers working in close concert, the other on-scene Officers are vested with, and liable for, the same faulty knowledge as Schultz which led to the false arrest of Mr. Kistner on New

contradicts material facts the on-scene officers claim they relied on when they arrested

Mr. Kistner on Schmarbeck Avenue.  (*See* Point I, *supra*).  Accordingly, Defendants are liable

for false arrest and false imprisonment as a matter of law as their arrest of Mr. Kistner was not

privileged—*i.e.*, was not supported by sufficient probable cause.


## ARGUMENT IV

### DEFENDANTS VIOLATED MR. KISTNER'S FOURTH AMENDMENT RIGHTS WHEN THEY CONTINUED TO PROSECUTE HIM WITHOUT PROBABLE CAUSE

The elements for "malicious prosecution under § 1983 are 'substantially the same

as the elements under New York law.'"  *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir.

2003) (citing *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)).  Under New York law, the

elements of a malicious prosecution claim are: (1) the commencement or continuation of a

criminal proceeding by the defendant against the plaintiff; (2) the absence of probable cause for

the criminal proceeding (3) actual malice; and (4) the termination of the proceeding in favor of

the accused.  *Cantalino v. Danner*, 96 N.Y.2d 391, 394 (2001); *Smith-Hunter v. Harvey*,

95 N.Y.2d 191, 195 (2000).  To establish liability for malicious prosecution under Section 1983,

Plaintiff bears the burden of proving an additional element—that his Fourth Amendment rights

were implicated by a sufficient post-arraignment restraint on his liberty.  *Rohman v. New York

City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000).

---

Year's Day 2017.  *Smith v. P.O. Canine Dog Chas, Shield No. 170*, No. 02-CV-6240, 2004 WL
2202564, at *8 (S.D.N.Y. Sept. 28, 2004) ("a plaintiff need not establish wo, among a group of
officers, directly participated in [the civil rights violation] and who failed to intervene"); *Munoz
v. Martinez*, No. 03-CV-0828, 2005 WL 1355094, at *4 (S.D.N.Y. June 8, 2005) (same);
*see also Shankle v. Andreone*, No. 06-CV-487, 2009 WL 3111761, at *6 (E.D.N.Y. Sept. 25,
2009) (personal involvement satisfied even where arrestee was unable to identify which officers
violated his civil rights).

As explained below, there are no triable issues regarding any of these five elements. Accordingly, Plaintiff respectfully requests that the Court grant his motion for summary judgment with respect to his claims for malicious prosecution under both Federal and New York State law.

### A.  <u>Defendants Initiated the Criminal Prosecution Against Kistner</u>.

An officer who signs a criminal court complaint has initiated a criminal prosecution. *See, e.g., Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005); *Cox v. County of Suffolk*, 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (swearing out a complaint is initiation of a criminal proceeding); *Bradley v. City of New York*, 2007 WL 232945, at *4 (S.D.N.Y. Jan. 26, 2007) ("The Second Circuit has repeatedly ruled that . . . the swearing out of a criminal complaint by a police officer" is an act that "constitute[s] the initiation of criminal proceedings") (citations omitted); *Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016). Defendant McDermott signed both criminal complaints without probable cause to believe that Mr. Kistner committed a crime. *See* Rupp Decl., Exhibit M. Defendant McDermott, therefore, is liable for the initiation of the criminal proceeding.

Additionally, it is well-settled that officers who provide false statements in support of the alleged criminal charge initiates the proceeding for malicious prosecution purposes. *Mangiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010); *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Here, Defendant Velez provided false evidence to the prosecutors by including unfounded statements in multiple official documents claiming that Mr. Kistner intentionally threw himself at Officer McDermott's vehicle with intent

to damage the car.  *See, e.g.,* Rupp Decl., Exhibit N.  Defendant Velez, therefore, is liable for the initiation of the criminal proceeding.

Finally, courts in this circuit are clear that the first element of a malicious prosecution claim is satisfied where police officers create false information likely to influence a jury's decision and that information is forwarded to prosecutors.  *See, e.g., Myers v. County of Orange*, 157 F.3d 66, 73-74 (2d Cir. 1998) (a prosecutor's exercise of independent judgment was not a superseding cause where the prosecutor was constrained by the police departments failure to investigate certain claims); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495, at *12 (S.D.N.Y. Jan. 7, 2009) (police officers may be held liable for malicious prosecution when they either "knew or should have known" that their "investigative techniques . . . would yield false information").  Put simply, there is no cognizable distinction between the affirmative falsification of evidence on the one hand, and the mere solicitation of testimony known or suspected to be false, on the other.  Both amount to evidence fabrication.  As one court put it, "the latter is but a subset of the former," so that "[w]hen false testimony is knowingly elicited by an investigating official, that act can be viewed as the creation of false evidence."  *Lopez v. City of New York*, 105 F. Supp. 3d 242, 248 (E.D.N.Y. 2015); *see also Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015).

Here, when Officers Schultz and Moriarity approached Mr. Kistner after he was negligently struck by Officer McDermott's vehicle, they lied and said they "saw the whole thing," and that they observed Mr. Kistner "throw himself at the vehicle."  SOF, ¶ 34.  As explained above, Officers Schultz and Moriarity knew, or should have known, that their lack of any meaningful investigation or observation of the pertinent facts relied upon in arresting Mr. Kistner would constrain the prosecutor and force her to prosecute Plaintiff for a crime based

solely on Schultz's sham observations.  Defendants should have performed an adequate

investigation of the accident before arresting Mr. Kistner including, inter alia, reviewing the

video footage of the incident that clearly shows that Plaintiff did not intentionally throw himself

at Officer McDermott's vehicle.  Thus, the uncontested evidence shows that Defendants should

have known that the 'evidence' that supported Mr. Kistner's arrest—Officer Schultz's

observations, only—was false.  The first element of Mr. Kistner's malicious prosecution claim,

therefore, has been satisfied against Defendants McDermott, Velez, Schultz, and Moriarity.

### B.     There Was a Lack of Probable Cause to Commence the Proceedings.

Importantly, even if this Court were to find that there was sufficient probable

cause to arrest Mr. Kistner on New Year's Day 2017, the same cannot be said regarding probable

cause to continue the prosecution against Plaintiff.  "Probable cause to arrest cannot be a

springboard for probable cause to prosecute."  *Jovanovic v. City of New York*, No. 04-CV-8437,

2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006).  Indeed, "even when probable cause is

present at the time of arrest, evidence could later surface which would eliminate that probable

cause.  In order for probable cause to dissipate, the groundless nature of the charge must be made

apparent by the discovery of some intervening fact."  *Kinzer v. Jackson*, 316 F.3d 139, 144

(2d Cir. 2003) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).  An

officer's failure to provide exculpatory evidence to the prosecutor, or further inquire about

exculpatory evidence when a reasonable person would have done so, demonstrates a lack of

probable cause.  *Cannistraci v. Kirsopp*, 2012 WL 1801733, at *11-12 (N.D.N.Y. May 16, 2012)

(citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *Korthas v. City of

Auburn*, 2006 WL 1650709, at *5 (N.D.N.Y. June 9, 2006); *Wagner v. Hyra*, 2021 WL 475331

(N.D.N.Y. 2021) ("'the failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause.'") (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d. Cir. 1996)).

As explained above, there simply was no probable cause to arrest Mr. Kistner, let alone prosecute him.  (*See* Points I-III, *supra*).  However, assuming, arguendo, that this Court finds and issue of fact related to probable cause to arrest, Defendants absolutely did not have probable cause to prosecute Mr. Kistner due to their utter failure to perform any investigation of the criminal charges they lodged against Plaintiff.  Indeed, at the time of Mr. Kistner's initial arrest, Defendants were aware that the accident was recorded on surveillance cameras owned by Plaintiff.  SOF, ¶56.  In fact, the BPD "Complaint Summary Report" explicitly notes that cameras on 37 Schmarbeck captured the incident.  Rupp Decl., at Exhibit J (this entry to the BPD dispatch was made at 11:07 a.m. on January 1, 2017).  However, no officer or City employee attempted to view or obtain copies of the surveillance footage.  Instead, Defendants continued their lawless prosecution of Mr. Kistner.  SOF, ¶ 48-50.

The video of the accident clearly establishes that Mr. Kistner did not throw himself at the BPD vehicle, thereby undermining an essential element for Defendants' criminal charge against Plaintiff for criminal mischief in the third degree.  *See* N.Y. Pen. L. 145.05(2).  Defendants' failure to pursue "reasonable avenues of investigation" to establish material facts relied upon for the prosecution of Mr. Kistner evidences a lack of probable cause as a matter of law.  *See, e.g., Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571-72 (2d Cir. 1996); *see also Walsh v. Lunsford*, 2017 WL 2895943, at *8 (S.D.N.Y. July 7, 2017) ("[i]t is true that an arresting officer is 'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest,' but '[r]easonable avenues of investigation must be pursued

[to establish probable cause], and 'a police officer may not close her or his eyes to facts that would help clarify the circumstance of an arrest'") (alterations in original) (internal quotations omitted).

Additionally, Defendants lacked probable cause to prosecute Kistner for criminal mischief because there is no evidence that Kistner caused $250.00 in damage to the BPD vehicle. The arresting officers merely estimated that amount of damage to the vehicle was $250.00 and were unable to articulate any basis for such conclusion. SOF, ¶¶ 43-45. Supposedly Officer McDermott used her cell phone to take a photo of the vehicle on the day of the incident, but Defendants now claim that the photograph does not exist. The officers also failed to take any steps to document the damage to the vehicle or ensure that the vehicle was repaired for purposes of pursuing the felony charge against Kistner. SOF, ¶ 46-48.

The criminal complaint, signed by Officer McDermott, alleged that the driver's side mirror of the BPD vehicle was "dislodged" from the vehicle and that the driver's side window was malfunctioning. Rupp Decl., Exhibit M. However, the subject vehicle was taken in for routine service four days after the accident and no repairs were made to the vehicle's mirror or window. SOF, ¶ 46-48. Defendants did not turn over any other repair records during the course of discovery. Although it should have been obvious that the vehicle was not damaged at the time the vehicle was serviced—an essential element for criminal mischief—Plaintiff nonetheless was arraigned twelve days after the accident and forced to return to court on several occasions to defend himself against these charges. SOF, ¶¶ 61-62. Defendants undoubtedly lacked probable cause to prosecute Mr. Kistner once it was determined that the BPD vehicle was not damaged, yet they continued to pursue the criminal charges without probable cause.

Accordingly, Defendants are liable for continuing the criminal prosecution of Mr. Kistner without probable cause.


**C.     The Prosecution of Mr. Kistner was Motivated by Something Other Than His Innocence or Guilt.**

As noted by the Second Circuit, "malice does not have to be actual spite or hatred, but mean only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citations and quotations omitted). Actual malice in pursuing criminal charges can be inferred as a matter of law from a lack of probable cause. *Id.*; *Martin v. City of Albany*, 42 N.Y.2d 13, 18 (1977); *Nieminski v. Cortese-Green*, 74 A.D.3d 1550, 1551 (3d Dept. 2010).

As described above, Plaintiff has demonstrated the lack of probable cause for criminal charges that Defendants' initiated against him, both at the time of arrest and the subsequent prosecution. *See* Point IV(2), *supra*. That same evidence demonstrates there is no genuine dispute that the criminal prosecution against Kistner was brought with malice. *See Lowth*, 82 F.3d at 573.


**D.     The Criminal Proceedings Terminated in Plaintiff's Favor.**

The criminal proceedings terminated in Plaintiff's favor. "New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence." *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004). Rather, the law in New York is clear: "[A]ny termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable

termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantolino*, 96 N.Y.2d at 395.  Another example is when a criminal proceeding is dismissed due to the lack of evidence to prove an essential element of the crime accused.  *See, e.g., Ackerson v. City of White Plains*, 702 F.3d 15, 19-22 (2d Cir. 2012).

Here, the criminal proceeding against plaintiff terminated on April 2, 2018, when all charges were dismissed in "Interest/Furtherance of Justice."  Rupp Decl., at Exhibit O. Defendants knew, or should have known, that the video footage that captured the events proved conclusively that Mr. Kistner did not intentionally throw himself at Officer McDermott's vehicle.  In addition, Defendants knew, or should have known, that they could not prove beyond a reasonable doubt that Plaintiff caused greater than $250 in property damage—a necessary element to prove criminal mischief in the third degree.  The record conclusively demonstrates that Plaintiff satisfied the fourth element required for his malicious prosecution claim—that the criminal proceeding terminated in his favor.

E.      **Plaintiff Suffered a Sufficient Post-Arraignment Restraint on His Liberty.**

Finally, the undisputed proof before this Court shows that Mr. Kistner suffered a sufficient post-arraignment deprivation of his Fourth Amendment rights.  Indeed, it is well-settled that any surrender to a State's show of authority constitutes a seizure.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required suffers a Fourth Amendment deprivation of liberty."  *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).

Here, prior to the dismissal of the criminal proceeding against him, Mr. Kistner was required to attend multiple post-arraignment court proceedings in connection with the criminal charges filed.  SOF, ¶¶ 61-62.  These multiple post-arraignment court appearances are a sufficient deprivation of liberty for purposes of satisfying the fifth element of a claim for malicious prosecution under Federal law.

## ARGUMENT V

### AS A MATTER OF LAW, OFFICERS McDERMOTT, VELEZ, SCHULTZ, AND MORIARITY ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR CONDUCT VIOLATED CLEARLY ESTABLISHED LAW WITH OBVIOUS CLARITY

Plaintiff is entitled to summary judgment dismissing Defendants' defense of qualified immunity.  It is well settled that whether Defendants are entitled to the defense of qualified immunity is a legal issue that must be determined by the Court and summary judgment is the appropriate forum.  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).  As the Supreme Court reiterated in *Pearson v. Callahan*, 555 U.S. 223 (2009), qualified immunity "balances two important interests—the need to hold public officials when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonable."  *Id*. at 231.  There is little room for debate in this case: Defendants McDermott, Velez, Schultz, and Moriarity abused their power by arresting and prosecuting Plaintiff without probable cause to protect their fellow officer from investigation for negligently striking Mr. Kistner with her vehicle.

Qualified immunity shields government actors from liability for the "performance of their discretionary functions as long as 'their conduct does not clearly violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

*Moore v. Hearle*, 639 F. Supp. 352, 357 (S.D.N.Y. 2009) (quoting *Livant v. Clifton*, 272 Fed.

App'x 113, 115 (2d Cir. 2008)).  Evaluation of a qualified immunity claim requires application

of a two-step analysis.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The first step consists of

determining whether the plaintiff has shown a violation of a constitutional right.  *Id.*  If so, the

next step is to determine whether the right at issue was "clearly established" at the time of the

defendants' alleged misconduct.  *Id.*  Qualified immunity applies only "if the officers' mistake as

to what the law requires is reasonable.  It does not apply if, on an objective basis, it is obvious

that no reasonably competent officer would have taken the actions of the alleged violation" as

criminal.  *Holley v. County of Orange, NY*, 625 F. Supp. 2d 131, 142 (S.D.N.Y. 2009) (citing

*Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

   Although an officer needs only "arguable" probable cause to rely on the qualified

immunity defense, it is crucial to note that "'[a]rguable' probable cause should not be

misunderstood to mean 'almost' probable cause."  *Jenkins v. City of New York*, 478 F.3d 76, 87

(2d Cir. 2007) (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)).  Arguable probable

cause is assessed under the same definition and requirements as probable cause and exists only

"if '*at the moment the arrest was made* . . . the facts and circumstances *within the [officers']*

*knowledge* and of which they *had reasonable trustworthy information* were sufficient to warrant

a prudent man in believing' that [the suspect] had violated the law."  *Zellner v. Summerlin*, 494

F.3d 344, 370 (2d Cir. 2007) (citations omitted) (emphasis in original).

   Here, Mr. Kistner has provided uncontested evidence that he was arrested and

prosecuted without probable cause in violation of the Fourth Amendment.  The rights defined for

purposed of this motion are clear.  *See Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)

("[t]he right not to be arrested or prosecuted without probable cause has, of course, long been a

clearly established constitutional right").  No rational officer could argue that it was reasonable for Defendants to arrest Mr. Kistner based on facts that could not have been observed or that were physically impossible.  (*See* Point I and II, *supra*).  Accordingly, Plaintiff requests summary judgment striking the defense of qualified immunity asserted by Defendants McDermott, Velez, Schultz, and Moriarity.

## **CONCLUSION**

If ever a party's self-serving and uncorroborated testimony is so undermined as to be incredible as a matter of law, this surely is the case.  This is not a case of "he said, she said" differences in recollection.  Defendants offered no support whatsoever for their incredible assertion that Mr. Kistner intentionally threw himself at Officer McDermott's vehicle with intent to damage it.  Their claim is supported solely by Officer Schultz's false and self-serving testimony, unsupported by any corroborating evidence.  The credible, objective evidence in the record, including the five video recordings of the incident and the expert affidavit of Dr. Jennifer Yaek, blatantly undermine Schultz's testimony that he observed the collision and observed Mr. Kistner intentionally throw himself at Officer McDermott's vehicle.  Schultz's observations were relied on by the on-scene officers in arresting Mr. Kistner.  As explained in detail above, this Court should reject Defendants' incredible testimony, and view the facts and evidence in the light depicted by the video footage that captured the New Year's Day incident.

**WHEREFORE**, for the foregoing reasons, summary judgment should be granted in favor of Mr. Kistner and an order should issue finding that Defendants McDermott, Velez, Schultz, and Moriarity: (1) are liable under 42 U.S.C. § 1983 for false arrest, false imprisonment,

and malicious prosecution; (2) are liable for New York common law false arrest, false imprisonment, and malicious prosecution; (3) are precluded from asserting the qualified immunity defense for any of Plaintiff's claims against them.  Mr. Kistner respectfully requests the award of any such other and further relief as the Court deems just and proper.

Dated:  April 28, 2021
       Buffalo, New York

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for Plaintiff, James C. Kistner*

By:   *s/R. Anthony Rupp III*
      R. Anthony Rupp III
      Jill L. Yonkers
      Chad A. Davenport
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
rupp@ruppbaase.com
yonkers@ruppbaase.com
davenport@ruppbaase.com