**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**JAMES C. KISTNER,**

**Plaintiff,**

**v.**

**THE CITY OF BUFFALO, BRYON LOCKWOOD, DANIEL DERENDA, LAUREN MCDERMOTT, JENNY VELEZ, KARL SCHULTZ, KYLE MORIARTY, DAVID T. SANTANA, ANTHONY MCHUGH, JOHN DOE(S)**

**Defendants.**
_____

**Case No.: 18-CV-402**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**

TIMOTHY A. BALL, ESQ.
Corporation Counsel
*Attorneys for Defendants*

By: Maeve E. Huggins
Assistant Corporation Counsel
1112 City Hall : 65 Niagara Square
Buffalo, New York 14202
Tel.: (716) 851-4317
Fax.: (716) 851-4105
E-mail: mhuggins@city-buffalo.com

1

## PRELIMINARY STATEMENT

Generally, Plaintiff, James C. Kistner (hereinafter "Plaintiff"), claims that the Defendants violated his Constitutional rights, specifically his First, Fourth, and Fourteenth Amendment rights, as well as caused him physical injury during an January 1, 2017 interaction with members of the Buffalo Police Department (hereinafter "BPD") that resulted in his arrest.  *See* Dkt. No. 61.  The Defendants, City of Buffalo (hereinafter "City"), Byron Lockwood (sued incorrectly here as "BRYON LOCKWOOD"; hereinafter "Lockwood"), Daniel Derenda (hereinafter "Derenda"), Lauren McDermott (hereinafter "McDermott"), Jenny Velez (hereinafter "Velez"), Karl Schultz (hereinafter "Schultz"), Kyle Moriarity (sued incorrectly here as "KYLE MORIARTY"; hereinafter "Moriarity"), David T. Santana (hereinafter "Santana"), Anthony McHugh (hereinafter "McHugh"), and John Doe(s), respectfully submit this Memorandum of Law in support of their motion for judgment on the pleadings pursuant to Fed. R. Civ. P. (hereinafter "Rule") 12(c) and for summary judgment pursuant to Rule 56.  The Defendants respectfully move on the grounds that Plaintiff failed to state a cause of action regarding certain claims and that the Defendants are entitled to summary judgment because the remaining claims lack merit, or alternatively, are barred by qualified immunity.

## STATEMENT OF FACTS

A full recitation of the material undisputed facts may be found in the Defendants' Statement of Material Undisputed Facts, and accompanying Declaration of Maeve E. Huggins, affirmed under penalties of perjury on April 30, 2021, together with all Exhibits attached thereto simultaneously submitted in support of this motion.

## PLAINTIFF'S CLAIMS

Plaintiff asserts the following purported causes of action[1]: (1) a 42 U.S.C. § 1983 (hereinafter "Section 1983") claim for "unlawful seizure and arrest" in violation of Plaintiff's Fourth and Fourteenth Amendment rights against all Defendants (Dkt. No. 61 ¶¶165-174); (2) a Section 1983 claim for abuse of process and malicious prosecution in violation of Plaintiff's Fourth and Fourteenth Amendment rights against all Defendants (Dkt. No. 61 ¶¶175-181); (3) a Section 1983 claim for First Amendment retaliation against all Defendants (Dkt. No. 61 ¶¶182-192); (4) a Section 1983 claim for negligent hiring and failure to supervise and train in violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights against all Defendants (Dkt. No. 61 ¶¶193-201); (5) state law false arrest/imprisonment claims against all Defendants (Dkt. No. 61 ¶¶202-209); (6) state law "abuse of prosecution" and malicious prosecution claims against all Defendants (Dkt. No. 61 ¶¶210-216); (7) a state law assault claim against all Defendants (Dkt. No. 61 ¶¶217-220); (8) a state law battery claim against all Defendants (Dkt. No. 61 ¶¶221-225); (9) a state law intentional infliction of emotional distress claim against all Defendants (Dkt. No. 61 ¶¶226-230); (10) a state law negligence claim against all Defendants (Dkt. No. 61 ¶¶231-238); (11) a "respondeat superior liability" claim against the City (Dkt. No. 61 ¶¶239-242); (12) a failure to intervene claim against all Defendants (Dkt. No. 61 ¶¶243-247); (13) a state law defamation claim against all Defendants (Dkt. No. 61 ¶¶248-255);

---

[1] Plaintiff claims to bring this action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Dkt. No. 61 ¶30. 42 U.S.C. §§ 1981, 1985, 1986 are inapplicable here as Plaintiff is not a racial minority, an officer or holder of public office, or subjected to any conspiracy to interfere with civil rights.

(14) "official misconduct, tampering with evidence and spoliation" claim against all Defendants (Dkt. No. 61 ¶¶256-260); (15) a claim for punitive damages against all Defendants sued in their individual capacities (Dkt. No. 61 ¶¶261-262); and (16) a claim for attorney's fees and costs pursuant to 42 U.S.C. §1988 against all Defendants (Dkt. No. 61 ¶¶263-264).

## STANDARD OF REVIEW

## I.      JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW

Rule 12(c) provides "after the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  A district court should grant a Rule 12 motion to dismiss if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

A Rule 12(c) motion to dismiss is judged by the same standards applicable to a Rule 12(b)(6) motion to dismiss.  *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).  "[A] district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *Newman v. Holder*, 101 F.Supp.2d 103, 105 (E.D.N.Y. 2000).

In passing upon a motion to dismiss, the court must view the allegations in the light most favorable to the plaintiff.  *See Scheur v. Rhodes*, 416 U.S. 232, 236 (1974).  The

court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 Fed.Appx. 32, 34 (2d Cir. 2014). While courts must accept all precisely worded factual allegations as true, legal conclusions or unsupported inferences or assumptions in a complaint need not be accepted in the context of deciding a Rule 12 motion. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

A court should dismiss a complaint for failure to state a cause of action pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## II.    SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Kaytor v. Elec. Boart Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

The Supreme Court affirmed summary judgment as an integral part of the fair and efficient administration of justice; it is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The court must resolve all ambiguities and draw all inferences against the moving party. However, when a properly supported summary judgment motion is made, the non-moving party may not rely upon the mere allegations of his pleading, "but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original)). A factual dispute is material "only if it has some effect on the outcome of the suit." *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). A genuine issue exists for trial "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Weber v. AVX Pension Plan for Bargaining Unit and Hourly Employees*, No. 07–CV–615S, 2009 WL 3165627 (W.D.N.Y. Sept. 27, 2009) (internal quotations omitted).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*,

838 F.Supp.2d 99, 103 (W.D.N.Y. 2011). A defendant is entitled to summary judgment where "the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (internal quotation marks omitted).

A party seeking summary judgment may also meet its burden by "showing' - that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."). At that point, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *PepsiCo*, 315 F.3d at 105 (quotation omitted).

A "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. *Anderson*, 477 U.S. at 252; *Jefreys v. Rossi*, 275 F.Supp.2d 463, 473 (S.D.N.Y. 2003) (the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation"). A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); it must "offer some hard evidence showing that its version of the events is not wholly fanciful," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "Summary judgment is appropriate, if the evidence presented by the

7

nonmoving party is merely colorable, or is not significantly probative . . . or if it is based purely on conjecture or surmise." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citations and internal quotes omitted). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## ARGUMENT

Applying these settled standards of review and applicable Federal Rules of Civil Procedure, Plaintiff failed to plead certain claims sufficiently and the Defendants are entitled to summary judgment as to the remaining claims. The Defendants did not cause Plaintiff to suffer physical injury or violate his Constitutional rights, and alternatively, the officers are entitled to qualified immunity. Accordingly, all claims against the Defendants must be dismissed with prejudice.

## I.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS REGARDING CERTAIN PURPORTED CLAIMS

### A.   Plaintiff improperly seeks to incorporate allegations and evidence into his "Second Amended Verified Complaint and Jury Demand"

As an initial matter, Plaintiff improperly seeks to incorporate allegations and evidence in his amended complaint by reference only. The Western District of New York's Local Rules state that "[n]o portion of the prior pleading shall be incorporated into the proposed amended pleading by reference." L.R.Civ.P. 15(a). Plaintiff amended his complaint and improperly incorporated allegations or evidence from video contained on a CD and apparent medical records not attached as exhibits to his so-called "Second Amended Verified Complaint and Jury Demand." *See, e.g.,* Dkt. No. 61 ¶¶53, 145, 154,

155, 157.  To the extent that Plaintiff improperly sought to incorporate such allegations and evidence into the now controlling pleading, this Court should disregard and strike such allegations for the purpose of ruling on the Defendants' Rule 12 motion for judgment on the pleadings.

**B.    All official capacity claims must be dismissed**

An official-capacity suit is, essentially, a suit against the municipality of which the officer is an agent.  *Stancati v. Cty. of Nassau*, No. 14-CV-2694 JS ARL, 2015 WL 1529859, at *2 (E.D.N.Y. Mar. 31, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  A claim against an individual municipal defendant who is sued in his official capacity is duplicative of the same claim against the municipality.  *Irwin v. W. Irondequoit Cent. Sch. Dist.*, 2017 WL 881850, at *4 (W.D.N.Y. 2017); *Burgess v. DeJoseph*, 2017 WL 1066662, at *8 (N.D.N.Y. 2017); *Phillips v. Cty. of Orange*, 894 F.Supp.2d 345, 385 (S.D.N.Y. 2012) ("[I]n the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.").  Therefore, such official capacity claims against all individually named Defendants must be dismissed as Plaintiff also brings claims against the City.

**C.    All claims against any John Doe(s), to the extent any remain, must be dismissed**

Rule 4(m) requires dismissal, absent a showing of "good cause," of claims against a defendant who is not served within 90 days of the filing of the complaint.  It is well established that "[w]here a plaintiff names 'John Doe' as a placeholder defendant because he does not the identity of an individual defendant, he generally is required to replace

the placeholder with a named party within the applicable statute of limitations." *Abrue v. City of New York*, 657 F. Supp.2d 357, 363 (E.D.N.Y. 2009). "Courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Coward v. Town & Vill. of Harrison*, 665 F.Supp.2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

Where, as here, a plaintiff has had ample time to discover the identities of the unnamed officials and has not yet named them, or served them, dismissal without prejudice is proper. *See, e.g., Webb v. Miller*, No. 918CV610TJMDJS, 2020 WL 1227155, at *2 (N.D.N.Y. Mar. 12, 2020); *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448–49 (S.D.N.Y. 2017); *Delrosario v. City of New York*, No. 07 CIV. 2027 (RJS), 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010) (dismissing claims against unnamed defendants without prejudice where plaintiff had ample time and opportunity to discover their identities). To the extent that John Doe(s) appears on the caption as a defendant and to the extent any claims remain, the John Doe(s) Defendant(s) must be dismissed due to Plaintiff's failure to name and serve this defendant(s).

### D.   Under Rule 12, Plaintiff failed to plead properly certain claims brought pursuant to Section 1983

#### i.   Section 1983 Liability

Section 1983 provides a remedy to parties allegedly deprived of their federal rights by government officials acting under color of law. The statute is not itself a source of substantive rights. Section 1983 vindicates federal rights elsewhere conferred. *Albright*

*v. Oliver*, 510 U.S. 266, 271 (1994).  "To state a valid claim under [Section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997).

### ii.     All Section 1983 claims against Lockwood, Derenda, Santana, and McHugh must be dismissed for lack personal involvement

Generally, Section 1983 liability must be based on the personal involvement of a defendant in the alleged constitutional violation.  *See Spavone v. New York State Dep't. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013).  Plaintiff's complaint lacks any meaningful allegations that Lockwood, Derenda, Santana, and McHugh had any personal involvement in the events of January 1, 2017 that Plaintiff alleges caused him a Constitutional injury.  Indisputably, Lockwood, Derenda, and McHugh were not present on Schmarbeck Avenue, at the Erie County Medical Center, or central booking. Lockwood was not even police commissioner on January 1, 2017.  Even assuming Plaintiff's allegations are true, there are no plausible allegations that Santana or McHugh knew or had reason to know that Plaintiff's Constitutional rights were being violated beyond mere conclusory allegations.  Therefore, no Section 1983 claims against Lockwood, Derenda, Santana, or McHugh survive Rule 12 analysis.

### iii.     Under Rule 12, Plaintiff failed to plead properly a municipal liability claim under *Monell*

Plaintiff names the City, Lockwood, and Derenda as defendants in various purported Section 1983 claims.  Dkt. No. 61 ¶¶165-174, 175-181, 182-192, 193-201.  Under

11

Rule 12 scrutiny, the complaint is insufficient to plead a viable claim for Section 1983 municipal liability, much less meet the standard sufficient to withstand Rule 56 evaluation.  Therefore, all Section 1983 municipal liability claims must be dismissed.

Section 1983 municipal liability is controlled primarily by the case of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (holding *respondeat superior* is not a proper ground for rendering municipalities liable under Section 1983 for the constitutional torts of their employees).  *Monell* and its progeny clearly established that Section 1983 can be the basis of imposing liability upon a municipality for its own illegal acts but cannot be used as a means of incorporating doctrines of vicarious liability into Federal law.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer."); *Monell*, 436 U.S. at 692-94, n. 57.  In other words, the municipality must cause the alleged constitutional violation.

A plaintiff must plead and prove: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.  *Monell*, 436 U.S. at 694; *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("in order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy"); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y. City Transit Auth.*,

941 F.2d 119, 122 (2d Cir. 1991)); *Lewis v. City of New York*, 18 F. Supp. 3d 229, 236 (E.D.N.Y. 2014); *Raphael v. Cnty. of Nassau*, 387 F.Supp.2d 127, 131 (E.D.N.Y. 2005).

Plaintiff bears the burden of establishing the existence of a municipal policy or custom that caused a constitutional rights deprivation. *See Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008) ("To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy.") Moreover, an affirmative link between the alleged municipal policy, custom, and/or practice and the constitutional rights deprivation must exist. *See Monell*, 436 U.S. at 694; *see also Mandell*, 316 F.3d at 385; *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 399 (S.D.N.Y. 2005); s*ee City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40 (2d Cir. 1985); *see also Blyden v. N.Y.P.D.*, No. 05-cv-4740, 2005 WL 3388609, at *2 (E.D.N.Y. Dec. 12, 2005). Mere allegations that a municipality has a policy, custom, and/or practice that violated a plaintiff's rights will be insufficient. *See Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993); *see also McLaurin*, 373 F. Supp. 2d at 400-01; *see Mikulec v. Town of Cheektowaga*, 909 F.Supp.2d 214, 228 (W.D.N.Y. 2012).

A municipal policy, practice, and/or custom may be proved by direct or circumstantial evidence. *See DeCarlo*, 141 F.3d at 61; *see also Dwares*, 985 F.2d at 100-01; *Brewster v. Nassau Cnty.*, 349 F. Supp.2d 540, 549 (E.D.N.Y. 2004). A plaintiff must show that the complained of policy, custom, and/or practice exhibits a deliberate indifference

to citizens' rights.  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (plaintiff failed to state a claim against municipality for deliberate indifference or implied encouragement due to persistent failure to discipline; affirming district court's dismissal of action against municipality); *see also Dwares*, 985 F.2d at 100-01 (affirming district court's ruling that complaint failed to plead municipality custom or policy for failure to train police officers displaying a deliberate indifference to citizens' constitutional rights); *McLaurin*, 373 F.Supp.2d at 400-01 (defendant municipality's motion to dismiss granted; no evidence that municipality was deliberately indifferent to need to train, monitor or supervise its police officers).  An employee's isolated alleged unconstitutional acts will not form a basis for municipality liability where the incident involved only actors below the policy-making level.  *See City of Okla. City*, 471 U.S. at 823-24; *DeCarlo*, 141 F.3d at 61 (quoting *Ricciuti*, 941 F.2d at 123); *Dwares*, 985 F.2d at 100; *Raphael*, 387 F. Supp. 2d at 131; *Blyden*, 2005 WL 3388609 (complaint dismissed); *McLaurin*, 373 F. Supp. 2d at 400; *Santos v. New York City*, 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012).

Here, Section 1983 liability cannot attach to the City.  Plaintiff's allegations of municipal liability do not state a claim and should be dismissed pursuant to Rule 12(c). Plaintiff's complaint fails to plead sufficiently any municipal custom or policy beyond mere speculation and conclusory allegations.  Instead, Plaintiff's pleading focuses on his isolated confrontation on January 1, 2017 with the McDermott, Velez, Schultz, and Moriarity - individuals all below the BPD policy-making level - after his body encountered a police vehicle.

Plaintiff's attempt to plead and establish *Monell* liability is misplaced in that he uses own solitary experience to look backwards and surmise that his treatment was the result of a policy.  Given the lack of clear affirmative causal connection between his isolated experience on January 1, 2017 and any BPD custom or practice, Plaintiff's complaint does not state a claim that has facial plausibility to survive Rule 12 scrutiny. *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011); *Cardinali v. Cty. of Monroe*, 2016 WL 1023323, at *2 (W.D.N.Y. 2016).  Plaintiff's allegations focus upon the isolated acts of the individual officers, all below the policy making level, on January 1, 2017.  No Section 1983 municipal liability can be sustained under a *respondeat superior* theory.  Accordingly, all municipal liability claims must be dismissed.

Moreover, even if this Court does find enough to state a cause of action, without more, these bald allegations do not create a question of fact sufficient to withstand summary judgment pursuant to Rule 56 and should be dismissed as explained below.

### E.    Plaintiff cannot proceed on any state law claims not plead in his Notice of Claim for failure to comply with New York General Municipal Law

Notice of claim requirements for suits brought against a municipality are jurisdictional in nature.  *See Peek v. Williamsville Bd. of Educ.*, 221 A.D.2d 9919, 920 (4th Dep't 1995) ("The failure of plaintiff to file a timely notice of claim, or to apply within the statutory period for leave to file a late notice of claim, is jurisdictional and precludes his causes of action[.]").  A plaintiff must plead all state causes of action in the requisite notice of claim in order to prosecute such claims in litigation against the municipality.  *Gonzalez v. Povoski*, 149 A.D.3d 1472, 1474 (4th Dep't 2017); *Summers v. Cty. of Monroe*, 147 A.D.2d

949, 951 (4th Dep't 1989) (dismissing plaintiff's defamation cause of action where claim was not mentioned in notice of claim); *accord Mazzilli v. Cty. of N.Y.*, 154 A.D.2d 355, 356 (2d Dep't 1989) ("Causes of action for which a notice of claim is required which are not listed in the plaintiff's original notice of claim may not be interposed"); *Moore v. County of Rockland*, 192 A.D.2d 1021, 1023 (3d Dep't 1993); *see also Garcia v. O'Keefe*, 34 A.D.3d 334, 335 (1st Dep't 2006) (precluding presentation of proof regarding false arrest claim not listed as a theory of liability in plaintiff's notice of claim and concluding that it cannot be inferred from plaintiff's general negligence assertions); *Davis v. City of New York*, 153 A.D.3d 658, 661 (2d Dep't 2017) (court properly dismissed assault, battery, and negligent hiring, retention, and supervision claims not contained in the notice of claim).

Here, Plaintiff plainly did not plead a false imprisonment, "abuse of prosecution," battery, intentional infliction of emotional distress, defamation, or "official misconduct, tampering with evidence and spoliation" claim in his Notice of Claim.  Ex. A.  Therefore, such state law derived claims cannot proceed now and are subject to dismissal.

### F.    No purported claim for respondeat superior liability can lie against the City under Rule 12

Plaintiff pleads a claim for *respondeat superior* liability separately against the City (Dkt. No. 61 ¶¶239-242).   However, *respondeat superior* liability is not an independent cause of action.   *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 368 (N.D.N.Y. 2014). Furthermore, there is no *respondeat superior* liability in Section 1983 claims.   *See Collins*, 503 U.S. at 122 ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents."); *Monell*, 436 U.S. at 692-94, n. 57.  Moreover, there is no *respondeat superior*

liability were there exists no underlying state law tort. *Alexander v. Westbury Union Free School Dist.*, 829 F.Supp.2d 89, 112 (E.D.N.Y.2011).

Plaintiff's attempt to plead a *respondeat superior* claim against the City does not withstand Rule 12 review and must be dismissed as a wholly separate cause of action. As discussed elsewhere, Plaintiff has not stated a claim upon which relief can be granted as to certain of his state law claims.  Nor, does the record contain evidence that his remaining claims survive Rule 56 analysis.  Accordingly, there is no state law liability to attach to the City under a *respondeat superior* theory.

### G.   Plaintiff's request for punitive damages and attorneys' fees are not separate viable causes of action

Plaintiff seeks punitive damages (Dkt. No. 61 ¶¶261-262) and attorneys' fees pursuant to 42 U.S.C. §1988 against all Defendants (Dkt. No. 61 ¶¶263-264).  However, he improperly labels each as a separate cause of action.

There is no independent claim for punitive damages.  *See Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) (citing *Paisley v. Coin Device Corp.*, 5 A.D.3d 748, 773 N.Y.S.2d 582, 583 (2d Dep't 2004) ("We note that no separate cause of action for punitive damages lies for pleading purposes.")); *See, e.g., Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977); *Carbajal v. Cnty. of Nassau*, 271 F.Supp.2d 415, 424 (E.D.N.Y.2003) (Spatt, J.) ("[T]he Court dismisses the claim for punitive damages against the individual defendants because there is no separate claim for punitive damages.  Rather, the plaintiff may be entitled to an award of punitive damages against the remaining individual defendants as part of the damages in the remaining claims."); *Phillips v. DeAngelis*, 571 F.Supp.2d 347, 350

(N.D.N.Y.2008) ("[P]laintiffs' request for punitive damages is a form of relief sought, not a separate cause of action."), aff'd, 331 Fed.Appx. 894 (2d Cir.2009).  Moreover, under New York law, municipalities are immune from punitive damages.  *See Drisdom v. Niagara Falls Mem'l Med. Ctr.*, 53 A.D.3d 1142, 1143 (2008); *Carney v. City of Utica*, 148 A.D.2d 927, 928 (1989).

Likewise, a demand for recovery of attorneys' fees is not a separate cause of action. *Maxineau v. City of N.Y.*, No. 11–CV–2657, 2013 WL 3093912, at *3 (E.D.N.Y. June 18, 2013) (Vitaliano, J.) (noting that "42 U.S.C. § 1988 does not establish a separate cause of action for an alleged violation of a plaintiff's civil rights, but merely provides a means for a prevailing party to recover reasonable attorney's fees in a § 1983 action"); *Ricketts v. Port Auth. of N.Y. & N.J.*, No. 06–CV–3820, 2009 WL 857399, at *5 n. 3 (S.D.N.Y. Mar. 30, 2009) ("Requests for punitive damages and attorneys' fees do not create a separates [sic] cause of action [in this civil rights action]."); *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 409 (E.D.N.Y. 2013).   Therefore, this Court should dismiss these requests as purported claims.

## II.   DEFENDANTS' ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE REMAINING CLAIMS

### A.   Defendants are entitled to summary judgment as to Plaintiff's Section 1983 claims

Should this Court determine that Plaintiff's Section 1983 claims survive Rule 12 scrutiny, the Defendants are entitled to summary judgment based upon the record when distilled to its undisputed material facts.

#### i.   Plaintiff suffered no Constitutional violation

Plaintiff alleges that the Defendants violated his First, Fourth, Fourteenth Amendment rights when he was unlawfully seized and arrested, criminally charged, and taken to Erie County Medical Center ("ECMC").  *See* Dkt. No. 61.  However, review of the undisputed material facts reveals that Plaintiff suffered no Constitutional violations.

### a.   Unlawful seizure, false arrest, and malicious prosecution claim

A Section 1983 false arrest claim is brought to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures.  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).  A plaintiff must show that: "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *see also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).

An arrest is justified if the arresting officer had probable cause to believe that the suspect committed a crime.  *Coyle v. Coyle*, 302 F. Supp. 2d 3, 7 (E.D.N.Y. 2004).  Because it constitutes justification, the existence of probable cause "is a complete defense to an action for false arrest," *Weyant*, 101 F.3d at 852, even where the plaintiff was ultimately cleared of all charges.  *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001).  Analyzing a false arrest claim requires a probable cause determination:

> [A] claim for false arrest turns only on whether probable cause or arguable probable cause existed to arrest a defendant, meaning that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually involved by the arresting officer at the time of arrest. Stated another way, the relevant inquiry turns on the validity of the arrest, not the validity of each individual criminal charge.

*Al-Mohammedi v. City of Buffalo*, 2017 WL 163388, at *6 (W.D.N.Y. 2017) (internal quotation marks and citations omitted).  Probable cause does not require "absolute certainty," *see Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003), or "the same type of specific evidence of each element of the offense as would be needed to support a conviction," *see Adams v. Williams*, 407 U.S. 143, 149 (1972).  It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983).

Probable cause to arrest or detain exists "when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007); *see also Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015).  Probable cause is a fluid determination based on "the assessment of probabilities in a particular factual context" given the totality of circumstances.  *Gates*, 462 U.S. at 232-33.  Officers may rely on "those facts available to the officer at the time of the arrest and immediately before it," *Panetta v. Crowley*, 460 F.3d 388, 295 (2d Cir. 2006), and they are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Ricciuti v. N.Y. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

To determine whether probable cause existed for an arrest, courts "assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."  *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).  "The probable

cause determination is objective; it should be made without regard to the officer's subjective motives or belief as to the existence of probable cause." *Picard v. Torneo*, 3:16cv1564 (WWE), 2019 WL 4933146, at *2 (D. Conn. Oct. 4, 2019); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Here, the facts known to the officers on January 1, 2017 are not in dispute. Therefore, probable cause can be decided as a matter of law. *See Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017); *Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *5 (E.D.N.Y. Sept. 27, 2013). Ample probable cause, or at a minimum arguable probable cause, supported Plaintiff's arrest on January 1, 2017. The relevant probable cause inquiry is based upon the information known to the officers. *See Panetta*, 460 F.3d at 395. McDermott did not appreciate the incident to be a motor vehicle accident. Ex. G at 198. On the contrary, she perceived the contact between her patrol vehicle and Plaintiff to be the result of him walking into the vehicle and observing damages after. Ex. G at 102-104, 313. This perception is supported by Schultz's observations. Ex. I at 95.

Whether Plaintiff perceived the situation differently has no bearing on what the officers observed or knew for the purposes of determining probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir. 1996) ("[P]robable cause for an arrest must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest, not on the basis of what the arrested party believed to be happening."). The salient facts for determining probable cause are those as understood by McDermott. *See Panetta*, 460 F.3d at 395. Therefore, probable cause supported

Plaintiff's arrest and the charge of criminal mischief signed on by Officer McDermott.  Ex. C at 5; Ex. G at 285.

While at ECMC, Plaintiff repeatedly used vulgar language directed at both officers and hospital staff.  Ex. D at 44, 72, 73.  He repeatedly shouted that everyone in the room was a "fascist and a nazi."  Ex. F at 1; Ex. F at 11.  This language disrupted staff.  Ex. F at 14.  Therefore, probable cause supported the charge of disorderly conduct signed on by Officer McDermott.  Ex. C at 6; Ex. G at 285.

To prove a Section 1983 malicious prosecution claim, a plaintiff must prove: "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice."  *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir 1991); *Mejia v. City of N.Y.*, 119 F.Supp.2d 232, 253-54 (E.D.N.Y. 2000).  "[A] plaintiff must additionally submit evidence that there was a sufficient post-arraignment deprivation of liberty."  *Skeene v. City of New York*, 2016 WL 927182, at *2 (E.D.N.Y. 2016).

The existence of probable cause is also a complete defense to malicious prosecution.  The relevant probable cause determination "is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced."  *Mejia*, 119 F.Supp.2d at 254.  "If probable cause exists at the time of the arrest, it continues to exist at the time of the prosecution unless undermined by the discovery of some intervening fact . . . notwithstanding the ultimate, and favorable, dismissal of charges."  *Skeene*, 2016 WL 927182, at *3.

The record is clear that McDermott signed on the criminal charges and Velez completed the request for mental health evaluation. Therefore, Lockwood, Derenda, Schultz, Moriarity, Santana, and McHugh lack sufficient personal involvement to establish liability for malicious prosecution. For the reasons stated above, probable cause, or at a minimum arguable probable cause, supported the arrest of Plaintiff. Therefore, Plaintiff's malicious prosecution claim must be dismissed.

### b. First Amendment retaliation claim

Plaintiff's First Amendment retaliation claim is, likewise, defeated by probable cause. The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *See Lozman v. City of Riviera Beach, Fla.*, _ U.S. _, 138 S. Ct. 1945 (2018); *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To establish a First Amendment retaliation claim, a plaintiff must demonstrate that he (1) exercised a right protected by the First Amendment, (2) suffered an adverse action that was motivated or substantially caused by his exercise of that right, and (3) incurred some injury caused by the defendant's actions. *See Dorsett v. Cnty. Of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam); *Zuccarino v. Yessman*, 19-cv-6370-FPG, 2020 WL 7337781, at *5 (W.D.N.Y. Dec. 14, 2020). To meet the third element, the plaintiff must establish that the retaliation chilled or adversely affected his speech, or that he suffered some other concrete form of harm. *See Dorsett*, 732 F.3d at 157.

The existence of probable cause, however, will generally defeat a First Amendment retaliation claim. *See Mangino v. Inc. Vill. Of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). "Where there is probable

cause to arrest a plaintiff or issue a summons, the Court need not make an inquiry into the defendants' motives for doing so." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 257-58 (E.D.N.Y. 2015) (quoting *Fabrikant*, 691 F.3d at 215); *see also Espinoza v. City of New York*, No. 11-CV-2108, 2012 WL 4761565, at *5 (S.D.N.Y. Aug. 3, 2012) (dismissing First Amendment retaliation claim where police officer had probable cause to ticket the plaintiff).

As an initial matter, it is undisputed based upon the record that Lockwood, Derenda, Santana, and McHugh lack sufficient personal involvement to establish liability for any purported First Amendment retaliation. Further, Plaintiff's speech was not chilled, and in any event, the officers had probable cause to arrest and charge Plaintiff, as explained above. He was not arrested and charged solely due to an alleged exercise of his First Amendment rights. Officers already arrested Plaintiff for the incident with the vehicle prior to his vulgar and disruptive language at ECMC. His speech was not direct solely at the officers either. Plaintiff admits that he yelled and called officers and ECMC staff "feminazis" and "fascists" while at ECMC for evaluation of any injuries. Ex. D at 44, 72-73; Ex. F at 1, 11, 14.

Moreover, nothing about the events of January 1, 2017 has caused Plaintiff to stop exercising his First Amendment rights. Plaintiff told officers while at ECMC that he would go to BPD Internal Affairs. Ex. D at 74. Later, Plaintiff mailed a complaint to BPD Internal Affairs. Ex. E at 132. Therefore, there is insufficient evidence from which a reasonable jury could find that the officers' conduct actually chilled Plaintiff's speech. *See Curley v. Vill. Of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change

in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *Pal v. Cipolla*, No. 3:18cv616 (MPS), 2020 WL 6881455, at *14 (D. Conn. Nov. 23, 2020) (finding that the plaintiff's First Amendment rights were not actually chilled where the plaintiff conceded that she filed a complaint with the police department after her encounter with police); *Dingwell v. Cossette*, 3:17-CV-1531 (KAD), 2020 WL5820363, at *5 (D. Conn. Sept. 30, 2020) (finding no chilling of speech and granting summary judgment where plaintiff did not stop criticizing police after allegedly retaliatory adverse action taken); *Azeez v. City of New York*, No. 16 CV 342, 2018 WL 4017580, at *12 (E.D.N.Y. Aug. 22, 2018) (finding that a First Amendment retaliation claim premised on the issuance of a summons in retaliation for threatening to complain about police misconduct failed where the plaintiff, despite the summons, filed a complaint).   Accordingly, the Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

### ii.   Alternatively, the officers are entitled to qualified immunity

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits."   *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).  Qualified immunity provides a broad shield and a deliberately forgiving standard of review.  *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Id.*

When a case concerns the defense of qualified immunity, the court considers only the facts that were known to the defendant officers. *White v. Pauly*, _ U.S. _, 137 S. Ct. 548, 550 (2017). When the facts known to the officers are undisputed, "the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is a question of law better left for the court to decide." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (internal quotation marks omitted), citing *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("where the factual records is not in serious dispute . . . [it] is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible").

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d. Cir. 2008); *see Pearson v. Callahan*, 555 U.S. 223 (2009); *Reichle v. Howards*, 566 U.S. 658 (2012).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White*, 137 S. Ct. at 551; *Stephenson*, 332 F.3d at 76. For a right to be clearly established, a case directly on point is not necessary. However, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted). Therefore, "[t]he relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stephenson*, 332 F.3d at 76 (internal quotation omitted). A defendant is

entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to [] the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (internal quotation and punctuation omitted); *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1998) (officers entitled to qualified immunity only if it was objectively reasonable for them to believe that their conduct did not violate the Fourth Amendment).

Officials are entitled to qualified immunity when "their decision was reasonable, even if mistaken" and the doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal citations and quotation marks omitted).  In sum, police officers are entitled to qualified immunity "if the question whether the officers would be violating rights is one on which officers of reasonable competence could disagree." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009) (internal quotation marks omitted).  Stated differently, there is no immunity only if "no officer of reasonable competence would conclude that the conduct in question is lawful . . . ." *Id.*  "Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Lennon*, 66 F.3d at 421.

27

Regarding probable cause determinations, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest - that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007).

This Court need to reach the question of whether Plaintiff suffered a Constitutional violation because the Defendants are entitled to qualified immunity. Based upon the information and observations of McDermott, Velez, Schultz, and Moriarity on January 1, 2017, it would not be clear to a reasonable officer that their conduct was unlawful in the situation they confronted. *Stephenson*, 332 F.3d at 76 (internal quotation omitted). Based upon the manner in which the incident occurred, these officers reasonably believed that Plaintiff deliberately came into contact with McDermott's patrol vehicle and caused damage. Such reasonable belief led the officers to consult their supervisor, McHugh via phone. While he was at ECMC receiving evaluation for any injuries, Plaintiff repeatedly yelled, disrupting the officers and hospital staff alike. Ex. D at 44, 72-73; Ex. F at 1, 11, 14. When taking Plaintiff's observed conduct on January 1, 2017 in totality, officers became concerned for his mental health and reasonably requested he be evaluated by mental health professionals under the Mental Hygiene Law.[2]

  **iii. The City, Derenda, and Lockwood are entitled to summary judgment as to the *Monell* claim.**

---

[2] Notwithstanding Plaintiff's allegations that the officers tried to have Plaintiff admitted (Dkt. No. 61 ¶¶136-141), Officer Velez completed only a request for mental health evaluation. Ex. C at 9; Ex. F at 29. Police officers have no authority to admit an individual to a hospital. Ex. G at 331-2.

Should any Monell claims survive Rule 12 analysis, the Defendants are entitled to summary judgment. Plaintiff suffered no Constitutional violation, as explained above. Further, the record is devoid of any evidence of any specific policy or custom from which any alleged constitutional harm flowed to Plaintiff. Based upon the totality of circumstances, the officers were justified in arresting and charging Plaintiff as well as submitting a request under the Mental Hygiene Law that Plaintiff be evaluated by medical professionals. Plaintiff cannot reach the threshold of showing that any alleged constitutional violation was caused by a City policy or custom. *See Los Angeles v. Heller*, 475 U.S. 796 (1986), and all *Monell* claims must be dismissed.

As to Plaintiff's Constitutional failure to train and supervise claims, the Defendants are likewise entitled to summary judgment. A municipality is liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129-30 (2d Cir. 2004). To succeed, a plaintiff must provide evidence both of the municipality's deliberate indifference to a risk and of a specific deficiency in a training program. *Id*. A plaintiff must also establish that the deficiency in training is "closely related to the ultimate injury," such that it "actually caused" a constitutional deprivation. *Id*. A municipality is liable for failure to supervise an employee when a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was "obvious," and the policymaker's failure to investigate or

rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction.  *Id*. at 128.

The officers receive extensive training through the Erie County Police Academy. After graduation, the BPD provides numerous trainings for individual officers.  Ex. M. The record is devoid of any evidence of any deficiency in the City's training programs or of an official's awareness of and failure to rectify unconstitutional conduct previously committed by any of the officers.  Accordingly, the Defendants are entitled to summary judgment as to this claim also.

       **iii.**     **Plaintiff cannot sustain a failure to intervene claim because his Constitutional rights were not violated, and alternatively, qualified immunity shields liability.**

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim."  *Matthews v. City of New York*, 889 F.Supp.2d 418, 443–44 (E.D.N.Y. 2012).  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Anderson*, 17 F.3d at 557. While it is generally an issue of fact for a jury to decide "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer," a court may enter judgment where "considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Id.*

Plaintiff's failure to intervene claim against all Defendants (Dkt. No. 61 ¶¶243-247) cannot be sustained.  As discussed above, at no time during the January 1, 2017 encounter were Plaintiff's Constitutional rights violated.  Because there was no Constitutional violation, there was no reason for any of the officers to intervene.  Alternatively, the officers acted reasonably and in good faith.  Qualified immunity, as articulated above, shields them from civil liability for their conduct on January 1, 2017.  Accordingly, all failure to intervene claims must be dismissed.

### B.    Defendants are entitled to summary judgment as to Plaintiff's surviving state law claims

#### i.    Defendants are entitled to summary judgment as to Plaintiff's false arrest and malicious claims because probable cause supported the arrest and charges

A Section 1983 and state law false arrest claim are analyzed the same.  *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012).  The two claims are essentially synonymous.  *Weyant*, 101 F.3d at 853.  The standards for federal and New York malicious prosecution claims are substantially similar.  *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).  A state law malicious prosecution claim does not require proof of a post-arraignment seizure." *Swartz. v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).  For the reasons discussed above, ample probable cause or arguable probable cause supported Plaintiff's arrest.  Accordingly, Plaintiff's state law false arrest and malicious prosecution claims fail.

#### ii.    Assault claim

31

"Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." *Gustafson v. Vil. of Fairport*, 106 F.Supp.3d 340, 351 (W.D.N.Y. 2015) (citing *Humphrey v. Landers*, 344 Fed.Appx. 686, 688 (2d Cir.2009)); *see also Benson v. Yaeger*, No. 05–CV–784S, 2009 WL 1584324, at *4 n. 6 (W.D.N.Y. June 3, 2009) ("The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim ....").

Excessive force claims related to an arrest or seizure are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Lin v. Cty. of Monroe*, 66 F.Supp.3d 341, 356 (W.D.N.Y. 2014). "[L]aw enforcement officers violate the Fourth Amendment if the amount of force they use is objectively unreasonable in light of the facts and circumstances confronting them." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (citation omitted). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. An officer's evil intentions do not transform an objectively reasonable use of force into a constitutional violation. *Id*.

"A police officer . . . in the course of effecting or attempting to effect an arrest . . . of a person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest . . . ." Penal Law §35.30(1); *Graham*, 490 at U.S. at 396. Excessive force

claims require more than *de minimis* use of force. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 290 U.S. 386, 395 (1989). De minimis injuries include, for example, "short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, . . . superficial scratches[, and] a cut inside the mouth." *Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, *5 (E.D.N.Y. Mar. 8, 2011) (citations omitted). "To sustain a claim of excessive force, a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable." *Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (internal quotation marks omitted). Courts within the Second Circuit "have been reluctant to entertain excessive-force claims without any physical contact. Mere threats or verbal harassment, without any 'appreciable injury,' generally are not actionable under section 1983." *Merrill v. Schell*, 279 F. Supp. 3d 438, 443-44 (W.D.N.Y. 2017). To establish that the use of force during arrest was unreasonable and therefore a violation of the Fourth Amendment, a plaintiff must establish that the government interests at stake were outweighed by "the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests." *Graham v. Connor*, 290 U.S. 386, 396 (1989).

As an initial matter, this claim must be dismissed against Santana, McHugh, Derenda, and Lockwood as it is undisputed that those Defendants did not physically touch Plaintiff at any time. Though the focus of inquiry in an excessive-force claim is on the force used rather than the injuries sustained, "[t]he extent of injury may also provide

some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). "Some degree of injury" is typically required to state an excessive force claim. *Taylor v. N.Y. Dep't of Corr.*, No. 10 Civ. 3819, 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012) (brackets, quotation marks, and citation omitted). The record is devoid of evidence substantiating excessive force, including handcuffing.   While Plaintiff complained of pain, his medical records do not support that any injury occurred. Ex. F. His diagnosis from ECMC on January 1, 2017 did not list anything with regard to his wrists. Ex. F at 4. No medical record exists to substantiate Plaintiff's complaints of lasting nerve damage. Ex. F. There is no evidence in the record that officers employed any force beyond any *de minimus* force to accomplish handcuffing of Plaintiff on Schmarbeck Avenue.   Should this Court find Plaintiff's battery claim is not barred by the General Municipal Law, the Defendants submit that they are entitled to summary judgment for these same reasons.

### iii.   Plaintiff's intentional infliction of emotional distress claim fails

Should this Court find that the General Municipal Law does not bar this claim, the record contains no evidence supporting an intentional infliction of emotional distress claim. "[A] person may not bring claims for intentional infliction of emotional distress . . . where, as here, there are more traditional theories of tort liability available." *Hays v. City of New York*, 14-CV-10126 (JMF), 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017). "New York does not recognize [intentional infliction of emotional distress as a cause of action] where the conduct underlying [it] may be addressed through traditional tort remedies, such as false arrest." *Berrio v. City of New York*, 15-CV-09570 (ALC), 2017 WL 118024, at

34

*7 (S.D.N.Y. Jan. 10, 2017).   Under New York law, intentional infliction of emotional distress requires a showing of: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 654 (W.D.N.Y. 2017) (citing *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (N.Y. 1993)).

The General Municipal Law bars Plaintiff from asserting an intentional infliction of emotional distress claim because he did not assert it in his notice of claim.   However, it is also barred under New York law because his claims involve the same conduct that underlies his Section 1983 as well as analogous false arrest and assault claims.   Here, notwithstanding Plaintiff's perception of the events of January 1, 2017, the officers reasonably believed probable cause supported Plaintiff's arrest, charges, and request for mental health evaluation, as discussed above.   There is no evidence that the officers acted with the intent to cause Plaintiff emotional distress.   Moreover, no objective evidence supports that Plaintiff suffered severe emotional distress.   Plaintiff received no mental health treatment for this incident.   Ex. D at 97; Ex. E at 155.   Accordingly, the Defendants are entitled to summary judgment.

> **iv.    Plaintiff's negligence claim fails because he did not sustain a serious injury within the meaning of New York Insurance Law §5102(d) or sustain an economic loss greater than basic economic loss as defined by New York Insurance Law §5102(a)**

While Plaintiff's negligence claim (Dkt. No. 61¶¶231-238) is asserted against all Defendants, only McDermott was operating the patrol vehicle in question.   The

Defendants are entitled to summary judgment because Plaintiff did not sustain a serious injury within the meaning of New York Insurance Law §5102(d) or sustain an economic loss greater than basic economic loss as defined by New York Insurance Law §5102(a).

In determining whether a plaintiff sustained a serious injury within the meaning of New York State Insurance Law § 5102(d), the Court should only consider those categories of serious injury that are specifically alleged in the plaintiff's pleadings.  *See Guzek v. B&L Wholesale Supply, Inc.*, 126 AD3d 1506, 1507 (4th Dep't 2015).  Here, Plaintiff does not identify a category of serious injury.  He does not claim a significant disfigurement, fracture, permanent loss of use of a body, organ, member, function, or system, or that his primary daily activities were restricted during 90 out of the first 180 days following this alleged accident.  Nevertheless, the record lacks any meaningful evidence that Plaintiff suffered a serious injury under any of the categories contained in New York State Insurance Law § 5102(d).

A defendant who submits proof in admissible form that a plaintiff has full range of motion and suffers from no disabilities causally related to the motor vehicle accident has established a prima facie case that the plaintiff did not sustain a serious injury within the meaning of New York State Insurance Law.  *See Kearse v. NYC Transit Author.*, 16 AD3d 45, 45 (2d Dep't 2005).  Under No Fault Law, only a total loss of use is compensable under the "permanent loss of use" exception to the no-fault remedy. *See Oberly v. Bangs Ambulance, Inc.*, 96 NY2d 295 (2001); *see also Sewell v. Kaplan*, 298 AD2d 840 (4th Dep't 2002).

"In order to establish that a plaintiff suffered a significant limitation of use of a body function or system, that plaintiff is required to provide objective evidence of the extent or degree of the limitation and its duration." *Mejia v. DeRose*, 35 A.D.3d 407, 407 (2d Dep't 2006). To prove the extent of a physical limitation, a plaintiff's expert must either provide (1) a numeric percentage of the plaintiff's loss of range of motion, or (2) a qualitative assessment of the plaintiff's condition "which has an objective basis and compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function, or system." *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350-1 (2002).

Whether a limitation can be considered "significant" or "consequential" is a question of medical significance and requires "a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose, and use of that body part." *Id.* at 353. Notably, "minor, mild, or slight limitations in range of motion" will not satisfy the serious injury threshold. *Parks v. Miclette*, 41 A.D.3d 1107, 1109 (3d Dep't 2007). In fact, courts have found that a limitation of twenty (20) degrees is insufficient to be considered "significant." *See, e.g., Sone v. Qamar*, 68 AD3d 566 (1st Dep't 2009). Similarly, the plaintiff's subjective complaints of pain are insufficient to satisfy the serious injury threshold. *See id.; see also Scheer v. Koubek*, 70 N.Y.2d 678 (1987).

Here, Plaintiff's testimony establishes that he did not sustain a total loss of use any body part. At his examination under oath pursuant to General Municipal Law §50-h, Plaintiff described his alleged injuries as:

> The extent of my injuries right now that I can - - that I relate directly to this, I think I have rotator cuff injuries or something's wrong with my shoulders. Particularly my right side.  I have numbness, and it moves, but I have problems with my wrists, my elbow, and my shoulder on the right side. This hurts to touch.  And the left side, the same thing, but to the lesser extent.  It comes and goes less over here.

Ex. D at 92.  He complained of no other injuries aside from those alleged to his right shoulder, numbness and pain in his wrists, and pain to the back of his head.  Ex. D at 96.

Plaintiff claims the pain to his head lasted for three days.  Ex. E at 136.  Plaintiff described his claimed limitations on daily activities at his examination under oath pursuant to General Municipal Law §50-h as:

> There's a lot.  It's getting worse too.  I used to try to keep - - do all the repairs myself.  Whatever broke, I'd try to fix it. I've been doing that about a decade. A lot of stuff I've got to ask Earl to help me with now.  I mean, simple stuff like taking out the garbage cans every week.  My hands numb in one thumb right now when I'm talking to you.  And a couple of times I've dropped stuff.  Using a hammer, because I'm right-handed, a couple of times I've been using a hammer and just dropped the hammer.  Just dropped it.

Ex. D at 97.  During his deposition, Plaintiff described his activities as a landlord as follows:

> Everything slows down and takes longer.  I can't do high work at all hardly. I can get on a ladder, but I don't feel confident that I can hold on to the ladder with both hands.  I've got to hold on to the ladder with both hands now. . . I don't go up more than about six feet anymore.  It's just - - if I'm going to be, you know, using hand tools.  It's the hand tools.  That's the problem.  If I'm holding on to the roof and I'm nailing like this, I've lost hammers.  My hands have let go.  Just like that, they let go.  And I don't want to be up high.  And I definitely don't want to work with nobody up high, because if I'm up high and something goes wrong.

Ex. E at 56-58.  Painting jobs and other tasks take him longer to complete.  Ex. E at 61, 64.

Plaintiff describes the issue with inability to hold an object "with confidence."  Ex. E at

61.  However, he has sought no medical treatment for these issues with his hands.  Ex. E at 62.  Plaintiff is able to handwrite.  Ex. E at 63.  His duties as a landlord are not otherwise prevented by any alleged injury.  Ex. E at 64.  It just takes longer for him to complete tasks.  Ex. E at 150.

Plaintiff plainly did not sustain a permanent loss of use or a permanent consequential or significant limitation of use of any body part.  No doctor has placed any restriction on his activities.  Ex. E at 154.  There is no objective evidence of the extent and/or duration of Plaintiff's alleged physical limitations sufficient to establish that he suffered a significant limitation to any body part.    Plaintiff's    medical    treatment regarding these alleged injuries is limited.  Aside from the evaluation at ECMC on January 1, 2017, he only saw his primary care physician twice.  Ex. E at 140, 142, 144, 147-148.  However, at his November 29, 2017, June 29, 2018, and July 12, 2018 medical appointments, Plaintiff did not complain of any injuries related to his head.  Ex. F at 36-43.  Plaintiff did not complete any physical therapy or see a chiropractor.  Ex. E at 147. He did not take any pain medication.  Ex. E at 147.  There is no medical evidence of trauma to his head, wrist, and back as a result of this accident. On January 1, 2017, Plaintiff underwent a CT scan of his head, which showed "[n]o acute infarction, hemorrhage or mass" and "[n]o significant injury to brain."  Ex. F at 4.  No diagnostic testing was done of his wrists.  Ex. F.  Plaintiff then did not seek treatment for any specific injuries he alleged from this January 1, 2017 incident. *See* Ex. F.  Plaintiff did not take any medication - over the counter or prescription - to address the pain or numbness.  Ex. D at 98.  Plaintiff

has no causally-related disability. Therefore, the Defendants are entitled to summary judgment on the grounds that Plaintiff did not suffer a serious injury.

Likewise, Plaintiff did not sustain an economic loss greater than basic economic loss as defined by New York Insurance Law §5102(a). He does not claim any loss of income from the incident. Ex. D at 99; Ex. E at 35. Plaintiff merely claims he hired a crew to do roofing (Ex. E at 58-59) and complete stucco work for him (Ex. E at 60). He cannot claim inability to work because he was not otherwise employed. Ex. D at 19, 72; Ex. E at 64. Accordingly, the Defendants have met their burden and are entitled to summary judgment on Plaintiff's negligence claim.

## III. SHOULD ANY OF PLAINTIFF'S STATE LAW CLAIMS SURVIVE, THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION

Should this Court find that any state law claims survive Rule 12 or 56 analysis, this Court should decline to exercise supplemental jurisdiction. *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 267–68 (E.D.N.Y. 2015). All factors, including "judicial economy, convenience, fairness, and comity," balance towards declining to exercise jurisdiction. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *see also Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir.2011) ("we have repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.' "); 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction").

## CONCLUSION

The Defendants respectfully request that this Court grant this motion seeking judgment on the pleadings and summary judgment in favor of the Defendants pursuant to Fed. R. Civ. P. 12(c) and/or 56, dismissal of this action and all claims against the Defendants, award costs in defending this action, and for such other and further relief that this Court deems necessary, just, and proper.

Dated:  April 30, 2021
      Buffalo, New York

                             Respectfully submitted,

                             Timothy A. Ball, Esq.
                             Corporation Counsel
                             Attorney for Defendants

By:    */s/ Maeve E. Huggins*
                             Maeve E. Huggins
                             Assistant Corporation Counsel
                             1112 City Hall
                             65 Niagara Square
                             Buffalo, New York 14202
                             Telephone: (716) 851-4317
                             Facsimile: (716) 851-4105
                             E-Mail: mhuggins@city-buffalo.com

41