*McDermott - Rupp - 2/19/20*

330

15:05:00  1  again, that's a conversation between the person and

15:05:05  2  a doctor.

15:05:06  3         **Q.**   Did you expect that Mr. Kistner, given

15:05:08  4  the behaviors that he had exhibited primarily at

15:05:11  5  ECMC the first time, was going to be admitted?

15:05:13  6         **A.**   I -- that's up to the doctor to

15:05:15  7  determine.

15:05:15  8         **Q.**   Okay.  Well, my question was:  Did you

15:05:17  9  expect that he would be admitted, based on your

15:05:19 10  past experience dealing with ECMC's CPEP, 941s, and

15:05:24 11  involuntary admissions?

15:05:25 12         **MS. HUGGINS:**   Form.

15:05:26 13         **THE WITNESS:**   I wouldn't -- I wouldn't

15:05:26 14  always be there.  It -- it would depend on if the

15:05:28 15  person is in custody.

15:05:30 16         If they're in custody, then I would be there

15:05:32 17  when they speak with the doctor, and the doctor

15:05:33 18  would determine whether they would be admitted or

15:05:35 19  not.

15:05:35 20         **BY MR. RUPP:**

15:05:35 21         **Q.**   Okay.  But my question, again, ma'am,

15:05:37 22  was:  Do you believe that he was going to be

15:05:40 23  admitted when you dropped him off there?

*McDermott - Rupp - 2/19/20*

331

| | | |
|---|---|---|
| 15:05:41 | 1 | **A.** I'm not a medical professional. |
| 15:05:43 | 2 | **Q.** Okay. Did you believe he was going to |
| 15:05:45 | 3 | be admitted or not? |
| 15:05:45 | 4 | **A.** I don't know. |
| 15:05:46 | 5 | **Q.** Okay. You had -- you had no opinion |
| 15:05:48 | 6 | one way or the other? |
| 15:05:48 | 7 | **A.** It's not for me to determine. |
| 15:05:50 | 8 | **Q.** Did you care? |
| 15:05:51 | 9 | **A.** It's -- I mean, care in terms of? |
| 15:05:54 | 10 | **Q.** Yeah. Did you -- did you wish that -- |
| 15:05:56 | 11 | one outcome versus the other? |
| 15:05:58 | 12 | Did you want to see him admitted, or did you |
| 15:06:00 | 13 | want to see him go home? |
| 15:06:02 | 14 | **A.** I think that he needed help and that's |
| 15:06:04 | 15 | what I wanted him to get. |
| 15:06:06 | 16 | **Q.** Okay. So you would have liked to |
| 15:06:07 | 17 | see -- you would have liked to have seen him |
| 15:06:11 | 18 | admitted. |
| 15:06:11 | 19 | **MS. HUGGINS:** Form. |
| 15:06:12 | 20 | **THE WITNESS:** I wanted to see him get help. |
| 15:06:14 | 21 | **BY MR. RUPP:** |
| 15:06:14 | 22 | **Q.** Okay. And you took him to ECMC psych |
| 15:06:16 | 23 | ward to get that help, right? |

*McDermott - Rupp - 2/19/20*

332

| | | |
|---|---|---|
| 15:06:18 | 1 | **A.**   Yes. |
| 15:06:18 | 2 | **Q.**   Okay.  All right.  So you and |
| 15:06:21 | 3 | Officer Velez, according to 4A, at a certain |
| 15:06:25 | 4 | point -- at 6:16 p.m., the dispatch adds the crime |
| 15:06:32 | 5 | report archive, and you said they can sometimes |
| 15:06:34 | 6 | just add that at a later time to close out, so |
| 15:06:37 | 7 | you're not sure that that's when you told them: |
| 15:06:41 | 8 | We're done? |
| 15:06:41 | 9 | **A.**   Right.  Generally, the disposition for |
| 15:06:42 | 10 | an arrest would be arrest, so that's why -- |
| 15:06:45 | 11 | **Q.**   Okay. |
| 15:06:45 | 12 | **A.**   -- I believe that maybe the dispatcher |
| 15:06:47 | 13 | just put that in to close it out. |
| 15:06:49 | 14 | **Q.**   So that's -- that's not technically |
| 15:06:51 | 15 | then the -- the best or most accurate -- |
| 15:06:53 | 16 | **A.**   You -- |
| 15:06:54 | 17 | **Q.**   -- closeout disposition? |
| 15:06:56 | 18 | **A.**   You can put multiple dispositions in. |
| 15:06:58 | 19 | **Q.**   Yeah. |
| 15:07:00 | 20 | **A.**   Again, if -- if I'm doing it manually |
| 15:07:02 | 21 | on the computer, I can add, you know, the |
| 15:07:05 | 22 | disposition, but if I call it out to radio, they |
| 15:07:08 | 23 | might put that or something else, or the |

*McDermott - Rupp - 2/19/20*

333

15:07:10  1  dispatchers do sometimes take it upon themselves to

15:07:14  2  just --

15:07:14  3        **Q.**   Yeah.

15:07:14  4        **A.**   -- close out the call.

15:07:15  5        **Q.**   Yeah.  And you -- you told me that

15:07:17  6  earlier, and I appreciate it.  I'm really asking

15:07:19  7  more to try to figure out like when you and -- and

15:07:22  8  Velez checked out and ended your shift.

15:07:23  9        You arrived on scene at ECMC, according to

15:07:26 10  dispatch, at 4:26 p.m., and according to what you

15:07:30 11  just told me, you kind of dropped him there and --

15:07:33 12  and left him.

15:07:34 13        Do you think you would have been there for

15:07:37 14  beyond 1700, another 15 minutes, or do you think

15:07:40 15  you were kind of went there, dropped him, and left?

15:07:41 16        **A.**   I don't remember how long we were

15:07:43 17  there.

15:07:43 18        **Q.**   Okay.  But if you stayed, you wouldn't

15:07:46 19  have talked to anybody, because I think you already

15:07:48 20  told me you didn't, right?

15:07:49 21        **A.**   Well, it's -- we don't just open the

15:07:50 22  door and drop him off.  That's --

15:07:52 23        **Q.**   So you do talk to people?

*McDermott - Rupp - 2/19/20*

334

| | | |
|---|---|---|
| 15:07:53 | 1 | **A.**   Yes. |
| 15:07:53 | 2 | **Q.**   Okay.  So, well, did you tell them |
| 15:07:55 | 3 | orally, beyond what was contained on the form, you |
| 15:07:58 | 4 | know, why you're dropping him off? |
| 15:08:01 | 5 | **MS. HUGGINS:**  Form. |
| 15:08:04 | 6 | **THE WITNESS:**  I don't remember. |
| 15:08:04 | 7 | **BY MR. RUPP:** |
| 15:08:05 | 8 | **Q.**   Okay. |
| 15:08:05 | 9 | **A.**   I don't remember if we went through the |
| 15:08:07 | 10 | check-in process, or I -- I -- I don't remember. |
| 15:08:09 | 11 | **Q.**   Well, did you ever speak to |
| 15:08:10 | 12 | a psychologist or a psychiatrist at ECMC about why |
| 15:08:12 | 13 | you were bringing Mr. Kistner there? |
| 15:08:14 | 14 | **A.**   I don't remember. |
| 15:08:15 | 15 | **Q.**   Not an intake person or a nurse but an |
| 15:08:17 | 16 | actual doctor. |
| 15:08:18 | 17 | **A.**   I don't remember. |
| 15:08:19 | 18 | **Q.**   Okay.  Do you know if Ms. Velez did? |
| 15:08:21 | 19 | **A.**   I don't know. |
| 15:08:22 | 20 | **Q.**   Okay.  All right.  And until the time |
| 15:08:27 | 21 | you were served with the summons and complaint in |
| 15:08:31 | 22 | this case, was your departure from ECMC at the time |
| 15:08:34 | 23 | of the second visit the last experience, exposure |

*McDermott - Rupp - 2/19/20*

335

15:08:36  1  you had to Mr. Kistner and this Scharmbeck incident?

15:08:40  2       **MS. HUGGINS:**  Form.

15:08:40  3       **THE WITNESS:**  Yes.

15:08:41  4       **BY MR. RUPP:**

15:08:41  5       **Q.**   Okay.  No -- nothing else happened

15:08:43  6  between January 1, 2017, when you ended your shift,

15:08:47  7  and the day you were served with process?

15:08:48  8       **MS. HUGGINS:**  Form.

15:08:49  9       **THE WITNESS:**  No, I don't believe so.

15:08:50 10       **MR. RUPP:**  Strike it.

15:08:50 11       There's -- there's been some form

15:08:53 12  objections, and it makes me think that there's

15:08:56 13  something that I'm missing.

15:08:57 14       Maybe, Maeve, you could either tell me

15:08:59 15  what's wrong or I'll just keep asking questions,

15:09:00 16  because I'm asking her if she had any other thing

15:09:01 17  to do with Mr. Kistner between --

15:09:01 18       **MS. HUGGINS:**  My --

15:09:03 19       **MR. RUPP:**  -- January 1 and the time she

15:09:05 20  was served with process, and there seems to be

15:09:07 21  something wrong with the question.

15:09:08 22       **MS. HUGGINS:**  My -- my only objection would

15:09:09 23  be it's very broad and open-ended.  I don't know if

*McDermott - Rupp - 2/19/20*

336

15:09:11  1  you're referring to criminal -- the criminal case

15:09:13  2  or if you're referring to -- to Mr. Kistner

15:09:15  3  specifically and --

15:09:15  4          **MR. RUPP:**  Well, actually --

15:09:16  5          **MS. HUGGINS:**  -- a physical interaction.

15:09:17  6          **MR. RUPP:**  -- I meant it to be both.

15:09:17  7          **MS. HUGGINS:**  Sure.

15:09:18  8          **MR. RUPP:**  But I -- I will clarify.

15:09:20  9          So was there any -- do you know what

15:09:21 10  happened to his criminal charges?

15:09:23 11          **THE WITNESS:**  I believe I went to court

15:09:25 12  maybe once, but I don't --

15:09:27 13          **BY MR. RUPP:**

15:09:27 14          **Q.**   Okay.  I wanted to know --

15:09:27 15          **A.**   I don't recall what --

15:09:36 16          **Q.**   -- that.  Yeah.

15:09:39 17          **A.**   Yeah.  No.  I -- I --

15:09:39 18          **THE REPORTER:**  Hold on.  Hold on.  Hold on.

15:09:39 19  We're kind of losing ourselves here all of a sudden.

15:09:39 20          (Discussion off the record.)

15:09:39 21          **THE WITNESS:**  I thought you were referring

15:09:40 22  to if I had ever been to another call at his --

15:09:43 23          **BY MR. RUPP:**

*McDermott - Rupp - 2/19/20*

337

| | | |
|---|---|---|
| 15:09:43 | 1 | **Q.**   No.  I'll ask you that too. |
| 15:09:44 | 2 | **A.**   That's -- that was my -- |
| 15:09:45 | 3 | **Q.**   I'll ask you that too. |
| 15:09:46 | 4 | **A.**   -- take on the question. |
| 15:09:48 | 5 | **Q.**   Did you ever have any other involvement |

15:09:50  6 with Mr. Kistner from January 1, 2017, up through

15:09:53  7 today's date, that does not pertain to what

15:09:56  8 happened on January 1, 2017?

15:09:57  9    **A.**   No.

15:09:57 10    **Q.**   Okay.  All right.  Now, relative to

15:10:00 11 what happened on January 1, 2017, you think you

15:10:02 12 went to court.

15:10:03 13    **A.**   I believe I went to court one time.

15:10:05 14    **Q.**   Okay.

15:10:06 15    **A.**   It may have been more than once, but

15:10:09 16 I don't recall exactly.

15:10:09 17    **Q.**   Did you ever meet with the DA?

15:10:11 18    **A.**   At court I would have, yes.

15:10:13 19    **Q.**   Okay.  Just that one time.  Okay.

15:10:14 20    **A.**   I think it was one time.

15:10:15 21    **Q.**   And do you know what the purpose of

15:10:16 22 that appearance was for?

15:10:18 23    **A.**   I believe it was a pretrial hearing.

*McDermott - Rupp - 2/19/20*

338

15:10:20  1          **Q.**    Okay.  You didn't go to his

15:10:23  2   arraignment, I take it.

15:10:24  3          **A.**    No.

15:10:24  4          **Q.**    Okay.  So this would have been like

15:10:26  5   a -- a standard sort of meeting with the

15:10:27  6   prosecutor.  Everybody gets together and sees what

15:10:30  7   you're going to do?

15:10:31  8          **A.**    In -- in the courtroom.

15:10:32  9          **Q.**    Right.

15:10:33 10          **A.**    So it could be a 30-second

15:10:35 11   conversation.

15:10:37 12          **Q.**    Okay.  And just the one time is what

15:10:39 13   you remember?

15:10:39 14          **A.**    From what I remember.

15:10:40 15          **Q.**    And do you know ultimately what was the

15:10:41 16   disposition of the charges against Mr. Kistner?

15:10:44 17          **A.**    I believe it was dismissed.  I found

15:10:46 18   that out later.

15:10:46 19          **Q.**    Okay.  Do you know why?

15:10:47 20          **A.**    I don't.

15:10:48 21          **Q.**    Did you -- did you follow up on it,

15:10:51 22   or when -- when did -- let me ask you this --

15:10:53 23   strike it -- when did you find out that it had been

*McDermott - Rupp - 2/19/20*

339

15:10:54  1   dismissed?

15:10:55  2         A.    Oh, I don't know.  I don't know the

15:10:57  3   time frame.

15:10:57  4         Q.    Okay.  Well, was it before or after you

15:10:59  5   were served with the summons and complaint and you

15:11:01  6   knew he was suing you for hitting him with your

15:11:03  7   SUV?

15:11:05  8         A.    I believe it was before.  I don't --

15:11:10  9   I -- I know that I was served, it was like a year

15:11:12  10  and a half later.

15:11:12  11        Q.    Okay.  So would you -- and I guess my

15:11:13  12  question is:  Would you normally sort of get an

15:11:15  13  update when the DA or the judge just, you know,

15:11:18  14  dismissed charges?

15:11:19  15        Would they send you like a sort of

15:11:20  16  a courtesy:  Hey, by the way, that incident --

15:11:22  17        A.    No.

15:11:23  18        Q.    All right.  So how is it that you would

15:11:24  19  have heard about this one?

15:11:29  20        A.    I don't remember.

15:11:30  21        Q.    Well, did you check up on it or

15:11:31  22  something?

15:11:32  23        Was this of particular interest to you?

*McDermott - Rupp - 2/19/20*

340

15:11:33  1          A.    No, I don't believe I checked up on it.

15:11:35  2          Q.    How many arrests do you make in the

15:11:37  3    course of a month, as a City of Buffalo police

15:11:39  4    officer, Ms. McDermott?  If you can estimate for

15:11:42  5    me.

15:11:42  6          MS. HUGGINS:  A time frame.

15:11:42  7          BY MR. RUPP:

15:11:44  8          Q.    I'm just trying to get a --

15:11:44  9          A.    Yeah, I mean, now, as a detective?

15:11:46  10          Q.    Well, no, no.

15:11:46  11          A.    As a patrol officer?  I mean --

15:11:48  12          Q.    As a patrol officer, roughly this

15:11:50  13    time frame, were you -- how many arrests were

15:11:52  14    you making?

15:11:52  15          A.    In a month?  In a week?

15:11:54  16          Q.    You give me the time frame.  I said

15:11:55  17    a month, but --

15:11:57  18          A.    I mean, there -- it could be a few

15:11:58  19    per week, it could be none per week.

15:12:00  20          Q.    Okay.

15:12:01  21          A.    I mean, it -- it really --

15:12:03  22          Q.    Let's me try --

15:12:03  23          A.    There's no --

*McDermott - Rupp - 2/19/20*

341

15:12:03  1        **Q.**   Let me try a year.  I don't want to
15:12:04  2  pick a period where it was -- where you had
15:12:06  3  a strange period where four weeks went by and you
15:12:08  4  didn't arrest anybody.
15:12:09  5        **A.**   Right.
15:12:10  6        **Q.**   In a given year, the five years that
15:12:12  7  you spent or longer as a patrol officer, how many
15:12:15  8  arrests would you make in a given year, would you
15:12:18  9  say?
15:12:18  10        **A.**   In a given year, 40 to a hundred.
15:12:26  11        **Q.**   Okay.
15:12:26  12        **A.**   I mean, it's -- it's --
15:12:28  13        **Q.**   All right.
15:12:28  14        **A.**   Honestly, it --
15:12:29  15        **Q.**   I know it varies.  I know it varies,
15:12:31  16  but I just wanted to get a sense.  So it's in the
15:12:33  17  scores or multiple tens.  Okay.
15:12:35  18        So would you follow up on the outcome of the
15:12:37  19  disposition of -- of those arrests?
15:12:39  20        **A.**   No.
15:12:39  21        **Q.**   Typically?
15:12:40  22        All right.  So what was it about the Kistner
15:12:42  23  matter that you heard about the disposition before

*McDermott - Rupp - 2/19/20*

342

| | | |
|---|---|---|
| 15:12:46 | 1 | you knew that he was going to sue you? |
| 15:12:47 | 2 | **A.**   I don't remember. |
| 15:12:48 | 3 | **Q.**   Okay.  Do you know how you heard? |
| 15:12:51 | 4 | **A.**   No. |
| 15:12:55 | 5 | **Q.**   Okay.  After January 1st of 2017, aside |
| 15:12:59 | 6 | from the meeting in court with the DA, did you talk |
| 15:13:01 | 7 | to any of your fellow officers about what had |
| 15:13:04 | 8 | happened that day or what Mr. Kistner might do or |
| 15:13:06 | 9 | anything like that? |
| 15:13:10 | 10 | **A.**   I know Officer Velez and I, I'm sure, |
| 15:13:12 | 11 | have talked about it before.  We're pretty good |
| 15:13:14 | 12 | friends, so we talk about a lot. |
| 15:13:15 | 13 | **Q.**   And I just want to clarify.  Maybe |
| 15:13:16 | 14 | I didn't ask.  Before you knew you were being sued. |
| 15:13:18 | 15 |      I assume that once you got sued -- and |
| 15:13:20 | 16 | I don't need to know about all these conversations |
| 15:13:21 | 17 | you had -- you talked to her about the fact you've |
| 15:13:24 | 18 | all been sued, right? |
| 15:13:25 | 19 | **A.**   Yeah.  After -- |
| 15:13:26 | 20 | **Q.**   It had to have come up, right? |
| 15:13:28 | 21 | **A.**   Yes.  Yes.  After being sued, yes. |
| 15:13:29 | 22 | **Q.**   Right.  So, but before you were sued, |
| 15:13:31 | 23 | from January '17, to the day before you knew that |

*McDermott - Rupp - 2/19/20*

343

15:13:33  1  he was commencing a lawsuit against you, did you

15:13:34  2  have any conversations with anybody about this

15:13:37  3  incident on January 1, 2017?

15:13:40  4          **A.**   I could have.

15:13:41  5          **Q.**   Okay.

15:13:41  6          **A.**   I honestly don't remember.

15:13:43  7          **Q.**   Okay.  But you -- you -- you wouldn't

15:13:45  8  have had any particular reason to; is that what

15:13:47  9  you're telling me?

15:13:47 10          **A.**   Right.

15:13:48 11          **Q.**   You might have heard something, but it

15:13:49 12  wasn't like you were saying, gee, I really want to

15:13:51 13  check up on this particular incident.

15:13:53 14          **A.**   Right.

15:13:53 15          **Q.**   Okay.  All right.

15:14:09 16          All right.  I'm just going to ask you --

15:14:10 17  I think we're getting close to the end, but I'm

15:14:12 18  going to mark a couple documents and ask you

15:14:14 19  a couple questions about them.

15:14:16 20          **MS. HUGGINS:**  I'm -- I'm not trying to

15:14:17 21  overstep.  I know there was a -- there's also what

15:14:22 22  was -- has been provided to you for their entire

15:14:24 23  shift.  I don't know if -- because you had asked

*McDermott - Rupp - 2/19/20*

344

15:14:26  1   some questions that touch on that.

15:14:27  2        **MR. RUPP:**  I'm just going -- I'm just going

15:14:28  3   to go in order.  I hope I've got the --

15:14:28  4        **MS. HUGGINS:**  That's --

15:14:30  5        **MR. RUPP:**  -- right stuff.

15:14:31  6        **MS. HUGGINS:**  That's fine.

15:14:31  7        **MR. RUPP:**  Okay.  Thank you.

15:14:31  8        **MS. HUGGINS:**  I just thought that might

15:14:32  9   alert you too.

15:14:33  10       **MR. RUPP:**  Yeah.  I'll -- I'm not going to

15:14:34  11  dwell on too many of these.

15:14:36  12       I do have one other video I do want to show

15:14:39  13  you, though.

          14  **The following was marked for Identification:**

          15   **EXH. 16            Buffalo Police shift summary**

          16                        **report**

          17       **BY MR. RUPP:**

15:15:18  18       **Q.**  All right.  Ms. McDermott, I'm just

15:15:20  19  going to show you the police summary report --

15:15:26  20  shift summary report from the Buffalo Police for

15:15:28  21  January 1, 2017.

15:15:29  22       I see you're listed, along with Santana and

15:15:34  23  Schultz and Velez and McHugh, and I see Moriarity

*McDermott - Rupp - 2/19/20*

345

15:15:40   1   is kind of attached to Schultz there, presumably

15:15:48   2   because, as you described, he was still in

15:15:51   3   training, right?

15:15:51   4        **A.**   Yes.

15:15:51   5        **Q.**   So is this the platoon for your second

15:15:56   6   shift on that day?

15:15:58   7        Are these all the people who were in your

15:15:59   8   platoon that day?

15:16:00   9        **A.**   No.  This is --

15:16:02  10        **Q.**   Okay.

15:16:02  11        **A.**   It's double-up day, so this is --

15:16:04  12        **Q.**   This is -- this is both?

15:16:05  13        **A.**   This is both -- some people from both

15:16:08  14   platoons, yes.

15:16:08  15        **Q.**   I see.  Okay.  So this is -- this is

15:16:10  16   more than a single platoon --

15:16:12  17        **A.**   Yes.

15:16:12  18        **Q.**   -- worth of officers.

15:16:13  19        I don't know how many officers work.  So how

15:16:15  20   many -- how many patrol officers, not counting the

15:16:18  21   lieutenant, would typically be working second shift

15:16:21  22   in C District in January 2017?

15:16:23  23        **A.**   Well, it's -- it's actually first

*McDermott - Rupp - 2/19/20*

346

| | | |
|---|---|---|
| 15:16:25 | 1 | shift.  I know it's a 2, but it's -- |
| 15:16:26 | 2 | **Q.**   I thought it was first shift. |
| 15:16:28 | 3 | **A.**   Yeah.  It's -- |
| 15:16:29 | 4 | **Q.**   Okay. |
| 15:16:29 | 5 | **A.**   So shift 2nd refers to MP2, which is |
| 15:16:34 | 6 | manpower 2.  That's considered day shift.  MP4 is |
| 15:16:38 | 7 | afternoons.  MP5 is midnights. |
| 15:16:40 | 8 | **Q.**   Okay.  I think I understand that. |
| 15:16:41 | 9 | **A.**   So that's why second shift is -- |
| 15:16:45 | 10 | **Q.**   All right. |
| 15:16:46 | 11 | **A.**   Yeah.  So this is who worked that day, |
| 15:16:48 | 12 | not necessarily all of the people who work on both |
| 15:16:50 | 13 | shifts. |
| 15:16:51 | 14 | **Q.**   Okay.  Who worked that day for the |
| 15:16:53 | 15 | entire day or -- |
| 15:16:55 | 16 | **A.**   From 6 a.m. to 4 p.m. |
| 15:16:56 | 17 | **Q.**   That shift.  Whatever it's called. |
| 15:16:59 | 18 | **A.**   On that date, yes. |
| 15:17:00 | 19 | **Q.**   Okay.  Got it.  Okay. |
| 15:17:21 | 20 | All right.  I'm going to show you what's |
| 15:17:24 | 21 | been marked Exhibit 9.  It was previously marked. |
| 15:17:30 | 22 | What is this? |
| 15:17:31 | 23 | **A.**   This is the central booking case history. |

*McDermott - Rupp - 2/19/20*

347

| | | |
|---|---|---|
| 15:17:36 | 1 | Q.   Okay.  And it lists you as the |
| 15:17:41 | 2 | arresting officer and several assisting officers, |
| 15:17:43 | 3 | right? |
| 15:17:44 | 4 | A.   Yes. |
| 15:17:44 | 5 | Q.   Okay.  And you signed it. |
| 15:17:48 | 6 | A.   Yes. |
| 15:17:48 | 7 | Q.   That is your signature. |
| 15:17:50 | 8 | A.   Yes. |
| 15:17:50 | 9 | Q.   All right.  And it says the officer in |
| 15:17:57 | 10 | charge of the case -- of a case is the officer with |
| 15:18:01 | 11 | the most knowledge of the events leading to the |
| 15:18:04 | 12 | arrest, and is that you? |
| 15:18:06 | 13 | A.   Yes. |
| 15:18:06 | 14 | Q.   Okay.  And it says, the officer in |
| 15:18:21 | 15 | charge must give a concise and sufficiently |
| 15:18:23 | 16 | detailed account of the case, with specifics, |
| 15:18:25 | 17 | pertaining to all officers involved. |
| 15:18:28 | 18 | Did you do that? |
| 15:18:31 | 19 | A.   I'm sorry. |
| 15:18:33 | 20 | Q.   Reading from the second sentence -- or |
| 15:18:34 | 21 | the third sentence. |
| 15:18:35 | 22 | A.   Oh, okay.  I'm sorry.  I was reading |
| 15:18:37 | 23 | along. |

*McDermott - Rupp - 2/19/20*

348

15:18:37   1       **Q.**   The officer in charge must give

15:18:39   2  a concise and sufficiently detailed account of the

15:18:42   3  case, with specifics, pertaining to all officers

15:18:44   4  involved.

15:18:45   5       Did you do that?

15:18:45   6       **A.**   Yes.

15:18:45   7       **Q.**   Okay.  Where is the sufficiently

15:18:49   8  detailed account of the case?

15:18:51   9       **A.**   I believe that would be considered the

15:18:54 10  charges that are typed up by the report technicians.

15:18:58 11       **Q.**   Okay.  So not -- not on this form then?

15:19:02 12       **A.**   No.

15:19:02 13       **Q.**   Okay.

15:19:03 14       **A.**   This goes along with --

15:19:05 15       **Q.**   All right.  This has been separated

15:19:07 16  from a --

15:19:07 17       **A.**   -- cell block --

15:19:07 18       **Q.**   -- sister form of some sort?

15:19:08 19       **A.**   Yes.

15:19:09 20       **Q.**   Okay.  All right.  Let me show you

15:19:43 21  Exhibit 5.  Can you tell me what Exhibit 5 is?

15:19:55 22       **A.**   Yes.  It is the -- what we refer to as

15:19:58 23  a police report.  A 1375 is the handwritten copy.

*McDermott - Rupp - 2/19/20*

349

15:20:05  1        Q.    Okay.  So then is that the one I showed
15:20:07  2   you earlier?
15:20:09  3        A.    No.  This is -- this is just the typed
15:20:10  4   version of -- this is considered a police report.
15:20:13  5   We call it a 1375.
15:20:15  6        Q.    Yeah, but you said there's a written
15:20:17  7   version and a typed version.  Did I show you the
15:20:19  8   written version already, or do I have the written
15:20:21  9   version?
15:20:21 10        A.    I don't know.
15:20:24 11        Q.    Do we have a written version of this?
15:20:26 12        A.    It's a long form.
15:20:28 13        Q.    Like an eight and a half by like seven
15:20:32 14   or 14 or something?
15:20:33 15        A.    Yeah.  Yeah.
15:20:33 16        Q.    Like longer than a regular --
15:20:37 17        A.    Yeah, longer than a regular piece of
15:20:38 18   paper.
15:20:38 19        Q.    Did you -- would you have handwritten
15:20:39 20   that, as the arresting officer?
15:20:41 21        A.    Yes.
15:20:43 22        MR. RUPP:    Okay.  Maeve, do you know if that
15:20:47 23   was disclosed?

*McDermott - Rupp - 2/19/20*

350

15:20:47  1        **MS. HUGGINS:**  I do not believe I have

15:20:48  2   a copy of it in that form.  I believe I only have

15:20:52  3   a typewritten form.  We'll do another search.

15:20:55  4        **MR. RUPP:**  Okay.  Can you --

15:20:55  5        **MS. HUGGINS:**  But --

15:20:55  6        **MR. RUPP:**  Can you index that for me, Anne?

15:20:58  7   A document production request?

15:20:58  8        **THE REPORTER:**  Yes.

15:20:58  9        **BY MR. RUPP:**

15:21:03 10        **Q.**   All right.  So let me ask you about the

15:21:04 11   form we do have.  As far as you know, would this be

15:21:06 12   a typed-up version of what would have been

15:21:08 13   handwritten?

15:21:08 14        **THE WITNESS:**  Yes.

15:21:09 15        **BY MR. RUPP:**

15:21:09 16        **Q.**   Okay.  When -- and did you prepare the

15:21:11 17   handwritten form?

15:21:12 18        **A.**   I don't know if I would have written it

15:21:14 19   or Officer Velez.

15:21:16 20        **Q.**   Okay.  But one of the two of you would

15:21:19 21   have.

15:21:19 22        **A.**   Yes.

15:21:19 23        **Q.**   Okay.  And so would it be customary

*McDermott - Rupp - 2/19/20*

351

| | | |
|---|---|---|
| 15:21:22 | 1 | that the typed-up form -- would you type it or -- |
| 15:21:24 | 2 | so who would type it? |
| 15:21:25 | 3 | **A.**   It would be typed in the -- it would be |
| 15:21:29 | 4 | typed most likely in the computer in the vehicle by |
| 15:21:32 | 5 | one of us. |
| 15:21:33 | 6 | **Q.**   Oh.  Oh, okay. |
| 15:21:35 | 7 | **A.**   So this is -- we -- we have |
| 15:21:37 | 8 | a handwritten copy and a typed copy, so that say |
| 15:21:41 | 9 | a complainant wanted to come into the stationhouse |
| 15:21:44 | 10 | and get a copy of the report. |
| 15:21:45 | 11 | **Q.**   Okay. |
| 15:21:45 | 12 | **A.**   This is what would be printed out. |
| 15:21:47 | 13 | **Q.**   Okay.  All right.  So -- so my -- that |
| 15:21:49 | 14 | was kind of my answer to my question, though. |
| 15:21:49 | 15 | **A.**   Yes. |
| 15:21:52 | 16 | **Q.**   One of the two of you would type it |
| 15:21:53 | 17 | into your computer in the car. |
| 15:21:55 | 18 | **A.**   Correct. |
| 15:21:55 | 19 | **Q.**   Okay.  And the information at the |
| 15:21:56 | 20 | bottom seemed to line up with what Officer Velez |
| 15:22:02 | 21 | had -- had written on the form that I had showed |
| 15:22:04 | 22 | you earlier that she had signed, right, for the |
| 15:22:06 | 23 | most part?  About intentionally -- |

*McDermott - Rupp - 2/19/20*

352

15:22:09  1          **A.**    Yes.

15:22:09  2          **Q.**    -- throwing his body at the car.  Okay.

15:22:12  3          I don't know if I have any -- too many

15:22:15  4    questions about this form.

15:22:16  5          The two charges are listed there in the

15:22:18  6    middle.

15:22:19  7          **A.**    Yes.

15:22:20  8          **Q.**    Why -- why is the arrest type crime in

15:22:23  9    progress?

15:22:24 10          **A.**    So this is also accessed by the report

15:22:29 11    technician, so when we get down to cell block and

15:22:32 12    we hand over our paperwork, the cell block -- or

15:22:35 13    I'm sorry -- the report technician -- and I don't

15:22:37 14    know the program and that's -- we don't have access

15:22:41 15    to what they do, but it does affect this in some

15:22:45 16    way.

15:22:46 17          So that might be why there's -- it says

15:22:49 18    offenses and then arrest and then the offenses are

15:22:51 19    listed again, but I don't know how that computer

15:22:53 20    program works.

15:22:55 21          **MR. RUPP:**  All right.  Fair enough.  Thank

15:22:57 22    you.

15:23:05 23          Let's mark this then.

*McDermott - Rupp - 2/19/20*

353

1    **The following was marked for Identification:**

2       **EXH. 17              Information/complaint, two**

3                                **pages**

4           **BY MR. RUPP:**

15:23:50  5           **Q.** All right.  Ms. McDermott, let me show

15:23:52  6    you what has been marked Exhibit 17.  Is that your

15:23:55  7    signature at the bottom right?

15:23:56  8           **A.** Yes.

15:23:56  9           **Q.** And did you sign this document under

15:24:00 10    penalty of perjury?

15:24:01 11           **A.** Yes.

15:24:01 12           **Q.** Okay.  Pursuant to penal law Section

15:24:04 13    210.45?

15:24:06 14           **A.** Yes.

15:24:06 15           **Q.** All right.  So everything you said on

15:24:07 16    this form you knew needed to be true and correct or

15:24:12 17    you could be subject to criminal sanction for --

15:24:16 18    for perjury, right?

15:24:17 19           **A.** Yes.

15:24:17 20           **Q.** Okay.  And -- and there's actually two

15:24:20 21    forms attached under Exhibit 17.  The one for

15:24:23 22    criminal mischief in the third degree and the other

15:24:26 23    for disorderly conduct, right?

*McDermott - Rupp - 2/19/20*

354

15:24:29  1        **A.**   Yes.   This is the form that goes along

15:24:30  2   with the case history.

15:24:31  3        **Q.**   Great.

15:24:31  4        And you signed the second page as well?

15:24:33  5        **A.**   Yes.

15:24:33  6        **Q.**   Also under penalty of perjury?

15:24:35  7        **A.**   Yes.

15:24:35  8        **Q.**   Okay.   Now, did you type this up --

15:24:38  9   these up, both of them?

15:24:39 10        **A.**   No.

15:24:39 11        **Q.**   Who typed them up?

15:24:40 12        **A.**   A report technician.

15:24:42 13        **Q.**   Okay.   Did you review it before you

15:24:43 14   signed it?

15:24:44 15        **A.**   Yes.

15:24:44 16        **Q.**   Both cases?

15:24:46 17        **A.**   Yes.

15:24:46 18        **Q.**   Was there anything in either account

15:24:49 19   that you put your signature to that was inaccurate?

15:24:51 20        **A.**   No.

15:24:52 21        **Q.**   Okay.   And in the first page,

15:24:57 22   the information for criminal mischief in the

15:24:59 23   third degree, for damage exceeding $250, you

*McDermott - Rupp - 2/19/20*

355

15:25:03  1  wrote:  In that the defendant, while at

15:25:06  2  37 Schmarbeck, did, with intent to damage the

15:25:10  3  property of another person -- did I read that

15:25:12  4  properly?

15:25:15  5       **A.**   I think I'm -- I'm sorry.  I started at

15:25:17  6  a different place.  Can you --

15:25:18  7       **Q.**   Yeah.  Sure.

15:25:18  8       **A.**   Oh, oh, oh.  And -- I'm sorry.

15:25:19  9       **Q.**   The first sentence.

15:25:20  10      **A.**   I thought we were down in the middle of

15:25:23  11 the page.  You're at the top, right under --

15:25:24  12      **Q.**   Well, actually, I'm right here, kind of

15:25:26  13 in the middle.

15:25:26  14      **A.**   I'm -- I'm -- I thought you were --

15:25:26  15 I was reading down here.  I --

15:25:27  16      **Q.**   That's okay.

15:25:28  17      **A.**   I zoned in on the --

15:25:30  18      **Q.**   I'll just start over.  It's just right

15:25:30  19 under -- see the charge there, 145.05-2?

15:25:34  20      **A.**   Yes.

15:25:34  21      **Q.**   And then the title, criminal mischief

15:25:36  22 in the third degree.

15:25:37  23      **A.**   Yes.

*McDermott - Rupp - 2/19/20*

356

15:25:37  1        **Q.**   You wrote or somebody wrote and you

15:25:38  2   adopted it with your signature:  In that the

15:25:41  3   defendant, while at 37 Schmarbeck, did, with intent

15:25:44  4   to damage the property of another person.

15:25:47  5        I'm going to stop there.  Your -- your view

15:25:49  6   is that Mr. Kistner not only threw himself at your

15:25:54  7   vehicle, but that he intended to damage it.

15:25:56  8        **A.**   Yes.

15:25:57  9        **Q.**   Okay.  So -- and what is the basis for

15:26:00 10   your conclusion in that regard that he wanted to

15:26:04 11   damage your vehicle, as opposed to damage himself,

15:26:06 12   or assuming what you say his true, how did you know

15:26:09 13   that he intended to damage your vehicle?

15:26:12 14        **A.**   That was my perception of the events

15:26:14 15   that took place.

15:26:15 16        **Q.**   Okay.  So you thought he was trying to

15:26:17 17   damage your vehicle as opposed to himself or both

15:26:19 18   or what?

15:26:22 19        **A.**   I -- I don't know if he was intending

15:26:25 20   to injure himself.  I perceived that that could be

15:26:29 21   a very strong possibility.  But, yes, I did -- I do

15:26:33 22   believe that he was intending to damage the -- the

15:26:34 23   vehicle.

*McDermott - Rupp - 2/19/20*

357

| | | |
|---|---|---|
| 15:26:35 | 1 | **Q.**   But you -- you could see that somebody |
| 15:26:37 | 2 | who's intending on hurting themselves might cause |
| 15:26:40 | 3 | damage to something but not intend that damage. |
| 15:26:43 | 4 | They're trying to hurt themselves, right? |
| 15:26:45 | 5 | **MS. HUGGINS:**  Form. |
| 15:26:45 | 6 | **THE WITNESS:**  Could be. |
| 15:26:46 | 7 | **BY MR. RUPP:** |
| 15:26:46 | 8 | **Q.**   Okay.  Or you could have somebody who's |
| 15:26:49 | 9 | trying to do damage but doesn't want to hurt |
| 15:26:52 | 10 | themselves.  Would you agree that that's |
| 15:26:53 | 11 | a possibility? |
| 15:26:53 | 12 | **A.**   It's possible. |
| 15:26:54 | 13 | **Q.**   Okay.  But in this case, based on your |
| 15:26:56 | 14 | recent testimony, it was your conclusion that he -- |
| 15:26:58 | 15 | he may have wanted to hurt himself, but he |
| 15:27:01 | 16 | definitely wanted to damage your SUV; is that |
| 15:27:03 | 17 | right? |
| 15:27:03 | 18 | **A.**   That's what I believe. |
| 15:27:04 | 19 | **Q.**   Okay.  And that was based on your |
| 15:27:06 | 20 | perception of seeing him put out his hand and do |
| 15:27:09 | 21 | the turn and the head thing that we talked about |
| 15:27:12 | 22 | earlier at length. |
| 15:27:13 | 23 | **A.**   Yes. |

*McDermott - Rupp - 2/19/20*

358

| | | |
|---|---|---|
| 15:27:13 | 1 | **Q.**   Okay.  Any other basis for that |
| 15:27:15 | 2 | statement that you signed under oath and under |
| 15:27:17 | 3 | penalty of perjury? |
| 15:27:18 | 4 | **A.**   No. |
| 15:27:18 | 5 | **Q.**   Okay.  All right.  So continuing along: |
| 15:27:22 | 6 | The City of Buffalo Police Department, and having |
| 15:27:24 | 7 | no right to do so, nor any reasonable ground to |
| 15:27:28 | 8 | believe that he had such right, did damage the |
| 15:27:30 | 9 | property, to wit, driver's side mirror and driver's |
| 15:27:33 | 10 | side mirror of patrol vehicle, in the amount of |
| 15:27:36 | 11 | more than $250. |
| 15:27:38 | 12 | And I've already kind of asked you about |
| 15:27:39 | 13 | that, right? |
| 15:27:40 | 14 | **A.**   Yes. |
| 15:27:40 | 15 | **Q.**   But by the time -- I'll update my |
| 15:27:42 | 16 | questions to the time you signed this form drawn up |
| 15:27:46 | 17 | by the technician, you had no more information |
| 15:27:49 | 18 | about the value of the alleged damage to vehicle |
| 15:27:54 | 19 | 473 than when I -- than when I asked you that |
| 15:27:56 | 20 | question before, right? |
| 15:27:58 | 21 | **A.**   Right. |
| 15:27:58 | 22 | **Q.**   Okay.  So you still haven't done any |
| 15:28:01 | 23 | inquiry, not been -- gotten an estimate, not taken |

*McDermott - Rupp - 2/19/20*

359

15:28:04  1  it to the police garage, anything like that?

15:28:06  2        **A.**    Correct.

15:28:06  3        **Q.**    Okay.  Then you say, in that the

15:28:08  4  defendant did intentionally throw his body into the

15:28:11  5  driver's side mirror of patrol vehicle 473, causing

15:28:14  6  the mirror to become dislodged from the vehicle and

15:28:17  7  also causing the driver's side window to malfunction.

15:28:20  8        And I don't know if I asked you this

15:28:22  9  specific question, but if -- if those things were

15:28:24 10  true, you would expect that there would be repair

15:28:27 11  records relative to that on that vehicle, right?

15:28:29 12        **MS. HUGGINS:**  Form.

15:28:29 13        **BY MR. RUPP:**

15:28:30 14        **Q.**    Unless it was never fixed, right?

15:28:31 15        **A.**    I would expect there to be a record of

15:28:33 16  it.

15:28:33 17        **Q.**    Okay.  I'm going to represent to you

15:28:35 18  that the City of Buffalo has not turned over any

15:28:37 19  repair records showing that the mirror was fixed or

15:28:39 20  the driver's side window was fixed.  Do you know

15:28:41 21  why?

15:28:41 22        **A.**    I do not know why.

15:28:43 23        **Q.**    Okay.  All right.  The value of said

*McDermott - Rupp - 2/19/20*

360

15:28:44  1  damage to exceed $250.  The defendant did cause
15:28:47  2  said damage to the above-mentioned property without
15:28:49  3  the permission of the owner.
15:28:51  4       And the owner is what?  The City of Buffalo?
15:28:54  5       **A.**   Yes.
15:28:54  6       **Q.**   Okay.  All right.  Okay.  Let's turn
15:29:02  7  the page, and the next one, for disorderly conduct,
15:29:04  8  on page 2 of Exhibit 17, reads that that's
15:29:07  9  a violation, as opposed to a felony.
15:29:10 10       It says, the said defendant, at the
15:29:13 11  aforesaid time and place, with intent to cause
15:29:16 12  public inconvenience, annoyance, or alarm, or
15:29:20 13  recklessly creating a risk thereof, while in
15:29:23 14  a public place, did use abusive or obscene
15:29:27 15  language, or made an obscene gesture.
15:29:29 16       We haven't talked about gestures.  Did
15:29:31 17  Mr. Kistner make any obscene gestures that you
15:29:34 18  remember?
15:29:34 19       **A.**   I don't remember.
15:29:35 20       **Q.**   Okay.  In the time that you saw him
15:29:37 21  from the moment that he was handcuffed and brought
15:29:40 22  to his feet by some officers, was -- was he in
15:29:44 23  handcuffs the entire time?

*McDermott - Rupp - 2/19/20*

361

| | | |
|---|---|---|
| 15:29:47 | 1 | **A.**   I'm -- I'm sorry.  Could you say |
| 15:29:49 | 2 | that -- |
| 15:29:49 | 3 | **Q.**   Did you ever see him out of handcuffs |
| 15:29:51 | 4 | from the time he was first handcuffed, until you |
| 15:29:53 | 5 | took him, say, to central booking? |
| 15:29:55 | 6 | **A.**   He was cuffed to the hospital bed with |
| 15:29:57 | 7 | one hand. |
| 15:29:58 | 8 | **Q.**   Okay.  So was he making gestures with |
| 15:30:01 | 9 | the other hand or -- |
| 15:30:01 | 10 | **A.**   I don't remember. |
| 15:30:02 | 11 | **Q.**   Okay.  So why did you say, did use |
| 15:30:05 | 12 | abusive or obscene language or made an obscene |
| 15:30:07 | 13 | gesture? |
| 15:30:08 | 14 | **A.**   That's just the verbiage that is typed |
| 15:30:10 | 15 | up according to the penal law charge. |
| 15:30:12 | 16 | **Q.**   Okay.  So you don't remember him making |
| 15:30:13 | 17 | any obscene gestures.  He didn't flip anybody the |
| 15:30:17 | 18 | bird or give them the finger or anything. |
| 15:30:18 | 19 | **A.**   I don't remember. |
| 15:30:19 | 20 | **Q.**   Okay.  And you wouldn't have charged |
| 15:30:21 | 21 | him with something you didn't remember, right? |
| 15:30:22 | 22 | **A.**   Right.  That's just -- like I said, |
| 15:30:25 | 23 | that's the -- the verbiage that the report -- |

*McDermott - Rupp - 2/19/20*

362

15:30:27  1  report technicians type up according to the penal

15:30:28  2  law charge.

15:30:29  3       **Q.**   Well, I know that, but you said it, so

15:30:32  4  I just want to make sure that you don't recall him

15:30:34  5  making any gestures.

15:30:35  6       **A.**   I don't remember.

15:30:36  7       **Q.**   Okay.  In that the defendant did

15:30:38  8  intentionally throw his body into the driver's side

15:30:40  9  mirror, et cetera, and so forth.

15:30:41  10      And that is language that's replicated from

15:30:46  11 the criminal mischief charge, right?

15:30:49  12      **A.**   Yes.

15:30:49  13      **MS. HUGGINS:**   Form.

15:30:50  14      **BY MR. RUPP:**

15:30:51  15      **Q.**   All right.  So why is that in the

15:30:52  16 disorderly conduct charge?

15:30:53  17      **A.**   Again, that's -- the report

15:30:55  18 technicians, that's the way that they type up

15:30:57  19 charges.  That's -- that's how they type it.

15:31:00  20      **Q.**   Okay.  So could you have made changes

15:31:02  21 to this, if you wanted to?

15:31:03  22      **A.**   Yes.

15:31:03  23      **Q.**   Okay.  You didn't ask them to make any

*McDermott - Rupp - 2/19/20*

363

| | | |
|---|---|---|
| 15:31:05 | 1 | changes? |
| 15:31:05 | 2 | **A.**   I did not. |
| 15:31:06 | 3 | **Q.**   Okay.  So was the disorderly conduct |
| 15:31:09 | 4 | charge, in your view, because he had thrown his |
| 15:31:12 | 5 | body at the driver's side mirror of your vehicle? |
| 15:31:14 | 6 | **A.**   No.  The disorderly conduct was |
| 15:31:16 | 7 | pertaining to the next sentence. |
| 15:31:18 | 8 | **Q.**   Okay.  All right.  So that's in here |
| 15:31:21 | 9 | kind of extraneously, would you agree? |
| 15:31:24 | 10 | **A.**   Again, I don't know the guidelines that |
| 15:31:27 | 11 | the report -- report technicians type up their |
| 15:31:29 | 12 | charges. |
| 15:31:30 | 13 | **MR. RUPP:**  Okay.  All right.  I'm going to |
| 15:31:37 | 14 | ask that this be marked. |
| | 15 | **The following was marked for Identification:** |
| | 16 | **EXH. 18**            **Fleet management maintenance** |
| | 17 | **work order** |
| | 18 | **BY MR. RUPP:** |
| 15:32:16 | 19 | **Q.**   All right.  Ms. McDermott, I'm going to |
| 15:32:19 | 20 | show you Exhibit 18 for identification.  First of |
| 15:32:20 | 21 | all, have you seen a form similar to this one |
| 15:32:24 | 22 | before in your work as a police officer for BPD? |
| 15:32:27 | 23 | **A.**   I have not. |

*McDermott - Rupp - 2/19/20*

364

15:32:28  1        **Q.**    Okay.  So you're not really familiar

15:32:30  2    with this form then.

15:32:31  3        **A.**    Correct.

15:32:31  4        **Q.**    Okay.  But do you see that it purports

15:32:34  5    to relate to unit 473, which is your unit, a Tahoe?

15:32:39  6        **A.**    Yes, I see that.

15:32:40  7        **Q.**    Being a 2014, is that -- does that also

15:32:44  8    ring a bell?

15:32:45  9        **A.**    Yes.

15:32:45 10        **Q.**    Okay.  Being in for service four days

15:32:48 11    after the incident involving Mr. Kistner.  Do you

15:32:49 12    see that?

15:32:50 13        **A.**    Yes.

15:32:50 14        **Q.**    And indication that there was

15:32:53 15    apparently work done on the cooling system, some

15:32:58 16    R/R water pump, and the serpentine belt.  Do you

15:33:02 17    see that?

15:33:02 18        **A.**    Yes.

15:33:02 19        **Q.**    Would you agree with me there's no

15:33:04 20    references to a mirror or a driver's side front

15:33:08 21    window?

15:33:09 22        **A.**    Correct.

15:33:09 23        **Q.**    Okay.  Do you know of any other repair

*McDermott - Rupp - 2/19/20*

365

15:33:11  1  records that would verify your under-oath statement

15:33:15  2  that the driver's side mirror and the -- well, the

15:33:25  3  driver's side mirror was broken, causing damage of

15:33:31  4  more than $250?

15:33:33  5       **A.**   I don't know of any other maintenance --

15:33:35  6       **Q.**   All right.

15:33:36  7       **A.**   -- paperwork, no.

15:33:37  8       **MR. RUPP:**  Okay.  All right.  Let's have

15:33:48  9  this marked.

         10  **The following was marked for Identification:**

         11  **EXH. 19            Buffalo Police dispatch**

         12  **                   monitor - unit history**

         13  **                   report**

         14  **BY MR. RUPP:**

15:34:34 15       **Q.**   All right.  Showing you what has been

15:34:36 16  marked Exhibit 19 for identification, this is --

15:34:38 17  purports to be the dispatch monitor unit history

15:34:42 18  report for you, who are referred to as unit C241.

15:34:46 19  Do you see that?

15:34:47 20       **A.**   Yes.

15:34:47 21       **Q.**   Okay.  And that's Officer Lauren

15:34:50 22  McDermott.  And that -- that number 172768, what is

15:34:53 23  that?

*McDermott - Rupp - 2/19/20*

366

| | | |
|---|---|---|
| 15:34:54 | 1 | **A.**   That's my DID number. |
| 15:34:56 | 2 | **Q.**   What does that stand for? |
| 15:34:59 | 3 | **A.**   It's my -- |
| 15:35:00 | 4 | **Q.**   Department ID? |
| 15:35:01 | 5 | **A.**   Yes. |
| 15:35:01 | 6 | **Q.**   Okay.  And have you had that same |
| 15:35:03 | 7 | number since you joined the BPD? |
| 15:35:05 | 8 | **A.**   Yes. |
| 15:35:05 | 9 | **Q.**   And do you still have it today? |
| 15:35:07 | 10 | **A.**   Yes. |
| 15:35:07 | 11 | **Q.**   Okay.  It doesn't change with your |
| 15:35:09 | 12 | position. |
| 15:35:10 | 13 | **A.**   Correct. |
| 15:35:10 | 14 | **Q.**   Okay.  So this shows that you were |
| 15:35:12 | 15 | dispatched to Schmarbeck on January 1, 2017, at |
| 15:35:18 | 16 | 10:57 a.m.  Is that -- do you know if you were |
| 15:35:21 | 17 | there before that or after that or -- |
| 15:35:27 | 18 | **A.**   I believe that's when Officer Schultz |
| 15:35:29 | 19 | called it out. |
| 15:35:29 | 20 | **Q.**   Okay. |
| 15:35:31 | 21 | **A.**   When -- yeah. |
| 15:35:32 | 22 | **Q.**   You were -- you already think you were |
| 15:35:35 | 23 | there before that? |

*McDermott - Rupp - 2/19/20*

367

| | | |
|---|---|---|
| 15:35:35 | 1 | **A.**    I believe so. |
| 15:35:36 | 2 | **Q.**    Okay.  And I'm not going to go back |
| 15:35:38 | 3 | through 4A again.  I'm just going to see if I can |
| 15:35:41 | 4 | link this up. |
| 15:35:43 | 5 | So this doesn't have the seconds, just |
| 15:35:47 | 6 | the -- the minutes on it, right? |
| 15:35:48 | 7 | **A.**    Yes. |
| 15:35:49 | 8 | **Q.**    Okay.  And 4A does show you as being |
| 15:35:53 | 9 | en route/dispatched at the 10:57 mark. |
| 15:35:58 | 10 | **A.**    Along with -- yes.  Yes, it does. |
| 15:36:00 | 11 | **Q.**    Along -- along with Officer Velez, |
| 15:36:03 | 12 | of course. |
| 15:36:03 | 13 | **A.**    Yes. |
| 15:36:03 | 14 | **Q.**    Okay.  Okay.  And this shows your shift |
| 15:36:05 | 15 | ending at 6:16, so I guess that answers the question |
| 15:36:09 | 16 | that we saw on the second page of whether your |
| 15:36:13 | 17 | overtime that day was -- was just, you know, |
| 15:36:17 | 18 | a few minute -- 45 minutes after your quitting time |
| 15:36:20 | 19 | or -- or over two hours after. |
| 15:36:21 | 20 | **A.**    This is, again, based on what dispatch |
| 15:36:25 | 21 | is logging. |
| 15:36:26 | 22 | **Q.**    Oh, so this would -- so the payroll |
| 15:36:29 | 23 | would be what governs. |

*McDermott - Rupp - 2/19/20*

368

15:36:31  1        **A.**   Correct.

15:36:31  2        **MR. RUPP:**  Okay.  All right.  Do we have the

15:36:32  3  payroll?

15:36:33  4        **MR. DAVENPORT:**  No, but we did send a second

15:36:37  5  document request.

15:36:38  6        Did you get that yet?

15:36:39  7        **MS. HUGGINS:**  I don't believe so.

15:36:40  8        **MR. RUPP:**  All right.  Well, I'll make

15:36:40  9  a document production request that I'll ask Anne to

15:36:43  10  index for me for the start and end times of her

15:36:47  11  shift that day.

15:36:49  12        I don't need to know her pay rate or

15:36:51  13  anything like that.

15:37:00  14        Okay.  Let's mark this.

15  **The following was marked for Identification:**

16    **EXH. 20**              **Notice to defendant of**

17                            **intention to offer evidence**

18                            **at trial**

15:37:52  19        **BY MR. RUPP:**

15:37:52  20        **Q.**   All right.  Let me show you what's been

15:37:55  21  marked as Exhibit 20 for identification.

15:37:59  22        First of all, do you know if this is the

15:38:01  23  full document?

*McDermott - Rupp - 2/19/20*

369

15:38:03  1         It looked to me like it almost needed to

15:38:06  2   have a second page.  There's no signature line.  It

15:38:08  3   seems to end kind of abruptly.  Do you know if

15:38:10  4   there's a second page to this document?

15:38:12  5         **A.**   We don't sign these documents.

15:38:15  6         **Q.**   Okay.  Well, that takes care of

15:38:17  7   the signature page, but the question still

15:38:19  8   stands:  Do you know whether this is a one-page

15:38:21  9   document?

15:38:21 10         **A.**   I believe this -- I -- I believe this

15:38:25 11   is the bottom of the page, but I -- I --

15:38:26 12         **Q.**   Okay.  Fair enough.

15:38:28 13         **A.**   Yeah.

15:38:29 14         **Q.**   That's how it was produced, so I

15:38:30 15   just -- I just had a question about it.

15:38:32 16         All right.  So we know this is a -- a notice

15:38:33 17   to the defense of statements that are going to be

15:38:36 18   used against Mr. Kistner.

15:38:39 19         Did you prepare this form?

15:38:40 20         **A.**   I did not.

15:38:41 21         **Q.**   Do you know why it says the date is

15:38:45 22   January 2nd, 2017?

15:38:47 23         Bottom left-hand corner, about an inch and

*McDermott - Rupp - 2/19/20*

370

15:38:50  1  a half up from the bottom line of text.

15:38:52  2          **A.**   I don't know why that date would be on

15:38:53  3  there.

15:38:53  4          **Q.**   Okay.  And you've got some of the

15:39:00  5  statements about Nazis and fascists that you were

15:39:04  6  telling me about earlier, right?

15:39:05  7          **A.**   Yes.

15:39:06  8          **Q.**   Okay.  But the second paragraph of

15:39:09  9  things that was said said the defendant did

15:39:12 10  spontaneously state to Police Officer Velez:

15:39:17 11  Charge me criminally to cover yourself.  You're

15:39:20 12  scared.

15:39:21 13          Do you see that part?

15:39:22 14          **A.**   Yes.

15:39:22 15          **Q.**   Okay.  So you then knew, after being

15:39:28 16  placed under arrest and while at ECMC, that

15:39:30 17  Mr. Kistner believed that you had arrested him to

15:39:34 18  cover up for your own negligence in operating the

15:39:37 19  SUV that day.  Were you aware of that?

15:39:39 20          **MS. HUGGINS:**   Form.

15:39:39 21          **THE WITNESS:**   That's what he was saying,

15:39:41 22  yes.

15:39:41 23          **BY MR. RUPP:**

*McDermott - Rupp - 2/19/20*

371

15:39:41  1          Q.    Okay.  So I'm -- I'm not -- I'm not
15:39:42  2   asking you to agree that it was true.  Okay?
15:39:45  3          I'm just asking you if from this quoted
15:39:48  4   statement -- that's in quotes, right?
15:39:49  5          A.    Yes.
15:39:49  6          Q.    -- you knew that Mr. Kistner was taking
15:39:52  7   the position that you had arrested him and charged
15:39:54  8   him criminally to cover your own negligence in
15:39:57  9   striking him with the SUV; is that fair?
15:40:00 10          A.    Yes.
15:40:00 11          Q.    Okay.  All right.  And in the next
15:40:02 12   paragraph, again, he is quoted as saying, if you
15:40:06 13   keep telling your lies so wildly, someone might
15:40:10 14   believe you.  Your story ain't going to fly.
15:40:13 15   Internal affairs is going to eat your ass alive.
15:40:16 16          And that's a direct quote, right?
15:40:18 17          A.    Yes.
15:40:18 18          Q.    Now, again, did you put this down or
15:40:21 19   did Velez put it down?
15:40:22 20          A.    It looks like this one was stated to
15:40:24 21   both of us.
15:40:25 22          Q.    Okay.  So do you know -- like the --
15:40:28 23   the typing in the middle, these paragraphs, this is

*McDermott - Rupp - 2/19/20*

372

15:40:30  1  a form, but somebody typed this in in the middle of

15:40:33  2  the form or -- or used a computer.  Do you know who

15:40:34  3  did it?  Who typed that?

15:40:36  4        **A.**   A report technician types it.

15:40:37  5        **Q.**   Okay.  All right.  So from a written

15:40:39  6  record -- a handwritten record or just from you

15:40:43  7  orally?

15:40:43  8        **A.**   I don't -- I don't remember.

15:40:44  9        **Q.**   Okay.  Do you remember Mr. Kistner

15:40:47  10 saying:  If you keep telling your lies so wildly,

15:40:50  11 someone might believe you.  Your story ain't going

15:40:54  12 to fly.  Internal affairs is going to eat your ass

15:40:56  13 alive?

15:40:57  14        **A.**   I -- I don't remember --

15:41:00  15        **Q.**   Okay.

15:41:00  16        **A.**   -- what was said, but I -- I mean,

15:41:03  17 reading it here, it sounds familiar, but I -- I

15:41:06  18 don't remember.

15:41:06  19        **Q.**   All right.  But at least in terms of

15:41:07  20 what this says, unless this is -- unless this is

15:41:09  21 false -- you don't have any reason to believe this

15:41:13  22 is false.

15:41:13  23        **A.**   No, it's not false.

*McDermott - Rupp - 2/19/20*

373

| | | |
|---|---|---|
| 15:41:14 | 1 | **Q.** Okay. It's true, in fact. |
| 15:41:15 | 2 | **A.** Yes. |
| 15:41:15 | 3 | **Q.** Okay. And at ECMC, Mr. Kistner made it |
| 15:41:18 | 4 | very clear that he thought you were lying, he |
| 15:41:20 | 5 | thought you were covering up your own negligence, |
| 15:41:24 | 6 | and he thought internal affairs was going to |
| 15:41:27 | 7 | investigate you, and that your story was not going |
| 15:41:29 | 8 | to stand up under scrutiny. |
| 15:41:32 | 9 | You knew that at the time you were at ECMC |
| 15:41:34 | 10 | the first time, right? |
| 15:41:35 | 11 | **MS. HUGGINS:** Form. You can answer. |
| 15:41:37 | 12 | **MR. RUPP:** Strike it. |
| 15:41:39 | 13 | You knew that Mr. Kistner believed you had |
| 15:41:42 | 14 | made up the story to cover yourself, and you knew |
| 15:41:47 | 15 | that at ECMC on the first time, January 1, 2017. |
| 15:41:53 | 16 | **THE WITNESS:** It says at ECMC. I couldn't -- |
| 15:41:56 | 17 | I don't know if it was the first or second time. |
| 15:41:58 | 18 | **BY MR. RUPP:** |
| 15:41:58 | 19 | **Q.** Well, now wait a second. You told me |
| 15:42:01 | 20 | the second time you just pretty much dropped him |
| 15:42:03 | 21 | off. |
| 15:42:03 | 22 | **A.** No. I said we don't just drop him off, |
| 15:42:06 | 23 | but -- |

*McDermott - Rupp - 2/19/20*

374

| | | |
|---|---|---|
| 15:42:06 | 1 | **Q.**   Well, okay. |
| 15:42:06 | 2 | **A.**   I mean, I -- like I said -- |
| 15:42:08 | 3 | **Q.**   Do you remember him saying anything -- |
| 15:42:08 | 4 | **A.**   -- I don't remember -- |
| 15:42:10 | 5 | **Q.**   We can go back. |
| 15:42:12 | 6 | Do you remember him saying -- making any |
| 15:42:13 | 7 | statements like this the second time you took him |
| 15:42:15 | 8 | to ECMC? |
| 15:42:16 | 9 | **A.**   I don't remember if this was the first |
| 15:42:18 | 10 | or second time, no. |
| 15:42:19 | 11 | **Q.**   Okay.  Well, my question is:  Do you |
| 15:42:21 | 12 | remember him making any statements like this the |
| 15:42:23 | 13 | second time you took him to ECMC? |
| 15:42:24 | 14 | **A.**   I don't remember. |
| 15:42:25 | 15 | **Q.**   Okay. |
| 15:42:25 | 16 | **A.**   I know the next statement was said the |
| 15:42:28 | 17 | first time. |
| 15:42:28 | 18 | **Q.**   Okay.  And that's where he used the |
| 15:42:30 | 19 | Nazi term and other language. |
| 15:42:32 | 20 | **A.**   Yes. |
| 15:42:32 | 21 | **Q.**   Okay.  And from your recollection of |
| 15:42:35 | 22 | those statements that Mr. Kistner made, did -- did |
| 15:42:41 | 23 | he seem to believe that you had struck him with |

*McDermott - Rupp - 2/19/20*

375

15:42:44  1   your SUV and arrested him to cover up your own

15:42:48  2   negligence?

15:42:48  3          **MS. HUGGINS:**  Form.

15:42:49  4          **THE WITNESS:**  That's what he seemed to

15:42:50  5   believe.

15:42:50  6          **BY MR. RUPP:**

15:42:50  7          **Q.**   Okay.  And did he tell that to not only

15:42:57  8   officers, but ECMC people as well?

15:42:59  9          **A.**   Again, I wasn't in the room when he

15:43:01 10   spoke with the staff.

15:43:03 11          **Q.**   Okay.  Well --

15:43:04 12          **A.**   We purposely stayed outside of the

15:43:05 13   room.

15:43:05 14          **Q.**   But do you know whether at any time you

15:43:07 15   were with him he said that in the presence of ECMC

15:43:10 16   staff?

15:43:12 17          **A.**   Yes, because it was relayed to me by

15:43:14 18   the staff.

15:43:15 19          **Q.**   Okay.  And did you tell them that:  No,

15:43:17 20   that wasn't true.  He attacked my SUV and flung

15:43:20 21   himself against the mirror to injure himself and

15:43:24 22   cause damage to it?

15:43:24 23          **MS. HUGGINS:**  Form.

*McDermott - Rupp - 2/19/20*

376

15:43:25  1          **THE WITNESS:**  I believe I used the word

15:43:27  2   threw or thrown.

15:43:27  3          **BY MR. RUPP:**

15:43:27  4          **Q.**    Okay.

15:43:28  5          **A.**    Not attacked.

15:43:29  6          **Q.**    So, basically, it was Mr. Kistner's

15:43:31  7   word against you police officers who were at ECMC

15:43:34  8   as to what had happened on Schmarbeck that day,

15:43:36  9   correct?

15:43:38 10          **A.**    That, and based on what -- other things

15:43:42 11   that he told the staff as well.

15:43:43 12          **Q.**    Well, in terms of how the incident had

15:43:46 13   happened, not in terms of name calling, but in

15:43:49 14   terms of the incident happening, you have

15:43:51 15   Mr. Kistner saying you hit him with the SUV and

15:43:54 16   are lying about it to cover up your own negligence,

15:43:57 17   and the officers are all saying, no, Mr. Kistner

15:44:00 18   attacked the SUV.

15:44:00 19          That's basically what's going on at ECMC,

15:44:02 20   right?

15:44:02 21          **A.**    He also told ECMC staff other stories

15:44:08 22   of what happened.

15:44:08 23          **Q.**    Well, where is that written anywhere?

| | | |
|---|---|---|
| 15:44:11 | 1 | **A.**   I -- |
| 15:44:12 | 2 | **Q.**   Well, what other stories did he tell |
| 15:44:14 | 3 | you -- did he tell them? |
| 15:44:16 | 4 | **A.**   It's in the doctor's report. |
| 15:44:18 | 5 | **Q.**   Okay.  Is that the one you told me |
| 15:44:20 | 6 | earlier about that he slipped on ice? |
| 15:44:22 | 7 | **A.**   That's what he told the doctor. |
| 15:44:23 | 8 | **Q.**   Okay.  So on the one hand, he's saying |
| 15:44:27 | 9 | that you're lying and covering it up and internal |
| 15:44:30 | 10 | affairs is going to investigate you, and on the |
| 15:44:33 | 11 | other hand, he's allegedly telling somebody that he |
| 15:44:35 | 12 | just slipped on ice? |
| 15:44:36 | 13 | **A.**   Yes. |
| 15:44:36 | 14 | **Q.**   Okay.  And do you believe he slipped on |
| 15:44:38 | 15 | ice? |
| 15:44:38 | 16 | **A.**   I don't know. |
| 15:44:39 | 17 | **Q.**   Was there any ice on the street? |
| 15:44:40 | 18 | **A.**   I don't remember. |
| 15:44:40 | 19 | **Q.**   Did you see any in the video? |
| 15:44:43 | 20 | **A.**   The video is very grainy.  You can |
| 15:44:45 | 21 | barely tell -- |
| 15:44:46 | 22 | **Q.**   Okay. |
| 15:44:46 | 23 | **A.**   -- who was who. |

*McDermott - Rupp - 2/19/20*

378

| | | |
|---|---|---|
| 15:44:47 | 1 | **Q.**   Do you remember what the temperature |
| 15:44:48 | 2 | was on the day of January 1st, 2017? |
| 15:44:51 | 3 | **A.**   I don't remember. |
| 15:45:32 | 4 | **MR. RUPP:**  Okay.  If you can mark that. |
| 15:45:32 | 5 | **The following was marked for Identification:** |
| | 6 | **EXH. 21**                **Appearance ticket** |
| 15:45:32 | 7 | **BY MR. RUPP:** |
| 15:45:57 | 8 | **Q.**   All right.  Ms. McDermott, this |
| 15:46:01 | 9 | obviously is an appearance ticket, right, issued |
| 15:46:03 | 10 | to James Kistner? |
| 15:46:05 | 11 | **A.**   Yes. |
| 15:46:05 | 12 | **Q.**   My only real question is:  Do you know |
| 15:46:10 | 13 | when this was given to him? |
| 15:46:11 | 14 | Now, it says that it was committed on the |
| 15:46:14 | 15 | first day of January at 4 p.m., but we know that's |
| 15:46:19 | 16 | not when the incident happened. |
| 15:46:23 | 17 | Do you see that in the middle?  That's |
| 15:46:25 | 18 | clearly wrong, right? |
| 15:46:25 | 19 | **A.**   I believe that's when it was given to |
| 15:46:28 | 20 | him and not, obviously, when it was committed. |
| 15:46:31 | 21 | **Q.**   Okay.  What makes you believe that? |
| 15:46:33 | 22 | I mean, it says committed, so you're -- |
| 15:46:35 | 23 | you're -- you're agreeing -- you're assuming, as |

*McDermott - Rupp - 2/19/20*

379

15:46:37  1  I am, that that's incorrect and that somebody put

15:46:41  2  4 o'clock on, because that seems like close to the

15:46:43  3  time that he was -- well, what is that close to the

15:46:45  4  time of?

15:46:46  5       Would he have been given this at central

15:46:48  6  booking?

15:46:48  7       A.   He would have.  That's not my writing.

15:46:50  8       Q.   Yeah, I know.  That's not your

15:46:53  9  signature either.  It says Lieutenant D --

15:46:54 10       A.   I believe that's Banaszak.

15:46:56 11       Q.   Banaszak.  Okay.  So I knew it wasn't

15:46:58 12  yours.  And -- and you --

15:46:59 13       A.   Right.

15:46:59 14       Q.   -- didn't initial it there either.

15:47:01 15       A.   Correct.

15:47:01 16       Q.   So I guess were you present when

15:47:03 17  Mr. Kistner was given the appearance ticket?

15:47:07 18       A.   I don't remember, but I most likely

15:47:09 19  would have been.

15:47:09 20       Q.   So let me ask you this:  I know that he

15:47:12 21  is released from central booking, he's going to

15:47:14 22  have an appearance ticket, but he's got to go back

15:47:17 23  to ECMC on the 941, right?

*McDermott - Rupp - 2/19/20*

380

15:47:20  1        **A.**    Correct.

15:47:20  2        **Q.**    So is he given the appearance ticket to

15:47:22  3   hold in his little hands at central booking, or is

15:47:25  4   that given to the ECMC staff so when they let him

15:47:27  5   go, they hand him the appearance ticket as well?

15:47:30  6        **A.**    Oh, I misunderstood.  I thought you

15:47:32  7   were asking when this was, like, issued.

15:47:33  8        When it was physically handed to him?

15:47:35  9        **Q.**    Right.  When he had it in his hand.

15:47:37 10        **A.**    That, I don't remember.

15:47:38 11        **Q.**    Well, okay.  So what is -- what is the

15:47:40 12   procedure?

15:47:41 13        I mean, if -- if he's still in police

15:47:43 14   custody under the 941, would he -- but he's done at

15:47:48 15   central booking, would he be given the appearance

15:47:50 16   ticket there and take it with him to ECMC, or

15:47:53 17   would -- would you give it to him at ECMC, or would

15:47:56 18   you give it to the ECMC staff to give it to him

15:47:59 19   when they let him go?

15:48:01 20        **A.**    It is normally filled out, like I said,

15:48:03 21   when we first get to central booking --

15:48:04 22        **Q.**    Right.

15:48:05 23        **A.**    -- and we give the RT.  That's when

*McDermott - Rupp - 2/19/20*

381

15:48:10  1  it's filled out.

15:48:10  2          **Q.**   Okay.

15:48:10  3          **A.**   But it's not handed at that time,

15:48:12  4  because they still --

15:48:12  5          **Q.**   That part I -- I guess I have.

15:48:14  6          **A.**   Okay.

15:48:14  7          **Q.**   Okay.  So --

15:48:14  8          **A.**   So I don't know when I -- when it was

15:48:15  9  given to him.  I don't know whether it was after

15:48:17 10  the booking process or when we got to ECMC.  That,

15:48:20 11  I don't remember.

15:48:21 12          **Q.**   Well, I guess my question is:  I know

15:48:22 13  at some point before he was discharged from ECMC,

15:48:25 14  you and Officer Velez kind of ended your shift and

15:48:29 15  went home.  I think you said he was still there

15:48:31 16  when you left, right?

15:48:32 17          **A.**   From the -- from the second --

15:48:32 18          **Q.**   Right.

15:48:33 19          **A.**   Yes.  Yes.

15:48:33 20          **Q.**   Right.  Right.

15:48:33 21          **A.**   Yes.

15:48:33 22          **Q.**   Right.  I know the first one you took

15:48:35 23  him to booking and then you took him -- so I'm --

*McDermott - Rupp - 2/19/20*

382

| | | |
|---|---|---|
| 15:48:35 | 1 | **A.**   Right. |
| 15:48:37 | 2 | **Q.**   -- obviously talking about the second |
| 15:48:38 | 3 | one.  You left before he left ECMC, right? |
| 15:48:40 | 4 | **A.**   As far as I know. |
| 15:48:41 | 5 | **Q.**   And nobody came back to give him an |
| 15:48:43 | 6 | appearance ticket, right? |
| 15:48:44 | 7 | **A.**   No. |
| 15:48:44 | 8 | **Q.**   So before you left, you gave the |
| 15:48:47 | 9 | appearance ticket either to James Kistner or to |
| 15:48:50 | 10 | somebody at ECMC to give to him, right? |
| 15:48:52 | 11 | **MS. HUGGINS:**   Form. |
| 15:48:53 | 12 | **THE WITNESS:**   Right. |
| 15:48:54 | 13 | **BY MR. RUPP:** |
| 15:48:54 | 14 | **Q.**   Which is it? |
| 15:48:55 | 15 | **A.**   I don't remember. |
| 15:48:55 | 16 | **Q.**   Okay.  Well, is it protocol or |
| 15:48:57 | 17 | procedure for you to give an appearance ticket for |
| 15:49:00 | 18 | somebody to a medical doctor and say, hey, give |
| 15:49:03 | 19 | this to him when you're ready? |
| 15:49:04 | 20 | **A.**   I -- I don't remember. |
| 15:49:05 | 21 | **Q.**   Well, I'm not asking -- I'm not asking |
| 15:49:07 | 22 | if you remember.  I'm asking you if an appearance |
| 15:49:10 | 23 | ticket has to be given to the person charged or you |

*McDermott - Rupp - 2/19/20*

383

| | | |
|---|---|---|
| 15:49:12 | 1 | can give it to somebody else and say, give it to |
| 15:49:15 | 2 | him? |
| 15:49:16 | 3 | **A.**   I -- it is -- I can say, generally, it |
| 15:49:19 | 4 | is given directly to the person. |
| 15:49:21 | 5 | **Q.**   Okay. |
| 15:49:22 | 6 | **A.**   In this situation, I -- I don't |
| 15:49:24 | 7 | remember. |
| 15:49:24 | 8 | **Q.**   Okay.  So it is possible then, you |
| 15:49:26 | 9 | think, that you might have given it to a doctor or |
| 15:49:29 | 10 | somebody at ECMC and said, hey, when -- when you |
| 15:49:32 | 11 | let him go, give him his appearance ticket? |
| 15:49:34 | 12 | **MS. HUGGINS:**   Form. |
| 15:49:35 | 13 | **THE WITNESS:**   I don't know. |
| 15:49:36 | 14 | **BY MR. RUPP:** |
| 15:49:37 | 15 | **Q.**   Okay.  Or it's possible that you gave |
| 15:49:38 | 16 | it to Mr. Kistner and he had it with him while he |
| 15:49:41 | 17 | was being processed at ECMC. |
| 15:49:42 | 18 | **A.**   Right.  I don't remember. |
| 15:49:43 | 19 | **Q.**   You just don't know between the two? |
| 15:49:46 | 20 | **A.**   I don't remember. |
| 15:49:46 | 21 | **Q.**   And there's no policy or procedure that |
| 15:49:49 | 22 | tells you you have to give the defendant the |
| 15:49:51 | 23 | appearance ticket. |

*McDermott - Rupp - 2/19/20*

384

| | | |
|---|---|---|
| 15:49:51 | 1 | **A.**   I don't know if there is. |
| 15:49:52 | 2 | **Q.**   Okay.  Well, if you don't give the |
| 15:49:54 | 3 | defendant the appearance ticket, is that a problem |
| 15:49:56 | 4 | if they don't show up in court? |
| 15:49:58 | 5 | **A.**   I -- it would be a problem if they |
| 15:50:02 | 6 | didn't show up in court, yes. |
| 15:50:03 | 7 | **Q.**   Right.  So would that then suggest to |
| 15:50:06 | 8 | you that there's a procedure or a protocol with |
| 15:50:10 | 9 | booking that you give the appearance direct -- |
| 15:50:12 | 10 | ticket directly to the person? |
| 15:50:13 | 11 | **A.**   I -- again, if there is, I don't know. |
| 15:50:15 | 12 | **Q.**   Okay.  All right.  And you're aware |
| 15:50:33 | 13 | that Mr. Kistner and his attorneys served |
| 15:50:35 | 14 | interrogatory requests on the City of Buffalo and |
| 15:50:37 | 15 | all the defendants, right? |
| 15:50:40 | 16 | **A.**   The -- meaning the -- the suit? |
| 15:50:43 | 17 | **Q.**   Yes. |
| 15:50:43 | 18 | **A.**   Yes. |
| 15:50:44 | 19 | **Q.**   Yes.  Yeah. |
| 15:50:45 | 20 | **MS. HUGGINS:**  There might just be confusion |
| 15:50:47 | 21 | on the term interrogatory. |
| 15:50:48 | 22 | **THE WITNESS:**  Yes. |
| 15:50:49 | 23 | **MR. RUPP:**  I understand fully.  I'm not |

*McDermott - Rupp - 2/19/20*

385

15:50:51  1  trying to -- I just want to -- you signed

15:50:53  2  a verification page pursuant to 28 USC 1746, under

15:50:57  3  penalty of perjury, that to the best of your

15:50:59  4  knowledge, the information and belief that the

15:51:01  5  foregoing answer to first interrogatories to

15:51:03  6  defendants are true and correct.

15:51:05  7      Did you sign that?

15:51:06  8      **A.**   Yes.

15:51:06  9      **Q.**   Okay.  I'm not even going to mark it,

15:51:10 10  because I just want to make sure:  Did you go

15:51:11 11  through the interrogatory responses in full before

15:51:15 12  you signed that verification?

15:51:17 13      **A.**   I believe so.

15:51:17 14      **Q.**   Okay.  So there was nothing in these

15:51:20 15  interrogatory responses that you did not agree to

15:51:24 16  or did not think was factually correct when you

15:51:27 17  signed that.

15:51:27 18      **MS. HUGGINS:**  Form.  And to be fair,

15:51:28 19  I supplemented one in a cover letter that was

15:51:31 20  included with the interrogatories.

15:51:32 21      **MR. RUPP:**  Fair enough.  I'll just go with

15:51:34 22  as they existed before the supplement.  You had

15:51:37 23  gone through them.  There's nothing in there that

*McDermott - Rupp - 2/19/20*

386

15:51:39   1  you thought was factually inaccurate.

15:51:41   2          I mean, you can look at it again.  I'm just

15:51:43   3  trying to save time.

15:51:44   4          **THE WITNESS:**  I mean, yeah, it's been -- I

15:51:44   5  mean --

15:51:44   6          **BY MR. RUPP:**

15:51:44   7      **Q.**    Okay.

15:51:45   8      **A.**    -- it's been a year and a half since --

15:51:45   9      **Q.**    Take a look --

15:51:46  10      **A.**    -- I --

15:51:46  11      **Q.**    Take a look at --

15:51:47  12      **A.**    Well, maybe --

15:51:47  13      **Q.**    What's the exhibit number?

15:51:48  14      **A.**    -- not a year and a half.  It's been

15:51:49  15  a while.

15:51:50  16      **Q.**    What's the -- what's the exhibit number

15:51:52  17  there?

15:51:52  18      **A.**    13.

15:51:52  19      **Q.**    Okay.  You know, not all of them -- and

15:51:53  20  the reason I was kind of shying away from having

15:51:55  21  you read it all, so many of them --

15:51:55  22          **MS. HUGGINS:**  Yeah.

15:51:55  23          **BY MR. RUPP:**

*McDermott - Rupp - 2/19/20*

387

15:51:57   1        **Q.**    -- don't really relate to you

15:51:58   2   factually.  But I'm just talking about the ones

15:51:59   3   that relate to the facts of Mr. Kistner's arrest

15:52:01   4   and what happened that day, you believed those to

15:52:04   5   be true when you signed the verification?

15:52:06   6        **A.**    I'm sorry.  This is the one that --

15:52:08   7   yeah.  Yes.  This one I more recently looked at.

15:52:10   8   I was -- I was thinking what was served to me on

15:52:13   9   the day that it was served.  I misunderstood.

15:52:15  10        **MS. HUGGINS:**  I think she's just confused

15:52:17  11   what is a summons and complaint versus

15:52:18  12   interrogatories.

15:52:19  13        **MR. RUPP:**  Oh, okay.  Yeah.  Yeah.

15:52:20  14        **MS. HUGGINS:**  And I don't mean to overstep.

15:52:22  15   Did -- have we met and discussed interrogatories

15:52:24  16   with relation to this case?

15:52:25  17        **THE WITNESS:**  Yes.

15:52:25  18        **MS. HUGGINS:**  Have you reviewed

15:52:26  19   interrogatories and then -- and based on your

15:52:29  20   knowledge, signed off on them?

15:52:30  21        **THE WITNESS:**  Yes.

15:52:31  22        **MS. HUGGINS:**  Is that -- I'm not trying to

15:52:32  23   overstep, but I'm --

*McDermott - Rupp - 2/19/20*

388

15:52:34  1      **MR. RUPP:**  You're doing -- you're doing

15:52:35  2  fine.  Keep going.

15:52:35  3      **MS. HUGGINS:**  I'm trying to cut through.

15:52:36  4      **THE WITNESS:**  Yeah.  I misunderstood.

15:52:39  5  I was -- when you said it, I was thinking the day

15:52:40  6  I was served.

15:52:40  7      **BY MR. RUPP:**

15:52:41  8      **Q.**   I'll tell you exactly why I'm asking.

15:52:43  9  I just don't want a situation where you tell me

15:52:45 10  that you -- you really -- something that was in the

15:52:47 11  interrogatory, you really didn't review it and you

15:52:49 12  really weren't sure, so when you signed and said it

15:52:51 13  was factually true and accurate, you must have

15:52:53 14  missed that one.

15:52:54 15      You read these, you went over them with

15:52:55 16  counsel, and they were true to the best of your

15:52:57 17  knowledge.

15:52:57 18      **A.**   Yes.

15:52:57 19      **Q.**   Okay.  And that's why you signed the

15:52:59 20  form under penalty of perjury.

15:53:01 21      **A.**   Yes.

15:53:02 22      **Q.**   That's all I really kind of needed.

15:53:04 23  Thank you.

*McDermott - Rupp - 2/19/20*

389

15:53:12   1         Okay.  All right.  So I did promise the

15:53:16   2   City's attorney that there was another video that

15:53:20   3   I think was a supplemental disclosure.  I'm just

15:53:22   4   going to show you that.  I think it's from

15:53:24   5   a slightly different camera angle.  And we're going

15:53:28   6   to get that up on the screen in just a second.

15:54:14   7         Okay, Ms. McDermott, I'm going to -- first

15:54:16   8   of all, just to orient us to what we're looking at

15:54:19   9   here, we're back to 10:25 a.m., according to the

15:54:23  10   time stamp -- I'm not asking you to vouch for its

15:54:26  11   accuracy -- on 1/1/2017.

15:54:29  12         It looks like the C District patrol vehicle

15:54:35  13   Tahoe 532 is what's shown in that picture; do you

15:54:39  14   agree with me?

15:54:40  15         **A.**   Yes.

15:54:41  16         **MR. RUPP:**  At the 00 point.

15:54:42  17         So I'm going to start it, and I think you're

15:54:44  18   going to see that vehicle move.  All right.

15:54:49  19         (Video clip played.)

15:54:49  20         **BY MR. RUPP:**

15:54:49  21         **Q.**   And do you know one way or the other

15:54:51  22   whether that was as it's moving away from 33 and

15:54:54  23   37 Schmarbeck, as was seen in the earlier video,

*McDermott - Rupp - 2/19/20*

390

15:54:59  1   when Moriarity and Schultz pulled away first?

15:55:02  2          **A.**   Yes.

15:55:02  3          **Q.**   Okay.  Does that seem to be a different

15:55:05  4   camera angle on the departure of that patrol

15:55:09  5   vehicle from Schmarbeck --

15:55:11  6          **A.**   Yes.

15:55:11  7          **Q.**   -- before it started to back up?  Okay.

15:55:17  8          All right.  And do we now see that vehicle

15:55:20  9   backing up?

15:55:20 10          **A.**   Yes.

15:55:20 11          **Q.**   And do we see Officers Moriarity and

15:55:23 12   Schultz getting out?

15:55:24 13          **A.**   Yes.

15:55:24 14          **Q.**   And I think you said Moriarity was

15:55:27 15   driving, so the guy who got out of the driver's

15:55:30 16   side is this gentleman here?

15:55:31 17          **A.**   Yes.

15:55:31 18          **Q.**   That's Moriarity.

15:55:33 19          And this gentleman who got out of the

15:55:36 20   passenger side is Schultz.

15:55:37 21          **A.**   Yes.

15:55:37 22          **Q.**   Okay.  All right.  Now, we might have

15:55:39 23   a little bit of downtime here for a second, so

*McDermott - Rupp - 2/19/20*

391

15:55:42   1  there's nothing really going on here, so I'm going

15:55:45   2  to fast-forward it.  I don't think any persons come

15:55:48   3  into the screen for a while.

15:55:49   4          Okay.  So now, all right, do we see

15:55:57   5  Mr. Kistner -- we see Earl in the bottom left?

15:55:59   6      **A.**   Yes.

15:55:59   7      **Q.**   And do we see Mr. Kistner being walked

15:56:02   8  back to patrol vehicle 532?

15:56:04   9      **A.**   Yes.

15:56:04  10      **Q.**   Okay.  And which officers are walking

15:56:07  11  him back there?

15:56:10  12      **A.**   That, I -- I believe that is Officer

15:56:14  13  Moriarity and myself and Officer Schultz, and then

15:56:17  14  Officer Schultz breaks away.

15:56:19  15      **Q.**   Okay.

15:56:19  16      **A.**   So then that is Officer Schultz, and

15:56:24  17  then with Mr. Kistner is still myself and Officer

15:56:26  18  Moriarity.

15:56:26  19      **Q.**   Which one are you?  Closest to the

15:56:29  20  camera or furthest away?

15:56:30  21      **A.**   I'm the closer of the two.

15:56:33  22      **Q.**   Okay.  To -- to the vantage point of

15:56:36  23  the viewer.  Okay.

*McDermott - Rupp - 2/19/20*

392

| | | |
|---|---|---|
| 15:56:36 | 1 | **A.**   Yes.  So between the other two |
| 15:56:38 | 2 | officers, I guess. |
| 15:56:39 | 3 | **Q.**   Gotcha.  Okay. |
| 15:56:39 | 4 | So he's being put in the driver's side rear |
| 15:56:43 | 5 | seat; is that correct? |
| 15:56:44 | 6 | **A.**   Yes. |
| 15:56:44 | 7 | **Q.**   Okay.  And I think you told me that was |
| 15:56:46 | 8 | a caged enclosure? |
| 15:56:48 | 9 | **A.**   Yes. |
| 15:56:48 | 10 | **Q.**   So he's put in there.  Is the door |
| 15:56:50 | 11 | closed? |
| 15:56:51 | 12 | **A.**   Yes, I believe so. |
| 15:56:52 | 13 | **Q.**   Okay.  So he can't get out. |
| 15:56:54 | 14 | **A.**   Correct. |
| 15:56:54 | 15 | **Q.**   All right.  So now we see officers |
| 15:56:56 | 16 | coming up to Earl, and we talked about this |
| 15:56:59 | 17 | a little bit before, and I'm just going to play it. |
| 15:57:10 | 18 | I guess I backed up too far. |
| 15:57:12 | 19 | So Schultz gestures towards Earl and |
| 15:57:19 | 20 | approaches him? |
| 15:57:20 | 21 | **A.**   Yes. |
| 15:57:20 | 22 | **Q.**   Okay.  We've seen some of this from |
| 15:57:24 | 23 | another angle. |

*McDermott - Rupp - 2/19/20*

393

| | | |
|---|---|---|
| 15:57:25 | 1 | Earl is walking away.  Schultz grabs him. |
| 15:57:27 | 2 | Do you know why? |
| 15:57:27 | 3 | **A.**   I don't. |
| 15:57:28 | 4 | **Q.**   Okay.  Now, Earl appears to be on the |
| 15:57:31 | 5 | phone, right? |
| 15:57:32 | 6 | **A.**   It appears so. |
| 15:57:33 | 7 | **Q.**   Does Schultz take his phone? |
| 15:57:36 | 8 | Why are they doing this to him? |
| 15:57:37 | 9 | **A.**   I don't know. |
| 15:57:37 | 10 | **MS. HUGGINS:**   Form. |
| 15:57:38 | 11 | **BY MR. RUPP:** |
| 15:57:38 | 12 | **Q.**   Okay.  Did you -- did you intervene or |
| 15:57:41 | 13 | ask them to stop? |
| 15:57:43 | 14 | **A.**   I don't remember. |
| 15:57:44 | 15 | **Q.**   Had the young man done anything? |
| 15:57:47 | 16 | **A.**   I don't remember. |
| 15:57:47 | 17 | **Q.**   Okay.  Well, you're standing right |
| 15:57:49 | 18 | there.  Did you think it was appropriate for the |
| 15:57:53 | 19 | officers to rough up Earl? |
| 15:57:55 | 20 | **MS. HUGGINS:**   Form. |
| 15:57:55 | 21 | **BY MR. RUPP:** |
| 15:57:56 | 22 | **Q.**   We'll watch it again. |
| 15:58:25 | 23 | Did you see Officer Schultz take Earl's |

*McDermott - Rupp - 2/19/20*

394

| | | |
|---|---|---|
| 15:58:28 | 1 | telephone away from him? |
| 15:58:29 | 2 | **A.**   I saw him take something. |
| 15:58:30 | 3 | **Q.**   Do you know why he did that? |
| 15:58:31 | 4 | **A.**   I don't. |
| 15:58:37 | 5 | **Q.**   Is that proper police -- police |
| 15:58:38 | 6 | procedure? |
| 15:58:38 | 7 | **A.**   It would depend on the situation. |
| 15:58:39 | 8 | I -- I don't remember -- |
| 15:58:40 | 9 | **Q.**   What about this situation? |
| 15:58:41 | 10 | **A.**   I don't remember what the conversation |
| 15:58:43 | 11 | was. |
| 15:58:43 | 12 | **Q.**   Okay.  Do you know why they start |
| 15:58:46 | 13 | pulling and pushing Earl? |
| 15:58:47 | 14 | **A.**   I don't. |
| 15:58:48 | 15 | **Q.**   You were standing right there, right? |
| 15:58:50 | 16 | You were watching this? |
| 15:58:51 | 17 | **A.**   Yes. |
| 15:58:51 | 18 | **Q.**   Do you intervene at any time and tell |
| 15:58:55 | 19 | them to stop? |
| 15:58:55 | 20 | **A.**   I don't remember. |
| 15:58:57 | 21 | **Q.**   Officer Schultz was the most senior |
| 15:58:59 | 22 | officer on the scene, right? |
| 15:59:01 | 23 | **A.**   Yes. |

*McDermott - Rupp - 2/19/20*

395

| | | |
|---|---|---|
| 15:59:22 | 1 | **Q.**   Do you know why Officer Schultz went |
| 15:59:25 | 2 | back to the SUV? |
| 15:59:25 | 3 | **A.**   I don't. |
| 15:59:27 | 4 | **Q.**   Do you know if he was running Earl's |
| 15:59:29 | 5 | license? |
| 15:59:29 | 6 | **A.**   He may have been. |
| 15:59:31 | 7 | **Q.**   Would that be police procedure? |
| 15:59:35 | 8 | **A.**   It might be.  I mean, I don't -- |
| 15:59:38 | 9 | **Q.**   To see if he has a warrant or |
| 15:59:39 | 10 | something? |
| 15:59:40 | 11 | **A.**   I -- I don't know why he would have, if |
| 15:59:42 | 12 | that's what he was even doing. |
| 15:59:50 | 13 | **Q.**   Was Earl detained at this point, or was |
| 15:59:52 | 14 | he free to go? |
| 15:59:54 | 15 | **A.**   From what I'm watching, it appears he's |
| 15:59:56 | 16 | free to go, but I don't remember. |
| 15:59:59 | 17 | **Q.**   Do you know if he had been given back |
| 16:00:00 | 18 | his possessions? |
| 16:00:01 | 19 | **A.**   I don't know. |
| 16:00:03 | 20 | **Q.**   Do you know why they were taken from |
| 16:00:04 | 21 | him? |
| 16:00:05 | 22 | **A.**   I do not. |
| 16:00:16 | 23 | **Q.**   Do you know if at this point or by this |

*McDermott - Rupp - 2/19/20*

396

| | | |
|---|---|---|
| 16:00:17 | 1 | point Mr. Kistner had complained of being injured? |
| 16:00:20 | 2 | **MS. HUGGINS:**  Form. |
| 16:00:20 | 3 | **THE WITNESS:**  I don't remember. |
| 16:00:21 | 4 | **BY MR. RUPP:** |
| 16:00:23 | 5 | **Q.**   Do you know why it took -- why there |
| 16:00:25 | 6 | was this delay in taking him to the hospital? |
| 16:00:27 | 7 | **A.**   I don't know. |
| 16:00:30 | 8 | **Q.**   Do you think he should have been taken |
| 16:00:32 | 9 | to the hospital? |
| 16:00:33 | 10 | **A.**   I don't remember what the conversation |
| 16:00:36 | 11 | was or if he had complained of injury yet.  I don't |
| 16:01:16 | 12 | remember. |
| 16:01:16 | 13 | **Q.**   Do you remember anything Earl said? |
| 16:01:18 | 14 | **A.**   I don't. |
| 16:01:20 | 15 | **Q.**   Do you remember anything that was said |
| 16:01:21 | 16 | by anyone to Earl? |
| 16:01:22 | 17 | **A.**   I don't remember. |
| 16:01:23 | 18 | **Q.**   Did you speak to Earl? |
| 16:01:26 | 19 | **A.**   I may have.  I don't remember. |
| 16:01:29 | 20 | **Q.**   Okay.  Did you see on officer returning |
| 16:01:34 | 21 | some items to Earl? |
| 16:01:34 | 22 | **A.**   Yes. |
| 16:01:35 | 23 | **Q.**   Do you know which officer that was? |

*McDermott - Rupp - 2/19/20*

397

| | | |
|---|---|---|
| 16:01:36 | 1 | **A.**   Could you go back?  I think it was |
| 16:01:39 | 2 | Moriarity walked back from the patrol vehicle. |
| 16:01:43 | 3 | Moriarity. |
| 16:01:52 | 4 | **Q.**   Is that the one with the hat? |
| 16:01:54 | 5 | **A.**   Yes. |
| 16:01:54 | 6 | **Q.**   Okay.  Are you in this picture? |
| 16:02:17 | 7 | **A.**   I think that's Officer Velez. |
| 16:02:20 | 8 | **Q.**   Do you know what's being discussed? |
| 16:02:22 | 9 | **A.**   I don't. |
| 16:02:30 | 10 | **Q.**   Who's that gesturing and looking back |
| 16:02:34 | 11 | south on Scharmbeck? |
| 16:02:36 | 12 | **A.**   I think it's Officer Velez. |
| 16:02:46 | 13 | **Q.**   Did you ever see Officer Moriarity |
| 16:02:48 | 14 | writing something down?  Writing a note? |
| 16:02:53 | 15 | **A.**   You'd have to play it again. |
| 16:02:56 | 16 | **Q.**   Well, do you remember seeing that at |
| 16:02:57 | 17 | the scene? |
| 16:02:58 | 18 | **A.**   I don't remember it from that day. |
| 16:03:03 | 19 | **Q.**   Do you remember having any -- any |
| 16:03:05 | 20 | conversations with anybody in the home at |
| 16:03:08 | 21 | 37 Scharmbeck? |
| 16:03:12 | 22 | **A.**   I don't believe I ever went inside. |
| 16:03:13 | 23 | **Q.**   Well, I didn't ask you that. |

*McDermott - Rupp - 2/19/20*

398

| | | |
|---|---|---|
| 16:03:15 | 1 | Did anybody call out the window or purport |
| 16:03:20 | 2 | to speak to the officers on the street from |
| 16:03:22 | 3 | 37 Scharmbeck? |
| 16:03:23 | 4 | **A.**   I believe a woman yelled out the |
| 16:03:25 | 5 | window, but I don't remember if I was the one that |
| 16:03:26 | 6 | responded or not. |
| 16:03:27 | 7 | **Q.**   Do you remember what she said? |
| 16:03:28 | 8 | **A.**   I don't. |
| 16:03:30 | 9 | **Q.**   Do you remember anybody saying that you |
| 16:03:32 | 10 | were on camera? |
| 16:03:34 | 11 | **A.**   I remember knowing that there was |
| 16:03:37 | 12 | a camera.  I just don't remember how that |
| 16:03:40 | 13 | information was told to me.  If she yelled that or |
| 16:03:43 | 14 | if someone else said it that day, I -- I don't |
| 16:03:46 | 15 | remember, but I remember it being told to me. |
| 16:03:51 | 16 | **Q.**   Do you have an opinion about |
| 16:03:53 | 17 | surveillance cameras? |
| 16:03:56 | 18 | **A.**   No. |
| 16:04:14 | 19 | **Q.**   In the upper left-hand corner, we see |
| 16:04:16 | 20 | some officers.  Do you know what's being discussed? |
| 16:04:18 | 21 | **A.**   No. |
| 16:04:19 | 22 | **Q.**   Do you have any recollection, from the |
| 16:04:20 | 23 | time Mr. Kistner was placed in the 532 patrol |

*McDermott - Rupp - 2/19/20*

399

| | | |
|---|---|---|
| 16:04:24 | 1 | vehicle, what any officers were discussing with |
| 16:04:26 | 2 | each other? |
| 16:04:27 | 3 | **A.**   No. |
| 16:05:02 | 4 | **Q.**   Do you know why Mr. Kistner is not |
| 16:05:04 | 5 | being transported to the hospital? |
| 16:05:05 | 6 | **A.**   I don't. |
| 16:05:08 | 7 | **Q.**   Is this type of delay usual? |
| 16:05:12 | 8 | **MS. HUGGINS:**   Form. |
| 16:05:13 | 9 | **THE WITNESS:**   It would depend on the |
| 16:05:15 | 10 | situation. |
| 16:05:16 | 11 | **BY MR. RUPP:** |
| 16:05:17 | 12 | **Q.**   Would the situation be that you were |
| 16:05:19 | 13 | all talking to each other to get your stories |
| 16:05:20 | 14 | straight? |
| 16:05:21 | 15 | **MS. HUGGINS:**   Form. |
| 16:05:21 | 16 | **THE WITNESS:**   No. |
| 16:05:56 | 17 | **BY MR. RUPP:** |
| 16:05:56 | 18 | **Q.**   Are you shown in the picture as it |
| 16:05:58 | 19 | reads at 10:34:12? |
| 16:06:00 | 20 | **A.**   Am I shown? |
| 16:06:01 | 21 | **Q.**   Yeah. |
| 16:06:01 | 22 | **A.**   I'm not sure if that's -- I think that |
| 16:06:03 | 23 | might be Officer Velez up in the left-hand corner. |

*McDermott - Rupp - 2/19/20*

400

16:06:09  1    I can't tell if that's her or me.

16:06:09  2         **Q.**   Okay.

16:06:15  3         **A.**   I think that's Officer Velez.

16:06:53  4         **MR. RUPP:**   All right.   Thank you,

16:06:54  5    Ms. McDermott.   I have no further questions.

16:07:11  6         **MS. HUGGINS:**   I have no questions.

16:07:13  7         **MR. RUPP:**   Okay.   We're done.

8         (Proceedings of 2/19/20 were then concluded

9    at 4:07 p.m.)

10                        *    *    *

11

12

13

14

15

16

17

18

19

20

21

22

23

401

 1        I hereby CERTIFY that I have read the

 2   foregoing 400 pages, and that except as to those

 3   changes (if any) as set forth in an attached errata

 4   sheet, they are a true and accurate transcript of

 5   the testimony given by me in the above entitled

 6   action on February 19, 2020.

 7

 8

 9                    ------------------------
                      LAUREN McDERMOTT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

402

```
 1  STATE OF NEW YORK)

 2                      ss:

 3  COUNTY OF ERIE   )

 4

 5       I DO HEREBY CERTIFY as a Notary Public in and

 6  for the State of New York, that I did attend and

 7  report the foregoing deposition, which was taken

 8  down by me in a verbatim manner by means of machine

 9  shorthand.  Further, that the deposition was then

10  reduced to writing in my presence and under my

11  direction.  That the deposition was taken to be

12  used in the foregoing entitled action.  That the

13  said deponent, before examination, was duly sworn

14  to testify to the truth, the whole truth and

15  nothing but the truth, relative to said action.

16

17

18                      ---------------------------
19                      ANNE T. BARONE, RPR,
                        Notary Public.
20

21

22

23
```