**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**JAMES C. KISTNER,**

**Plaintiff,**


**v.**


**THE CITY OF BUFFALO, BRYON LOCKWOOD, DANIEL DERENDA, LAUREN**
**MCDERMOTT, JENNY VELEZ, KARL SCHULTZ, KYLE MORIARTY, DAVID T.**
**SANTANA, ANTHONY MCHUGH, JOHN DOE(S)**

**Defendants.**

_____


**Case No.: 18-CV-402**


---


**MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**


---


TIMOTHY A. BALL, ESQ.
Corporation Counsel
*Attorneys for Defendants*

By: Maeve E. Huggins
Assistant Corporation Counsel
1112 City Hall : 65 Niagara Square
Buffalo, New York 14202
Tel.: (716) 851-4317
Fax.: (716) 851-4105
E-mail: mhuggins@city-buffalo.com

1

## PRELIMINARY STATEMENT

Generally, Plaintiff, James C. Kistner (hereinafter "Plaintiff"), claims that the Defendants violated his Constitutional rights, specifically his First, Fourth, and Fourteenth Amendment rights, as well as caused him physical injury during an January 1, 2017 interaction with Buffalo Police Department (hereinafter "BPD") officers that resulted in his arrest.  *See* Dkt. No. 61.  Plaintiff moved for partial summary judgment against Lauren McDermott (hereinafter "McDermott"), Jenny Velez (hereinafter "Velez"), Karl Schultz (hereinafter "Schultz"), Kyle Moriarity (sued incorrectly here as "KYLE MORIARTY"; hereinafter "Moriarity") as to his federal and state law false arrest, false imprisonment, and malicious prosecution claims on the grounds that officers did not have probable cause, or at a minimum arguable probable cause, to arrest and charge Plaintiff (Dkt. No. 68).  The Defendants respectfully submit this memorandum of law in opposition.

The Defendants previously moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to certain claims and for summary judgment pursuant to Fed. R. Civ. P. 56 as to the remaining claims (Dkt. No. 69).  The Defendants specifically incorporate by reference all arguments asserted in these moving papers.  Based upon the record and settled law, Plaintiff is unable to meet his burden for partial summary judgment because probable cause, or at a minimum arguable probable cause, supported his January 1, 2017 arrest and charges, as explained in the Defendants' moving papers.  Therefore, the Defendants respectfully request this Court to deny Plaintiff's partial summary judgment motion.

## <u>PLAINTIFF'S STATEMENT OF FACTS AND SUPPORTING PAPERS</u>

Plaintiff apparently failed to file a statement of facts in conjunction with his motion for partial summary judgment.  L.R.Civ.P. 56(a)(1).  In an effort to meet the heavy burden for partial summary judgment, Plaintiff submitted the Affidavit of his purported expert Dr. Jennifer L. Yaek along with her report and its accompanying exhibits.  Such affidavit and report provides little relevance to the determinative issues on summary judgment.

Where an expert report is included in a summary judgment motion, it is appropriate for the court to decide the admissibility of the expert opinion.  *Houser v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 470, 475 (W.D.N.Y. 2017).  "An expert's opinions that are without factual basis and are based on speculation or conjecture are inappropriate material for consideration on a motion for summary judgment," and are "[a]n expert's conclusory opinions."  *Id.* (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (internal quotation marks omitted).  To assess the reliability of an expert's opinion, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand."  *Id.* (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)).

Dr. Yaek's report is unreliable because it is premised on an incomplete review of the evidence.  She did not review Plaintiff's medical records, in which Attending Physician Dr. Anthony Billittier noted that Plaintiff "stated he thinks he slipped on ice." Ex. E at 9.  The police vehicles were not identical to the 2015 Chevy Tahoe exemplar utilized by Dr. Yaek.  Instead, the police vehicles were modified in a variety of ways

documented on the vehicles' purchase orders.  Ex. L.  Dr. Yaek did not physically inspect the scene or actual vehicles involved much less take into account these modifications in setting up her experiment or rendering her conclusions.  Her experiment to investigate Schultz's ability to observe failed to account for police vehicle's modifications, Schultz's weight, and the impact that his police uniform, duty belt, and equipment would have altered the positioning of his body in the vehicle.  Nor were the male exemplars used in the experiment outfitted in the police uniform, duty belt, and other equipment that Schultz wore during the subject incident.  Finally, Dr. Yaek's conclusions were formed from what Plaintiff terms as "estimates."  Dkt. No. 68-5 at 11.  Accordingly, Dr. Yaek's affidavit and report must be excluded for the purposes of this motion.  *Houser*, 264 F.Supp. 3d at 477-78; *Major League Baseball Props., Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); *Buckley v. Deloitte & Touche USA LLP*, 888 F.Supp.2d 404, 413 (S.D.N.Y. 2012) (finding that the expert failed to provide factual foundation and based opinion on conjecture); *Macaluso v. Herman Miller, Inc.*, No. 01-CIV-11496 (JGK), 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005) (finding that the expert's analysis was based on incorrect factual assumptions that made his conclusions speculative).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  In making this determination, the court must resolve all ambiguities and draw all inferences against the moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A party moving for Summary Judgment bears a heavy burden.  "[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  As the Second Circuit noted in *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003), summary judgment is not always appropriate:

> [C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.  If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE DENIED

Applying the settled standard of review and applicable Federal Rules of Civil Procedure and Evidence, the Defendants respectfully request that Plaintiff's motion for partial summary judgment be denied.  Plaintiff's motion essentially relied only on the unsound conclusions of his expert while discounting the testimony of the Plaintiff and officers alike.  The complete record before this Court is insufficient to grant partial summary judgment in favor of the Plaintiff on the issues of probable cause and qualified immunity.  Instead, when viewed in the light most favorable to the Defendants, the record supports that Plaintiff's Constitutional rights were not violated or that at a minimum probable cause existed to arrest and charge Plaintiff for criminal mischief.

I.     **PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE HE FAILED TO FILE A STATEMENT OF FACTS IN SUPPORT OF HIS PARTIAL SUMMARY JUDGMENT MOTION.**

The Local Rules of Civil Procedure for the Western District of New York require that the moving party annexed a statement of material facts that a "moving party contends there is no genuine issue to be tried" to the notice of motion.  L.R.Civ.P. 56(a)(1).  The rules warn that "[f]ailure to submit such a statement may constitute grounds for denial of the motion."  *Id.*  Plaintiff failed to file such statement of facts in support of his motion.  The Defendants further object to the extent that Plaintiff makes reference to purported facts in his memorandum of law.  Accordingly, Plaintiff's motion should be denied for failure to conform to the local rules governing summary judgment motions.

## II.     THE MATERIAL FACTS IN THE RECORD DO NOT BLATANTLY CONTRADICT OFFICER TESTIMONY.

At times, Plaintiff mischaracterized authority and the record[1] as well as overlooked facts.  He largely relied on his interpretation of video surveillance taken at a height and distance from the events depicted and his expert's conclusions based upon an incomplete review of the available evidence.  After all, Plaintiff, himself, has no "visual recollection" of the vehicle striking him.  Ex. D at 91.

The video surveillance submitted originated apparently from cameras affixed to third floor eaves of 37 Schmarbeck Avenue, down the street from the location of the contact.  Ex. D at 10, 14.  An individual named "Gary" retrieved only portions of video

---

[1] Plaintiff misstated even basic facts.  For example, he claimed to be transported to the Erie County Holding Center.  Dkt. No. 68-5 at 13.  No evidence in the record indicates that officers transported Plaintiff to the Holding Center because they simply did not.  Similarly, Officer Velez completed only a request for mental health evaluation.  Ex. B at 9; Ex. E at 29.  Police officers have no authority to admit an individual to a hospital.  Ex. F at 331-2.  Plaintiff's claim that "attempted to have him admitted to the psychiatric ward at Erie County Medical Center for involuntary psychiatric treatment" (Dkt. No. 68-1 at 2) is inaccurate.

footage from the system.  Ex. D at 12.  The video contains no audio and does not show the perspective of any individual on the street at the time of the events.  Nor does the video depict the same angle or side of the vehicle where the contact is made.

Plaintiff overstated the Supreme Court's reasoning in *Scott v. Harris*, 550 U.S. 372, 379-380 (2007) and its applicability here.  When the record is distilled to the material undisputed facts, the officers' testimony is not blatantly contradicted.  It is undisputed that McDermott parked her police vehicle outside of 33 Schmarbeck when backing up Moriarity and Schultz on a 911 call unrelated to Plaintiff.  Ex. D at 75, 83; Ex. F at 144, 147; Ex. G at 153; Ex. H at 90, 92; Ex. I at 82-83.  Plaintiff approached McDermott's police vehicle by jaywalking across Schmarbeck Avenue.  Dkt. No. 61 ¶60; Ex. C at 34; Ex. D at 84, 86; Ex. F at 104.  She did not roll down her window, say anything to Plaintiff, or summons him to her vehicle.  Ex. C at 39.  McDermott observed Plaintiff walk towards the vehicle's driver's side without stopping.  Ex. F at 103-105, 162.  Plaintiff extended his hands and closed his eyes.  Ex. D at 90; Ex. F at 158, 160, 162; Ex. H at 97, 207. His hands came into contact with the vehicle.[2]  Ex. C at 39; Ex. F at 95-97, 163-164; Ex. H at 97.  When distilled, the testimony is not wholly contradicted or utterly discredited by this video.  Therefore, no basis in the law exists to disregard officer testimony.

## III.   PLAINTIFF IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE THE DEFENDANTS DID NOT VIOLATE HIS FOURTH AMENDMENT RIGHTS.

---

[2] Plaintiff termed McDermott's operation as negligent.  Dkt. No. 68-5 at 1, 5.  However, he did not move for summary judgment on any negligence claim and the Defendants specifically deny that legally conclusory allegation.  Instead, the Defendants moved for summary judgment (Dkt. No. 69) as the record demonstrates that Plaintiff did not sustain a serious injury within the meaning of New York Insurance Law §5102(d).  *See* Ex. E.

Plaintiff moved for partial summary judgment on his 42 U.S.C. §1983 (hereinafter "Section 1983") and state law false arrest, false imprisonment, and malicious prosecution claims (Dkt. No. 68).  However, the record before this Court demonstrates that Plaintiff suffered no Fourth Amendment violation when arrested and charged with criminal mischief for the January 1, 2017 events.

A.     **False imprisonment claims**

Plaintiff plainly did not plead a false imprisonment claim in his Notice of Claim (Dkt. No. 68-2 at 2-4).  Therefore, he cannot proceed on his state law false imprisonment claim because he failed to comply with the pleading requirements of New York General Municipal Law,[3] much less be granted partial summary judgment as to this claim. *Gonzalez v. Povoski*, 149 A.D.3d 1472, 1474 (4th Dep't 2017); *Summers v. Cty. of Monroe*, 147 A.D.2d 949, 951 (4th Dep't 1989); *accord Mazzilli v. Cty. of N.Y.*, 154 A.D.2d 355, 356 (2d Dep't 1989); *Moore v. County of Rockland*, 192 A.D.2d 1021, 1023 (3d Dep't 1993); *see also Garcia v. O'Keefe*, 34 A.D.3d 334, 335 (1st Dep't 2006); *Davis v. City of New York*, 153 A.D.3d 658, 661 (2d Dep't 2017).  Notwithstanding the arguments below, Plaintiff's motion must be denied as to his state law false imprisonment claim and his Section 1983 false imprisonment claim fails for the same reasons as his false arrest claims, as explained below.

B.     **Section 1983 liability**

---

[3] The Defendants moved to dismiss Plaintiff's state law false imprisonment claim due to his failure to comply with New York General Municipal Law.  Dkt. No. 69.

Section 1983 provides a remedy to parties allegedly deprived of their federal rights by government officials acting under color of law.  The statute is not itself a source of substantive rights.  Section 1983 vindicates federal rights elsewhere conferred.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "To state a valid claim under [Section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997).  Section 1983 liability must be based on the personal involvement of a defendant in the alleged constitutional violation.  *See Spavone v. New York State Dep't. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013).

C.     **False arrest claims**

A Section 1983 false arrest/imprisonment claim is brought to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures.  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).  A plaintiff must show that: "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *see also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).  A Section 1983 and state law false arrest claim are analyzed the same.  *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012).  The two claims are essentially synonymous.  *Weyant*, 101 F.3d at 853.

An arrest is justified if the arresting officer had probable cause to believe that the suspect committed a crime. *Coyle v. Coyle*, 302 F. Supp. 2d 3, 7 (E.D.N.Y. 2004). Because it constitutes justification, the existence of probable cause "is a complete defense to an action for false arrest," *Weyant*, 101 F.3d at 852, even where the plaintiff was ultimately cleared of all charges. *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001). Analyzing a false arrest claim requires a probable cause determination:

> [A] claim for false arrest turns only on whether probable cause or arguable probable cause existed to arrest a defendant, meaning that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually involved by the arresting officer at the time of arrest. Stated another way, the relevant inquiry turns on the validity of the arrest, not the validity of each individual criminal charge.

*Al-Mohammedi v. City of Buffalo*, 2017 WL 163388, at *6 (W.D.N.Y. 2017) (internal quotation marks and citations omitted). Probable cause does not require "absolute certainty," *see Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003), or "the same type of specific evidence of each element of the offense as would be needed to support a conviction," *see Adams v. Williams*, 407 U.S. 143, 149 (1972). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983).

Probable cause to arrest or detain exists "when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007); *see also Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). Probable cause is a fluid determination

based on "the assessment of probabilities in a particular factual context" given the totality of circumstances. *Gates*, 462 U.S. at 232-33. Officers may rely on "those facts available to the officer at the time of the arrest and immediately before it," *Panetta v. Crowley*, 460 F.3d 388, 295 (2d Cir. 2006), and they are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Determining probable cause is a discretionary act within an officer's official capacity. *Espinoza*, 2012 WL 4761565, at *4; *Hunter*, 502 U.S. 224. To determine whether probable cause existed for an arrest, courts "assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006). "The probable cause determination is objective; it should be made without regard to the officer's subjective motives or belief as to the existence of probable cause." *Picard v. Torneo*, 3:16cv1564 (WWE), 2019 WL 4933146, at *2 (D. Conn. Oct. 4, 2019); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause," and therefore, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153 (citations omitted).

Probable cause "exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being

committed by the person to be arrested." *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004); *Hoyos v. City of New York*, 999 F. Supp.2d 375, 386 (E.D.N.Y. 2013). Probable cause "does not demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false. It requires only facts sufficient to establish the sort of 'fair probability' on which reasonable and prudent people, not legal technicians, act." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013).

Importantly, "a claim for false arrest turns only on whether probable cause or arguable probable cause existed to arrest a defendant, meaning that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually involved by the arresting officer at the time of arrest. Stated another way, the relevant inquiry turns on the validity of the arrest, not the validity of each individual criminal charge." *Al-Mohammedi v. City of Buffalo*, 2017 WL 163388, at *6 (W.D.N.Y. 2017) (internal quotation marks and citations omitted). Indeed, if probable cause existed for an uncharged offense, that will defeat a false arrest claim. *Jaegly v. Couch*, 439 F.3d 149, 12-54 (2d Cir. 2006) (citing *Devenpeck*, 543 U.S. 146).

The facts known to the officers on January 1, 2017 are not in dispute. Therefore, probable cause can be decided as a matter of law. *See Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017); *Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *5 (E.D.N.Y. Sept. 27, 2013). The relevant probable cause inquiry is based upon the information known to the officers. *See Panetta*, 460 F.3d at 395.

Ample probable cause existed.  McDermott did not appreciate the incident to be a motor vehicle accident.  Ex. F at 198.  On the contrary, she perceived the contact between her patrol vehicle and Plaintiff to be the result of him walking into the vehicle and observing damages where his hands made contact.   Ex. F at 102-104, 313; *see* P.L. §145.05(2); *Gates*, 462 U.S. at 232-33.  Prior to contact, McDermott observed Plaintiff walk towards the driver's side of the patrol vehicle without stopping.  Ex. F at 103-105, 162; *see* P.L. §15.05(1); *People v. Cooper*, 50 A.D.3d 1570, 1571 (4th Dep't 2008) ("A defendant may be presumed to intend the natural and probable consequences of his actions . . . and intent may be inferred from the totality of conduct of the accused.").

This perception was supported by Schultz's observations.  Ex. H at 95.  While Moriarity does not recall his personal observations of the contact, he does remember immediately thereafter discussing his impression with Schultz.  Ex. I at 113.  The officers immediately contacted their supervisor to relay these events.  Ex. F at 197, 202-203; Ex. H at 115-117; Ex. I at 155; Ex. J at 46, 108, 110-111.

This arrest was not the product of some conspiratorial efforts to divert any outside inquiry.  *Picard*, 3:16cv1564 (WWE), 2019 WL 4933146, at *2; *see also Whren*, 517 U.S. at 813. Whether Plaintiff perceived the situation differently has no bearing on what the officers observed or knew for their probable cause determination.   *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir. 1996) ("[P]robable cause for an arrest must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest, not on the basis of what the arrested party believed to be happening.").  Nor is the video footage of any moment to the officers' on scene probable

cause determination.  There is no evidence in the record that the video footage was provided or accessible to the officers while on scene.  Moreover, officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Ricciuti*, 124 F.3d at 128.  Instead, the salient facts for determining probable cause are those as understood by McDermott.  *See Panetta*, 460 F.3d at 395.  Therefore, probable cause supported Plaintiff's arrest.  Ex. B at 5; Ex. F at 285.

    **C.**    **Malicious prosecution claims**

The standards for federal and New York malicious prosecution claims are substantially similar.  *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).  To prove a Section 1983 malicious prosecution claim, a plaintiff must prove: "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice."  *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir 1991); *Mejia v. City of N.Y.*, 119 F.Supp.2d 232, 253-54 (E.D.N.Y. 2000).  A state law malicious prosecution claim does not require proof of a post-arraignment seizure."  *Swartz. v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).

Proof beyond a reasonable doubt is not necessary to charge.  The existence of probable cause is a complete defense to malicious prosecution.  The relevant probable cause determination "is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced."  *Mejia*, 119 F.Supp.2d at 254.  "If probable cause exists at the time of the arrest, it continues to exist at the time of the prosecution unless undermined by the discovery of some intervening fact . . .

notwithstanding the ultimate, and favorable, dismissal of charges." *Skeene*, 2016 WL 927182, at *3. For the reasons stated above, probable cause supported the arrest of Plaintiff for criminal mischief based upon the officers' observations. The record is devoid of any evidence that the officers provided testimony or other evidence to a prosecutor. Ex. C at 89, 90. Nor is there any evidence that the officers withheld any *Brady* materials from the District Attorney's Office. It was the District Attorney's Office who continued the criminal proceeding following the initial filing of charges.

Moreover, Schultz, Moriarity, and Velez lack the requisite personal involvement to sustain either a Section 1983 or state law malicious prosecution claim. *See Spavone*, 719 F.3d at 135; *Colon*, 58 F.3d at 873; *Leibovitz*, 2018 WL 1157872, at *13, n. 16. The record is clear that McDermott alone signed on the charges. Ex. B; *See Givans v. Jefferson County Sheriff's Office*, 2015 WL 13540492, *10 (N.D.N.Y. 2015) ("[a]n officer who does sign not a charging document, and does not otherwise provide a basis for the plaintiff's prosecution such as by testifying before a grand jury, providing information to be used in a criminal complaint, or providing testimony to the prosecutor, cannot be held liable for malicious prosecution"). Wholly separate, the request for mental health examination pursuant to Mental Hygiene Law §9.41 played no role in the criminal proceeding. Velez submitted it to Erie County Medical Center only, not the District Attorney's Office or criminal court. *See* Ex. B at 10. The form is not sworn under penalty of perjury. *Id.* Therefore, Plaintiff's motion for summary judgment as to the malicious prosecution claims must be denied.

## IV.   PLAINTIFF DID NOT MEET HIS BURDEN FOR PARTIAL SUMMARY JUDGMENT TO DISMISS THE OFFICERS' QUALIFIED IMMUNITY DEFENSE.

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Qualified immunity provides a broad shield and a deliberately forgiving standard of review. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.*

When a case concerns the defense of qualified immunity, the court considers only the facts that were known to the defendant officers. *White v. Pauly*, _ U.S. _, 137 S. Ct. 548, 550 (2017). When the facts known to the officers are undisputed, "the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is a question of law better left for the court to decide." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (internal quotation marks omitted), citing *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("where the factual records is not in serious dispute . . . [it] is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible").

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d. Cir. 2008); *see Pearson v. Callahan*, 555 U.S. 223 (2009); *Reichle v. Howards*, 566 U.S. 658 (2012).

16

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White*, 137 S. Ct. at 551; *Stephenson*, 332 F.3d at 76. For a right to be clearly established, a case directly on point is not necessary. However, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted). Therefore, "[t]he relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stephenson*, 332 F.3d at 76 (internal quotation omitted). A defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to [] the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (internal quotation and punctuation omitted); *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1998) (officers entitled to qualified immunity only if it was objectively reasonable for them to believe that their conduct did not violate the Fourth Amendment).

Officials are entitled to qualified immunity when "their decision was reasonable, even if mistaken" and the doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal citations and quotation marks omitted); *Wierzbic v. Howard*, 331 F.R.D. 32, 53 (W.D.N.Y. 2019), aff'd, 836 F. App'x 31 (2d Cir. 2020). In sum, police officers are

entitled to qualified immunity "if the question whether the officers would be violating rights is one on which officers of reasonable competence could disagree." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009) (internal quotation marks omitted). Stated differently, there is no immunity only if "no officer of reasonable competence would conclude that the conduct in question is lawful . . . ." *Id.* "Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Lennon*, 66 F.3d at 421.

In the context of false arrest/imprisonment and malicious prosecution claims, qualified immunity applies where arguable probable cause exists. Regarding probable cause determinations, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest - that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007).

Whether an officer is entitled to qualified immunity on the basis of probable cause should be decided as a matter of law, provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013). Because qualified immunity protects officers who reasonably believe their conduct to be lawful, the existence of "arguable probable cause" establishes a qualified immunity defense. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *Leibovitz*, 2018 WL 1157872, at *11; *see also Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ("[I]n situations where an officer may have reasonably but mistakenly concluded

18

that probable cause existed, the officer is nonetheless entitled to qualified immunity."
(citing *Lennon*, 66 F.3d at 423)).   Arguable probable cause exists "if either (a) it was
objectively reasonable for the officer to believe that probable cause existed, or (b) officers
of reasonable competence could disagree on whether the probable cause test was met."
*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (citations omitted); *Leibovitz*,
2018 WL 1157872, at *11; *Jackson*, 939 F. Supp. 2d at 255 (internal quotation marks
omitted); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *Markman v. City of New York*,
2015 WL 6643096, at *1 (2d Cir. 2015).   "[E]ven if an officer is mistaken, and the arrestee
did not commit the crime, the officer will not be held liable if he acted reasonably and in
good faith."  *Washpon v. Pharr*, 561 F.Supp.2d 394, 403 (S.D.N.Y. 2008).

Based upon the totality of circumstances, it was objectively reasonable for the
defendant officers to believe that probable cause existed, or alternatively, officers of
reasonable competence could disagree on whether probable cause existed, as described
above.  The record demonstrates that the officers were entitled to qualified immunity,
and therefore, Plaintiff's motion for partial summary judgment must be denied.   The
information known to the officers on Schmarbeck Avenue is not in dispute.  Based upon
the observations of McDermott, Velez, Schultz, and Moriarity, it would not be clear to a
reasonable officer that their conduct was unlawful in the situation they confronted.
*Stephenson*, 332 F.3d at 76 (internal quotation omitted).  Based upon the manner in which
the incident occurred, these officers reasonably believed that Plaintiff deliberately came
into contact with McDermott's patrol vehicle when he walked without stopping as the
vehicle began to leave (Ex. F at 103-105, 162; Ex. H at 95) and caused damage (Ex. F at 121;

Ex. G at 200-201; Ex. H at 117-118.).  Given the totality of January 1, 2017 incident on Schmarbeck Avenue, it was objectively reasonable for the officers to believe that their actions did not violate clearly established law.  *Washpon*, 561 F.Supp.2d at 403.  Therefore, the officers are entitled to qualified immunity.  *See Leibovitz*, 2018 WL 1157872, at *7.

Plaintiff's motion to summary judgment as to qualified immunity focused on a speculative conspiracy of which no evidence exists in the record.  To argue that by arresting Plaintiff, transporting him to the hospital and central booking, as well as initiate a criminal proceeding in which they could be called upon to meet with District Attorney's Office or testify would somehow cover up or conceal these events is bizarre. Such actions undoubtedly did not hide this event and the officers did not intend them to do so. Instead, they were taking reasonable acts in good faith based upon their perception and knowledge of the events. Based upon the record, Plaintiff has not shown that when the facts are viewed in the light most favorable to the Defendants that Plaintiff is entitled to partial summary judgment.  Accordingly, his motion for partial summary judgment to dismiss the officers' defense of qualified immunity must be denied.

## CONCLUSION

The Defendants respectfully request that this Court deny Plaintiff's motion for partial summary judgment pursuant to Fed. R. Civ. P. Rule 56, award costs in defending this action, and for such other and further relief that this Court deems necessary, just, and proper.

Dated:  May 14, 2021
     Buffalo, New York

Timothy A. Ball, Esq.
Corporation Counsel
*Attorney for Defendants*

By:    <u>*/s/ Maeve E. Huggins*</u>
Maeve E. Huggins
Assistant Corporation Counsel
1112 City Hall
65 Niagara Square
Buffalo, New York 14202
Telephone: (716) 851-4317
Facsimile: (716) 851-4105
E-Mail: mhuggins@city-buffalo.com