*Velez - Davenport - 02/26/2020*

120

| | | |
|---|---|---|
| 12:13:44 | 1 | they had to backfill cars with -- like our side |
| 12:13:47 | 2 | would have been the training side, but because |
| 12:13:50 | 3 | there was a manpower issue additional units were |
| 12:13:52 | 4 | needed, so I was just given this call sign. |
| 12:13:58 | 5 | Q.   How often -- |
| 12:13:58 | 6 | A.   To backfill. |
| 12:13:58 | 7 | Q.   Oh, I'm sorry.  How often do you have |
| 12:14:00 | 8 | double-up days? |
| 12:14:01 | 9 | A.   Every two weeks. |
| 12:14:01 | 10 | Q.   Okay. |
| 12:14:04 | 11 | A.   Once every two weeks. |
| 12:14:05 | 12 | Q.   Do you receive training once every two |
| 12:14:08 | 13 | weeks? |
| 12:14:08 | 14 | A.   Sometimes we do, sometimes we don't. |
| 12:14:11 | 15 | Q.   How often on double-up days do you |
| 12:14:16 | 16 | receive training? |
| 12:14:17 | 17 | A.   I don't recall. |
| 12:14:19 | 18 | Q.   If you don't receive training, what |
| 12:14:22 | 19 | else would you be doing? |
| 12:14:23 | 20 | A.   We would backfill cars or fulfill a |
| 12:14:28 | 21 | different assignment, whether it be work the desk, |
| 12:14:30 | 22 | do a foot patrol. |
| 12:14:37 | 23 | Q.   Okay.  Now, it says patrol C4; do you |

*Velez - Davenport - 02/26/2020*

121

| | | |
|---|---|---|
| 12:14:45 | 1 | see that? |
| 12:14:45 | 2 | A.   Yes. |
| 12:14:46 | 3 | Q.   What does C4 refer to? |
| 12:14:49 | 4 | A.   The sector, Charlie District four |
| 12:14:55 | 5 | sector. |
| 12:14:55 | 6 | Q.   So C would refer to Charlie District? |
| 12:14:58 | 7 | A.   Uh-huh. |
| 12:14:59 | 8 | Q.   And then four is that's a smaller |
| 12:15:04 | 9 | sector within Charlie? |
| 12:15:04 | 10 | A.   Yes. |
| 12:15:05 | 11 | Q.   Okay.  Was that typically what you were |
| 12:15:08 | 12 | assigned to was the fourth district within Charlie |
| 12:15:12 | 13 | District? |
| 12:15:12 | 14 | MS. HUGGINS:   Form. |
| 12:15:12 | 15 | BY MR. DAVENPORT: |
| 12:15:12 | 16 | Q.   Or, I'm sorry, strike that. |
| 12:15:13 | 17 | Was that typically what you were assigned to |
| 12:15:17 | 18 | was the fourth part of the Charlie District? |
| 12:15:20 | 19 | A.   No. |
| 12:15:21 | 20 | Q.   Okay.  Where were you typically, what |
| 12:15:25 | 21 | part were you typically assigned to? |
| 12:15:27 | 22 | A.   The three sector. |
| 12:15:29 | 23 | Q.   The three sector.  Do you know why you |

*Velez - Davenport - 02/26/2020*

122

| | | |
|---|---|---|
| 12:15:31 | 1 | were assigned to the four sector at that point? |
| 12:15:36 | 2 | A.    There was a need for a four sector |
| 12:15:39 | 3 | coverage that day. |
| 12:15:44 | 4 | Q.    Who typically would be assigned to the |
| 12:15:47 | 5 | fourth sector at this time? |
| 12:15:50 | 6 | A.    I don't know. |
| 12:15:54 | 7 | Q.    Did you typically work with |
| 12:15:57 | 8 | Ms. McDermott? |
| 12:15:57 | 9 | A.    Yes. |
| 12:15:57 | 10 | Q.    Was she your partner at that time? |
| 12:16:00 | 11 | A.    She and I rode together, yes. |
| 12:16:04 | 12 | Q.    Did the two of you work the third |
| 12:16:06 | 13 | sector together typically? |
| 12:16:08 | 14 | A.    Yes. |
| 12:16:11 | 15 | Q.    Okay.  Are you and Ms. McDermott |
| 12:16:13 | 16 | friends? |
| 12:16:13 | 17 | A.    Yes. |
| 12:16:14 | 18 | Q.    And that would be outside of work as |
| 12:16:16 | 19 | well? |
| 12:16:16 | 20 | A.    Yes. |
| 12:16:17 | 21 | Q.    Do you guys hang out together? |
| 12:16:19 | 22 | A.    Yes. |
| 12:16:20 | 23 | Q.    What sort of things do you guys do |

*Velez - Davenport - 02/26/2020*

123

12:16:24  1  together outside of work?

12:16:26  2          A.    Driveways, seriously, we -- she helped

12:16:30  3  me with my driveway.  We'll have dinner.  We'll

12:16:38  4  visit each other's house.

12:16:41  5          Q.    Now, do you have any children,

12:16:45  6  Ms. Velez?

12:16:45  7          A.    I do.

12:16:46  8          Q.    Okay.  Is Ms. McDermott a godmother or

12:16:51  9  any other sort of title to your children?

12:16:55 10          A.    No.

12:16:55 11          Q.    How do your children refer to

12:16:59 12  Ms. McDermott?

12:16:59 13          A.    Ms. Lauren.

12:17:00 14          Q.    Okay.  Not aunt or anything like that?

12:17:04 15          A.    No.

12:17:06 16          Q.    Now, how was it conveyed to you that

12:17:12 17  you and Ms. McDermott would be working the fourth

12:17:14 18  sector rather than the third sector on January 1st

12:17:18 19  of 2017?

12:17:18 20          A.    I don't recall specifically, but in

12:17:20 21  briefing we would be told, it's something that

12:17:24 22  would be discussed in briefing.

12:17:25 23          Q.    Okay.  Now, we talked about an A wheel

*Velez - Davenport - 02/26/2020*

124

| | | |
|---|---|---|
| 12:17:33 | 1 | and a B wheel.  What wheel were you working at the |
| 12:17:36 | 2 | time, you and Ms. McDermott? |
| 12:17:38 | 3 | A.    I -- I don't know which side would be |
| 12:17:41 | 4 | labeled the A wheel and B wheel at the time. |
| 12:17:44 | 5 | Q.    Okay.  During your A wheel or B wheel, |
| 12:17:50 | 6 | who would typically be working the fourth sector? |
| 12:17:56 | 7 | A.    On our regular side? |
| 12:17:58 | 8 | Q.    Yes, on your regular side. |
| 12:18:00 | 9 | A.    I don't recall. |
| 12:18:01 | 10 | Q.    Okay.  Can you look, please, refer to |
| 12:18:05 | 11 | Exhibit 16 again.  I think it's your bottom sheet. |
| 12:18:12 | 12 | A.    Okay. |
| 12:18:12 | 13 | Q.    Looking through this list of officers, |
| 12:18:17 | 14 | does that refresh your recollection as to who would |
| 12:18:19 | 15 | have been working the fourth sector during your |
| 12:18:24 | 16 | wheel? |
| 12:18:24 | 17 | A.    No. |
| 12:18:25 | 18 | Q.    Okay.  So, now, turning back towards |
| 12:18:32 | 19 | the dispatch monitor, which has been marked as |
| 12:18:35 | 20 | Exhibit 25.  Do you see how right before your name |
| 12:18:38 | 21 | there is a six digit number? |
| 12:18:41 | 22 | A.    Yes. |
| 12:18:41 | 23 | Q.    What does that six digit number refer |

*Velez - Davenport - 02/26/2020*

125

| | | |
|---|---|---|
| 12:18:45 | 1 | to? |
| 12:18:45 | 2 | A.    My departmental ID. |
| 12:18:48 | 3 | Q.    Okay.  Has that departmental ID changed |
| 12:18:51 | 4 | at any time? |
| 12:18:51 | 5 | A.    No. |
| 12:18:52 | 6 | Q.    So that was issued to you back in 2013? |
| 12:18:55 | 7 | A.    Yes. |
| 12:18:56 | 8 | Q.    And do you see next to shift where it |
| 12:19:00 | 9 | says second? |
| 12:19:00 | 10 | A.    Yes. |
| 12:19:01 | 11 | Q.    What does that refer to? |
| 12:19:03 | 12 | A.    That would be our day shift or MP2. |
| 12:19:09 | 13 | Q.    What would be considered first shift? |
| 12:19:12 | 14 | A.    I don't know the specific hours, but |
| 12:19:15 | 15 | typically on patrol we have MP2, which is day |
| 12:19:21 | 16 | shift, we have MP4, which is afternoon shift, we |
| 12:19:25 | 17 | have MP5, which is the overnight. |
| 12:19:29 | 18 | Q.    And between MP2 and MP4 what would that |
| 12:19:34 | 19 | shift be considered? |
| 12:19:37 | 20 | MS. HUGGINS:  Form. |
| 12:19:38 | 21 | BY MR. DAVENPORT: |
| 12:19:39 | 22 | Q.    What would MP3 refer to? |
| 12:19:41 | 23 | A.    MP3 is I believe what our community |

*Velez - Davenport - 02/26/2020*

126

12:19:46  1   police officer shift is, it's 10 -- 10 a.m.

12:19:55  2   to -- 10 to 8, 10 to 8:00 p.m.

12:19:56  3        Q.   What does a community officer do?

12:19:58  4        A.   The community police officer they

12:20:02  5   handle a -- a variety of the different issues that

12:20:06  6   we may have that are not criminal, such as neighbor

12:20:11  7   issues, loud noise, complaints of garbage.

12:20:15  8   They -- they go to community events.  They're kind

12:20:18  9   of like the district liaison.

12:20:21 10        Q.   How does somebody get assigned to be a

12:20:24 11   community officer?

12:20:25 12        A.   It could either be you put in a request

12:20:29 13   to be the community police officer or it's the most

12:20:33 14   junior officer in the district.

12:20:34 15        Q.   Have you ever worked as a community

12:20:37 16   officer before?

12:20:37 17        A.   No.

12:20:40 18        Q.   Now, you said that it could be the most

12:20:44 19   junior officer in the district, would that just be

12:20:48 20   somebody that was chosen from your academy class?

12:20:51 21        A.   No, it's different.  It's from the

12:20:54 22   Charlie District.  So whoever is the most junior

12:20:57 23   who has the least amount of time in the whole

*Velez - Davenport - 02/26/2020*

127

| 12:21:00 | 1 | district on all shifts that would be the person |
| 12:21:03 | 2 | that would have to take that position, if nobody |
| 12:21:06 | 3 | else wanted it. |
| 12:21:06 | 4 | Q.   Okay.  Now, what would MP1 refer to? |
| 12:21:10 | 5 | A.   It's a shift.  I'm -- I'm not even |
| 12:21:13 | 6 | certain what the hours are for that shift.  I've |
| 12:21:17 | 7 | never worked MP1 or know of anyone who worked MP1. |
| 12:21:22 | 8 | Q.   Would that individual also be a |
| 12:21:24 | 9 | community officer? |
| 12:21:25 | 10 | A.   I'm not certain.  Like I said, I don't |
| 12:21:29 | 11 | know who would be assigned to MP1 or what the |
| 12:21:32 | 12 | department has it for. |
| 12:21:33 | 13 | Q.   Okay.  Now, according to your dispatch |
| 12:21:36 | 14 | monitor, it says that your shift started at |
| 12:21:39 | 15 | 6:12 a.m. on January 1st of 2017? |
| 12:21:41 | 16 | A.   Yes. |
| 12:21:42 | 17 | Q.   Okay.  Do you have any reason to |
| 12:21:44 | 18 | dispute the accuracy of that? |
| 12:21:46 | 19 | A.   Our -- excuse me.  Our shift starts at |
| 12:21:49 | 20 | 0600 hours, that's just what time the MCTR shift |
| 12:21:54 | 21 | started in the MCT.  So whether -- it's our |
| 12:21:57 | 22 | computer, so whether the lieutenant clicks start |
| 12:22:01 | 23 | shift or the dispatcher logged our shift at that |

12:22:05  1   time.

12:22:05  2        Q.   Now, it appears that the first time

12:22:09  3   that you were dispatched was at 6:47 a.m.; is that

12:22:13  4   correct?

12:22:13  5        A.   Yes.

12:22:13  6        Q.   Okay.  And you were dispatched for an

12:22:16  7   alarm at 2021 Genesee Street?

12:22:19  8        A.   Yes.

12:22:20  9        Q.   Okay.  What would you typically be

12:22:23 10   doing from the time that your shift started until

12:22:25 11   the first time that you were dispatched?

12:22:29 12        A.   Every day is different.

12:22:30 13        Q.   Do you recall what you did on

12:22:34 14   January 1st of 2017?

12:22:35 15        A.   I do not.

12:22:38 16        Q.   Do you recall this call for an alarm at

12:22:44 17   2021 Genesee Street?

12:22:44 18        A.   I do not.

12:22:45 19        Q.   Do you know if it is a residential or a

12:22:49 20   commercial building at 2021 Genesee Street?

12:22:51 21        A.   I do not recall.

12:22:52 22        Q.   Okay.  Have you ever appeared for a

12:22:54 23   call other than January 1st of 2017 at 2021 Genesee

*Velez - Davenport - 02/26/2020*

129

| | | |
|---|---|---|
| 12:22:59 | 1 | Street? |
| 12:22:59 | 2 | A.    I don't recall. |
| 12:23:00 | 3 | Q.    Okay.  Now, the next entry says en |
| 12:23:05 | 4 | route at 6:37 a.m., that would be referring to |
| 12:23:10 | 5 | what? |
| 12:23:14 | 6 | A.    That we were put on the call and we |
| 12:23:17 | 7 | were en route to the alarm. |
| 12:23:18 | 8 | Q.    And, now, when you say we, that's |
| 12:23:21 | 9 | referring to you and Ms. McDermott? |
| 12:23:22 | 10 | A.    Correct. |
| 12:23:23 | 11 | Q.    Okay.  Do you see how there's a number |
| 12:23:25 | 12 | after en route 17-0010383? |
| 12:23:29 | 13 | A.    Yes. |
| 12:23:29 | 14 | Q.    What does that number refer to? |
| 12:23:31 | 15 | A.    That's the incident number. |
| 12:23:33 | 16 | Q.    Okay.  Now, it says that you were |
| 12:23:41 | 17 | available again at 7:02 a.m., correct? |
| 12:23:44 | 18 | A.    Yes. |
| 12:23:44 | 19 | Q.    Okay.  Would that have meant that your |
| 12:23:50 | 20 | response to the alarm situation at 2021 |
| 12:23:54 | 21 | Street -- or 2021 Genesee Street had at that point |
| 12:23:58 | 22 | ended? |
| 12:23:59 | 23 | MS. HUGGINS:  Form. |

*Velez - Davenport - 02/26/2020*

130

| | | |
|---|---|---|
| 12:24:01 | 1 | THE WITNESS:  That would -- would be the |
| 12:24:02 | 2 | time that the dispatcher put us available. |
| 12:24:06 | 3 | BY MR. DAVENPORT: |
| 12:24:06 | 4 | Q.  Okay.  And how does a dispatcher make |
| 12:24:08 | 5 | you available? |
| 12:24:08 | 6 | A.  Either we can give a disposition and |
| 12:24:11 | 7 | call ourself back or sometimes they do it on their |
| 12:24:15 | 8 | own.  They feel that we've had sufficient time and |
| 12:24:18 | 9 | they put us back in. |
| 12:24:21 | 10 | Q.  Has there ever been a time where a |
| 12:24:24 | 11 | dispatcher has thought that you had a sufficient |
| 12:24:26 | 12 | amount of time and you had to then radio in to say |
| 12:24:29 | 13 | that you need more time at a certain incident |
| 12:24:32 | 14 | location? |
| 12:24:32 | 15 | A.  Yes. |
| 12:24:33 | 16 | Q.  Okay.  Did that happen on January 1st |
| 12:24:38 | 17 | of 2017? |
| 12:24:38 | 18 | A.  For -- do you want to clarify? |
| 12:24:41 | 19 | Q.  For any of the calls. |
| 12:24:43 | 20 | A.  For the incident with Mr. Kistner we |
| 12:24:49 | 21 | did need more time.  I don't know if a specific |
| 12:24:52 | 22 | call was made out, but we were on it for an |
| 12:24:55 | 23 | extended amount of time, but for the previous calls |

12:24:58  1  I don't recall.

12:24:58  2        Q.   Do you recall how many times you had to

12:25:00  3  radio in asking for more time with that incident?

12:25:03  4        A.   No.

12:25:05  5        Q.   Was it more than once?

12:25:06  6        A.   I didn't radio in --

12:25:06  7        Q.   Okay.

12:25:08  8        A.   -- on that date.

12:25:08  9        Q.   Who radioed in asking for more time?

12:25:12 10        A.   I don't recall if they specifically

12:25:12 11  asked for more time.  Typically, we spend about on

12:25:14 12  average 20 minutes on a call, that's like what the

12:25:18 13  average time is.

12:25:19 14        If we need more time than that, we can ask

12:25:22 15  for it.  Or if we feel like we've been on a call

12:25:23 16  for an extended amount of time, we'll let radio

12:25:25 17  know, radio, I'm still on this call.

12:25:27 18        It's not that I've forgotten to give a

12:25:30 19  disposition or I'm in trouble, I just need more

12:25:31 20  time.

12:25:32 21        Q.   Now, is that 20-minute average, is that

12:25:34 22  for every sort of call or are there certain calls

12:25:38 23  that, you know, it would be expected to spend

| | | |
|---|---|---|
| 12:25:40 | 1 | longer at those types of incidents? |
| 12:25:43 | 2 | A.   It can -- |
| 12:25:43 | 3 | MS. HUGGINS:   Form.   You can answer. |
| 12:25:44 | 4 | THE WITNESS:   It can vary.   We just like to |
| 12:25:47 | 5 | update radio at least every 20 minutes. |
| 12:25:51 | 6 | BY MR. DAVENPORT: |
| 12:25:51 | 7 | Q.   Okay.   Did you update radio every |
| 12:25:54 | 8 | 20 minutes at Mr. Kistner's incident? |
| 12:25:57 | 9 | A.   I did not radio. |
| 12:25:58 | 10 | Q.   Okay.   Who was radioing at that time? |
| 12:26:01 | 11 | A.   I don't recall everyone who radioed. |
| 12:26:03 | 12 | Q.   Was Ms. McDermott radioing? |
| 12:26:05 | 13 | A.   I recall her being on the radio. |
| 12:26:07 | 14 | Q.   Okay.   Would somebody from your car |
| 12:26:09 | 15 | have to radio in to dispatch asking for more time? |
| 12:26:13 | 16 | MS. HUGGINS:   Form. |
| 12:26:14 | 17 | THE WITNESS:   We don't have to.   We can |
| 12:26:17 | 18 | radio from our car or our hand-held radio. |
| 12:26:21 | 19 | BY MR. DAVENPORT: |
| 12:26:22 | 20 | Q.   Okay.   But you and Ms. McDermott were |
| 12:26:25 | 21 | traveling together that day, correct? |
| 12:26:27 | 22 | A.   Correct. |
| 12:26:27 | 23 | Q.   Okay.   So would it only take one |

*Velez - Davenport - 02/26/2020*

133

| | | |
|---|---|---|
| 12:26:30 | 1 | individual traveling within your car to radio back |
| 12:26:33 | 2 | in to dispatch to let them know that you need more |
| 12:26:38 | 3 | time on a call? |
| 12:26:38 | 4 | A.    Pardon? |
| 12:26:38 | 5 | Q.    Would it only take one individual, |
| 12:26:41 | 6 | because you and Ms. McDermott were traveling |
| 12:26:44 | 7 | together, would it only take one individual from |
| 12:26:46 | 8 | your car that you and Ms. McDermott were traveling |
| 12:26:49 | 9 | in together to radio back in to dispatch asking for |
| 12:26:49 | 10 | more time? |
| 12:26:49 | 11 | A.    Only one person can be on the radio at |
| 12:26:57 | 12 | a time. |
| 12:26:57 | 13 | Q.    From your car? |
| 12:26:59 | 14 | A.    From either way or we'll step on each |
| 12:27:01 | 15 | other, whether it's from the car or from our body |
| 12:27:03 | 16 | radio, only one person can be on the air at a time, |
| 12:27:04 | 17 | because it'll negate the other person trying to |
| 12:27:06 | 18 | call. |
| 12:27:07 | 19 | Q.    Now, is that for all the officers |
| 12:27:09 | 20 | within C District? |
| 12:27:10 | 21 | A.    And E District. |
| 12:27:11 | 22 | Q.    Okay.  So E District and C District |
| 12:27:15 | 23 | both radio in to the same dispatcher? |

*Velez - Davenport - 02/26/2020*

134

| | | |
|---|---|---|
| 12:27:17 | 1 | A.    Yes. |
| 12:27:18 | 2 | Q.    Are there any other districts within |
| 12:27:26 | 3 | the City of Buffalo that radio in to that |
| | 4 | dispatcher. |
| | 5 | THE REPORTER:  You've got to slow down, |
| | 6 | please.  Can you ask that question again, please. |
| | 7 | BY MR. DAVENPORT: |
| | 8 | Q.    Are there any other districts within |
| 12:27:29 | 9 | the City of Buffalo that radio in to the same |
| 12:27:29 | 10 | dispatcher besides C and E District? |
| 12:27:32 | 11 | A.    I believe B and D share a dispatcher. |
| 12:27:37 | 12 | And A District shares dispatch with towing, parking |
| 12:27:44 | 13 | enforcement, and I believe dog control.  There may |
| 12:27:47 | 14 | be more, but I'm not on that channel. |
| 12:27:50 | 15 | Q.    Okay.  Now, it appears that at |
| 12:27:57 | 16 | 7:09 a.m. you were dispatched to an overdose |
| 12:28:03 | 17 | situation; do you see that? |
| 12:28:04 | 18 | A.    Yes. |
| 12:28:04 | 19 | Q.    And was that at 385 Paderewski Drive? |
| 12:28:09 | 20 | A.    Yes. |
| 12:28:10 | 21 | Q.    Okay.  It appears that you were there |
| 12:28:14 | 22 | for nearly an hour; do you see that? |
| 12:28:16 | 23 | A.    Yes. |

*Velez - Davenport - 02/26/2020*

135

| | | |
|---|---|---|
| 12:28:17 | 1 | Q. Okay. You were next made available at |
| 12:28:20 | 2 | 8:07 a.m.? |
| 12:28:21 | 3 | A. Yes. |
| 12:28:24 | 4 | Q. Would it show on this dispatch monitor |
| 12:28:27 | 5 | if you had asked for additional time at a call? |
| 12:28:32 | 6 | A. I'm not certain if it would show on |
| 12:28:35 | 7 | this. |
| 12:28:35 | 8 | Q. Okay. Would it show on the complaint |
| 12:28:37 | 9 | summary report? |
| 12:28:39 | 10 | A. I'm not certain. |
| 12:28:41 | 11 | MS. HUGGINS: Form. |
| 12:28:41 | 12 | BY MR. DAVENPORT: |
| 12:28:41 | 13 | Q. Would it show on any forms that you're |
| 12:28:44 | 14 | aware of? |
| 12:28:45 | 15 | A. Not that I'm aware of. |
| 12:28:46 | 16 | Q. Okay. Do you recall that overdose |
| 12:28:50 | 17 | situation? |
| 12:28:50 | 18 | A. I do. |
| 12:28:52 | 19 | Q. Did the person die? |
| 12:28:53 | 20 | A. No. |
| 12:28:54 | 21 | Q. Do you know what they overdosed on? |
| 12:28:57 | 22 | A. No. |
| 12:28:58 | 23 | MS. HUGGINS: Form. |

*Velez - Davenport - 02/26/2020*

136

| | | |
|---|---|---|
| 12:28:58 | 1 | BY MR. DAVENPORT: |
| 12:29:00 | 2 | Q. Was an ambulance called to that |
| 12:29:03 | 3 | location? |
| 12:29:03 | 4 | MS. HUGGINS: Form. And I'm concerned about |
| 12:29:08 | 5 | HIPAA in terms of questioning and with regard to |
| 12:29:13 | 6 | any medical treatment that was or was not provided |
| 12:29:16 | 7 | for that person. That person is not involved in |
| 12:29:19 | 8 | this lawsuit. |
| 12:29:20 | 9 | MR. DAVENPORT: Sure. They're not involved, |
| 12:29:22 | 10 | but Ms. Velez did respond to that situation. I |
| 12:29:23 | 11 | want to know how she handled it. |
| 12:29:25 | 12 | MS. HUGGINS: I do think that an |
| 12:29:27 | 13 | individual's medical treatment is covered under |
| 12:29:29 | 14 | HIPAA, so I would object and instruct the officer |
| 12:29:32 | 15 | not to answer questions that are specifically |
| 12:29:36 | 16 | relating to medical treatment with relation to that |
| 12:29:39 | 17 | call. |
| 12:29:40 | 18 | MR. DAVENPORT: I didn't ask about medical |
| 12:29:42 | 19 | treatment. I just asked if an ambulance was called |
| 12:29:43 | 20 | or not. If you want to say -- if you want to |
| 12:29:45 | 21 | direct her to not answer that question, you can |
| 12:29:48 | 22 | certainly say that for the record. |
| 12:29:52 | 23 | MS. HUGGINS: I think it gets very close to |

*Velez - Davenport - 02/26/2020*

137

| | | |
|---|---|---|
| 12:29:54 | 1 | the line with HIPAA.  What I'm going to instruct to |
| 12:30:12 | 2 | the officer is you may answer that question |
| 12:30:15 | 3 | specifically without going into any details of what |
| 12:30:20 | 4 | medical treatment, if any, was requested or you |
| 12:30:23 | 5 | observed for that individual. |
| 12:30:24 | 6 | BY MR. DAVENPORT: |
| 12:30:25 | 7 | Q.   So my question is was an ambulance |
| 12:30:27 | 8 | called for that situation? |
| 12:30:28 | 9 | A.   I did not call an ambulance. |
| 12:30:30 | 10 | Q.   Do you know if an ambulance was called |
| 12:30:31 | 11 | by anybody else? |
| 12:30:31 | 12 | A.   I know Buffalo fire and an ambulance |
| 12:30:33 | 13 | did respond. |
| 12:30:34 | 14 | Q.   Okay.  Do you know if that ambulance |
| 12:30:40 | 15 | was called by any police officers? |
| 12:30:43 | 16 | A.   I don't recall. |
| 12:30:45 | 17 | Q.   Was there anyone else there besides the |
| 12:30:48 | 18 | individual who had overdosed? |
| 12:30:52 | 19 | MS. HUGGINS:  Form.  With the exception of |
| 12:30:54 | 20 | fire and the ambulance that she's already |
| 12:30:56 | 21 | discussed? |
| 12:30:56 | 22 | BY MR. DAVENPORT: |
| 12:30:57 | 23 | Q.   Yes. |

*Velez - Davenport - 02/26/2020*

138

| 12:30:58 | 1 | Outside of emergency responding personnel, |
|----------|---|----|
| 12:31:01 | 2 | was there anybody else there besides the individual |
| 12:31:04 | 3 | who had overdosed? |
| 12:31:05 | 4 | A.    Yes. |
| 12:31:06 | 5 | Q.    Any family members? |
| 12:31:07 | 6 | A.    No. |
| 12:31:07 | 7 | Q.    Okay.  Any friends? |
| 12:31:11 | 8 | A.    This was a warming center, there were |
| 12:31:15 | 9 | numerous people there, strangers amongst strangers, |
| 12:31:19 | 10 | some people may have been friendly.  I'm not |
| 12:31:22 | 11 | certain.  There was a large number of people there. |
| 12:31:24 | 12 | Q.    Okay.  Are you aware of any of those |
| 12:31:29 | 13 | friends calling for an ambulance? |
| 12:31:30 | 14 | A.    I don't recall. |
| 12:31:31 | 15 | Q.    Okay.  Now, the next situation that we |
| 12:31:36 | 16 | are looking at is at 8:42 a.m.  It says dispatched |
| 12:31:45 | 17 | for a transport; do you know what that's referring |
| 12:31:48 | 18 | to? |
| 12:31:50 | 19 | A.    I don't recall that call. |
| 12:31:52 | 20 | Q.    Okay.  What sorts of things would a |
| 12:31:55 | 21 | transport refer to? |
| 12:31:58 | 22 | A.    We could have assisted a citizen |
| 12:32:01 | 23 | somewhere.  It -- it could be a number of different |

*Velez - Davenport - 02/26/2020*

139

12:32:04  1    things, I don't recall specifically what this

12:32:06  2    transport is for.

12:32:07  3         Q.   Okay.  Now, would the police department

12:32:15  4    transport an individual to a location if they don't

12:32:18  5    have a car?

12:32:19  6         A.   Depends.

12:32:20  7         Q.   Okay.  What sorts of situations would

12:32:23  8    the police department transport an individual who

12:32:26  9    doesn't have a vehicle?

12:32:27 10         A.   Again --

12:32:28 11         MS. HUGGINS:  Form.  You may answer.

12:32:29 12         THE WITNESS:  -- it can vary.

12:32:31 13         BY MR. DAVENPORT:

12:32:32 14         Q.   Would there ever be an instance where

12:32:34 15    somebody calls 911 asking for a police transport to

12:32:39 16    a location?

12:32:40 17         A.   Yes.

12:32:40 18         Q.   Okay.  And would you transport that

12:32:45 19    individual in the back of your police vehicle?

12:32:47 20         A.   Depending on the situation, possibly.

12:32:50 21         Q.   What sorts of situations would you have

12:32:53 22    to transport an individual who calls in for a 911

12:32:57 23    transport?

*Velez - Davenport - 02/26/2020*

140

| | | |
|---|---|---|
| 12:32:58 | 1 | A.    I -- |
| 12:32:58 | 2 | MS. HUGGINS:   Form.   You can answer. |
| 12:32:59 | 3 | THE WITNESS:   I specifically had one where |
| 12:33:03 | 4 | it had an elderly woman and it was extremely cold |
| 12:33:07 | 5 | outside.   And she asked for assistance to get to, I |
| 12:33:09 | 6 | forget what relative it was, their house.   It was |
| 12:33:09 | 7 | icy, cold, so I absolutely went over. |
| 12:33:13 | 8 | She does have to ride in the back of patrol |
| 12:33:16 | 9 | vehicle, because that's procedure.   And I assisted |
| 12:33:20 | 10 | her to where she needed to go. |
| 12:33:21 | 11 | BY MR. DAVENPORT: |
| 12:33:22 | 12 | Q.    That wasn't on this day, though, |
| 12:33:23 | 13 | correct? |
| 12:33:23 | 14 | A.    Correct. |
| 12:33:24 | 15 | Q.    Correct, it wasn't? |
| 12:33:25 | 16 | A.    It was not, yes. |
| 12:33:26 | 17 | Q.    So it appears that the next time you |
| 12:33:28 | 18 | became available was at 9:26 a.m.; is that correct? |
| 12:33:31 | 19 | A.    Yes. |
| 12:33:32 | 20 | Q.    Okay.   So that would have meant from |
| 12:33:35 | 21 | 8:42 a.m. to 9:26 a.m. you were transporting this |
| 12:33:40 | 22 | individual? |
| 12:33:40 | 23 | A.    Not necessarily transporting the entire |

*Velez - Davenport - 02/26/2020*

141

| | | |
|---|---|---|
| 12:33:43 | 1 | time. |
| 12:33:43 | 2 | Q.   Okay.   What else could have been |
| 12:33:45 | 3 | happening during that time? |
| 12:33:46 | 4 | A.   This would have been the time that |
| 12:33:49 | 5 | dispatch made us available.   I'm not certain what |
| 12:33:53 | 6 | happened in the interim.   It could have been a |
| 12:33:56 | 7 | transport.   I'm not certain. |
| 12:33:57 | 8 | Q.   Okay.   So the next situation was at |
| 12:34:01 | 9 | 9:37 a.m., there was a child neglect situation; do |
| 12:34:06 | 10 | you see that? |
| 12:34:06 | 11 | A.   Yes. |
| 12:34:06 | 12 | Q.   Do you remember that call? |
| 12:34:07 | 13 | A.   I do not. |
| 12:34:09 | 14 | Q.   And that 17-0010471 would refer to the |
| 12:34:16 | 15 | incident number, correct? |
| 12:34:17 | 16 | A.   Yes. |
| 12:34:18 | 17 | Q.   Okay.   Now, it says at 10:12 a.m. you |
| 12:34:25 | 18 | went out of service; what does that refer to? |
| 12:34:28 | 19 | A.   We are no longer available for a call |
| 12:34:32 | 20 | as of 10:12. |
| 12:34:33 | 21 | Q.   Okay.   Is that a break that you're |
| 12:34:34 | 22 | taking? |
| 12:34:35 | 23 | A.   I'm not certain why we went out of |

*Velez - Davenport - 02/26/2020*

142

| | | |
|---|---|---|
| 12:34:38 | 1 | service. |
| 12:34:38 | 2 | Q.   Okay.  Do you get breaks during your |
| 12:34:41 | 3 | shift? |
| 12:34:41 | 4 | A.   We can request a break, yes. |
| 12:34:43 | 5 | Q.   Okay.  How long do you typically take a |
| 12:34:47 | 6 | break, if you do request one? |
| 12:34:48 | 7 | A.   It could be 30 minutes. |
| 12:34:50 | 8 | Q.   Are you required to request a break at |
| 12:34:54 | 9 | some point during your shift? |
| 12:34:54 | 10 | A.   We're not required to, it's optional. |
| 12:34:57 | 11 | Q.   Okay.  Typically your shifts are 10 |
| 12:35:00 | 12 | hours, correct? |
| 12:35:00 | 13 | A.   Yes. |
| 12:35:01 | 14 | Q.   Okay.  Do you ever take a break where |
| 12:35:04 | 15 | you don't request one, are there any mandated |
| 12:35:09 | 16 | breaks? |
| 12:35:09 | 17 | A.   There -- |
| 12:35:09 | 18 | MS. HUGGINS:  Form.  You can answer. |
| 12:35:13 | 19 | THE WITNESS:  There are no mandated breaks. |
| 12:35:15 | 20 | BY MR. DAVENPORT: |
| 12:35:15 | 21 | Q.   Okay.  How often do you take 30-minute |
| 12:35:17 | 22 | breaks during your shifts? |
| 12:35:19 | 23 | A.   Occasionally. |

*Velez - Davenport - 02/26/2020*

143

12:35:21  1       Q.   Okay.  More or less than half the

12:35:24  2  shifts that you work?

12:35:26  3       MS. HUGGINS:  Form.

12:35:27  4       THE WITNESS:  I'm not certain.

12:35:31  5       BY MR. DAVENPORT:

12:35:32  6       Q.   Do you ever take a lunch break during

12:35:34  7  your shift?

12:35:34  8       A.   That would be the lunch break.

12:35:36  9       Q.   Okay.  Do you ever eat your lunch in

12:35:39 10  your car?

12:35:39 11       A.   Yes.

12:35:40 12       Q.   Okay.  Is that most of the time?

12:35:42 13       A.   Sometimes.

12:35:43 14       Q.   Do you sometimes not eat lunch during

12:35:46 15  the day?

12:35:46 16       A.   I eat something every day.

12:35:48 17       Q.   Okay.  Snacks, then?

12:35:50 18       A.   It could be a snack or it could be a

12:35:53 19  lunch.

12:35:53 20       Q.   Okay.  Do you recall eating on

12:35:56 21  January 1st of 2017?

12:35:57 22       A.   I do not.

12:36:00 23       Q.   Okay.  Now, your next call is at

*Velez - Davenport - 02/26/2020*

144

| | | |
|---|---|---|
| 12:36:07 | 1 | 10:36 a.m. and you were dispatched for domestic |
| 12:36:11 | 2 | trouble; do you see that? |
| 12:36:11 | 3 | A.   Yes. |
| 12:36:12 | 4 | Q.   Do you remember anything about that |
| 12:36:13 | 5 | call? |
| 12:36:14 | 6 | A.   I do not. |
| 12:36:15 | 7 | Q.   Okay.  Now, at 10:57 a.m. it says that |
| 12:36:21 | 8 | you were dispatched for an accident or injury at 37 |
| 12:36:26 | 9 | Schmarbeck; do you see that? |
| 12:36:27 | 10 | A.   Yes. |
| 12:36:27 | 11 | Q.   Who would have made that initial entry |
| 12:36:32 | 12 | for accident or injury? |
| 12:36:33 | 13 | A.   The dispatcher enters it. |
| 12:36:35 | 14 | Q.   And how would the dispatcher enter that |
| 12:36:38 | 15 | information? |
| 12:36:38 | 16 | A.   It could -- it could be a call in from |
| 12:36:41 | 17 | police, it could be a call in from a citizen. |
| 12:36:46 | 18 | However they received the information they would |
| 12:36:49 | 19 | dispatch a call. |
| 12:36:51 | 20 | Q.   Okay.  Now, it says at 11:22 your |
| 12:37:02 | 21 | location change was ECMC; do you see that? |
| 12:37:05 | 22 | A.   Yes. |
| 12:37:09 | 23 | Q.   Would that mean that you had arrived at |

*Velez - Davenport - 02/26/2020*

145

| | | |
|---|---|---|
| 12:37:12 | 1 | ECMC or that you were on your way to ECMC? |
| 12:37:17 | 2 | A.    It could be either one. |
| 12:37:18 | 3 | Q.    Okay.  What's your typical practice, do |
| 12:37:25 | 4 | you usually radio in when you arrive at a situation |
| 12:37:28 | 5 | or when you're on your way to a -- or a new |
| 12:37:28 | 6 | location? |
| 12:37:31 | 7 | MS. HUGGINS:    Form.  You can answer. |
| 12:37:33 | 8 | THE WITNESS:    Typically when we're leaving |
| 12:37:34 | 9 | to go to the situation or to the location.  Excuse |
| 12:37:39 | 10 | me. |
| 12:37:39 | 11 | BY MR. DAVENPORT: |
| 12:37:40 | 12 | Q.    Okay.  I asked both of them, so I |
| 12:37:42 | 13 | definitely understand why you said that. |
| 12:37:44 | 14 | Now, it says at 3:37 your location was to |
| 12:37:52 | 15 | CB; do you see that? |
| 12:37:53 | 16 | A.    Yes. |
| 12:37:54 | 17 | Q.    Does that refer to central booking? |
| 12:37:56 | 18 | A.    Yes, I believe so. |
| 12:37:58 | 19 | Q.    Okay.  Now, at 3:48 p.m. it says on |
| 12:38:09 | 20 | scene; do you see that? |
| 12:38:09 | 21 | A.    Yes. |
| 12:38:10 | 22 | Q.    Would that mean that you were on scene |
| 12:38:12 | 23 | at central booking? |

*Velez - Davenport - 02/26/2020*

146

| | | |
|---|---|---|
| 12:38:14 | 1 | **A.**    Yes. |
| 12:38:21 | 2 | **Q.**    Now, at 4:36 p.m. your location changed |
| 12:38:27 | 3 | again to ECMC; do you see that? |
| 12:38:28 | 4 | **A.**    Yes. |
| 12:38:29 | 5 | **Q.**    Now, that would mean in your typical |
| 12:38:33 | 6 | practice that you were on your way to ECMC, |
| 12:38:37 | 7 | correct, not necessarily what you did that day, I |
| 12:38:39 | 8 | just want to know typical practice, you normally |
| 12:38:42 | 9 | radio in on your way to a new location? |
| 12:38:44 | 10 | **A.**    Uh-huh. |
| 12:38:45 | 11 | **Q.**    So based on your typical practice that |
| 12:38:48 | 12 | would mean you're on your way to ECMC, correct? |
| 12:38:48 | 13 | **A.**    Yes. |
| 12:38:48 | 14 | **Q.**    Okay. |
| 12:38:53 | 15 | **A.**    But, again, it would depend on how |
| 12:38:56 | 16 | dispatch took our transmission.  They would be the |
| 12:38:59 | 17 | ones responsible for entering this. |
| 12:39:01 | 18 | **Q.**    Okay.  Now, at 4:37 p.m. it says en |
| 12:39:07 | 19 | route; do you see that? |
| 12:39:07 | 20 | **A.**    Yes. |
| 12:39:08 | 21 | **Q.**    Now, based on that entry, would you say |
| 12:39:11 | 22 | that your location change ECMC was made on your way |
| 12:39:16 | 23 | to ECMC prior to you actually leaving central |

| | | |
|---|---|---|
| 12:39:20 | 1 | booking? |
| 12:39:21 | 2 | A.    Can -- can you repeat that again? |
| 12:39:22 | 3 | Q.    Sure.  So at 4:37 p.m. you see the |
| 12:39:27 | 4 | entry en route, correct? |
| 12:39:28 | 5 | A.    Yes. |
| 12:39:28 | 6 | Q.    So based on that entry would you say |
| 12:39:33 | 7 | that the entry at 4:36 p.m. that says location |
| 12:39:38 | 8 | change ECMC means that you are ready or getting |
| 12:39:40 | 9 | ready to leave for ECMC rather than at ECMC? |
| 12:39:45 | 10 | MS. HUGGINS:  Form.  You can answer. |
| 12:39:47 | 11 | THE WITNESS:  I would believe so, but, |
| 12:39:50 | 12 | again, as I said, it would depend on how dispatch |
| 12:39:53 | 13 | took our transmission, whether they would put |
| 12:39:57 | 14 | location change as if we arrived or if we were |
| 12:40:00 | 15 | leaving to go.  I would take location change to |
| 12:40:06 | 16 | mean we were on our way there. |
| 12:40:08 | 17 | BY MR. DAVENPORT: |
| 12:40:08 | 18 | Q.    Okay.  Now, the last entry says |
| 12:40:12 | 19 | 6:16 p.m. and shift ended; do you see that? |
| 12:40:14 | 20 | A.    Yes. |
| 12:40:14 | 21 | Q.    Does that mean that your shift had |
| 12:40:17 | 22 | ended at that time? |
| 12:40:20 | 23 | A.    This means that our history report is |

*Velez - Davenport - 02/26/2020*

148

| | | |
|---|---|---|
| 12:40:23 | 1 | over.  It doesn't necessarily mean that we're still |
| 12:40:26 | 2 | not completing additional paperwork. |
| 12:40:31 | 3 | Q.   Now, do you recall on January 1st of |
| 12:40:34 | 4 | 2017 after 6:16 p.m. did you have any further work |
| 12:40:38 | 5 | that needed to be done before your shift ended that |
| 12:40:41 | 6 | day? |
| 12:40:41 | 7 | A.   I don't recall what time my shift ended |
| 12:40:43 | 8 | that day. |
| 12:40:44 | 9 | Q.   Okay.  Could it have been after |
| 12:40:48 | 10 | 6:16 p.m.? |
| 12:40:48 | 11 | A.   It could have been. |
| 12:40:49 | 12 | Q.   Okay.  How often would you go back or |
| 12:40:52 | 13 | how often -- excuse me, strike that. |
| 12:40:53 | 14 | How often would you complete paperwork after |
| 12:40:58 | 15 | your patrol duties were over? |
| 12:41:00 | 16 | MS. HUGGINS:  Form. |
| 12:41:01 | 17 | THE WITNESS:  It depends. |
| 12:41:06 | 18 | BY MR. DAVENPORT: |
| 12:41:06 | 19 | Q.   Would it be more or less than half of |
| 12:41:09 | 20 | the times that you worked? |
| 12:41:11 | 21 | A.   I don't -- I couldn't put a specific |
| 12:41:14 | 22 | number on the times. |
| 12:41:15 | 23 | Q.   Okay.  Now, when this says shift ended |

*Velez - Davenport - 02/26/2020*

149

| | | |
|---|---|---|
| 12:41:24 | 1 | at 6:16 p.m., do you believe that that entry was |
| 12:41:30 | 2 | made while you were still at ECMC? |
| 12:41:32 | 3 | A.   I don't recall. |
| 12:41:35 | 4 | Q.   Based on what you see on this dispatch |
| 12:41:38 | 5 | monitor, do you have any reason to believe that |
| 12:41:41 | 6 | that entry would not have been made at ECMC or |
| 12:41:44 | 7 | while you were still at ECMC? |
| 12:41:47 | 8 | MS. HUGGINS:   Form. |
| 12:41:47 | 9 | THE WITNESS:   I -- I'm not certain where I |
| 12:41:49 | 10 | was at 6:16 at that time. |
| 12:41:51 | 11 | BY MR. DAVENPORT: |
| 12:41:51 | 12 | Q.   So I understand that you may not |
| 12:41:54 | 13 | specifically recall, but based on what you see on |
| 12:41:57 | 14 | the dispatch monitor, do you see that there are any |
| 12:42:00 | 15 | other locations that you could have possibly been |
| 12:42:02 | 16 | at at that time? |
| 12:42:03 | 17 | MS. HUGGINS:   Form. |
| 12:42:06 | 18 | THE WITNESS:   It doesn't -- there's no other |
| 12:42:09 | 19 | location listed on here after ECMC. |
| 12:42:11 | 20 | BY MR. DAVENPORT: |
| 12:42:12 | 21 | Q.   So would it be fair to say that that |
| 12:42:14 | 22 | entry was more than likely made at ECMC or while |
| 12:42:18 | 23 | you were still at ECMC? |

| | | |
|---|---|---|
| 12:42:19 | 1 | MS. HUGGINS:  Form. |
| 12:42:20 | 2 | THE WITNESS:  The dispatcher entered that in |
| 12:42:23 | 3 | there, so I don't know where I was at that time.  I |
| 12:42:26 | 4 | don't recall. |
| 12:42:26 | 5 | BY MR. DAVENPORT: |
| 12:42:27 | 6 | Q.   Do you recall responding to any other |
| 12:42:30 | 7 | calls after ECMC? |
| 12:42:30 | 8 | A.   No. |
| 12:42:31 | 9 | Q.   What time should your shift -- was your |
| 12:42:35 | 10 | shift scheduled to have ended that day? |
| 12:42:37 | 11 | A.   4:00 p.m. |
| 12:42:40 | 12 | Q.   So if you worked until 6:16 p.m., would |
| 12:42:45 | 13 | you have collected overtime for that day? |
| 12:42:46 | 14 | A.   Yes. |
| 12:42:47 | 15 | Q.   And how do they determine overtime for |
| 12:42:50 | 16 | officers? |
| 12:42:52 | 17 | A.   When we finish our shift -- or when we |
| 12:42:56 | 18 | finish our shift, any additional time over that, I |
| 12:43:00 | 19 | believe it's on the quarter. |
| 12:43:01 | 20 | Q.   Okay.  So that would be any additional |
| 12:43:05 | 21 | time over 10 hours for each shift or would that be |
| 12:43:09 | 22 | any additional time over 40 hours for a week? |
| 12:43:13 | 23 | A.   After 10 hours of the shift. |

*Velez - Davenport - 02/26/2020*

151

| | | |
|---|---|---|
| 12:43:15 | 1 | Q.   Okay.  So on this day you would have |
| 12:43:18 | 2 | collected overtime for two hours and 16 minutes |
| 12:43:21 | 3 | over your shift? |
| 12:43:22 | 4 | MS. HUGGINS:  Form. |
| 12:43:24 | 5 | THE WITNESS:  I'm not certain exactly what |
| 12:43:27 | 6 | time my shift ended.  So if -- like I said, I'm not |
| 12:43:31 | 7 | sure if it was 6:16 or if I had stayed additional |
| 12:43:35 | 8 | time.  I'm not certain. |
| 12:43:36 | 9 | BY MR. DAVENPORT: |
| 12:43:36 | 10 | Q.   If you stay additional time to work on |
| 12:43:39 | 11 | paperwork, do you have to make any sort of an entry |
| 12:43:42 | 12 | to end your shift? |
| 12:43:43 | 13 | A.   We fill out a form. |
| 12:43:45 | 14 | Q.   That's each day? |
| 12:43:46 | 15 | A.   If we stay, if we fill out an overtime |
| 12:43:52 | 16 | slip if we stay for every time we stay, yes. |
| 12:43:53 | 17 | Q.   Okay.  Are there any times that you are |
| 12:43:59 | 18 | required to or that you would fill out paperwork |
| 12:44:03 | 19 | during your regularly scheduled 10-hour shift? |
| 12:44:06 | 20 | MS. HUGGINS:  Form. |
| 12:44:07 | 21 | BY MR. DAVENPORT: |
| 12:44:08 | 22 | Q.   I'm sorry.  That was a bad question. |
| 12:44:10 | 23 | Are you required to patrol for your entire |

*Velez - Davenport - 02/26/2020*

152

12:44:15  1  10-hour shift?

12:44:18  2          A.    Minus the break we -- yes.

12:44:19  3          Q.    Okay.  So there would never be any time

12:44:25  4  that you would end your shift early to complete

12:44:27  5  paperwork, correct?

12:44:29  6          A.    It depends.  We would still be working,

12:44:32  7  but I may call myself back to the station house to

12:44:35  8  complete paperwork.  Or field training officers

12:44:37  9  they -- I believe it's -- I don't recall if it's

12:44:39  10  30 minutes or a little bit longer to complete their

12:44:43  11  field training officer paperwork.

12:44:44  12          So there are instances where you would call

12:44:47  13  yourself out of service just prior to the end of

12:44:50  14  your shift to complete documents.

12:44:51  15          Q.    Okay.  So I'm going to show you what's

12:45:03  16  been marked as Exhibit 3.  Do you recognize that

12:45:07  17  document?

12:45:09  18          A.    Yes.

12:45:11  19          Q.    And what do you recognize it to be?

12:45:13  20          A.    A complaint summary report.

12:45:14  21          Q.    Where was the location for that

12:45:16  22  complaint summary report?

12:45:17  23          A.    33 Schmarbeck.

*Velez - Davenport - 02/26/2020*

153

12:45:20  1          Q.   Do you know the individual who was the

12:45:23  2    complainant for that complaint summary report?

12:45:25  3          A.   I do not.

12:45:26  4          Q.   Have you ever encountered any

12:45:28  5    individuals while working at C District at the

12:45:32  6    location 33 Schmarbeck?

12:45:33  7          A.   Not that I can recall.

12:45:36  8          Q.   Okay.  Do you know which officers

12:45:37  9    responded to that call at 33 Schmarbeck?

12:45:40 10          A.   Yes.

12:45:40 11          Q.   Okay.  And which officers were those?

12:45:43 12          A.   Kyle Moriarity and Carl Schulz.

12:45:47 13          Q.   What brought you to the scene that day

12:45:50 14    for that complaint summary report?

12:45:54 15          A.   From what I can recall, Officer

12:45:58 16    McDermott had responded there before, so she wanted

12:46:02 17    to see if they needed any assistance and give them

12:46:05 18    information that she may have had from previously

12:46:08 19    responding.

12:46:08 20          Q.   Okay.  Did she talk to you at all about

12:46:11 21    previously responding for that individual?

12:46:14 22          A.   I don't recall anything specific.

12:46:16 23          Q.   Okay.  Did she tell you when

*Velez - Davenport - 02/26/2020*

154

| | | |
|---|---|---|
| 12:46:18 | 1 | approximately she had previously responded? |
| 12:46:20 | 2 | A.   I don't -- |
| 12:46:22 | 3 | Q.   For that location? |
| 12:46:22 | 4 | A.   I don't recall. |
| 12:46:23 | 5 | Q.   Did she tell you the information that |
| 12:46:25 | 6 | she wanted to convey to Mr. Moriarity or Mr. Schulz |
| 12:46:29 | 7 | that day? |
| 12:46:30 | 8 | A.   I don't recall. |
| 12:46:31 | 9 | Q.   Okay.  Did she say the name of the |
| 12:46:34 | 10 | individual that she had encountered previously? |
| 12:46:37 | 11 | A.   Not that I can recall. |
| 12:46:38 | 12 | Q.   Okay.  Since this incident has she |
| 12:46:43 | 13 | discussed any incidents that she has responded to |
| 12:46:47 | 14 | at 33 Schmarbeck? |
| 12:46:48 | 15 | A.   No. |
| 12:46:49 | 16 | Q.   Okay.  What about 37 Schmarbeck? |
| 12:46:51 | 17 | A.   No. |
| 12:46:53 | 18 | Q.   Okay. |
| 12:46:53 | 19 | MS. HUGGINS:  Form. |
| 12:46:53 | 20 | BY MR. DAVENPORT: |
| 12:46:54 | 21 | Q.   Besides January 1st of 2017, did you |
| 12:46:59 | 22 | ride with Ms. McDermott on any other occasions? |
| 12:47:03 | 23 | A.   Yes. |

*Velez - Davenport - 02/26/2020*

155

| | | |
|---|---|---|
| 12:47:03 | 1 | Q. Okay. Were there any other times where |
| 12:47:06 | 2 | a call was made from 33 or 37 Schmarbeck where you |
| 12:47:12 | 3 | and Ms. McDermott went to go and investigate the |
| 12:47:15 | 4 | situation? |
| 12:47:15 | 5 | A. Not that I could recall. |
| 12:47:16 | 6 | Q. But on this specific day she wanted to |
| 12:47:19 | 7 | go to this call at 33 Schmarbeck, because she |
| 12:47:22 | 8 | recalled responding to a previous incident there? |
| 12:47:25 | 9 | A. Yes. |
| 12:47:25 | 10 | Q. Okay. Approximately what time did you |
| 12:47:33 | 11 | arrive at the scene that day? |
| 12:47:35 | 12 | A. I don't recall. |
| 12:47:36 | 13 | Q. Okay. Was it in the morning? |
| 12:47:38 | 14 | A. It was. |
| 12:47:38 | 15 | Q. Do you remember what the weather was |
| 12:47:41 | 16 | like that day? |
| 12:47:42 | 17 | A. Not specifically. |
| 12:47:43 | 18 | Q. Was it cold? |
| 12:47:44 | 19 | A. Yes. |
| 12:47:45 | 20 | Q. Okay. Was it icy? |
| 12:47:47 | 21 | A. I don't recall. |
| 12:47:48 | 22 | Q. Do you recall any trouble walking that |
| 12:47:51 | 23 | day? |

| | | |
|---|---|---|
| 12:47:52 | 1 | **A.** Not that I could recall. |
| 12:47:54 | 2 | **Q.** What types of shoes do you typically |
| 12:47:58 | 3 | wear as a patrol officer? |
| 12:48:02 | 4 | **A.** I wear Bates boots. |
| 12:48:04 | 5 | **Q.** Okay. And that was the same at that |
| 12:48:06 | 6 | time in January -- on January 1st of 2017? |
| 12:48:06 | 7 | **A.** Yes, they're department issued. I wear |
| 12:48:08 | 8 | them all the time. |
| 12:48:09 | 9 | **Q.** Okay. And those are the same boots |
| 12:48:12 | 10 | that are issued today? |
| 12:48:13 | 11 | **A.** Yes. |
| 12:48:14 | 12 | **Q.** Do you recall where you were |
| 12:48:17 | 13 | approximately at the time that Ms. McDermott |
| 12:48:20 | 14 | decided that she would help Officer Schulz and |
| 12:48:24 | 15 | Officer Moriarity with that call at 33 Schmarbeck? |
| 12:48:28 | 16 | **MS. HUGGINS:** Form. You may answer. |
| 12:48:29 | 17 | **THE WITNESS:** I don't recall. |
| 12:48:30 | 18 | **BY MR. DAVENPORT:** |
| 12:48:31 | 19 | **Q.** Do you recall approximately how long it |
| 12:48:32 | 20 | took you to drive from where you were previously to |
| 12:48:34 | 21 | 33 Schmarbeck? |
| 12:48:35 | 22 | **A.** I don't recall. |
| 12:48:36 | 23 | **Q.** Okay. When you arrived at the scene, |

*Velez - Davenport - 02/26/2020*

157

| | | |
|---|---|---|
| 12:48:38 | 1 | what did you see? |
| 12:48:40 | 2 | A.   I don't recall. |
| 12:48:42 | 3 | Q.   Was there a car that was present that |
| 12:48:45 | 4 | day? |
| 12:48:50 | 5 | A.   I believe there -- we had parked behind |
| 12:48:53 | 6 | a car. |
| 12:48:54 | 7 | Q.   Okay.  Do you remember the -- the color |
| 12:48:57 | 8 | of that car? |
| 12:48:58 | 9 | A.   I do not. |
| 12:48:58 | 10 | Q.   Do you remember what type of a car it |
| 12:49:06 | 11 | was? |
| 12:49:06 | 12 | A.   I do not. |
| 12:49:07 | 13 | Q.   Okay.  Was it a large or a small |
| 12:49:10 | 14 | vehicle? |
| 12:49:15 | 15 | A.   I think it was a van. |
| 12:49:17 | 16 | Q.   Okay. |
| 12:49:17 | 17 | A.   I believe it was a van. |
| 12:49:18 | 18 | Q.   Okay.  When you arrived at the scene, |
| 12:49:22 | 19 | were Officer Schulz or Officer Moriarity outside of |
| 12:49:26 | 20 | their vehicle? |
| 12:49:29 | 21 | A.   I could recall -- I -- no, I don't, I |
| 12:49:35 | 22 | don't recall who was outside of the vehicle. |
| 12:49:36 | 23 | Q.   Okay.  Was there an individual standing |

12:49:41   1   on the sidewalk at that time?

12:49:42   2          A.    I don't recall.

12:49:44   3          Q.    Do you recall at any point was there an

12:49:47   4   individual standing on the sidewalk?

12:49:49   5          A.    I don't recall.

12:49:50   6          Q.    Do you recall at any time was Officer

12:49:52   7   Schulz or Officer Moriarity outside of their

12:49:55   8   vehicle?

12:49:57   9          A.    Can you?

12:49:59  10          Q.    Prior to -- strike that.

12:50:05  11          Do you recall at any time during the

12:50:07  12   incident that was responded to by Officer Schulz

12:50:10  13   and Officer Moriarity at 33 Schmarbeck at any point

12:50:14  14   while you were there were Officer Schulz or Officer

12:50:18  15   Moriarity outside of their vehicle?

12:50:19  16          A.    I recall off -- one of them being

12:50:21  17   outside of their vehicle, but I don't recall who it

12:50:23  18   was.

12:50:23  19          Q.    Now, the officer that was not outside

12:50:25  20   of their vehicle that was still inside the parked

12:50:29  21   car, did they have their window up or down?

12:50:31  22          A.    I don't recall them being inside the

12:50:33  23   parked car.  I just -- I just remember one officer

*Velez - Davenport - 02/26/2020*

159

12:50:36  1  being outside of the car.  I don't recall where the

12:50:37  2  other officer was and I don't recall if it was

12:50:39  3  Kyle, Officer Moriarity or -- or Officer Schulz.

12:50:42  4        MS. HUGGINS:  Do her a favor and just slow

12:50:45  5  down.

12:50:45  6        THE WITNESS:  Yeah, on the sidewalk, I don't

12:50:45  7  recall.

12:50:45  8        BY MR. DAVENPORT:

12:50:45  9        Q.    Okay.

12:50:48  10       A.    Or if they were in the street.  I just

12:50:48  11  remember them being outside of the car, one of

12:50:48  12  them.

12:50:54  13       Q.    Do you recall approximately how long

12:50:55  14  you were at the scene responding to that incident

12:50:58  15  at 33 Schmarbeck?

12:50:59  16       A.    I do not.

12:51:00  17       Q.    Okay.  Based on what is recorded on

12:51:04  18  that document, does that refresh your recollection

12:51:05  19  for how long you were at that scene?

12:51:08  20       A.    No.

12:51:08  21       Q.    Okay.  Is there any reason to dispute

12:51:13  22  that the time entries on there that would indicate

12:51:16  23  that Officer Schulz and Officer Moriarity were at

12:51:19   1    the scene for eight seconds?

12:51:21   2         MS. HUGGINS:   Form.

12:51:21   3         THE WITNESS:   This would be a dispatch

12:51:23   4    question.   They would enter these times and --

12:51:27   5         BY MR. DAVENPORT:

12:51:28   6         Q.   Have you ever had to review a complaint

12:51:30   7    summary report before?

12:51:33   8         A.   In criminal court, yes.

12:51:35   9         Q.   Okay.   Were you asked questions about

12:51:38  10    those complaint summary reports?

12:51:40  11         A.   I don't recall.

12:51:42  12         Q.   Okay.   Have you ever had reason to

12:51:44  13    dispute the time entries that are made on those

12:51:48  14    complaint summary reports?

12:51:49  15         A.   Not that I could recall.

12:51:51  16         Q.   I'm going to show you what has now been

12:51:55  17    marked as Exhibit 4A.   Do you recognize that

12:52:00  18    document?

12:52:01  19         A.   Yes.

12:52:01  20         Q.   And what do you recognize it to be?

12:52:04  21         A.   A complaint summary report.

12:52:05  22         Q.   Okay.   What was the date that this

12:52:11  23    report was created?

*Velez - Davenport - 02/26/2020*

| | | |
|---|---|---|
| 12:52:12 | 1 | **A.**    1/1 of 2017. |
| 12:52:17 | 2 | **Q.**    Okay.  Who are the officers that are |
| 12:52:18 | 3 | listed on this report? |
| 12:52:20 | 4 | **A.**    Carl Schulz, Kyle Moriarity, Lauren |
| 12:52:26 | 5 | McDermott, and Jenny Velez. |
| 12:52:29 | 6 | **Q.**    Now, it says that the location of the |
| 12:52:32 | 7 | incident was 37 Schmarbeck, correct? |
| 12:52:36 | 8 | **A.**    Yes. |
| 12:52:36 | 9 | **Q.**    And that the disposition was a P1375 |
| 12:52:40 | 10 | crime report? |
| 12:52:44 | 11 | **A.**    Yes. |
| 12:52:45 | 12 | **Q.**    Okay.  And so I'm actually looking |
| 12:52:48 | 13 | right underneath the address where it says |
| 12:52:51 | 14 | disposition one and then P1375 crime reports right |
| 12:52:55 | 15 | on the first page.  I don't know.  Do you see that |
| 12:52:58 | 16 | right underneath 37 Schmarbeck it's in bold? |
| 12:53:01 | 17 | **A.**    Yes. |
| 12:53:01 | 18 | **Q.**    Okay.  Who makes that entry for what |
| 12:53:07 | 19 | the disposition is? |
| 12:53:08 | 20 | **A.**    It could be dispatch or we can enter |
| 12:53:11 | 21 | it. |
| 12:53:11 | 22 | **Q.**    So the officers do have that ability to |
| 12:53:14 | 23 | enter that disposition? |

*Velez - Davenport - 02/26/2020*

162

| | | |
|---|---|---|
| 12:53:15 | 1 | A.  The primary officer, yes. |
| 12:53:17 | 2 | Q.  Okay.  And who would be the primary |
| 12:53:19 | 3 | officer, what does that refer to? |
| 12:53:22 | 4 | A.  The -- |
| 12:53:22 | 5 | MS. HUGGINS:  Form. |
| 12:53:22 | 6 | THE WITNESS:  Primary officer would be the |
| 12:53:26 | 7 | officer who was listed as primary on this complaint |
| 12:53:30 | 8 | summary report, if you look at 10:57:17. |
| 12:53:38 | 9 | BY MR. DAVENPORT: |
| 12:53:39 | 10 | Q.  Okay.  Now, would it be the primary |
| 12:53:45 | 11 | officer at the time of the disposition who would |
| 12:53:48 | 12 | make that entry? |
| 12:53:49 | 13 | A.  It would be who -- from the computer |
| 12:53:53 | 14 | the primary officer who was in the computer as the |
| 12:53:56 | 15 | primary officer can log in a disposition. |
| 12:53:59 | 16 | Otherwise, it has to be a radio, it has to be radio |
| 12:54:05 | 17 | that logs it. |
| 12:54:06 | 18 | Q.  Would there be any way to tell if it |
| 12:54:09 | 19 | was radioed in or if that officer made that entry |
| 12:54:13 | 20 | themselves? |
| 12:54:14 | 21 | A.  I can't tell. |
| 12:54:16 | 22 | Q.  Okay.  Do you see at 1:14:01 the entry |
| 12:54:20 | 23 | set to primary C241? |

*Velez - Davenport - 02/26/2020*

163

| | | |
|---|---|---|
| 12:54:24 | 1 | A.    I'm sorry.  What time was that? |
| 12:54:26 | 2 | Q.    It would be 1:14:01. |
| 12:54:30 | 3 | A.    I see that. |
| 12:54:31 | 4 | Q.    You do see that? |
| 12:54:33 | 5 | A.    Uh-huh, yes. |
| 12:54:34 | 6 | Q.    And that would refer to the call sign |

12:54:37  7   C241 becoming the primary officer for this

12:54:41  8   complaint summary report?

12:54:42  9       A.    Yes.

12:54:42  10      Q.    Okay.  Now, based on your general

12:54:46  11  practice, would it be C241 or C230 who would have

12:54:51  12  made that entry for the disposition of P1375 crime

12:54:55  13  report?

12:54:55  14      MS. HUGGINS:  Form.

12:54:56  15      THE WITNESS:  I don't know who entered that.

12:54:57  16  I don't know if it was a patrol or radio at this

12:55:01  17  time.

12:55:01  18      BY MR. DAVENPORT:

12:55:01  19      Q.    Okay.  If the entry was made by a

12:55:05  20  patrol officer, would the entry be made by C241 or

12:55:09  21  C230?

12:55:10  22      MS. HUGGINS:  Form.

12:55:10  23      THE WITNESS:  C24 -- if it was entered by a

12:55:13    1  patrol officer, C241 would have had the ability.

12:55:16    2           BY MR. DAVENPORT:

12:55:17    3           Q.    Okay.

12:55:17    4           A.    If the radio had changed them over,

12:55:19    5  because it -- again, I don't know if that's typed

12:55:21    6  in or if it's entered as a -- I don't know how they

12:55:23    7  do it up in dispatch.

12:55:26    8           Q.    Okay.  Now, it says at 10:55:42 sent to

12:55:36    9  dispatch, ambulance 37 Schmarbeck Avenue, priority

12:55:41   10  six.  What does that priority number refer to?

12:55:46   11           A.    Dispatch sets priority.

12:55:49   12           Q.    Okay.  What are the numbers that are

12:55:53   13  used for that priority scale?

12:55:55   14           A.    I'm not certain.

12:55:56   15           Q.    Do you know the range of numbers that

12:55:59   16  are used?

12:56:03   17           A.    I know the scale, one is highest

12:56:06   18  priority.  I'm not certain.  I can't recall

12:56:12   19  the -- which would be the highest or the lowest

12:56:14   20  priority.  I don't know what the scale ends at.  I

12:56:17   21  don't recall at this time.

12:56:18   22           Q.    Okay.  But one you know is the highest

12:56:23   23  priority?

12:56:23  1          A.    Correct.

12:56:24  2          Q.    Okay.  So a priority six, is that a low

12:56:29  3   or a high priority?

12:56:30  4          A.    I'm not certain what the scale is.

12:56:33  5          Q.    And you said that that --

12:56:34  6          A.    What it's ranged, where the range is,

12:56:37  7   I'm not certain at this time.

12:56:39  8          Q.    And you said that that determination is

12:56:41  9   made by dispatch?

12:56:43 10          A.    Correct, dispatch sets the priority.

12:56:46 11          Q.    Okay.  Now, it says at 10:55:56 call

12:56:55 12   type changed, accident or injury, and now it says

12:57:01 13   priority to two; do you see that?

12:57:02 14          A.    Yes.

12:57:02 15          Q.    What would be the reason that the

12:57:04 16   priority would change from six to two?

12:57:07 17          MS. HUGGINS:   Form.   You can answer.

12:57:08 18          THE WITNESS:   Dispatch would based on

12:57:11 19   whatever dispatch had that would be -- they would

12:57:14 20   determine that.

12:57:14 21          BY MR. DAVENPORT:

12:57:15 22          Q.    Okay.  In your experience any time that

12:57:21 23   an ambulance is called from dispatch what's the

*Velez - Davenport - 02/26/2020*

166

| | | |
|---|---|---|
| 12:57:24 | 1 | typical priority that's given to those entries? |
| 12:57:27 | 2 | A.     There's no typical priority for the |
| 12:57:30 | 3 | ambulance.  It depends on what the situation that |
| 12:57:33 | 4 | the ambulance is responding to. |
| 12:57:34 | 5 | Q.     Okay.  Now, do you see where it says en |
| 12:57:39 | 6 | route C230 at 10:57:17? |
| 12:57:43 | 7 | A.     Yes. |
| 12:57:45 | 8 | Q.     Would that be en route for 37 |
| 12:58:00 | 9 | Schmarbeck Avenue specifically? |
| 12:58:00 | 10 | A.     That would respond to the call, yes. |
| 12:58:09 | 11 | But, again, it's a dispatch entry. |
| 12:58:16 | 12 | Q.     Now, do you see where it says en route |
| 12:58:19 | 13 | C241? |
| 12:58:21 | 14 | A.     Yes. |
| 12:58:21 | 15 | Q.     Okay.  And who does C241 refer to on |
| 12:58:30 | 16 | January 1st of 2017? |
| 12:58:31 | 17 | A.     Officer McDermott. |
| 12:58:32 | 18 | Q.     Okay.  Do you see where it says |
| 12:58:35 | 19 | dispatch C242? |
| 12:58:37 | 20 | A.     Yes. |
| 12:58:39 | 21 | Q.     And who does call sign C242 refer to? |
| 12:58:43 | 22 | A.     Myself. |
| 12:58:47 | 23 | Q.     Now, based on the entries that it says |

*Velez - Davenport - 02/26/2020*

167

| 12:58:54 | 1 | en route at 10:57:17, en route C241 at 10:57:39, |
| 12:59:03 | 2 | and dispatched you at 10:57:41, if it was sent to |
| 12:59:10 | 3 | dispatch at 10:55:42, so that would have been |
| 12:59:15 | 4 | before all three entries, who would that call have |
| 12:59:18 | 5 | been made to to dispatch? |
| 12:59:20 | 6 | MS. HUGGINS:  Form. |
| 12:59:21 | 7 | BY MR. DAVENPORT: |
| 12:59:21 | 8 | Q.   Would that have been an officer or |
| 12:59:24 | 9 | would that have been an individual at the scene? |
| 12:59:24 | 10 | MS. HUGGINS:  The 10:55:42 call, is that |
| 12:59:27 | 11 | what you're referring to? |
| 12:59:27 | 12 | BY MR. DAVENPORT: |
| 12:59:27 | 13 | Q.   Yes, that's what I'm referring to. |
| 12:59:29 | 14 | A.   Could you repeat that question? |
| 12:59:31 | 15 | Q.   Sure.  So you'll notice that it says en |
| 12:59:34 | 16 | route C230, en route C241? |
| 12:59:38 | 17 | A.   Uh-huh. |
| 12:59:39 | 18 | Q.   And dispatch C242, and that all three |
| 12:59:42 | 19 | of those entries were made after 10:55:42, which is |
| 12:59:47 | 20 | when the ambulance call was sent to dispatch; do |
| 12:59:51 | 21 | you see that? |
| 12:59:51 | 22 | A.   Yes. |
| 12:59:51 | 23 | Q.   Now, based on those subsequent entries, |

*Velez - Davenport - 02/26/2020*

168

| | | |
|---|---|---|
| 12:59:55 | 1 | would you say that the call to dispatch was made by |
| 12:59:58 | 2 | an individual or by the officers for the ambulance? |
| 13:00:07 | 3 | MS. HUGGINS:   Form.   You can answer. |
| 13:00:09 | 4 | THE WITNESS:   I'm not certain who called |
| 13:00:11 | 5 | that in to the -- to the ambulance -- or to |
| 13:00:14 | 6 | dispatch. |
| 13:00:14 | 7 | BY MR. DAVENPORT: |
| 13:00:15 | 8 | Q.   Okay.   At 10:54:42 do you see at the |
| 13:00:18 | 9 | end where it says phone, 716-462-2147? |
| 13:00:23 | 10 | A.   Yes. |
| 13:00:23 | 11 | Q.   Is that your phone number? |
| 13:00:25 | 12 | A.   No. |
| 13:00:26 | 13 | Q.   Do you know if that's any of the other |
| 13:00:28 | 14 | officers' numbers at that time? |
| 13:00:32 | 15 | A.   I'm not certain whose phone number that |
| 13:00:35 | 16 | is. |
| 13:00:35 | 17 | Q.   Okay.   Now, do you see at 11:03:52 |
| 13:00:41 | 18 | there's another phone call received from the same |
| 13:00:44 | 19 | number, 716-462-2147; do you see that? |
| 13:00:48 | 20 | A.   Yes. |
| 13:00:49 | 21 | Q.   Okay.   And, again, that's not your |
| 13:00:51 | 22 | phone number or any of the other officers', |
| 13:00:54 | 23 | correct? |

*Velez - Davenport - 02/26/2020*

169

| | | |
|---|---|---|
| 13:00:54 | 1 | A.    It's not my phone number and I'm not |
| 13:00:57 | 2 | certain whose phone number that is. |
| 13:00:59 | 3 | Q.    Okay.  Now, do you see at 11:04:20 it |
| 13:01:05 | 4 | says another call, female requests ambulance for |
| 13:01:09 | 5 | injured 54-year-old boyfriend; do you see that? |
| 13:01:12 | 6 | A.    Yes. |
| 13:01:13 | 7 | Q.    Would that call refer to 716-462-2147? |
| 13:01:20 | 8 | A.    It appears that way based on how |
| 13:01:23 | 9 | they're right after each other. |
| 13:01:25 | 10 | Q.    Okay.  Now, do you see where it says at |
| 13:01:30 | 11 | 11:04:26 E-D-I-N-T-F-D? |
| 13:01:34 | 12 | A.    Yes. |
| 13:01:35 | 13 | Q.    What does that stand for? |
| 13:01:37 | 14 | A.    The ambulance is notified. |
| 13:01:38 | 15 | Q.    Okay.  Now, do you see at 11:07:31 |
| 13:01:49 | 16 | where it says cameras on 37 has video of man |
| 13:01:54 | 17 | flopping on the ground? |
| 13:01:55 | 18 | A.    Yes. |
| 13:01:56 | 19 | Q.    Now, that entry would have been made by |
| 13:01:59 | 20 | dispatch, correct? |
| 13:02:00 | 21 | A.    Yes. |
| 13:02:00 | 22 | Q.    Okay.  And do you see where it says |
| 13:02:04 | 23 | 000478 next to that entry? |

*Velez - Davenport - 02/26/2020*

170

13:02:08   1         A.    Yes.

13:02:10   2         Q.    Does that refer to Joseph Kessler in

13:02:16   3    the top corner, it's top right corner, it says

13:02:20   4    dispatched by 000478 Kessler, Joseph; do you see

13:02:24   5    that?

13:02:24   6         A.    Yes.

13:02:25   7         Q.    Okay.  Now, would the 000478 entry at

13:02:29   8    11:07:31 a.m., would that entry have been made by

13:02:35   9    Joseph Kessler?

13:02:35  10         A.    What time was it?

13:02:36  11         Q.    11:07:31.

13:02:38  12         A.    It appears that way on this document.

13:02:41  13         Q.    Okay.  And would Mr. Kessler have made

13:02:46  14    that entry based on what was conveyed to him by

13:02:50  15    either the officers or the individuals at the

13:02:51  16    scene?

13:02:52  17         MS. HUGGINS:  Form.  You may answer.

13:02:54  18         THE WITNESS:  That would be a question for

13:02:56  19    Mr. Kessler.

13:02:56  20         BY MR. DAVENPORT:

13:02:56  21         Q.    Okay.

13:02:57  22         A.    I'm not certain where he received that

13:02:59  23    information.

| | | |
|---|---|---|
| 13:03:00 | 1 | Q.   Would it be fair to say that |
| 13:03:02 | 2 | that -- those would have been the only sources |
| 13:03:04 | 3 | where he could have received that information? |
| 13:03:06 | 4 | MS. HUGGINS:   Form. |
| 13:03:06 | 5 | THE WITNESS:   Again, I'm not certain where |
| 13:03:09 | 6 | he -- how they get their information from -- if |
| 13:03:11 | 7 | they get it from the county, 911, officers, |
| 13:03:14 | 8 | civilians.   I'm not certain where he got this |
| 13:03:17 | 9 | information from. |
| 13:03:17 | 10 | BY MR. DAVENPORT: |
| 13:03:18 | 11 | Q.   Sure.   But you did say it would either |
| 13:03:20 | 12 | come from officers or civilians.   So would it be |
| 13:03:23 | 13 | fair to say that that entry would have to be made |
| 13:03:26 | 14 | by either an officer based on information that he |
| 13:03:29 | 15 | receives either from an officer or an individual at |
| 13:03:31 | 16 | the scene? |
| 13:03:31 | 17 | MS. HUGGINS:   Form. |
| 13:03:32 | 18 | THE WITNESS:   It's a possibly. |
| 13:03:32 | 19 | BY MR. DAVENPORT: |
| 13:03:33 | 20 | Q.   Okay.   Would there be any other sources |
| 13:03:35 | 21 | where he could have received that information from? |
| 13:03:36 | 22 | A.   I'm not trained in dispatch. |
| 13:03:38 | 23 | Q.   Okay.   Now, at 11:22:34 it says |

| | | |
|---|---|---|
| 13:03:44 | 1 | location changed, C230 ECMC; do you see that? |
| 13:03:48 | 2 | A. Yes. |
| 13:03:48 | 3 | Q. And call sign C230, do you know who |
| 13:03:54 | 4 | that referred to on the day of the incident? |
| 13:03:57 | 5 | A. I'm not certain who it was assigned to. |
| 13:04:00 | 6 | Q. But it's neither you or Ms. McDermott, |
| 13:04:04 | 7 | correct? |
| 13:04:04 | 8 | A. Correct. |
| 13:04:04 | 9 | Q. Would it be fair to say that it was |
| 13:04:07 | 10 | either Carl Schulz or Kyle Moriarity? |
| 13:04:10 | 11 | A. I believe so. |
| 13:04:12 | 12 | Q. It wouldn't refer to any other |
| 13:04:14 | 13 | officers, correct? |
| 13:04:14 | 14 | A. Correct. |
| 13:04:15 | 15 | Q. Okay. Now, at 11:22:40 it says |
| 13:04:21 | 16 | location change, C241 ECMC; would that refer to |
| 13:04:26 | 17 | Ms. McDermott? |
| 13:04:27 | 18 | A. Yes. |
| 13:04:27 | 19 | Q. Do you see at 11:22:4 a.m. location |
| 13:04:32 | 20 | change, C242 ECMC? |
| 13:04:34 | 21 | A. Yes. |
| 13:04:34 | 22 | Q. Now, what would cause that six-second |
| 13:04:39 | 23 | difference between you and Ms. McDermott for the |

*Velez - Davenport - 02/26/2020*

173

13:04:42  1 | location change?

13:04:42  2 |          MS. HUGGINS:  Form.

13:04:43  3 |          THE WITNESS:  That would be dispatch.

13:04:44  4 |          BY MR. DAVENPORT:

13:04:45  5 |          Q.  Okay.  Did you and Ms. McDermott have

13:04:47  6 | to contact dispatch separately in order to change

13:04:51  7 | your location?

13:04:52  8 |          A.  We could do it together.  Radio

13:04:54  9 | may -- dispatch may just do it, because they know

13:04:57 10 | we're riding together.

13:04:58 11 |          Q.  Okay.  Now, at 11:23:01 C230 will be a

13:05:07 12 | 941; do you see that entry?

13:05:09 13 |          A.  Yes.

13:05:09 14 |          Q.  Okay.  And C230 does not refer you to

13:05:13 15 | either you or Ms. McDermott, correct?

13:05:15 16 |          A.  Correct.

13:05:16 17 |          Q.  When it says will be a 941, what does

13:05:19 18 | that say to you?

13:05:20 19 |          MS. HUGGINS:  Form.

13:05:20 20 |          THE WITNESS:  Will be a 941 it says it's a

13:05:28 21 | mental health evaluation.

13:05:31 22 |          BY MR. DAVENPORT:

13:05:32 23 |          Q.  Now, at that time, had you, personally,

*Velez - Davenport - 02/26/2020*

174

| | | |
|---|---|---|
| 13:05:36 | 1 | made any observations of Mr. Kistner that would |
| 13:05:40 | 2 | lead you to believe that he needed a 941 mental |
| 13:05:44 | 3 | health evaluation? |
| 13:05:46 | 4 | **A.**   That I personally observed? |
| 13:05:47 | 5 | **Q.**   You, personally. |
| 13:05:48 | 6 | **A.**   No. |
| 13:05:49 | 7 | **Q.**   Okay.  Did you and the other officers |
| 13:05:51 | 8 | discuss whether Mr. Kistner would be subjected to a |
| 13:05:52 | 9 | 941 evaluation before leaving Schmarbeck? |
| 13:05:56 | 10 | **A.**   I did not. |
| 13:05:57 | 11 | **Q.**   Do you know if Ms. McDermott discussed |
| 13:06:00 | 12 | with any of the other officers whether Mr. Kistner |
| 13:06:03 | 13 | would be subjected to a 941 -- |
| 13:06:03 | 14 | **A.**   I don't -- |
| 13:06:03 | 15 | **Q.**   -- examination? |
| 13:06:04 | 16 | **A.**   I don't know. |
| 13:06:04 | 17 | **Q.**   When Mr. Kistner was being brought to |
| 13:06:07 | 18 | ECMC, did you have any reason to believe that he |
| 13:06:09 | 19 | would be evaluated for a mental health evaluation? |
| 13:06:12 | 20 | **MS. HUGGINS:**   Form. |
| 13:06:13 | 21 | **THE WITNESS:**   I don't recall knowing that he |
| 13:06:15 | 22 | was going up for a 941.  I recall believing it was |
| 13:06:20 | 23 | going to be a medical evaluation. |

*Velez - Davenport - 02/26/2020*

| | | |
|---|---|---|
| 13:06:21 | 1 | BY MR. DAVENPORT: |
| 13:06:22 | 2 | Q.   And when you say a medical evaluation, |
| 13:06:23 | 3 | that refers to any physical injuries? |
| 13:06:25 | 4 | A.   Correct. |
| 13:06:26 | 5 | Q.   What about mental health or anything |
| 13:06:28 | 6 | like that? |
| 13:06:29 | 7 | A.   No. |
| 13:06:30 | 8 | Q.   Okay.   Would physical injuries also |
| 13:06:34 | 9 | include any head trauma? |
| 13:06:36 | 10 | A.   It would be a complete evaluation. |
| 13:06:38 | 11 | Q.   Okay.   So do you know if the location |
| 13:06:53 | 12 | change at 11:22 -- in between 11:22:34 and |
| 13:07:00 | 13 | 11:22:46, were you and the other officers at ECMC |
| 13:07:04 | 14 | at that time or were you preparing to leave for |
| 13:07:06 | 15 | ECMC? |
| 13:07:08 | 16 | A.   I'm sorry.   Can you give me those two |
| 13:07:11 | 17 | times again? |
| 13:07:11 | 18 | Q.   Sure.   So at location -- at time |
| 13:07:13 | 19 | 11:22:34 and 11:22:46, those entries for location |
| 13:07:20 | 20 | change, do you know if you and the other officers |
| 13:07:23 | 21 | would have been traveling to ECMC or if you would |
| 13:07:27 | 22 | have already been at ECMC at that time? |
| 13:07:29 | 23 | A.   I don't recall. |

*Velez - Davenport - 02/26/2020*

176

13:07:29  1          MS. HUGGINS:  Form.  You can answer.

13:07:30  2          THE WITNESS:  I don't recall.  And that

13:07:31  3   would be, again, up to when we notified dispatch

13:07:35  4   and when they entered it as well.

13:07:37  5          BY MR. DAVENPORT:

13:07:38  6      Q.   Okay.  If those entries were correct

13:07:43  7   for location change 11:22:34 for C230 --

13:07:43  8      A.   Excuse me.

13:07:49  9      Q.   -- and then that next entry saying

13:07:51 10   11:23:01, C230 will be a 941, if they were

13:07:57 11   traveling to ECMC during that time, would you agree

13:08:01 12   that that evaluation would have been made -- or

13:08:04 13   that call would have been made while they -- while

13:08:07 14   they were still in their police vehicle?

13:08:09 15          MS. HUGGINS:  Form.

13:08:10 16          THE WITNESS:  It depends, not necessarily.

13:08:13 17   I'm not sure.

13:08:13 18          BY MR. DAVENPORT:

13:08:14 19      Q.   Okay.

13:08:19 20      A.   Again, that would depend on when

13:08:22 21   dispatch entered it.

13:08:23 22      Q.   Now, do you see at 11:30:12 where it

13:08:27 23   says on scene C230?

*Velez - Davenport - 02/26/2020*

177

| | | |
|---|---|---|
| 13:08:29 | 1 | **A.** Yes. |

13:08:30  2       **Q.** Would that have been ECMC that they

13:08:32  3  were on scene for?

13:08:39  4       **A.** They changed their location to ECMC.

13:08:41  5  And then the next entry would be on scene, it would

13:08:44  6  appear to be that way.

13:08:45  7       **Q.** Okay. Do you see at 11:30:35 C230

13:08:49  8  suspect broke mirror on car 473 intentionally?

13:08:54  9       **A.** Yes.

13:08:54 10       **Q.** Okay. And that entry would have been

13:08:58 11  made based off of information given by the

13:09:01 12  individual with call sign C230?

13:09:04 13       **A.** This just said it's information per

13:09:09 14  C230.

13:09:12 15       **Q.** It says -- I'm sorry. It says

13:09:15 16  information per --

13:09:15 17       **A.** This is from -- from C230 that this

13:09:18 18  information is coming in there.

13:09:20 19       **Q.** Okay. So the C230 before that

13:09:23 20  information, that means that that information came

13:09:26 21  from call sign C230, correct?

13:09:29 22       **A.** It appears to be that way, yes. The

13:09:31 23  dispatch entered it, yes.

*Velez - Davenport - 02/26/2020*

178

13:09:33   1          Q.   Now, do you see at 1:14:01 where it

13:09:36   2    says set to primary C241?

13:09:37   3          A.   Yes.

13:09:37   4          Q.   And C241 would refer to Ms. McDermott,

13:09:41   5    correct?

13:09:41   6          A.   Yes.

13:09:41   7          Q.   Were you part of that discussion for

13:09:44   8    Ms. McDermott being set to the primary officer?

13:09:47   9          A.   Not that I could recall.

13:09:48  10          Q.   Okay.  Do you know why Ms. McDermott

13:09:53  11    was set to the primary officer?

13:10:00  12          A.   I don't recall.

13:10:01  13          Q.   Okay.  Now, you and Ms. McDermott did

13:10:07  14    not transfer or take Mr. Kistner to ECMC, correct?

13:10:11  15          A.   Correct.

13:10:12  16          Q.   Okay.  Why didn't you and Ms. McDermott

13:10:16  17    take Mr. Kistner to ECMC?

13:10:18  18          A.   From what I can recall, he was placed

13:10:21  19    into the rear of Officer Moriarity and Officer

13:10:25  20    Schulz's car and they -- they transported him up.

13:10:28  21          I don't recall the reason why he wasn't

13:10:30  22    placed in our car, for what reason, I don't recall.

13:10:33  23          Q.   Do you remember any sort of a

*Velez - Davenport - 02/26/2020*

179

| | | |
|---|---|---|
| 13:10:35 | 1 | discussion between you and the other officers who |
| 13:10:41 | 2 | would stay at ECMC at this time? |
| 13:10:43 | 3 | A.    I don't recall the conversation. |
| 13:10:44 | 4 | Q.    But do you recall having that sort of |
| 13:10:47 | 5 | type of -- that sort of a conversation? |
| 13:10:49 | 6 | A.    No. |
| 13:10:49 | 7 | Q.    Okay.  Why was it that you and |
| 13:10:52 | 8 | Ms. McDermott stayed at ECMC and Mr. Schulz and |
| 13:10:55 | 9 | Mr. Moriarity left? |
| 13:10:56 | 10 | A.    That is the decision that was made.  I |
| 13:10:59 | 11 | just don't recall the -- having the conversation or |
| 13:11:02 | 12 | the context of it.  I don't recall if -- I just |
| 13:11:05 | 13 | don't recall it. |
| 13:11:07 | 14 | Q.    So you said generally you work the |
| 13:11:10 | 15 | 6:00 a.m. to 4:00 p.m. shift, correct? |
| 13:11:12 | 16 | A.    Yes. |
| 13:11:14 | 17 | Q.    At any times are you tired during your |
| 13:11:17 | 18 | shifts? |
| 13:11:18 | 19 | MS. HUGGINS:   Form. |
| 13:11:21 | 20 | THE WITNESS:   Sometimes. |
| 13:11:22 | 21 | BY MR. DAVENPORT: |
| 13:11:23 | 22 | Q.    Okay.  Do you recall being tired for |
| 13:11:26 | 23 | whatever reason during this shift? |

*Velez - Davenport - 02/26/2020*

180

| | | | |
|---|---|---|---|
| 13:11:29 | 1 | A. | I don't recall. |
| 13:11:30 | 2 | Q. | Okay.  Do you recall what you did the |
| 13:11:32 | 3 | night before January 1st of 2017? |
| 13:11:34 | 4 | A. | I don't recall. |
| 13:11:35 | 5 | Q. | What do you typically do on a New Years |
| 13:11:40 | 6 | Eve? |

13:11:40   7       A.    Well, I'm a mom and my -- I have a

13:11:43   8   little guy.  At the time he would have been was it

13:11:48   9   January '17, three, so I have a three-year-old, so

13:11:54 10   I -- I don't recall, but I know I wasn't out.

13:11:56 11       Q.    Okay.  Did you have any friends over?

13:12:00 12       A.    Not that I recall.

13:12:01 13       Q.    Okay.  Did you have any police officers

13:12:06 14   over to your house the night before?

13:12:08 15       A.    Not that I could recall.  I

13:12:09 16   don't -- yeah, not that I could recall.

13:12:14 17       Q.    Okay.  Now, do you see at 2:45:35 C241

13:12:21 18   NMT?

13:12:21 19       A.    Can you repeat that time again?

13:12:23 20       Q.    It would be 2:45:35 C241 MNT?

13:12:29 21       A.    Yes.

13:12:30 22       Q.    Okay.  What does NMT refer to?

13:12:34 23       A.    Needed more time.

13:12:35  1       Q.   Needed more time.  Okay.  Does dispatch
13:12:41  2   always make entries on complaint summary reports
13:12:44  3   when an officer requests more time?
13:12:47  4       A.   That would be a question for dispatch
13:12:49  5   and who the dispatcher is.  Sometimes they change
13:12:54  6   out during the shift, so some may, some may not.
13:12:58  7       Q.   So there's no automatic entry that's
13:13:01  8   made after an officer requests more time, correct?
13:13:03  9       A.   Correct.
13:13:04 10       Q.   And you would agree at this time you
13:13:09 11   had spent nearly four hours on this call, correct?
13:13:13 12       MS. HUGGINS:  Form.  You can answer.
13:13:17 13       THE WITNESS:  What time are we at now, 2:45,
13:13:21 14   correct.
13:13:21 15       BY MR. DAVENPORT:
13:13:22 16       Q.   Okay.  Do you recall if at any other
13:13:26 17   time you asked for more time from dispatch?
13:13:29 18       A.   I -- I didn't.
13:13:29 19       Q.   Do you recall if Ms. McDermott at any
13:13:31 20   time asked for more time?
13:13:33 21       A.   I don't recall.
13:13:33 22       Q.   Okay.  But it's typically every
13:13:36 23   20 minutes, correct, that an officer asks for more

13:13:39   1   time on a certain call?

13:13:41   2          MS. HUGGINS:   Form.

13:13:41   3          THE WITNESS:   Not typically.   We try, we

13:13:44   4   try, but it doesn't always happen.

13:13:45   5          BY MR. DAVENPORT:

13:13:45   6          Q.   Okay.   Do you know if that request for

13:13:47   7   more time would have been made at ECMC or a

13:13:50   8   different location?

13:13:50   9          A.   It appears based on this complaint

13:13:54  10   summary it was at ECMC.

13:13:56  11          Q.   Okay.   Now, at 3:37:06 it says location

13:14:01  12   changed C241 CB.   And then at it would be 3:37:09

13:14:07  13   location changed C242 CB.   Now, C -- CB refers to

13:14:13  14   central booking, correct?

13:14:15  15          A.   Correct.

13:14:15  16          Q.   And that would be you and Ms. McDermott

13:14:19  17   were on your way to central booking?

13:14:21  18          A.   Yes.

13:14:22  19          Q.   Okay.   And then the next entry says

13:14:28  20   3:48:31 on scene C242.   And then at 3:48:35 it says

13:14:36  21   on scene C241.   Would that refer to you and

13:14:41  22   Ms. McDermott being at central booking at that

13:14:44  23   time?

*Velez - Davenport - 02/26/2020*

183

| | | |
|---|---|---|
| 13:14:44 | 1 | A.   It appears to be so, yes. |
| 13:14:46 | 2 | Q.   Okay.   Now, when it says 4:36:51 and |
| 13:14:52 | 3 | 4:36:55 location changed C241, C242 to ECMC; do you |
| 13:14:59 | 4 | see that? |
| 13:14:59 | 5 | A.   Yes. |
| 13:15:00 | 6 | Q.   Okay.   And that would refer to you and |
| 13:15:03 | 7 | Ms. McDermott going to ECMC? |
| 13:15:05 | 8 | A.   Yes. |
| 13:15:06 | 9 | Q.   Okay.   So that would mean that you and |
| 13:15:13 | 10 | Ms. McDermott spent approximately 45 minutes at |
| 13:15:18 | 11 | central booking? |
| 13:15:20 | 12 | A.   If dispatch entered this at the -- like |
| 13:15:22 | 13 | I said, when we made the call at the right time, it |
| 13:15:27 | 14 | appears to be that way, yes. |
| 13:15:27 | 15 | Q.   Okay.   Do you have any reason to |
| 13:15:30 | 16 | dispute that you and Ms. McDermott spent 45 minutes |
| 13:15:33 | 17 | at central booking? |
| 13:15:35 | 18 | A.   I don't recall the exact amount of time |
| 13:15:36 | 19 | we were there. |
| 13:15:36 | 20 | Q.   Now, when you arrived at central |
| 13:15:38 | 21 | booking, was Mr. Kistner in handcuffs? |
| 13:15:39 | 22 | A.   Yes. |
| 13:15:40 | 23 | Q.   What did you do, did you walk into |

13:15:43  1    central booking, I'm assuming, with Mr. Kistner in

13:15:47  2    handcuffs?

13:15:48  3         A.   We walk into the -- yes, into central

13:15:50  4    booking with him in handcuffs.

13:15:52  5         Q.   Okay.  Did you speak to anybody at

13:15:54  6    central booking at that time?

13:15:56  7         A.   I don't recall who went up to the

13:15:58  8    window with Officer McDermott and myself, because

13:16:01  9    we have to produce our paperwork at -- to the

13:16:04 10    report technician at the window.  I don't remember

13:16:07 11    which one of us had done that.

13:16:09 12         Q.   What sort of paperwork do you produce

13:16:12 13    to the individual at central booking?

13:16:14 14         A.   The arrest form.

13:16:15 15         Q.   Okay.  Any other paperwork besides the

13:16:19 16    arrest form?

13:16:19 17         A.   Medical clearance paperwork, if we have

13:16:22 18    it.

13:16:22 19         Q.   Okay.  Now, for Mr. Kistner, did you

13:16:26 20    have a medical clearance form?

13:16:28 21         A.   We had his discharge paperwork, I

13:16:30 22    believe.

13:16:30 23         Q.   Okay.  So you would have provided his

13:16:36  1    discharge paperwork to the individual at central

13:16:38  2    booking?

13:16:39  3         A.   We would, any documents we have we

13:16:41  4    would give them to central booking.

13:16:43  5         Q.   Okay.  Besides the arrest form and

13:16:45  6    medical clearance form, do you recall any other

13:16:48  7    paperwork that you had for Mr. Kistner?

13:16:50  8         A.   I don't recall any other that we had.

13:16:52  9         Q.   Okay.  After producing that paperwork

13:16:55 10    to the person at central booking, did you have any

13:16:58 11    further conversations with that individual?

13:17:00 12         A.   Again, I don't remember who produced

13:17:01 13    it.  I don't know if Officer McDermott or myself

13:17:03 14    did, but I don't recall the conversation.

13:17:05 15         Q.   So it was one of you, but not both of

13:17:08 16    you?

13:17:09 17         A.   Correct, one of us would.  I mean, both

13:17:10 18    of us could go up to the window, but one of us

13:17:13 19    would hand over paperwork.  I just don't recall

13:17:17 20    which one of us did.

13:17:18 21         Q.   Now, after either you or Ms. McDermott

13:17:18 22    handed the paperwork to the person at central

13:17:21 23    booking, what would you and Ms. McDermott do next?

*Velez - Davenport - 02/26/2020*

186

| | | |
|---|---|---|
| 13:17:24 | 1 | **MS. HUGGINS:**  Form.  You can answer. |
| 13:17:26 | 2 | **THE WITNESS:**  Mr. Kistner would be sitting |
| 13:17:28 | 3 | on a bench while we handed in the paperwork, any |
| 13:17:32 | 4 | property he had, anything like that, we would also |
| 13:17:35 | 5 | give that for inventory. |
| 13:17:37 | 6 | Then we would just wait for the report |
| 13:17:39 | 7 | technician to complete entering the information, |
| 13:17:42 | 8 | because they have to do background warrant checks, |
| 13:17:47 | 9 | anything like that, and then the cell block |
| 13:17:50 | 10 | attendants call us into the next room. |
| 13:17:52 | 11 | Q.   Do you remember or recall who the |
| 13:17:54 | 12 | report technician was on January 1st of 2017? |
| 13:17:57 | 13 | A.   I do not. |
| 13:17:58 | 14 | Q.   Okay.  Do you recall who the |
| 13:17:59 | 15 | individuals at central booking who would have been |
| 13:18:02 | 16 | the search attendants? |
| 13:18:03 | 17 | A.   I do not. |
| 13:18:04 | 18 | Q.   Okay.  Was their name Joseph? |
| 13:18:07 | 19 | A.   I don't recall. |
| 13:18:08 | 20 | Q.   Have you ever come across a -- an |
| 13:18:12 | 21 | individual at central booking who does the searches |
| 13:18:16 | 22 | named Joseph? |
| 13:18:19 | 23 | A.   I -- is that a first name or a last |

*Velez - Davenport - 02/26/2020*

187

| | | |
|---|---|---|
| 13:18:22 | 1 | name, I don't -- |
| 13:18:23 | 2 | Q. First name. |
| 13:18:23 | 3 | A. Yeah, I don't recall. |
| 13:18:24 | 4 | Q. Okay. Joseph Buyers, does that ring a |
| 13:18:26 | 5 | bell for you? |
| 13:18:27 | 6 | A. The name sounds familiar, but I |
| 13:18:31 | 7 | can't -- I can't even picture who that is. |
| 13:18:32 | 8 | Q. Okay. So besides running a background |
| 13:18:40 | 9 | search for arrest warrants and other information, |
| 13:18:44 | 10 | what else does the report technician do at central |
| 13:18:48 | 11 | book? |
| 13:18:48 | 12 | A. I'm aware that they do that, but I'm |
| 13:18:52 | 13 | not trained in being a report technician, so I |
| 13:18:53 | 14 | don't know exact -- I don't know everything that |
| 13:18:53 | 15 | they do once we give over the paperwork. |
| 13:18:56 | 16 | Q. What information would you need to |
| 13:18:58 | 17 | receive from the report technician before having |
| 13:19:02 | 18 | Mr. Kistner searched? |
| 13:19:05 | 19 | MS. HUGGINS: Form. |
| 13:19:06 | 20 | THE WITNESS: We would just -- no |
| 13:19:07 | 21 | information. We would just -- they would -- if he |
| 13:19:08 | 22 | had a warrant or something we weren't aware of, |
| 13:19:11 | 23 | they would put that on -- on the paperwork, but all |

*Velez - Davenport - 02/26/2020*

188

| | | |
|---|---|---|
| 13:19:14 | 1 | they do is just give us our paperwork back once |
| 13:19:17 | 2 | they entered it. |
| 13:19:18 | 3 | BY MR. DAVENPORT: |
| 13:19:18 | 4 | Q. Okay. Did you receive any sort of |
| 13:19:20 | 5 | paperwork from the report technician before |
| 13:19:23 | 6 | Mr. Kistner was searched? |
| 13:19:24 | 7 | A. No, we just get a copy of our arrest |
| 13:19:26 | 8 | form and we go back. |
| 13:19:27 | 9 | Q. Now, when you say go back, are you |
| 13:19:30 | 10 | talking about ECMC? |
| 13:19:31 | 11 | A. No. I'm sorry. We go back to the room |
| 13:19:33 | 12 | with the cellblock attendants where they do |
| 13:19:36 | 13 | fingerprinting, mug shots, and search. |
| 13:19:39 | 14 | Q. Okay. Where is that room in relation |
| 13:19:42 | 15 | to the report technician who I think you described |
| 13:19:46 | 16 | as being behind a window? |
| 13:19:47 | 17 | A. Uh-huh. |
| 13:19:48 | 18 | Q. Where is that search room in relation |
| 13:19:51 | 19 | to it? |
| 13:19:52 | 20 | MS. HUGGINS: Form. She needs a yes or no. |
| 13:19:55 | 21 | THE WITNESS: Yes. It's down the hall to |
| 13:19:57 | 22 | the left through another door. |
| 13:19:58 | 23 | BY MR. DAVENPORT: |

| | | |
|---|---|---|
| 13:19:59 | 1 | Q.   Okay.   Did you go with Mr. Kistner to |
| 13:20:01 | 2 | that search room? |
| 13:20:02 | 3 | A.   I would have went to the search room. |
| 13:20:06 | 4 | I don't recall which one of us stayed in the search |
| 13:20:09 | 5 | room, because typically one of us goes through to |
| 13:20:13 | 6 | do the arrest paperwork while the person is being |
| 13:20:16 | 7 | processed. |
| 13:20:16 | 8 | One of us will stay with the prisoner.   One |
| 13:20:16 | 9 | of us will do paperwork.   So somebody always has to |
| 13:20:20 | 10 | stay with the prisoner, but I just don't know which |
| 13:20:22 | 11 | one of us had done that. |
| 13:20:24 | 12 | Q.   Okay.   Do you know what sort of a |
| 13:20:27 | 13 | search Mr. Kistner received when he was at central |
| 13:20:30 | 14 | booking? |
| 13:20:30 | 15 | A.   I am in the room, but I'm behind a |
| 13:20:34 | 16 | curtain.   The men search males, so I'm not certain |
| 13:20:37 | 17 | exactly what they did. |
| 13:20:41 | 18 | Q.   Now, is that decision of what type of a |
| 13:20:44 | 19 | search they'll receive, is that decision made by |
| 13:20:47 | 20 | the cell block attendants? |
| 13:20:49 | 21 | MS. HUGGINS:   Form. |
| 13:20:50 | 22 | THE WITNESS:   I'm not trained, they have |
| 13:20:53 | 23 | their own training, they know the extent of the |

13:20:56  1   search that they're allowed to do.

13:20:58  2          BY MR. DAVENPORT:

13:20:59  3          Q.   I guess my question is do police

13:21:02  4   officers ever give their input for what type of a

13:21:05  5   search an individual should receive?

13:21:07  6          A.   No, I don't.  I don't know what other

13:21:10  7   officers may or may not do, but I -- I don't.

13:21:11  8          Q.   Do you know what Mr. Kistner was

13:21:14  9   charged with on January 1st of 2017?

13:21:15 10          A.   I do.

13:21:16 11          Q.   What was he charged with?

13:21:18 12          A.   Criminal mischief and disorderly

13:21:21 13   conduct, I believe.

13:21:21 14          Q.   Did you and Ms. McDermott know that

13:21:24 15   prior to arriving at central booking what he would

13:21:28 16   be charged with?

13:21:29 17          A.   Yes.

13:21:29 18          Q.   Okay.  Based on those charges, what

13:21:31 19   type of a search would an individual receive?

13:21:34 20          MS. HUGGINS:  Form.  You can answer.

13:21:35 21          THE WITNESS:  Again, based on my experience,

13:21:38 22   I'm not a cellblock attendant, it's the same search

13:21:42 23   for -- from what I've seen with females.  It's the

*Velez - Davenport - 02/26/2020*

191

13:21:45  1   same search they receive every time.

13:21:48  2        Regardless of the charges, it's procedural,

13:21:48  3   but I'm not trained.  I'm not a trained cellblock

13:21:53  4   attendant, so I don't know what their policy and

13:21:55  5   procedure is.

13:21:56  6        BY MR. DAVENPORT:

13:21:56  7        Q.   So what sort of a search is it that

13:22:00  8   individuals receive?  You're saying it's

13:22:00  9   consistent, so what type of search is that?

13:22:01  10       A.   For the females that I've observed,

13:22:04  11  strip search.

13:22:05  12       Q.   Okay.  And you have no reason to think

13:22:08  13  that males are not also subjected to strip search?

13:22:12  14       MS. HUGGINS:  Form.

13:22:12  15       THE WITNESS:  I'm not certain.

13:22:14  16       BY MR. DAVENPORT:

13:22:14  17       Q.   Okay.  And that's for every sort of

13:22:17  18  arrest where a person is being booked?

13:22:19  19       A.   Every arrest I've taken down that's a

13:22:21  20  female that I've observed it was the same search.

13:22:25  21       Q.   Would that be -- is an individual taken

13:22:27  22  to central booking if they have a misdemeanor?

13:22:30  23       A.   Yes.

*Velez - Davenport - 02/26/2020*

192

13:22:30  1          Q.    And they still receive a strip search?

13:22:34  2          A.    Every arrest I've taken down for

13:22:36  3   females that I've observed it's always been the

13:22:39  4   same search.

13:22:40  5          Q.    And that's even if they are going to be

13:22:44  6   released on an appearance ticket?

13:22:45  7          A.    For the ones that I've been present

13:22:49  8   for, yes.

13:22:49  9          Q.    Okay.   There are no exceptions to an

13:22:55 10   individual not receiving a strip search?

13:22:57 11          MS. HUGGINS:   Form.

13:22:58 12          THE WITNESS:   That would be, again, with the

13:23:01 13   cellblock attendants and their training and their

13:23:04 14   policy and procedures.

13:23:05 15          BY MR. DAVENPORT:

13:23:05 16          Q.    But no arrests that you have personally

13:23:08 17   made?

13:23:08 18          A.    Could you repeat that?

13:23:10 19          Q.    So no arrests that you have personally

13:23:11 20   made where there was an exception why an individual

13:23:13 21   who was brought to central booking did not receive

13:23:15 22   a strip search?

13:23:15 23          MS. HUGGINS:   Form.   You may answer.

*Velez - Davenport - 02/26/2020*

13:23:22  1       THE WITNESS:  Not that I could recall.

13:23:23  2       BY MR. DAVENPORT:

13:23:23  3       Q.  Okay.  How many arrests have you made

13:23:26  4  during your career?

13:23:28  5       A.  I don't recall a specific number.

13:23:30  6       Q.  Is it more than a hundred?

13:23:31  7       A.  Yes.

13:23:32  8       Q.  Okay.  Is it more than 200?

13:23:35  9       A.  Possibly.

13:23:35 10       Q.  Okay.  I'm going to show you what has

13:23:41 11  been marked as Exhibit A -- 8.  I'm sorry.

13:23:41 12       A.  It's okay.

13:23:51 13       Q.  Do you recognize this document?

13:23:56 14       A.  No.

13:23:57 15       Q.  Okay.  Do you see where individuals

13:24:06 16  listed as Slamba, Buyers, Pinkston, and Borsaleri,

13:24:14 17  do you see where that section is?  It's in the

13:24:17 18  middle, in the very middle of the page.

13:24:24 19       A.  Yes.

13:24:24 20       Q.  Okay.  Do you know a Joseph Slamba?

13:24:28 21       A.  No.

13:24:29 22       Q.  Okay.  Do you know a Joseph Buyers?

13:24:31 23       A.  As I said before, the name is familiar,

*Velez - Davenport - 02/26/2020*

194

| | | |
|---|---|---|
| 13:24:34 | 1 | but I'm not certain who that is. |
| 13:24:36 | 2 | Q. Okay. Do you know an individual |
| 13:24:41 | 3 | cellblock attendant named Pinkston? |
| 13:24:45 | 4 | A. No. |
| 13:24:46 | 5 | Q. Do you know an individual cellblock |
| 13:24:48 | 6 | attendant with the last name of Borsaleri? |
| 13:24:51 | 7 | A. No. |
| 13:24:51 | 8 | Q. Okay. So I'm going to show you what's |
| 13:25:04 | 9 | been marked as Exhibit 21. Do you recognize that |
| 13:25:11 | 10 | document? |
| 13:25:11 | 11 | A. Yes. |
| 13:25:12 | 12 | Q. And what do you recognize it to be? |
| 13:25:14 | 13 | A. An -- an appearance ticket. |
| 13:25:15 | 14 | Q. Okay. So do you see the time that's |
| 13:25:23 | 15 | listed as 1600 with PM circled? |
| 13:25:28 | 16 | A. Yes. |
| 13:25:28 | 17 | Q. Okay. And that would be referring to |
| 13:25:32 | 18 | 4:00 p.m., correct? |
| 13:25:33 | 19 | A. Yes. |
| 13:25:50 | 20 | Q. So turning back to Exhibit 4A. |
| 13:25:55 | 21 | A. What's 4A? |
| 13:25:58 | 22 | Q. So that one, yes, okay. Do you see |
| 13:26:04 | 23 | where the location change for ECMC was made at |

*Velez - Davenport - 02/26/2020*

195

| | | |
|---|---|---|
| 13:26:10 | 1 | 4:36:51 towards the bottom of the page? |
| 13:26:15 | 2 | A.     Yes. |
| 13:26:15 | 3 | Q.     And 4:36:55 for you? |
| 13:26:18 | 4 | A.     Yes. |
| 13:26:18 | 5 | Q.     Okay.  So now -- oh, excuse me.  So |
| 13:26:29 | 6 | turning back towards Exhibit 21, when it says |
| 13:26:33 | 7 | 1600 p.m., before that it says committed at 37 |
| 13:26:40 | 8 | Schmarbeck on the 1st day of January of 2017 and |
| 13:26:44 | 9 | then it says at 4:00 p.m.; do you see that? |
| 13:26:47 | 10 | A.     Yes. |
| 13:26:48 | 11 | Q.     Okay.  All right.  So is that in |
| 13:26:51 | 12 | reference to what time the crime was committed? |
| 13:26:56 | 13 | A.     I'm not certain why they put 1600 on |
| 13:27:00 | 14 | there. |
| 13:27:00 | 15 | Q.     Okay.  Would you or Ms. McDermott have |
| 13:27:03 | 16 | given that information to whoever issued the |
| 13:27:06 | 17 | appearance ticket? |
| 13:27:07 | 18 | MS. HUGGINS:   Form. |
| 13:27:07 | 19 | THE WITNESS:   I'm not certain who would have |
| 13:27:10 | 20 | given that information. |
| 13:27:10 | 21 | BY MR. DAVENPORT: |
| 13:27:11 | 22 | Q.     Okay.  Do you believe that the time is |
| 13:27:15 | 23 | incorrect at 1600 p.m. for when the crime was |

*Velez - Davenport - 02/26/2020*

196

| | | |
|---|---|---|
| 13:27:20 | 1 | committed? |
| 13:27:20 | 2 | A.   Yes. |
| 13:27:20 | 3 | Q.   Okay.  Now, it looks like the issuing |
| 13:27:27 | 4 | officer for the appearance ticket was Lieutenant D. |
| 13:27:32 | 5 | Banazek; do you see that? |
| 13:27:37 | 6 | A.   I see where the issuing officer is, |
| 13:27:39 | 7 | that's not legible. |
| 13:27:42 | 8 | Q.   Okay.  Do you know an individual by the |
| 13:27:44 | 9 | name of Lieutenant Banazek? |
| 13:27:46 | 10 | A.   Yes. |
| 13:27:47 | 11 | Q.   Okay.  And who is that? |
| 13:27:49 | 12 | A.   Lieutenant Banazek was the lieutenant |
| 13:27:53 | 13 | from -- that was working in central booking. |
| 13:27:56 | 14 | Q.   Okay.  Did he have any other |
| 13:27:58 | 15 | assignments besides central booking at that time? |
| 13:28:01 | 16 | A.   I -- I don't know. |
| 13:28:03 | 17 | Q.   Have you ever spoken to Lieutenant |
| 13:28:06 | 18 | Banazek before? |
| 13:28:06 | 19 | A.   Yes. |
| 13:28:07 | 20 | Q.   Okay.  And in what situations have you |
| 13:28:12 | 21 | spoken to Lieutenant Banazek? |
| 13:28:14 | 22 | A.   While he was down in central booking if |
| 13:28:17 | 23 | we had questions regarding -- if I had questions |

*Velez - Davenport - 02/26/2020*

197

13:28:20  1   regarding paperwork or anything of that nature with

13:28:23  2   the booking process, I would defer to him, because

13:28:26  3   he was a lieutenant.

13:28:27  4        Q.   What sorts of issues would you have

13:28:29  5   with paperwork, would it be penal statutes or, you

13:28:34  6   know, I guess, what sorts of questions would you

13:28:36  7   ask of this lieutenant at central booking?

13:28:39  8        A.   It depends.  It could vary, it could be

13:28:40  9   paperwork, it could be a situation, correct

13:28:43  10  charges.

13:28:43  11       Q.   Okay.  What other sorts of paperwork

13:28:47  12  would you typically fill out at central booking?

13:28:51  13       A.   We just turn in our 163, the report

13:28:55  14  technicians complete the documentation for us.

13:28:59  15       Q.   And, I'm sorry, what does a 163 refer

13:29:02  16  to?

13:29:03  17       A.   The arrest form.

13:29:05  18       Q.   Okay.  Do you give that 163 arrest form

13:29:16  19  to central booking after it's completed?

13:29:19  20       A.   Yes.

13:29:19  21       Q.   Okay.  And then do you know who central

13:29:23  22  booking takes that arrest form to?

13:29:25  23       A.   As I explained, when we come in for the

*Velez - Davenport - 02/26/2020*

13:29:28  1  arrest process, we give it to the -- at the window.

13:29:30  2  And then that report technician makes a copy, gives

13:29:34  3  us the copy so we can complete the booking process

13:29:37  4  with the prisoner.

13:29:38  5       And then a second copy goes back to the

13:29:40  6  report technicians who complete our court

13:29:43  7  documentation, our complaints, the rest of the

13:29:45  8  forms that need to be completed for the court file.

13:29:47  9       Q.   Okay.  After those forms are completed,

13:29:50  10  would the arresting officer sign off on those

13:29:53  11  criminal complaint documents?

13:29:55  12       A.   If they're the complainant on it, if

13:29:58  13  the State of New York is the complainant on it, if

13:30:00  14  we're the complainant on it, then yes.

13:30:01  15       Q.   Okay.  If an individual who is not a

13:30:04  16  police officer is the complainant, they would sign

13:30:06  17  off on the arrest forms or criminal complaint

13:30:07  18  forms?

13:30:07  19       A.   If they were present, if they came down

13:30:09  20  to central booking, they can sign.  At one time we

13:30:12  21  could sign on information and belief, so we would

13:30:13  22  sign on -- on behalf of them if they gave us a

13:30:17  23  supporting deposition that said we want to be a

Velez - Davenport - 02/26/2020

199

13:30:19  1  complaint, they're just not present.  So those are

13:30:22  2  the times we would sign.  I'm sorry.

13:30:25  3      Q.    Okay.  Now, do you see underneath zip

13:30:40  4  code on the appearance ticket where it says

13:30:43  5  records?  It's directly above part two that's

13:30:48  6  underlined and bolded; do you see that?

13:30:49  7      A.    Yes.

13:30:50  8      Q.    What is that referring to?

13:30:54  9      A.    What part of it are you referring to

13:30:58 10  that is referring to?

13:30:59 11      Q.    Well, there's records that is written

13:31:02 12  underneath zip code and directly above part two

13:31:06 13  which is underlined and bolded.  Do you know why

13:31:10 14  records would be written in that section?

13:31:13 15      A.    I did not create this document.  I -- I

13:31:16 16  don't know.

13:31:16 17      Q.    Okay.  Now, you were a passenger with

13:31:48 18  Ms. McDermott on January 1st of 2017, correct?

13:31:51 19      A.    Yes.

13:31:52 20      Q.    Were you a passenger at the time that

13:31:55 21  the car and Mr. Kistner collided with each other?

13:31:59 22      MS. HUGGINS:    Form.  You may answer.

13:32:00 23      THE WITNESS:    I was in the passenger's side

*Velez - Davenport - 02/26/2020*

13:32:02  1  during the incident.

13:32:03  2       BY MR. DAVENPORT:

13:32:03  3       Q.   Okay.  Did you see that incident?

13:32:05  4       A.   I did not.

13:32:06  5       Q.   Okay.  So you didn't see the car make

13:32:11  6  contact with Mr. Kistner?

13:32:11  7       MS. HUGGINS:  Form.  You may answer.

13:32:13  8       THE WITNESS:  I did not see Mr. Kistner make

13:32:16  9  contact with the car.

13:32:16 10       THE REPORTER:  I'm sorry?

13:32:16 11       THE WITNESS:  I did not see Mr. Kistner make

13:32:18 12  contact with the car.

13:32:18 13       BY MR. DAVENPORT:

13:32:18 14       Q.   Did Ms. McDermott tell you that she saw

13:32:21 15  the incident, the collision with Mr. Kistner in the

13:32:25 16  vehicle?

13:32:25 17       A.   She did.

13:32:26 18       Q.   Okay.  And what did she tell you?

13:32:29 19       A.   She told me that Mr. Kistner had -- I

13:32:32 20  can't remember if she said threw himself or put

13:32:35 21  himself into the mirror of the car.

13:32:38 22       Q.   Okay.  Did you happen to observe what

13:32:41 23  the mirror looked like on the driver's side of that

*Velez - Davenport - 02/26/2020*

201

| | | |
|---|---|---|
| 13:32:45 | 1 | vehicle after the collision? |
| 13:32:46 | 2 | A.   I did. |
| 13:32:46 | 3 | Q.   Okay.  And how did it appear to you? |
| 13:32:48 | 4 | A.   That it was dislodged from the body of |
| 13:32:51 | 5 | the car. |
| 13:32:52 | 6 | Q.   Now, when you say dislodged, was it |
| 13:32:55 | 7 | still attached but it was partially detached from |
| 13:32:59 | 8 | the car? |
| 13:32:59 | 9 | A.   Yes. |
| 13:32:59 | 10 | Q.   Okay.  So it -- it was still there on |
| 13:33:03 | 11 | the car, it hadn't fallen off completely, correct? |
| 13:33:07 | 12 | A.   Correct. |
| 13:33:07 | 13 | Q.   Okay.  Was there any damage to the |
| 13:33:09 | 14 | glass on that mirror? |
| 13:33:12 | 15 | A.   The glass itself was not damaged. |
| 13:33:16 | 16 | Q.   Okay.  Did you try to use or did |
| 13:33:24 | 17 | Ms. McDermott try to use the window on the driver's |
| 13:33:27 | 18 | side of that vehicle that day? |
| 13:33:29 | 19 | A.   She did. |
| 13:33:29 | 20 | Q.   Okay.  Were you present when she tried |
| 13:33:32 | 21 | to use the window? |
| 13:33:33 | 22 | A.   Yes. |
| 13:33:33 | 23 | Q.   Okay.  Did it make any sort of a |

*Velez - Davenport - 02/26/2020*

202

| | | |
|---|---|---|
| 13:33:37 | 1 | screeching sound or anything like that? |
| 13:33:40 | 2 | **A.**   It did, it -- it made a noise and it |
| 13:33:42 | 3 | like wiggled and hesitated to go up and down. |
| 13:33:45 | 4 | **Q.**   Okay.  What car were you driving that |
| 13:33:47 | 5 | day? |
| 13:33:47 | 6 | **A.**   I wasn't driving that day. |
| 13:33:49 | 7 | **Q.**   Excuse me.  What car were you a |
| 13:33:51 | 8 | passenger in that day? |
| 13:33:53 | 9 | **A.**   I believe it was 473. |
| 13:33:55 | 10 | **Q.**   Okay.  Did you and Ms. McDermott have a |
| 13:33:57 | 11 | specific vehicle that you liked to use? |
| 13:34:00 | 12 | **A.**   She had -- she preferred 473.  I |
| 13:34:05 | 13 | preferred 472. |
| 13:34:06 | 14 | **Q.**   Okay.  Was there any reason why car 473 |
| 13:34:11 | 15 | was used on the day of the incident? |
| 13:34:14 | 16 | **A.**   Availability. |
| 13:34:14 | 17 | **Q.**   Okay.  Did you use car 473 again after |
| 13:34:18 | 18 | January 1st of 2017? |
| 13:34:19 | 19 | **A.**   I'm sure we did.  If Officer McDermott |
| 13:34:22 | 20 | was driving, she -- she would drive that car. |
| 13:34:25 | 21 | **Q.**   Okay.  Do you recall when your next |
| 13:34:27 | 22 | shift would have been after January 1st of 2017? |
| 13:34:29 | 23 | **A.**   I don't recall. |

13:34:31  1          Q.    Okay.   Would it have been before

13:34:36  2    January 5th of 2017?

13:34:40  3          A.    It would have.   Well, if January 1 was

13:34:44  4    our last day, the most we could have been off was

13:34:48  5    for four days, so then we would have been back.

13:34:51  6          So if -- if January 1 was our last day,

13:34:55  7    because I don't recall, we would have been -- the

13:34:55  8    most we -- the longest we could have been off was

13:34:56  9    the 2nd, 3rd, 4th, 5th.

13:35:00 10          So the earliest would have been January 6th

13:35:03 11    or 5th, if we were off for three.

13:35:06 12          Q.    Okay.   Do you know when the next time

13:35:08 13    would have been that you would use car 473?

13:35:11 14          A.    No.

13:35:11 15          Q.    Okay.   Do you recall if the next time

13:35:13 16    that you used car 473 did it have a dislodged

13:35:17 17    mirror or were there any issues with the driver's

13:35:20 18    side window?

13:35:20 19          A.    I don't recall.

13:35:21 20          Q.    Okay.   Do you recall ever driving the

13:35:23 21    vehicle again where it had a dislodged mirror or

13:35:27 22    issues with the driver's side window?

13:35:28 23          A.    I don't recall driving 473 at all.

*Velez - Davenport - 02/26/2020*

13:35:31  1  Like I said, I would prefer to drive 472, but I

13:35:35  2  don't recall being in that vehicle in -- with an

13:35:39  3  issue.

13:35:39  4       Like I don't recall after that incident when

13:35:41  5  was the next time we had taken that vehicle.  I

13:35:44  6  don't recall.

13:35:44  7       Q.   Do you recall ever being in a police

13:35:47  8  vehicle where the driver's side mirror was

13:35:50  9  dislodged or the driver's side window had issues

13:35:53 10  with going up and down?

13:35:55 11       MS. HUGGINS:  Form.  You can answer.

13:35:57 12       THE WITNESS:  I've driven vehicles that have

13:35:59 13  had issues with windows before.

13:36:02 14       BY MR. DAVENPORT:

13:36:02 15       Q.   And what sort of issues were those?

13:36:05 16       A.   I had one that the window wouldn't go

13:36:08 17  down before.

13:36:09 18       Q.   But you were never in a vehicle where

13:36:13 19  the window would make noises as it was going down,

13:36:17 20  correct?

13:36:17 21       A.   Correct.

13:36:17 22       Q.   Okay.  Do you recall what car you were

13:36:19 23  driving when the window would not go down?

*Velez - Davenport - 02/26/2020*

205

13:36:24  1          A.   It may have been a Crown Vic, a Crown

13:36:28  2  Victoria, the old model car we had, because we had

13:36:31  3  some that were very old.

13:36:33  4          Q.   Okay.  Now, on the day of the incident

13:36:36  5  did you make any sort of an estimation as to how

13:36:40  6  much damage was caused to car 473 by this incident?

13:36:44  7          A.   I did not.

13:36:45  8          Q.   Okay.  Would you agree or disagree that

13:36:47  9  it was more than $250 worth of damage to the

13:36:50 10  vehicle?

13:36:51 11          MS. HUGGINS:   Form.  You can answer.

13:36:52 12          THE WITNESS:  I'm not a professional, I -- I

13:36:54 13  would not know.

13:36:55 14          BY MR. DAVENPORT:

13:36:55 15          Q.   On the day of the incident did you

13:36:57 16  believe is that it was more than $250 worth of

13:37:01 17  damage to the vehicle?

13:37:02 18          A.   Based on the information that was given

13:37:04 19  to me by Officer McDermott on the damage and the

13:37:08 20  charges that she signed on, yes.

13:37:10 21          Q.   But that wasn't based off of your

13:37:12 22  personal observation of the damage to the vehicle?

13:37:14 23          A.   I can't estimate that.  I don't know

*Velez - Davenport - 02/26/2020*

206

| | | |
|---|---|---|
| 13:37:17 | 1 | how much that would cost. |
| 13:37:18 | 2 | Q. Do you know if Ms. McDermott can make |
| 13:37:21 | 3 | that estimation? |
| 13:37:21 | 4 | A. You would have to ask Officer |
| 13:37:21 | 5 | McDermott. |
| 13:37:21 | 6 | Q. Is she trained on how to make those |
| 13:37:25 | 7 | estimations? |
| 13:37:25 | 8 | A. You would have to ask Officer |
| 13:37:25 | 9 | McDermott. |
| 13:37:28 | 10 | Q. Are you trained on how to make those |
| 13:37:29 | 11 | estimations? |
| 13:37:29 | 12 | A. I am not. |
| 13:37:30 | 13 | Q. Okay. Are any police officers trained |
| 13:37:32 | 14 | on how to make those estimations? |
| 13:37:35 | 15 | A. I don't know. |
| 13:37:36 | 16 | Q. Okay. I'm going to show you what's |
| 13:37:37 | 17 | been marked as Exhibit 18. Do you recognize this |
| 13:37:45 | 18 | document? |
| 13:37:48 | 19 | A. I've -- no, I haven't seen one of |
| 13:37:51 | 20 | these. |
| 13:37:53 | 21 | Q. Do you see where it's written |
| 13:37:56 | 22 | underneath fleet management what is written? |
| 13:37:58 | 23 | A. Yes. |

*Velez - Davenport - 02/26/2020*

207

| | | |
|---|---|---|
| 13:37:59 | 1 | Q. What's written? |
| 13:38:00 | 2 | A. Maintenance work order. |
| 13:38:02 | 3 | Q. Okay. Do you have any reason to |
| 13:38:04 | 4 | dispute that this is a maintenance work order? |
| 13:38:06 | 5 | A. No. |
| 13:38:07 | 6 | Q. Do you have any reason to dispute that |
| 13:38:10 | 7 | this is a maintenance work order that was made and |
| 13:38:12 | 8 | created by the City of Buffalo? |
| 13:38:14 | 9 | MS. HUGGINS: Form. |
| 13:38:14 | 10 | THE WITNESS: It has a seal on it, no. |
| 13:38:17 | 11 | Again, no. |
| 13:38:18 | 12 | BY MR. DAVENPORT: |
| 13:38:18 | 13 | Q. Okay. Now, looking at this for the |
| 13:38:24 | 14 | vehicle information, what car was fixed according |
| 13:38:27 | 15 | to this maintenance work order? |
| 13:38:30 | 16 | A. This has unit 473 on it. |
| 13:38:33 | 17 | Q. Okay. And what was the date of |
| 13:38:36 | 18 | service? |
| 13:38:37 | 19 | A. 1/5 of '17. |
| 13:38:39 | 20 | Q. Okay. And on the day of the incident |
| 13:38:42 | 21 | you and Ms. McDermott were driving car 473, |
| 13:38:46 | 22 | correct? |
| 13:38:46 | 23 | A. Officer McDermott was driving. I was |

*Velez - Davenport - 02/26/2020*

208

13:38:48  1  in the passenger's side, yes.

13:38:50  2          Q.   But you and Officer McDermott were in

13:38:52  3  car 473?

13:38:54  4          A.   On January 1st, 2017, yes.

13:38:56  5          Q.   Okay.  And this is also the car that

13:38:59  6  Ms. McDermott alleged in her criminal complaint

13:39:02  7  that Mr. Kistner caused more than $250 worth of

13:39:07  8  damage to?

13:39:07  9          A.   Yes.

13:39:09  10         Q.   By intentionally throwing himself at

13:39:12  11 the police vehicle?

13:39:12  12         A.   Yes.

13:39:13  13         Q.   Okay.  Do you see where it says service

13:39:15  14 underneath the service date?

13:39:16  15         A.   Yes.

13:39:16  16         Q.   And what does that say?

13:39:18  17         A.   Cooling system.

13:39:19  18         Q.   Does that in any way refer to the

13:39:22  19 mirror on the driver's side or the window on the

13:39:26  20 driver's side of car 473?

13:39:27  21         MS. HUGGINS:   Form.

13:39:27  22         THE WITNESS:   I have no idea what a cooling

13:39:29  23 system is.   There's no word window there, no mirror

*Velez - Davenport - 02/26/2020*

209

13:39:35  1  there.

13:39:35  2          BY MR. DAVENPORT:

13:39:36  3          Q.   But you have no reason to believe that

13:39:38  4  that would refer to the window on the driver's side

13:39:40  5  of the vehicle or the window on the driver's side,

13:39:43  6  correct?

13:39:43  7          MS. HUGGINS:   Form.

13:39:43  8          THE WITNESS:   Again, I'm not a vehicle

13:39:45  9  maintenance worker and this says cooling system.

13:39:47 10          BY MR. DAVENPORT:

13:39:48 11          Q.   Okay.   Now, do you see where it says

13:39:50 12  remarks are, slash are water pump, and then serp

13:39:56 13  period belt; do you see that?

13:39:57 14          A.   Yes.

13:39:58 15          Q.   Now, does that in any way refer to the

13:40:03 16  driver's side mirror or the driver's side window?

13:40:06 17          MS. HUGGINS:   Form.   You can answer.

13:40:09 18          THE WITNESS:   It doesn't say window or

13:40:11 19  mirror here, but it says water pump.   And I don't

13:40:14 20  know what a serp belt is or what RR means.

13:40:18 21          BY MR. DAVENPORT:

13:40:18 22          Q.   Do you see where it's listed as cost

13:40:21 23  underneath the service information?

*Velez - Davenport - 02/26/2020*

210

13:40:23  1          A.    Yes.

13:40:24  2          Q.    And do you see where that is listed as

13:40:26  3    blank?

13:40:27  4          A.    Yes.

13:40:27  5          Q.    So is it fair to say that no estimate

13:40:30  6    was ever made by the City of Buffalo as to the cost

13:40:33  7    of the damage caused by Mr. Kistner on January 1st

13:40:37  8    of 2017?

13:40:37  9          MS. HUGGINS:   Form.

13:40:37 10          THE WITNESS:   I don't know if an estimate

13:40:39 11    was ever done.

13:40:40 12          BY MR. DAVENPORT:

13:40:41 13          Q.    Now, as part of the burden of proof for

13:40:46 14    a criminal complaint, that's beyond a reasonable

13:40:49 15    doubt, correct?

13:40:49 16          MS. HUGGINS:   Form.

13:40:50 17          THE WITNESS:   For a criminal complaint?

13:40:52 18          BY MR. DAVENPORT:

13:40:53 19          Q.    Yes.

13:40:53 20          A.    Yes.

13:40:54 21          Q.    Okay.   What sorts of evidence would you

13:40:57 22    use to accuse somebody of causing $250 worth of

13:41:01 23    damage to a vehicle?

13:41:02  1          MS. HUGGINS:  Form.

13:41:03  2          THE WITNESS:  Well, we have at the time

13:41:05  3  probable cause to make the arrest.  Following

13:41:09  4  the -- the District Attorney's office, we would

13:41:12  5  follow -- we would conference with them to

13:41:14  6  determine what documents would be needed.

13:41:16  7          BY MR. DAVENPORT:

13:41:18  8          Q.  At any time did the District Attorney

13:41:19  9  tell you what sort of documents were needed in

13:41:22 10  order to sustain a beyond a reasonable doubt

13:41:25 11  standard?

13:41:26 12          A.  I don't recall ever meeting with the

13:41:29 13  District Attorney.

13:41:29 14          Q.  Do you recall ever speaking with

13:41:29 15  Ms. McDermott to know if she ever met with the

13:41:31 16  District Attorney?

13:41:31 17          A.  No.

13:41:34 18          Q.  Were you or Ms. McDermott ever present

13:41:38 19  for any of the criminal proceedings against

13:41:40 20  Mr. Kistner?

13:41:41 21          A.  I don't recall being present.  I don't

13:41:43 22  know if Officer McDermott was.

13:41:48 23          Q.  Now, looking at this information, do

*Velez - Davenport - 02/26/2020*

212

| | | |
|---|---|---|
| 13:41:59 | 1 | you recall if car 473 had any issues with the |
| 13:42:03 | 2 | cooling system prior to January 5th of 2017? |
| 13:42:08 | 3 | A.   I don't recall. |
| 13:42:08 | 4 | Q.   Okay.  Did it have any issues with the |
| 13:42:11 | 5 | cooling system on January 1st of 2017? |
| 13:42:14 | 6 | A.   I don't recall. |
| 13:42:15 | 7 | Q.   Do you know what the cooling system |
| 13:42:17 | 8 | refers to? |
| 13:42:17 | 9 | A.   I don't. |
| 13:42:18 | 10 | Q.   Okay.  Now, as a lieutenant, are you |
| 13:42:26 | 11 | involved at all in the repair and maintenance of |
| 13:42:28 | 12 | the vehicles in your fleet? |
| 13:42:31 | 13 | A.   Involved in the repair and maintenance, |
| 13:42:33 | 14 | no. |
| 13:42:33 | 15 | Q.   Are you involved in the status of the |
| 13:42:36 | 16 | repair of those vehicles in your fleet? |
| 13:42:38 | 17 | A.   As a lieutenant, I follow up, because |
| 13:42:41 | 18 | we have such a shortage of cars.  So the extent of |
| 13:42:46 | 19 | my follow-up is to find out when they're going to |
| 13:42:49 | 20 | be available again for service. |
| 13:42:51 | 21 | Q.   Okay.  If a police officer came to you |
| 13:42:53 | 22 | and told you that the window was malfunctioned and |
| 13:42:57 | 23 | the mirror was dislodged from a police vehicle, |

*Velez - Davenport - 02/26/2020*

213

| | | |
|---|---|---|
| 13:43:01 | 1 | would you have that police officer send it in for |
| 13:43:03 | 2 | service? |
| 13:43:04 | 3 | A.    It's situational. |
| 13:43:05 | 4 | Q.    Would you have a police officer drive a |
| 13:43:08 | 5 | police vehicle if a mirror was dislodged from that |
| 13:43:12 | 6 | vehicle? |
| 13:43:12 | 7 | A.    They -- it depends on the type of |
| 13:43:16 | 8 | damage that's done to it, is it functional. |
| 13:43:20 | 9 | Q.    What sorts of mirrors that are |
| 13:43:23 | 10 | dislodged from a police vehicle are still |
| 13:43:26 | 11 | functional? |
| 13:43:26 | 12 | A.    If it -- |
| 13:43:26 | 13 | MS. HUGGINS:  Form.  You can answer. |
| 13:43:28 | 14 | THE WITNESS:  If the mirror is still |
| 13:43:30 | 15 | attached and you can see out the mirror.  But as I |
| 13:43:33 | 16 | said before, we have such a shortage of vehicles or |
| 13:43:36 | 17 | even if the vehicle has to be driven down to the |
| 13:43:39 | 18 | garage for a repair, if they can safely get there |
| 13:43:39 | 19 | and the mirror is functional and can serve its |
| 13:43:42 | 20 | purpose even though it's broken, they can still |
| 13:43:44 | 21 | operate it. |
| 13:43:45 | 22 | BY MR. DAVENPORT: |
| 13:43:45 | 23 | Q.    So besides driving that vehicle to the |

*Velez - Davenport - 02/26/2020*

214

13:43:48   1   service garage, you would allow that officer to go

13:43:53   2   out on patrol with a dislodged mirror?

13:43:53   3        A.   Again, it's situational.  If the mirror

13:43:55   4   is functional, it could be dislodged, it could even

13:43:56   5   be broken and still functioning.

13:43:59   6        Q.   Just so that I'm clear, what does

13:44:01   7   dislodged mean to you?

13:44:03   8        A.   That it's off track or broken off of

13:44:06   9   where it should be completely attached.

13:44:09  10        Q.   So does dislodged mean that -- well, in

13:44:15  11   specific to this mirror on car 473 on January 1st

13:44:19  12   of 2017, was it dislodged where it was angled

13:44:22  13   downward or upward or was it dislodged where it was

13:44:25  14   angled towards the car or away from the car?

13:44:28  15        MS. HUGGINS:   Form.

13:44:29  16        THE WITNESS:   I don't recall.

13:44:29  17        BY MR. DAVENPORT:

13:44:29  18        Q.   Okay.  Assuming that this mirror was

13:44:35  19   dislodged, would you agree that the view that a

13:44:41  20   driver would have out of that driver's side mirror

13:44:44  21   would be distorted?

13:44:46  22        A.   Depending --

13:44:46  23        MS. HUGGINS:   Form.  You can answer.

13:44:48   1      **THE WITNESS:**   It's depending on the way it

13:44:50   2   was dislodged, depending on how it was or as you

13:44:53   3   had described which angle it was at.

13:44:53   4      **BY MR. DAVENPORT:**

13:44:53   5      **Q.**   Would --

13:44:55   6      **A.**   Like I said, it could be dislodged and

13:44:58   7   still functioning.

13:44:59   8      **Q.**   Would any of the angles that I

13:45:02   9   discussed have a mirror that's dislodged where the

13:45:05   10   view would not be distorted for the driver?

13:45:08   11      **MS. HUGGINS:**   Form.

13:45:09   12      **THE WITNESS:**   It depends.

13:45:15   13      **BY MR. DAVENPORT:**

13:45:16   14      **Q.**   Assuming that a police officer has

13:45:20   15   reported to you that their mirror is dislodged on

13:45:23   16   their police vehicle, how long would you allow that

13:45:27   17   police officer to drive with a dislodged mirror?

13:45:29   18      **MS. HUGGINS:**   Form.   You can answer.

13:45:31   19      **THE WITNESS:**   If the garage is open, I would

13:45:33   20   prefer the vehicle be taken immediately down and

13:45:36   21   let's get this vehicle fixed in a reasonable amount

13:45:37   22   of time.

13:45:37   23      **BY MR. DAVENPORT:**

*Velez - Davenport - 02/26/2020*

216

| | | |
|---|---|---|
| 13:45:39 | 1 | Q.    When is the garage not open? |
| 13:45:41 | 2 | A.    Holidays, weekends, occasionally now |
| 13:45:45 | 3 | because we have such a shortage of vehicle, they |
| 13:45:50 | 4 | can be open on a Saturday, but typically regular |
| 13:45:50 | 5 | business hours Monday through Friday. |
| 13:45:52 | 6 | Q.    And regular business hours would refer |
| 13:45:54 | 7 | to 9:00 a.m. to 5:00 p.m.? |
| 13:45:56 | 8 | A.    Sometimes it's earlier.  I believe |
| 13:45:58 | 9 | sometimes the garage opens at 7, maybe 7, and I |
| 13:46:02 | 10 | don't recall how late they stay. |
| 13:46:04 | 11 | Q.    Okay.  Was there any reason to believe |
| 13:46:07 | 12 | that the garage was closed prior to January 5th of |
| 13:46:11 | 13 | 2017 and after January 1st of 2017? |
| 13:46:14 | 14 | MS. HUGGINS:  Form.  You can answer. |
| 13:46:15 | 15 | THE WITNESS:  I don't know. |
| 13:46:27 | 16 | BY MR. DAVENPORT: |
| 13:46:27 | 17 | Q.    So I'm going to show you what has been |
| 13:46:31 | 18 | marked as Exhibit 17.  Do you recognize that |
| 13:46:36 | 19 | document? |
| 13:46:36 | 20 | A.    Yes. |
| 13:46:37 | 21 | Q.    Okay.  And what do you recognize it to |
| 13:46:40 | 22 | be? |
| 13:46:40 | 23 | A.    Information and complaint. |

*Velez - Davenport - 02/26/2020*

217

| | | |
|---|---|---|
| 13:46:42 | 1 | Q. Okay. Who was the criminal complainant |
| 13:46:50 | 2 | for this criminal complaint? |
| 13:46:52 | 3 | A. Can you repeat that? |
| 13:46:54 | 4 | Q. Who was the complainant for this |
| 13:46:57 | 5 | criminal complaint? |
| 13:46:58 | 6 | A. Officer McDermott. |
| 13:46:59 | 7 | Q. And why would she have been the |
| 13:47:03 | 8 | complainant for this criminal complaint? |
| 13:47:05 | 9 | A. She was the officer who was signing on |
| 13:47:07 | 10 | the charges. |
| 13:47:08 | 11 | Q. Would you expect that the officer |
| 13:47:10 | 12 | driving the vehicle would be the criminal |
| 13:47:13 | 13 | complainant in a situation that transpired on |
| 13:47:17 | 14 | January 1st of 2017? |
| 13:47:18 | 15 | A. The officer who had witnessed it. She |
| 13:47:23 | 16 | had witnessed it, so she signed on the charges. |
| 13:47:26 | 17 | Q. Okay. Now, reading underneath criminal |
| 13:47:33 | 18 | mischief, damages greater than $250, that's |
| 13:47:38 | 19 | referring to damages to the police vehicle car 473, |
| 13:47:44 | 20 | correct? |
| 13:47:44 | 21 | MS. HUGGINS: Form. |
| 13:47:49 | 22 | THE WITNESS: Yes. |
| 13:47:49 | 23 | BY MR. DAVENPORT: |

*Velez - Davenport - 02/26/2020*

218

| | | |
|---|---|---|
| 13:47:50 | 1 | Q.   Okay.   And would it be safe to say that |
| 13:47:57 | 2 | that was -- strike that. |
| 13:48:00 | 3 | Let's look underneath criminal mischief in |
| 13:48:06 | 4 | the third degree in the middle of the page.  Do you |
| 13:48:09 | 5 | see that?  It's right underneath -- right after |
| 13:48:12 | 6 | 145.05-2. |
| 13:48:15 | 7 | A.   Yes. |
| 13:48:15 | 8 | Q.   Okay.   So reading that first sentence, |
| 13:48:18 | 9 | in that the defendant while at 37 Schmarbeck did |
| 13:48:23 | 10 | with intent to damage the property of another |
| 13:48:26 | 11 | person, City of Buffalo's Police Department, and |
| 13:48:29 | 12 | having no right to do so nor any reasonable ground |
| 13:48:34 | 13 | to believe that he had such right did damage the |
| 13:48:37 | 14 | property. |
| 13:48:38 | 15 | Now, turning to that first line where it |
| 13:48:43 | 16 | says intent to damage, do you agree based off of |
| 13:48:47 | 17 | what you have now seen on the video surveillance |
| 13:48:51 | 18 | that was provided to you that Mr. Kistner intended |
| 13:48:54 | 19 | to damage the police vehicle? |
| 13:48:56 | 20 | MS. HUGGINS:   Form. |
| 13:48:57 | 21 | THE WITNESS:   Yes. |
| 13:48:57 | 22 | BY MR. DAVENPORT: |
| 13:48:57 | 23 | Q.   Okay.   And just so that way I'm clear |

*Velez - Davenport - 02/26/2020*

219

| | | |
|---|---|---|
| 13:49:01 | 1 | that's based on what you saw on the video, correct? |
| 13:49:05 | 2 | MS. HUGGINS:  Form. |
| 13:49:05 | 3 | THE WITNESS:  Again, I had two officers |
| 13:49:07 | 4 | describe to me and the video.  And based on that, |
| 13:49:11 | 5 | yes. |
| 13:49:11 | 6 | BY MR. DAVENPORT: |
| 13:49:12 | 7 | Q.   Well, I'm just asking specifically what |
| 13:49:14 | 8 | you saw on the video you still believe that |
| 13:49:17 | 9 | Mr. Kistner intended to damage the vehicle? |
| 13:49:18 | 10 | A.   Well, from -- |
| 13:49:18 | 11 | MS. HUGGINS:  Form. |
| 13:49:20 | 12 | THE WITNESS:  -- the perspective of the |
| 13:49:21 | 13 | video it's very hard to see in my -- my view. |
| 13:49:25 | 14 | BY MR. DAVENPORT: |
| 13:49:25 | 15 | Q.   So it's hard to see, but based on what |
| 13:49:28 | 16 | you saw in the -- in the video, do you believe that |
| 13:49:31 | 17 | Mr. Kistner intended to damage the vehicle? |
| 13:49:33 | 18 | A.   I believe Mr. -- |
| 13:49:34 | 19 | MS. HUGGINS:  Form.  Are you asking her |
| 13:49:37 | 20 | opinion of -- of the video? |
| 13:49:37 | 21 | MR. DAVENPORT:  Yes. |
| 13:49:38 | 22 | MS. HUGGINS:  -- after viewing it? |
| 13:49:40 | 23 | Form.  You can answer. |

13:49:41  1        THE WITNESS:  Like I said, that perspective

13:49:44  2   of the video and from what I can see it's the

13:49:47  3   angle -- it's a difficult angle to see the

13:49:51  4   circumstance, but I believe, yes.

13:49:52  5        BY MR. DAVENPORT:

13:49:52  6        Q.   And that's based on what you saw in the

13:49:54  7   video, correct?

13:49:55  8        A.   Yes.

13:49:55  9        MS. HUGGINS:  Form.

13:49:57 10        MR. DAVENPORT:  Thank you.

13:50:00 11        I'm sorry.  Can we take a break really

13:50:03 12   quick.

13:50:03 13             (Discussion off the record at

13:50:03 14   1550.)

14:00:28 15             (On the record at 1400.)

14:00:28 16        BY MR. DAVENPORT:

14:00:32 17        Q.   So now, Ms. Velez, turning your

14:00:35 18   attention again to Exhibit 17.  It says on here

14:00:40 19   that in that the defendant did intentionally throw

14:00:44 20   his body into the driver's side mirror of patrol

14:00:48 21   vehicle under 473 causing the mirror to become

14:00:54 22   dislodged from the vehicle and also causing

14:00:55 23   the -- the defendant -- or also causing the

14:00:57  1  driver's side window to malfunction; do you see

14:01:00  2  that?

14:01:00  3          A.    Yes.

14:01:00  4          Q.    Now, the driver's side window

14:01:02  5  malfunctioning, what do you recall about the

14:01:06  6  driver's side window malfunctioning?

14:01:08  7          A.    I recall -- I don't exactly remember at

14:01:12  8  what point during the process of transporting

14:01:17  9  Mr. Kistner when Officer McDermott went to roll her

14:01:20 10  window down.

14:01:21 11          I recall her trying to roll her window down

14:01:23 12  and, like I said, it made a noise and then it was

14:01:26 13  like hesitating to go down and up.

14:01:29 14          Q.    Okay.  Do you recall, would that have

14:01:32 15  been attempted at Schmarbeck?

14:01:34 16          A.    I don't recall if it was.  I know we

14:01:40 17  had -- I don't recall if it was when exactly we

14:01:43 18  were leaving Schmarbeck or to ECMC.

14:01:50 19          Q.    So when the incident initially happens,

14:01:55 20  the only information that you knew or that any of

14:02:00 21  the officers knew about damage to the vehicle

14:02:03 22  number 473 was that the mirror, driver's side

14:02:06 23  mirror was dislodged from the vehicle?

*Velez - Davenport - 02/26/2020*

222

| | | |
|---|---|---|
| 14:02:07 | 1 | MS. HUGGINS:  Form.  You may answer. |
| 14:02:09 | 2 | THE WITNESS:  Pardon? |
| 14:02:10 | 3 | BY MR. DAVENPORT: |
| 14:02:10 | 4 | Q.    When the incident initially happens, |
| 14:02:13 | 5 | the only damage that you or any of the officers at |
| 14:02:19 | 6 | the scene knew was that the mirror was dislodged |
| 14:02:23 | 7 | from vehicle number 473? |
| 14:02:25 | 8 | A.    Correct. |
| 14:02:25 | 9 | Q.    Okay.  Now, on the second page of |
| 14:02:28 | 10 | Exhibit 17, was that criminal charge for disorderly |
| 14:02:37 | 11 | conduct? |
| 14:02:37 | 12 | A.    Yes, the violation disorderly conduct. |
| 14:02:41 | 13 | Q.    Okay.  So it's a violation.  Now, is |
| 14:02:44 | 14 | there any reason to include what the value of the |
| 14:02:48 | 15 | damage to the vehicle was in that criminal |
| 14:02:52 | 16 | complaint where it says the value of said damage to |
| 14:02:52 | 17 | exceed $250? |
| 14:02:55 | 18 | A.    This -- these are created by the report |
| 14:02:59 | 19 | technicians, so that could have just been part of |
| 14:03:03 | 20 | she's doing page 1, page 2.  I'm not certain. |
| 14:03:08 | 21 | Q.    Okay.  For the disorderly conduct, what |
| 14:03:12 | 22 | was that criminal charge for?  What -- what sort of |
| 14:03:16 | 23 | criminal conduct did Mr. Kistner do to deserve that |

*Velez - Davenport - 02/26/2020*

223

| | | |
|---|---|---|
| 14:03:16 | 1 | criminal charge? |
| 14:03:17 | 2 | MS. HUGGINS:   Form.   You may answer. |
| 14:03:20 | 3 | THE WITNESS:   From what I recall, this |
| 14:03:21 | 4 | was -- the disorderly conduct was for his behavior |
| 14:03:24 | 5 | at the hospital, the disruption that he created. |
| 14:03:27 | 6 | BY MR. DAVENPORT: |
| 14:03:28 | 7 | Q.   Was any part of this criminal charge |
| 14:03:31 | 8 | due to any of the damage that Mr. Kistner caused to |
| 14:03:35 | 9 | the police vehicle number 473? |
| 14:03:38 | 10 | A.   Not that I could recall.   Again, |
| 14:03:42 | 11 | Officer McDermott signed on these charges, so -- |
| 14:03:44 | 12 | Q.   Sure.   Have you ever charged somebody |
| 14:03:47 | 13 | with disorderly conduct, the violation section |
| 14:03:51 | 14 | 24020, subsection three of the Penal Law of the |
| 14:03:56 | 15 | State of New York? |
| 14:03:56 | 16 | A.   Ever? |
| 14:03:57 | 17 | Q.   Yes. |
| 14:03:58 | 18 | A.   I don't recall specifics. |
| 14:03:58 | 19 | Q.   Okay. |
| 14:04:00 | 20 | A.   I may have. |
| 14:04:01 | 21 | Q.   Okay.   Are you familiar with that |
| 14:04:03 | 22 | statute? |
| 14:04:04 | 23 | A.   Yes. |

| | | |
|---|---|---|
| 14:04:04 | 1 | Q.   Okay.  If somebody intentionally threw |
| 14:04:09 | 2 | themselves at a police vehicle, would that be |
| 14:04:13 | 3 | conduct that would warrant a disorderly conduct |
| 14:04:17 | 4 | charge under this subsection? |
| 14:04:20 | 5 | A.   On a patrol car? |
| 14:04:23 | 6 | Q.   Yes. |
| 14:04:24 | 7 | A.   It depends.  Like it's -- it's |
| 14:04:28 | 8 | circumstantial.  It depends on the totality of |
| 14:04:30 | 9 | where they are, how it happened, why they did it. |
| 14:04:33 | 10 | Q.   So it's possible, then? |
| 14:04:35 | 11 | A.   Possible. |
| 14:04:36 | 12 | Q.   Okay.  I'm going to show you what's |
| 14:04:48 | 13 | been marked as Exhibit 5.  Do you recognize this |
| 14:04:54 | 14 | document? |
| 14:04:54 | 15 | A.   I do. |
| 14:04:55 | 16 | Q.   And what do you recognize it to be? |
| 14:04:57 | 17 | A.   This is a police report. |
| 14:04:59 | 18 | Q.   Okay.  Is this referred to any -- by |
| 14:05:03 | 19 | any other names or identifications? |
| 14:05:06 | 20 | A.   Yes, a P1375. |
| 14:05:09 | 21 | Q.   Okay.  Now, when would this P1375 |
| 14:05:16 | 22 | report have been filled out? |
| 14:05:20 | 23 | A.   It could have been filled out -- I |

*Velez - Davenport - 02/26/2020*

225

14:05:23  1  don't know exactly when it was filled out, but it

14:05:26  2  would typically be done either during the booking

14:05:33  3  process.

14:05:33  4       While the RTs are completing their

14:05:33  5  paperwork, we could possibly fill out, because

14:05:35  6  there's a long form that goes with the -- the paper

14:05:38  7  version. We would -- we can fill that out or

14:05:44  8  when -- if there's two officers while transporting,

14:05:46  9  we can do the paperwork.

14:05:48 10       Or upon completion of the arrest or the

14:05:51 11  disposition of whatever it was we can complete it

14:05:54 12  after.

14:05:54 13      Q.   When Mr. Kistner was at central

14:05:58 14  booking, did you know where he would be going next?

14:06:02 15      A.   Yes.

14:06:02 16      Q.   Where did you know that he was going

14:06:04 17  to?

14:06:04 18      A.   To ECMC.

14:06:07 19      Q.   At any point, did you and Ms. McDermott

14:06:12 20  discuss sending Mr. Kistner to jail as opposed to

14:06:17 21  ECMC?

14:06:17 22      A.   At central booking, I don't recall.

14:06:20 23  No, once we went to central booking, we knew that

*Velez - Davenport - 02/26/2020*

226

14:06:25  1    he was going to go back at that point.

14:06:26  2          Q.    Okay.   So that would have been when you

14:06:29  3    arrived at central booking that you knew that he

14:06:33  4    was going to ECMC?

14:06:33  5          A.    Correct, we had already knew.

14:06:33  6          Q.    Okay.   Was that information conveyed to

14:06:36  7    any of the cellblock attendants?

14:06:38  8          A.    I don't recall.

14:06:39  9          Q.    Is it part of their job to ask where

14:06:42 10    that individual would be going next?

14:06:44 11          A.    They would have known, I believe, that

14:06:45 12    he was going to get an appearance ticket, but they

14:06:46 13    do their own checklist evaluation.

14:06:49 14          So I don't -- I don't know that we told them

14:06:54 15    that he was going to ECMC afterward.   I don't

14:06:57 16    recall.

14:06:57 17          Q.    Okay.   At what point do they ask you if

14:07:01 18    an individual is being given an appearance ticket?

14:07:04 19          MS. HUGGINS:   Cellblock attendants?

14:07:04 20          BY MR. DAVENPORT:

14:07:04 21          Q.    Cellblock attendants.

14:07:08 22          A.    I don't know that they ask.   I

14:07:11 23    don't -- I -- I can't recall them ever asking me

14:07:13  1  right now if they've ever, if we tell them.  I

14:07:17  2  don't -- honestly, I don't recall right now.

14:07:19  3      Q.   Okay.  Is it possible that this form

14:07:24  4  would have been filled out while you were at ECMC

14:07:27  5  the first time before going to central booking?

14:07:35  6      A.   This has to be entered in -- this, the

14:07:37  7  electronic has to be entered in the MCT.  So, no,

14:07:43  8  it wouldn't have been done at that time.

14:07:46  9      Q.   Is that entered at central booking?

14:07:46 10      A.   No, we can enter it either in our

14:07:47 11  patrol car or at the station house.

14:07:49 12      Q.   Okay.

14:07:51 13      A.   The written form obviously can be

14:07:54 14  completed anywhere, but for it it be entered

14:07:57 15  electronically, which is a requirement, we have to

14:08:00 16  have access to a computer.

14:08:02 17      Q.   Okay.

14:08:02 18      A.   But we wouldn't do this at central

14:08:06 19  booking and we wouldn't enter it at central

14:08:09 20  booking.

14:08:09 21      Q.   Is the information that's in written

14:08:10 22  form transcribed exactly as it appears on written

14:08:11 23  form to this P1375 document?

*Velez - Davenport - 02/26/2020*

228

14:08:15 1          A.   It should be, yes.

14:08:16 2          Q.   Okay.   And who does that transcription?

14:08:19 3          A.   The officer who was typing it in.   Like

14:08:23 4   Officer McDermott and I, when we ride together,

14:08:26 5   typically whoever is in the passenger's side,

14:08:27 6   because someone is driving, would do the writing

14:08:29 7   and the entering.

14:08:30 8          Q.   Okay.   So it's the officer who makes

14:08:33 9   the written document also puts it into electronic

14:08:37 10  form as well?

14:08:37 11         MS. HUGGINS:   Form.

14:08:38 12         THE WITNESS:   Not necessarily.

14:08:39 13         BY MR. DAVENPORT:

14:08:39 14         Q.   Okay.

14:08:39 15         A.   A report technician can enter it as

14:08:39 16  well.

14:08:39 17         Q.   Okay.

14:08:43 18         A.   Can take the written form and enter it

14:08:45 19  as well.

14:08:45 20         Q.   Okay.   So in your experience you have

14:08:48 21  done a written form and then handed it to a report

14:08:51 22  technician and then they've entered it into

14:08:54 23  electronic form?

*Velez - Davenport - 02/26/2020*

229

| | | |
|---|---|---|
| 14:08:55 | 1 | **A.**   Yes. |
| 14:08:55 | 2 | **Q.**   Okay.  Do you know if that was done on |
| 14:08:58 | 3 | this occasion on January 1st of 2017? |
| 14:09:00 | 4 | **A.**   I don't recall. |
| 14:09:00 | 5 | **Q.**   Okay.  Do you recall if either you or |
| 14:09:02 | 6 | Ms. McDermott filled out the written form for the |
| 14:09:06 | 7 | P1375 report? |
| 14:09:06 | 8 | **A.**   I filled out the written form. |
| 14:09:08 | 9 | **Q.**   You did.  Okay.  Did you also fill out |
| 14:09:11 | 10 | the electronic form? |
| 14:09:12 | 11 | **A.**   I don't recall. |
| 14:09:13 | 12 | **Q.**   Okay.  Would it have either been you, |
| 14:09:19 | 13 | Ms. McDermott, or the report technician? |
| 14:09:21 | 14 | **A.**   Correct. |
| 14:09:21 | 15 | **Q.**   Okay.  I'm going to show you what's |
| 14:09:40 | 16 | been marked as Exhibit 9.  Do you recognize this |
| 14:09:45 | 17 | document? |
| 14:09:46 | 18 | **A.**   Yes. |
| 14:09:46 | 19 | **Q.**   And what do you recognize it to be? |
| 14:09:48 | 20 | **A.**   The case history. |
| 14:09:52 | 21 | **Q.**   Now, which officer signed on this case |
| 14:09:57 | 22 | history form? |
| 14:09:59 | 23 | **A.**   This looks like Officer McDermott. |

14:10:04  1        Q.   Do you have any recollection of you

14:10:07  2   signing this document?

14:10:08  3        A.   I do not.

14:10:08  4        Q.   Okay.  Do you see where your name is

14:10:12  5   listed on this form?

14:10:14  6        A.   I do.

14:10:14  7        Q.   Okay.  Do you see where it says

14:10:17  8   functions performed?

14:10:17  9        A.   Yes.

14:10:18 10        Q.   And it says assisted with investigation

14:10:20 11   and arrest and then 710.30; do you see that?

14:10:25 12        A.   Yes.

14:10:25 13        Q.   What does the 710.30 refer to?

14:10:29 14        A.   The statements that I documented on the

14:10:32 15   710.30.

14:10:34 16        Q.   Which officers are required to enter

14:10:38 17   statements on a 710.30?

14:10:39 18        A.   Any officer that has a statement that

14:10:42 19   needed to be documented.

14:10:44 20        Q.   Would it be expected that any of the

14:10:46 21   assisting officers would enter their statements on

14:10:50 22   a 710.30?

14:10:51 23        A.   If they had anything pertinent that the

14:10:54  1    defendant said, they would have to have it on a

14:10:57  2    710.30.

14:10:58  3         Q.    Okay.  So what exactly does -- is a

14:11:03  4    710.30 used for?

14:11:04  5         MS. HUGGINS:    Form.  You can answer.

14:11:05  6         THE WITNESS:    It's used to assist with

14:11:09  7    substantiating charges or for the District Attorney

14:11:14  8    to see.  And even the defense attorney as well to

14:11:18  9    see what was said by their client or the defendant.

14:11:21 10    And it could also be used to substantiate charges.

14:11:26 11    Sometimes they say things that are incriminating.

14:11:30 12         BY MR. DAVENPORT:

14:11:30 13         Q.    Okay.  Would it ever be on a 710.30

14:11:33 14    what actions the individual did for their criminal

14:11:33 15    charges?

14:11:36 16         A.    Not necessary --

14:11:36 17         MS. HUGGINS:    Form.  You can answer.

14:11:37 18         THE WITNESS:    Not necessarily.  Sometimes I

14:11:40 19    have seen officers put in a little parenthesis it's

14:11:43 20    not a direct quote.  And then just maybe a behavior

14:11:47 21    that was done while the defendant was saying

14:11:50 22    something, like whether they were smacking

14:11:53 23    themselves in the face while yelling something.

14:11:55  1    Like that would be an example of a 710.30 that

14:11:58  2    would have an action in parenthesis, but typically

14:12:01  3    it's a statement that's quoted.

14:12:01  4          BY MR. DAVENPORT:

14:12:03  5          Q.   Would it be expected that an officer

14:12:05  6    who witnessed an individual throw themselves

14:12:08  7    intentionally at a police vehicle would offer a

14:12:12  8    statement in a 710.30?

14:12:13  9          MS. HUGGINS:   Form.

14:12:13  10         THE WITNESS:   No.

14:12:14  11         BY MR. DAVENPORT:

14:12:14  12         Q.   No.   And why is that?

14:12:15  13         A.   Because it's a -- it's a question and

14:12:16  14   answer type of thing or something that a

14:12:18  15   spontaneous utterance that the defendant might say.

14:12:21  16         Q.   Okay.   So the 710.30s are more so for

14:12:27  17   verbal statements made by the individual.   I

14:12:30  18   understand that there are instances where physical

14:12:34  19   actions may be included, but it's mostly used for

14:12:37  20   verbal things said by the -- the criminal, I guess,

14:12:41  21   in this case?

14:12:41  22         A.   Correct.

14:12:42  23         Q.   Okay.   Okay.   And is it fair to say

14:12:45  1  that no other officer offered a statement on a

14:12:48  2  710.30?

14:12:48  3       A.   Based on this case history, that's

14:12:51  4  correct.

14:12:51  5       Q.   Okay.  So I'm going to show you what's

14:13:08  6  been marked as Exhibit 20.  Do you recognize that

14:13:13  7  document?

14:13:13  8       A.   Yes.

14:13:14  9       Q.   And what do you recognize it to be?

14:13:16 10       A.   710.30.

14:13:17 11       Q.   Okay.  Do you see on there where it

14:13:23 12  says 710.30 and 700.70?

14:13:23 13       A.   Where are you?

14:13:32 14       Q.   On the right-hand side towards the top.

14:13:34 15       A.   The notice to defendant of intention to

14:13:42 16  offer evidence at trial?

14:13:42 17       THE REPORTER:  I'm sorry.  What was that?

14:13:42 18       THE WITNESS:  The notice to defendant of

14:13:42 19  intention to offer evidence at trial.

14:13:45 20       BY MR. DAVENPORT:

14:13:45 21       Q.   Do you see where after that it says

14:13:48 22  710.30 and 700.70?

14:13:51 23       A.   Yes.

| | | |
|---|---|---|
| 14:13:52 | 1 | Q. What does a 700.70 refer to? |
| 14:13:56 | 2 | A. Criminal procedural law. |
| 14:13:57 | 3 | Q. What in the criminal procedural law |
| 14:14:00 | 4 | does that refer to? |
| 14:14:00 | 5 | A. I'm not exactly sure. |
| 14:14:02 | 6 | Q. And what under the criminal procedural |
| 14:14:05 | 7 | law does 710.30 refer to? |
| 14:14:07 | 8 | MS. HUGGINS: Form. |
| 14:14:08 | 9 | THE WITNESS: It's -- it's referring to the |
| 14:14:10 | 10 | statements made by the defendant. |
| 14:14:11 | 11 | BY MR. DAVENPORT: |
| 14:14:11 | 12 | Q. Okay. Do you know if 700.70 refers to |
| 14:14:17 | 13 | statements made by officers as well? |
| 14:14:19 | 14 | MS. HUGGINS: Form. |
| 14:14:19 | 15 | THE WITNESS: I can't recall at this time. |
| 14:14:21 | 16 | BY MR. DAVENPORT: |
| 14:14:21 | 17 | Q. Okay. Do you know why it's call -- you |
| 14:14:23 | 18 | call it a 710.30 as opposed to a 700.70? |
| 14:14:29 | 19 | A. That's just how we refer to the |
| 14:14:32 | 20 | defendant statements, a 710.30. |
| 14:14:34 | 21 | Q. Okay. Now, at what time did you become |
| 14:14:38 | 22 | aware that Mr. Kistner was alleging that |
| 14:14:42 | 23 | Ms. McDermott had driven her police vehicle into |

14:14:48  1  him as opposed to Mr. Kistner throwing himself at

14:14:53  2  the police vehicle?

14:14:53  3        A.   I don't remember the exact time.

14:14:56  4        Q.   Was it on Schmarbeck?

14:14:58  5        A.   I don't -- I don't recall anything

14:15:01  6  Mr. -- Mr. Kistner said on Schmarbeck.  If he said

14:15:04  7  anything, I don't recall.

14:15:04  8        Q.   Okay.  Do you recall, did Mr. Kistner

14:15:08  9  make his accusations while at ECMC?

14:15:11 10        A.   Not that I could recall.

14:15:13 11        Q.   Okay.  Did Mr. Kistner ever say that

14:15:16 12  Ms. McDermott struck him with the police vehicle as

14:15:20 13  opposed to him throwing himself at a police

14:15:24 14  vehicle?

14:15:24 15        A.   I'm sorry.  Can you say that again?

14:15:25 16        Q.   Did Mr. Kistner ever say with you being

14:15:30 17  present or you hearing that Ms. McDermott hit him

14:15:31 18  with the police vehicle rather than Mr. Kistner

14:15:34 19  throwing himself at the police vehicle?

14:15:34 20        A.   Not that I could recall.

14:15:35 21        Q.   No.  Okay.  Now, the statements that

14:15:39 22  are offered on a 710.30, do they all have to be

14:15:42 23  statements that you personally hear?

14:15:44   1        A.    Yes.

14:15:44   2        Q.    Okay.  Did Mr. Kistner make any

14:15:49   3   reference to Ms. McDermott striking him with the

14:15:52   4   police vehicle as opposed to him intentionally

14:15:58   5   throwing himself at the police vehicle?

14:16:00   6        A.    I don't recall him saying that

14:16:01   7   specifically.

14:16:01   8        Q.    Did Mr. Kistner at any time say that

14:16:05   9   the criminal charges against him were false?

14:16:07  10        A.    Not specifically.

14:16:10  11        Q.    Generally?

14:16:11  12        MS. HUGGINS:    Form.

14:16:13  13        THE WITNESS:    If you read in my 710s what he

14:16:16  14   said, he did say charge me criminal -- charge me

14:16:17  15   criminally to cover yourselves.  Again, as I said,

14:16:20  16   the reference to the lily white pussies, if you

14:16:23  17   keep telling your lies so wildly, someone might

14:16:27  18   believe you, but that was the extent of what he was

14:16:30  19   saying.

14:16:31  20        Like we're telling lies and charge me

14:16:33  21   criminally to cover yourselves, but I don't recall

14:16:36  22   him saying anything specifically about the nature

14:16:39  23   of the events that had transpired that morning.

*Velez - Davenport - 02/26/2020*

237

| | | |
|---|---|---|
| 14:16:42 | 1 | Q. And were you present for those |
| 14:16:44 | 2 | statements made by Mr. Kistner? |
| 14:16:45 | 3 | A. Yes, that's why I documented them. |
| 14:16:47 | 4 | Q. Okay. At any point did you ask |
| 14:16:49 | 5 | Mr. Kistner what he meant by charge me criminally |
| 14:16:50 | 6 | to cover yourselves? |
| 14:16:50 | 7 | A. I did not. |
| 14:16:51 | 8 | Q. At any time did you ask Mr. Kistner |
| 14:16:54 | 9 | what he meant by if you keep telling your lies so |
| 14:16:55 | 10 | wildly, someone might believe you? |
| 14:16:57 | 11 | A. I did not. |
| 14:16:58 | 12 | Q. Did you at any time ask him what he |
| 14:17:01 | 13 | meant by your story ain't going to fly? |
| 14:17:10 | 14 | A. I did not. |
| 14:17:10 | 15 | Q. At any time did you ask him what he |
| 14:17:10 | 16 | meant -- |
| 14:17:10 | 17 | THE REPORTER: You've got to slow down, |
| 14:17:10 | 18 | please. Slow down. |
| 14:17:10 | 19 | BY MR. DAVENPORT: |
| 14:17:14 | 20 | Q. At any time did you ask Mr. Kistner |
| 14:17:14 | 21 | what he meant by internal affairs is going to eat |
| 14:17:18 | 22 | your ass alive? |
| 14:17:18 | 23 | A. I did not. |

*Velez - Davenport - 02/26/2020*

238

| | | |
|---|---|---|
| 14:17:19 | 1 | Q. At any time were you investigated by |
| 14:17:20 | 2 | internal affairs for the incident on January 1st of |
| 14:17:24 | 3 | 2017? |
| 14:17:24 | 4 | A. Not that I know of. |
| 14:17:25 | 5 | Q. Not that you know of? |
| 14:17:26 | 6 | A. I -- I don't know what internal affairs |
| 14:17:29 | 7 | is doing. I don't know. I've never been notified. |
| 14:17:32 | 8 | Q. Okay. Have you ever been investigated |
| 14:17:35 | 9 | by internal affairs before? |
| 14:17:37 | 10 | A. No. |
| 14:17:38 | 11 | Q. Okay. Have you ever had to explain |
| 14:17:40 | 12 | yourself to any superior officers about conduct |
| 14:17:44 | 13 | while working? |
| 14:17:45 | 14 | A. No. |
| 14:17:45 | 15 | MS. HUGGINS: Form. You can answer. |
| 14:17:55 | 16 | BY MR. DAVENPORT: |
| 14:17:55 | 17 | Q. Now, have you ever been accused by |
| 14:18:00 | 18 | anybody before of falsely arresting that |
| 14:18:03 | 19 | individual? |
| 14:18:04 | 20 | A. Not that I can recall. |
| 14:18:06 | 21 | Q. An individual has never told you before |
| 14:18:10 | 22 | that they did not believe that the criminal charges |
| 14:18:13 | 23 | or the criminal arrest was valid? |

14:18:16  1        **MS. HUGGINS:**  Form.  You can answer.

14:18:19  2        **THE WITNESS:**  In the numerous encounters

14:18:22  3   I've had I'm sure there are people yell out that I

14:18:26  4   didn't do it, things of that nature, but I can't

14:18:29  5   recall anything specific at this time.

14:18:30  6        **BY MR. DAVENPORT:**

14:18:31  7        Q.   Okay.  So it's safe to say that this

14:18:33  8   doesn't happen often?

14:18:34  9        **MS. HUGGINS:**  Form.  Just the this, yeah.

14:18:38 10        **BY MR. DAVENPORT:**

14:18:39 11        Q.   Sure.  It's safe to say that it doesn't

14:18:41 12   happen often where somebody accuses you of falsely

14:18:47 13   arresting them?

14:18:47 14        **MS. HUGGINS:**  Form.  You can answer.

14:18:49 15        **THE WITNESS:**  In regards -- like can

14:18:50 16   you -- can you clarify that, be a little more

14:18:52 17   specific, please.

14:18:53 18        **BY MR. DAVENPORT:**

14:18:53 19        Q.   Sure.  An individual that you have

14:18:55 20   arrested has that -- have any individuals that you

14:18:59 21   have arrested claimed that you falsely arrested

14:19:01 22   them?

14:19:01 23        A.   Formally, I've had -- as I said before,