UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES C. KISTNER,

            Plaintiff,

    vs.                                                 Civil No.: 18-CV-00402

LAUREN McDERMOTT,
JENNY VELEZ,
KARL SCHULTZ,
KYLE MORIARITY, *et al.*,

            Defendants.
_____

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS McDERMOTT, VELEZ, SCHULTZ, AND MORIARITY

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for Plaintiff, James C. Kistner*
R. Anthony Rupp III
Jill L. Yonkers
Chad A. Davenport
1600 Liberty Building
Buffalo, New York 14202
rupp@ruppbaase.com
yonkers@ruppbaase.com
davenport@ruppbaase.com
(716) 854-3400

**FACTUAL AND PROCEDURAL HISTORY**

The facts and procedural history underlying this matter and relevant to this motion are provided in the Declaration of R. Anthony Rupp III ("Rupp Decl."), with exhibits (Dkts. 68-1-3); the Sworn Affidavit of Plaintiff's Accident Reconstruction Expert, Dr. Jennifer Yaek ("Yaek Decl."), with exhibits (Dkt. 68-4); and the accompanying Statement of Material Facts submitted pursuant to Local Rule 56.1 ("SOF"), dated April 28, 2021 and approved to be filed by the Court on May 17, 2021 (Dkt. 96). The Court respectfully is referred to these documents, as the facts and procedural history will be stated only for emphasis, as needed.

**ARGUMENT I:   DEFENDANTS HAVE NO BASIS OR EVIDENCE TO REFUTE THE FINDINGS OF PLAINTIFF'S ACCIDENT RECONSTRUCTION EXPERT, DR. JENNIFER YAEK**

Defendants wish to disqualify the opinions of Dr. Yaek on the basis that her "report is unreliable because it is premised on an incomplete review of the evidence." (Dkt. 83, p. 3). Defendants' opposition relies on immaterial factual disputes that are belied by the record. Defendants offered no expert evidence to refute the opinions of Dr. Yaek and made no effort to depose Plaintiff's qualified expert. In the absence of any competent evidence from the Defendants to contradict Dr. Yaek's findings, the Court should consider her expert opinions to be unrefuted for purposes of this motion. *See Daubert v. Merell Dow Pharms.*, 509 U.S. 579, 596 (1993) ("[v]igorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking" expert evidence) (citing *Rocky v. Arkansas*, 483 U.S. 44, 61 (1987)).

Defendants draw attention to the fact that Dr. Yaek failed to review Kistner's medical records, specifically Dr. Anthony Billitier's note that Plaintiff "stated he thinks he slipped on ice." (Dkt. 83, p. 3). As Kistner stated in his 50-h testimony and during his

deposition, the officers wanted to "orchestrate [his] care" and told the doctors and nurses that he jumped out in front of McDermott's police vehicle. (*See* Huggins Decl., Exhibit C, pp. 59-60). Plaintiff told the hospital staff that the officers were lying, but they took the word of the officers over Kistner's. (*Id.*, pp. 60-61). In fact, whenever a medical professional walked into the room, Officers McDermott and Velez would tell that person that Kistner jumped in front of McDermott's vehicle. (*Id.*, p. 75). Therefore, assuming, arguendo, that the statements contained within the ECMC medical records are admissible,[1] Defendants are unable to prove that it was Kistner, not the officers, who told Dr. Billitier that Plaintiff slipped on ice.[2] *See Rowe v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 265, 266 (W.D.N.Y. 1998) ("the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial'").

In addition, Defendants assert in conclusory fashion that Dr. Yaek's opinions should be disregarded because "the police vehicles were modified in a variety of ways documented on the vehicles' purchase orders." (Dkt. 83, pp. 3-4). Defendants, however, do not explain how those purported modifications would impact Dr. Yaek's conclusions. As stated by

---

[1] As argued in Plaintiff's opposition to Defendants' motion, the ECMC records are not certified and the statements contained therein are inadmissible hearsay. (*See* Dkt. 82-4, p. 22, n.15).

[2] Notably, Plaintiff testified as follows:

Q: Did you observe any of those medical professionals, the nurse, or the doctor, record your description of what happened that day?

A:  No.  (Huggins Decl., Exhibit D, p. 104).

Additionally, Mr. Kistner testified that he did not slip on ice:

Q:     Is it possible that you slipped on any ice that day?

A:     There was no ice in the street.  (Huggins Decl., Exhibit C, p. 45).

Dr. Yaek, the Law of Reflection is absolute, and there are no vehicular modifications that Defendants can point to that would allow Schultz to view the impact through the driver's side mirror while sitting in the passenger seat. (Yaek Aff., ¶ 15). Defendants offer no competent evidence that the conclusions of Dr. Yaek are affected by any of these purported modifications. (Dkt. 83, pp. 3-4). Thus, there is no genuine controversy regarding Dr. Yaek's opinion that, based on the Law of Reflection, it was physically impossible for Schultz to see what he claims he saw. (Yaek Aff., ¶¶ 14-15).

Unlike the parties opposing expert evidence in the cases cited by Defendants, nowhere in their opposition do they show that Dr. Yaek's opinions rely on facts that are contradicted by the record. (Dkt. 83, pp. 3-4, citing *Houser v. Norfolk Southern Railway Company*, 264 F. Supp. 3d 470, 476 (W.D.N.Y. 2017) (expert's opinion excluded as unreliable due to numerous facts that were **contradicted** by the record); *Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 414 (S.D.N.Y. 2012) (same); *Macaluso v. Herman Miller,* Inc., No. 01-CV-11496, 2005 WL 563169, at *6 (S.D.N.Y. Mar. 10, 2005) (same); *see also Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310-312 (2d Cir. 2008) (same).

Here, Defendants cannot point to a single fact relied upon by Dr. Yaek in her report that is contradicted by the record. Instead, Defendants present attacks on Dr. Yaek's accident reconstruction[3] based on the exemplar's clothing and because Plaintiff's memorandum of law described one of Dr. Yaek's conclusions—specifically, her conclusion that Schultz was seated in the passenger side of the vehicle at an angle of roughly 30 degrees relative to the

---

[3] Plaintiff objects to Defendants' characterization of Dr. Yaek's accident reconstruction as an "experiment." (Dkt. 83, p. 4). The opinions in Dr. Yaek's report are based on the Law of Reflection, which is an absolute principle that is accepted by the scientific community. (*See* Yaek's Aff., Exhibit B, Appendix A materials which were included in a flash drive submitted and accepted by the Court on May 7, 2021 (*see* Dkt. 81)).

driver's side mirror—as a "conservative estimate." (*See* Dkt. 83, pp. 3-4; *see also* Dkt. 68-5, p. 10). Preliminarily, the Court cannot delve into Dr. Yaek's methodology or the facts or data relied upon by Dr. Yaek because Defendants offer no comparison or critique from any other expert. *See* Fed. R. Evid. 703. Under the case law regarding the standard of facts or data relied on by the expert, the proper inquiry is not what the court or party opposing the expert evidence deems reliable, but what experts in the relevant discipline deem it to be. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (where an expert's "factual data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of *[the relevant] discipline*'") (citing *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) (alterations in original) (emphasis added)).

Additionally, even if the Defendants presented the Court with appropriate evidence to contradict Dr. Yaek's opinions, the law is clear that an expert may rely on estimates of certain facts or data, and an expert opinion is reliable even without an expert's firsthand knowledge of the facts or data upon which the opinion is based. *See* Fed. R. Evid. 703 ("[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed") (emphasis added). The facts or data upon which an expert relies to form her opinion do not even need to be admitted into evidence. *Id*. ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.") There is no genuine dispute that there is sufficient factual support for Dr. Yaek's conclusion that Officer Schultz, sitting in the passenger seat of Officer Moriarity's patrol vehicle (SOF, ¶ 6), would have viewed from the driver's side mirror objects located 30 degrees parallel to the mirror on the opposite side of the vehicle. (Yaek

Aff., Exhibit B, p. 18).  Stated differently, Schultz's view would have been limited to the lawns and houses located on the west side of Moriarity's patrol vehicle; and there is no way, based on the laws of physics, that Schultz observed the accident that occurred behind Moriarity's vehicle. (*Id*.)  Nothing more is required to support Dr. Yaek's expert opinion that it was physically impossible for Officer Schultz to see what he claims he saw.  *See* Fed. R. Evid. 702, Advisory Committee's Note, 2000 Amendment ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of facts. The emphasis in [Rule 702] on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony based on the ground that the court believes one version of the facts and not the other."); *see, e.g., Daubert*, 509 U.S. at 592 (citing to Rules 702 and 703).

Defendants could have employed their own accident reconstruction expert to refute Dr. Jennifer Yaek if, in fact, scientific evidence supporting such a position existed. Instead, Defendants ask that the Court disregard the methodology and opinions of Plaintiff's expert – who reviewed peer-reviewed scientific literature and applied her undisputed knowledge and research to the facts in the present case – based on Defendants' amateur-hour theory that the exemplars should have been outfitted with the same clothing and gear worn by the officers on the day of the accident.  Absent any defense expert attack on Dr. Yaek's methodology or conclusions, the Court should grant Plaintiff's motion for partial summary judgment.

**ARGUMENT II:     PLAINTIFF'S NOTICE OF CLAIM COMPLIED WITH GENERAL MUNICIPAL LAW § 50-e AND SPECIFIC NOTICE OF PLAINTIFF'S FALSE IMPRISONMENT CLAIM WAS NOT <u>NECESSARY OR REQUIRED</u>**

To comply with New York's General Municipal Law, a notice of claim must give the municipality notice of the essential facts that underlie the legal theory or theories on which liability is predicated in the notice of claim.  N.Y. Gen. Mun. L. § 50-e(2).  Specific notice of the

legal theory or theories themselves is not necessary.  *See Felice v. Eastport/South Manor Cent. School Dist.*, 50 A.D.3d 138, 148 (2d Dept. 2008); *see also Szymkowiak v. New York Power Authority*, 162 A.D.3d 1652, 1655 (4th Dept. 2018) (citing *Felice*, 50 A.D.3d at 148).

Here, Defendants' argument for dismissal of Plaintiff's false imprisonment claim—merely because the notice of claim did not state the words "false imprisonment"—is the very definition of a meaningless procedural attack.  The elements of Plaintiff's false arrest claim are the same as the elements for his false imprisonment claim (*see Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 114 (W.D.N.Y. 2020)), and, therefore, the facts in Kistner's notice of claim that indisputably placed the City of Buffalo on notice of his false arrest claim also were sufficient to place the City of notice of his claim for false imprisonment.  As Kistner's notice of claim provided the Defendants notice of the "essential facts" underlying his false imprisonment claim, the Court should not entertain Defendants' request to dismiss Plaintiff's false imprisonment claim under New York law for failure to comply with Gen. Mun. L. § 50-e.

**ARGUMENT III:   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT REGARDING HIS CLAIMS FOR FALSE ARREST AND FALSE IMPRISONMENT UNDER FEDERAL AND NEW YORK STATE LAW**

Plaintiff respectfully requests that the Court take notice that Defendants cite the same case law, provide the same rule statements, and rely on the same self-serving testimony from Officers Schultz and McDermott in opposition to Plaintiff's motion for partial summary judgment that they rely upon in support of their motion for summary judgment and/or judgment on the pleadings.  (*Compare*, Dkt. 83, pp. 9-13, *with*, Dkt. 69-1, pp. 19-22).  To that end, Defendants implicitly agree again that there is no genuine dispute regarding Plaintiff's ability to establish the first three elements of his false arrest and false imprisonment claims.  Regarding the fourth element, whether their arrest and confinement of Kistner was based on probable cause or

arguable probable cause, in opposition to Plaintiff's motion, Defendants again rely on the after-the-fact testimony of Officers McDermott and Schultz. For the same reasons stated in Plaintiff's affirmative motion for partial summary judgment (Dkt. 68, pp. 6-11), and in his opposition to Defendants' motion (Dkt. 82-4, pp. 12-18),[4] Officers Schultz and McDermott are incredible as a matter of law, and the Court should give no evidentiary weight to their testimony.[5]

Regarding the only new argument presented by Defendants, that "[t]here is no evidence in the record that the video footage was provided or accessible to the officers while on scene," Plaintiff's original moving papers specifically cited the BPD "Complaint Summary Report," which explicitly notes that cameras on 37 Schmarbeck captured the incident. (*See* Dkt. 68-5, p. 18).[6] That document was attached and filed with Plaintiff's memorandum of law. (Rupp Decl., Ex. J, Dkt. 68-3). Thus, there is no excuse for Defendants' failure to address this evidence, which directly contradicts their assertion.

Defendants' opposition raises a host of immaterial factual disputes that have no bearing on this Court's determination regarding Plaintiff's motion for partial summary judgment.

---

[4] Although, in his opposition to Defendants' motion, Plaintiff phrased Officer McDermott's credibility as an issue of fact for the jury, Plaintiff's position for purposes of his affirmative motion is that Officer McDermott did not see Kistner until after she shifted her car into drive and struck him with her vehicle. (*See* Dkt. 68, p. 8). Plaintiff refers the Court to his opposition papers on McDermott's credibility for further evidence demonstrating the incomplete and conclusory nature of her testimony.

[5] Plaintiff recognizes that, generally, courts disfavor the incorporation of legal arguments outside the four corners of the memorandum. *Purify v. Walter Inv. Mgmt. Corp.*, 2015 WL 9450621, at *1 n. 1 (S.D.N.Y. Dec. 22, 2015); *Topliff v. Wal-Mart Stores East LP*, 2007 WL 911891, at *9 n. 65 (N.D.N.Y. Mar. 22, 2007). Plaintiff respectfully requests relief from this general prohibition to the extent the same relief is granted to Defendants. *See* Dkt. 83, p. 2 ("The Defendants specifically incorporate by reference all arguments asserted in these moving papers.")

[6] Plaintiff's memorandum of law provided the specific time entry on the Complaint Summary Report where the note was made by dispatch that there was video surveillance of the accident. (*See* Dkt. 68-5, p. 18).

(*See* Dkt. 83, pp. 6-7).[7]  It is settled law that "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Plaintiff's opening moving papers satisfied his prima facie burden to show there is no genuine dispute of material fact, and the Court should grant his motion for summary judgment regarding his false arrest and false imprisonment claims because Defendants' opposition fails to meet their rebuttal burden.  *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (concluding that the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through "mere speculation or conjecture").

**ARGUMENT III: PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT FOR HIS MALICIOUS PROSECUTION CLAIM UNDER FEDERAL AND NEW YORK STATE LAW**

Defendants conveniently do not respond to Plaintiff's argument that the first element for a malicious prosecution claim may be satisfied where the officer "knew or should have known" that their "investigative techniques . . . would yield false information."  (*See* Dkt. 68-5, pp. 16-17, citing, *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495, at *12 (S.D.N.Y. Jan. 7, 2009)).  Police officers have a duty to investigate and may not ignore facts known to them that tend to negate probable cause.  *Walsh v. Lunsford*, No. 14-CV-7108, 2017 WL 2895943, at *8 (S.D.N.Y. July 7, 2017) (although "[i]t is true that an arresting officer is not required to explore and eliminate every theoretically plausible claim of innocence before making

---

[7] For the reasons more fully explained in Plaintiff's opposition to Defendants' statement of material facts, Plaintiff disputes Defendants' conclusory assertion that he was "jaywalking." (*See* Dkt. 82-7, ¶ 4).  Plaintiff also disputes Defendants' conclusory assertion that McDermott did not "say anything to Plaintiff or summons (sic) him to her vehicle."  (Dkt. 82-7, ¶ 6).  However, these facts are immaterial as neither fact supports Defendants' assertion that Plaintiff threw himself at McDermott's vehicle with the intent to cause property damage and that Kistner did, in fact, cause more than $250 in damage to her patrol vehicle.

an arrest . . . [r]easonable avenues of investigation must be pursued [to establish probable cause], and a police officer may not close her or his eyes to facts that would help clarify the circumstance of an arrest") (alterations in original) (internal quotations omitted).

Here, there is no genuine dispute that the officers knew, before they left Schmarbeck Avenue, that there existed video surveillance of the accident which would have helped "clarify the circumstance of [Kistner's] arrest." *See Walsh*, 2017 WL 2895943, at \*8; Rupp Decl., Exhibit J (Dkt. 68-2). As a matter of law, the on-scene officers are presumed to all know of the existence of the video surveillance footage at the time of Kistner's arrest. *See Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) ("where law enforcement authorities are cooperating in an investigation . . . the knowledge of one is presumed shared by all"); *see also United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987). Accordingly, there is no genuine dispute that Defendants failed to pursue "reasonable avenues of investigation" to establish material facts relied upon for the prosecution of Mr. Kistner, which is sufficient to satisfy the first, second, and third elements of his malicious prosecution claim under Federal and New York State law.[8] *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571-72 (2d Cir. 1996).

**ARGUMENT IV:    THERE IS NO GENUINE DISPUTE THAT THE ON-SCENE OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

Plaintiff respectfully requests this Court to take notice that Defendants fail to make any substantive arguments in rebuttal to Plaintiff's prima facie showing of entitlement to summary judgment dismissing the defense of qualified immunity for the on-scene officers, and instead simply recite case law that they believe to be pertinent to their defense. (*See* Dkt. 83, pp. 15-20). Defendants' assertion that the Court may consider only the officers' purported version

---

[8] Defendants do not assert a genuine issue of material fact with respect to any other elements of Plaintiff's malicious prosecution claims. (*See* Dkt. 83, pp. 14-15).

of the facts is at odds with Second Circuit law.  *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (courts reviewing the application of qualified immunity should not consider only a police officer's "self-serving account," but also must consider "circumstantial evidence that, if believed, would tend to discredit that police officer's story, and consider whether this evidence would convince a rational factfinder that the officer acted unreasonably").  No rational officer could argue that it was reasonable for Defendants to arrest Mr. Kistner based on facts that could not have been observed or that were physically impossible.  (*See* Dkt. 68, pp. 6-11).  Accordingly, the Court should dismiss the defense of qualified immunity for Defendants McDermott, Velez, Schultz, and Moriarity.

**WHEREFORE,** for the reasons stated herein, as well as those previously stated, Plaintiff respectfully requests that this Court issue an order granting his motion for partial summary judgment against Defendants McDermott, Velez, Schultz, and Moriarity, together with such other and further relief that this Court deems just and proper.

Dated: May 21, 2021
Buffalo, New York

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for Plaintiff, James C. Kistner*

By:   *s/R. Anthony Rupp III*
R. Anthony Rupp III
Jill L. Yonkers
Chad A. Davenport
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
rupp@ruppbaase.com
yonkers@ruppbaase.com
davenport@ruppbaase.com