UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES C. KISTNER,

        Plaintiff,

   vs.                                                                      Civil No.:  18-CV-00402

THE CITY OF BUFFALO, BYRON LOCKWOOD,
DANIEL DERENDA, LAUREN McDERMOTT,
JENNY VELEZ, KARL SCHULTZ, KYLE MORIARITY,
DAVID T. SANTANA, and ANTHONY McHUGH,

        Defendants.

---

# PLAINTIFF'S OBJECTIONS TO THE
## REPORT AND RECOMMENDATION OF THE MAGISTRATE

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for Plaintiff*
R. Anthony Rupp III
Chad A. Davenport
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
rupp@ruppbaase.com
davenport@ruppbaase.com

## PRELIMINARY STATEMENT

Plaintiff, James C. Kistner, respectfully objects to four recommendations that were made by the Magistrate in his Report and Recommendation ("R&R")[1]:

1) That the Court should grant the defendants' Rule 12(c) motion for dismissal of the plaintiff's claims against defendants Byron Lockwood, David T. Santana, and Anthony McHugh based on alleged pleading deficiencies regarding the personal involvement of those three defendants.

2) That the Court should deny the plaintiff's request for summary judgment against defendants Velez and Moriarity for his malicious prosecution claims under Section 1983 and state law.

3) That the Court should find that there existed probable cause to arrest the plaintiff for the disorderly-conduct charge based on language he allegedly used at the hospital and therefore should dismiss all claims related to that charge.

4) That the Court should find that the complaint does not assert a failure-to-intervene claim against defendant Lockwood.

For the reasons explained below, based on evidence revealed during discovery, the Magistrate should not have recommended dismissal of the plaintiff's claims against defendants Lockwood, Santana, and McHugh based on alleged pleading deficiencies identified by the court, not the defendants.[2]  Additionally, the plaintiff respectfully disagrees with the Magistrate's finding that there existed probable cause for the disorderly-conduct charge based on Mr. Kistner's speech at the hospital because he was in a private room and therefore there was no

---

[1] For ease of the Court's review, the plaintiff will refer to the Magistrate's January 11, February 28, and April 12, 2022 Reports and Recommendations collectively as the Magistrate's "Report and Recommendation" to which these objections are directed.  (Dkt. Nos. 108, 119, and 129).

[2] Plaintiff believes it is significant to note that, in their omnibus motion, the defendants merely recited the standard applicable to a motion for judgment on the pleadings and then with absolutely no application to any of the complaint's allegations the defendants assert in nothing but the most conclusory fashion that the complaint "lacks any meaningful allegations that [Lockwood, Santana, and McHugh] had any personal involvement in the events of January 1, 2017." (Dkt. 69-1, at p. 11).  Courts should not make legal arguments for litigants as that practice would be an inefficient use of judicial resources and encourage parties to take a "shotgun" approach to motion practice—i.e., identify a potential legal argument and then let the court figure out the merits of the argument.  Defendants' failure to identify a single deficiency in the complaint's allegations means this Court should reject the defendants' Rule 12(c) pleading motion out-of-hand.

risk of a public disturbance. Finally, the plaintiff believes that he is entitled to summary judgment for his malicious prosecution claims against defendants Velez and Moriarity, and he requests that the Court grant summary judgment against those defendants for his malicious prosecution claims under Section 1983 and state law.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff commenced this action on March 30, 2018 pursuant to 42 U.S.C. § 1983 for violations of his civil rights arising from an incident that occurred on January 1, 2017. The incident at issue involved the plaintiff's false arrest and subsequent prosecution for a *felony* after defendant Lauren McDermott, a City of Buffalo police officer, negligently struck the plaintiff with her patrol car. (*See* Docket Entry Number ("Dkt. No.") 1). The entire incident was captured video, and the video recordings of the motor-vehicle accident formed the basis for the Magistrate's R&R, which recommended that the Court grant summary judgment against defendants McDermott, Velez, Schultz, and Moriarity for false arrest and false imprisonment under Section 1983 and state law relating to the criminal-mischief charge, and also to grant summary judgment against defendants McDermott and Schultz for malicious prosecution under Section 1983 and state law relating to the criminal-mischief charge. (Dkt. No. 108, at pp. 15-23, 31; Dkt. No. 129, at p. 2).

On April 28, 2021, the plaintiff moved for partial summary judgment regarding the liability of certain defendants for the arrest and prosecution of Mr. Kistner relating to the criminal-mischief charge. (Dkt. No. 68). Two days later, on April 30, 2021, the defendants filed an omnibus motion that requested dispositive relief under Rules 12(c) and 56. (Dkt. Nos. 69-79). The Magistrate heard oral argument on the parties' respective motions on June 7, 2021, and on January 11, 2022 he issued an R&R in which he recommended that the parties' motions be

granted in part and denied in part.  (Dkt. No. 108, at p. 2).  In his R&R, the Magistrate invited the plaintiff to seek reconsideration of, inter alia, his decision to grant the defendants' Rule 12(c) motion for dismissal of Mr. Kistner's claims against defendants the City of Buffalo, Lockwood, Santana, and McHugh for lack of personal involvement.  Plaintiff accepted the court's invitation, and on February 28, 2022 the Magistrate granted the plaintiff's motion to the extent that it sought to amend the complaint to include sufficient allegations to state a plausible basis for the City of Buffalo's personal involvement under a *Monell* theory of liability.  (Dkt. No. 119, at p. 7).  On March 9, 2022, pursuant to the Magistrate's partial grant of plaintiff's motion to amend, the plaintiff filed a Third Amended Complaint, which now is the operative complaint in this matter. (Dkt. No. 122).

        In his R&R, the Magistrate also invited the plaintiff to seek reconsideration of his sua sponte grant of summary judgment to the defendants for Mr. Kistner's Section 1983 malicious prosecution claim due to a failure to meet the favorable-termination element. Although the Magistrate initially denied the plaintiff's attempt to reinstate his malicious prosecution claim under federal law (Dkt. No. 119, at pp. 1-3), he later granted the plaintiff's motion for reconsideration after the Supreme Court's decision in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), which held that the favorable-termination element requires a civil-rights plaintiff to "only show that the criminal prosecution ended without a conviction."  *Id.* at 1341.  On April 12, 2022, the Magistrate reinstated the plaintiff's Section 1983 malicious prosecution claim, but only against defendants McDermott and Schultz.  (Dkt. No. 129, at p. 2).  For the reasons explained below, the Court also should reinstate the plaintiff's claims against defendants Velez, Moriarity, Lockwood, Santana, and McHugh for malicious prosecution under Section 1983 and state law relating to the criminal-mischief charge.

**STANDARD OF REVIEW**

Upon a timely objection to the Magistrate's proposed findings on a dispositive

motion, the District Judge must conduct a de novo review. Fed. R. Civ. P. 72(b). The de novo

review of the Magistrate's R&R shall be "upon the record, or after additional evidence," but only

as to those portions of the R&R to which the party objects. Fed. R. Civ. P. 72(b); *see also*

*Collins v. Foreman,* 729 F.2d 108, 112 (2d Cir. 1984), *cert. denied,* 469 U.S. 870 (1984).

**ARGUMENT**

**OBJECTION I**

**THE MAGISTRATE ERRED IN RECOMMENDING THE
DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST LOCKWOOD,
SANTANA, AND McHUGH FOR ALLEGED PLEADING DEFICIENCIES**

**A.    The Court Should Exercise its Discretion and Conform
the Pleadings to the Proof Pursuant to Fed. R. Civ. P. 15(b).**

In his R&R, the Magistrate found that the complaint lacked sufficient allegations

to establish the personal involvement of defendants Lockwood, Santana, and McHugh, but the

Magistrate also stated that "in the interest of judicial efficiency I will analyze the parties'

summary judgment motions as though Kistner's claims had been properly alleged." (Dkt. 108, at

p. 15). In reviewing the evidence submitted by the parties, the Magistrate correctly concluded

that "the record contains sufficient evidence to create an issue of fact as to the personal

involvement of . . . Santana, McHugh and Lockwood." (*Id.*, at pp. 25-28, 30-31). Plaintiff,

however, was precluded from presenting evidence related to his claims against these three

defendants because of the Magistrate's finding that the complaint lacked sufficient allegations to

allege a plausible basis regarding their personal involvement. Respectfully, the Magistrate's

finding was made in error.

-4-

Under Fed. R. Civ. P. 15(b), the Magistrate was permitted to deem the complaint amended to conform to the proof offered by the parties in support of their respective motions for summary judgment. *See, e.g., Van Alstyne v. Ackerly Grp., Inc.*, 8 Fed. Appx. 147, 154-55 (2d Cir. 2001) ("The function of the pleadings is to give opposing parties notice of the facts on which the pleader will rely, and, in the absence of prejudice to the opposing party, the court may allow the pleadings to be amended to conform them to the evidence at any time, even after judgment.") (citing Fed. R. Civ. P. 15(b)); *Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993) ("the undisputed facts as presented on the summary judgment motion served as the basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b)"); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 213 n.8 (E.D.N.Y. 2010) (deeming the complaint amended under Rule 15(b) to conform to the evidence presented in support of the plaintiff's summary-judgment motion). The record before this Court demonstrates that the Magistrate should have exercised that discretion here.

Initially, it appears that in analyzing whether the plaintiff's complaint should be deemed amended pursuant to Fed. R. Civ. P. 15(b), the Magistrate found significant the fact that defendants moved against the complaint's allegations. (Dkt. No. 119, at p. 4 ("Rule 15(b)(2) 'deems' a pleading to be amended only where 'an issue not raised by the pleadings is tried by the parties' express or implied consent', whereas here – by moving to dismiss pursuant to Rule 12(c) – defendants made clear that they did *not* consent to consideration of unpleaded claims.") (emphasis in original)). Significantly, however, the plaintiff filed his motion for partial summary judgment two days *before* the defendants filed their motion contesting the sufficiency of the complaint's allegations. (*Compare* Dkt. No. 68 *with* Dkt. No. 69). Thus, the procedural history of this matter alone demonstrates that the Magistrate should have deemed the plaintiff's

complaint amended in conformance with the summary-judgment proof *before* considering the defendants' Rule 12(c) motion.  Had the Magistrate done so, and the plaintiff believes that he should have, the pleading deficiencies identified in his R&R effectively would have been rectified before the Rule 12(c) motion was considered.

Indeed, this is not a case where the plaintiff was caught flat-footed by the defendants' motion causing him to submit evidence to rectify pleading deficiencies identified in the motion.  Rather, it was the defendants who responded to the plaintiff's summary-judgment motion by arguing, for the first time, that the complaint's allegations were insufficient regarding the personal involvement of certain defendants.  However, when the defendants filed their motion, pretrial depositions were taken and extensive discovery and summary-judgment motions were made before the defendants ever contested the sufficiency of the complaint's allegations, ensuring that they were aware of virtually all evidence the plaintiff intended to present with respect to his claims against defendants Lockwood, Santana, and McHugh.  Thus, when the plaintiff filed his summary-judgment motion, if the Magistrate believed that certain issues and facts in that motion were not alleged in the pleadings, then he should have concluded that the "newly raised" facts and issues started the amendment process as courts generally do in similar circumstances.  *In re Kern*, 567 B.R. 17, 27-28 (Bankr. E.D.N.Y. 2017) ("an issue raised for the first time in a motion for summary judgment may start the amendment process") (citing *In re Bennett Funding Group, Inc.*, 220 B.R. 743, 752-53 (Bankr. N.D.N.Y. 1997); and *Seaboard Terminals Corp. v. Standard Oil Co.*, 104 F.2d 659 (2d Cir. 1939)).

Additionally, although the defendants' dispositive motion purported to be one for judgment on the pleadings, it cannot be disputed that the defendants filed substantial evidence on the same issues and claims in support of their dispositive motion.  For example, in their motion,

the defendants expressly stated it was their assertion that it was the lack of *evidence*—not the supposed insufficiency of the complaint's allegations—that entitled defendants Lockwood, Santana, and McHugh to dismissal based on inadequate personal involvement.  (Dkt. No. 69-1, at p. 23 ("[t]he record is clear that . . . Lockwood . . . Santana, and McHugh lacked sufficient personal involvement").  Defendants, therefore, are in no position to contest a decision by the Court to conform the complaint's allegations to the proof pursuant to Rule 15(b).

Moreover, the record before the Court demonstrates that the defendants impliedly consented to the presentation of evidence on the personal involvement of defendants Lockwood, Santana, and McHugh.  To determine whether a party impliedly consented to litigating an issue not presented by the pleadings, courts examine whether the parties recognized that the issue had entered the case.  *Luria Bros. & Co. v. All. Assurance Co.*, 780 F.2d 1082, 1089 (2d Cir. 1986).  In this case, notwithstanding any alleged pleading deficiencies, the defendants impliedly agreed that the plaintiff's claims against these three defendants had entered the litigation when they allowed the plaintiff to collect substantial evidence regarding their personal involvement—including hours of deposition testimony from each defendant focusing on their actions and omissions contributing to the incidents and Mr. Kistner's damages.  Aware of the obvious entry of these issues into the litigation, the defendants aggressively contested the "newly raised" issues and presented substantial evidence purporting to demonstrate their exoneration from the plaintiff's claims.  These actions are sufficient to show that the defendants impliedly consented to litigating the involvement of defendants Lockwood, Santana, and McHugh in the incidents giving rise to this litigation.  *See, e.g., Ho Myung Moolsan, Co., Ltd. v. Manitou Mineral Water, Inc.*, No. 07-CV-7483, 2010 WL 4892646, at *13 (S.D.N.Y. Dec. 2, 2010) ("A party's implied consent can be found in, for example, actually litigating an issue, prompting witness testimony

on the issue, briefing the issue, or raising the issue at oral argument"), *aff'd* 501 Fed. App'x 85 (2d Cir. 2012)).

        And if the Court were to deem the complaint amended to conform to the proof, the evidence before it is sufficient at least to raise a triable issue of fact regarding the liability of defendants Lockwood, Santana, and McHugh.  For example, the R&R correctly concluded that the proof submitted by the parties demonstrated triable issues of fact regarding the liability of defendants Lockwood, Santana, and McHugh for the plaintiff's malicious prosecution claims under Section 1983 and state law (Dkt. No. 108, at pp. 25-27), and that the proof showed triable issues of fact against defendants Santana and McHugh for the plaintiff's arrest and prosecution under a failure-to-intervene theory of liability (*Id.*, at pp. 30-31).  However, the Magistrate also should have concluded that the evidence supports that there are at least triable issues regarding defendant McHugh's personal involvement and liability for the plaintiff's false arrest claim under Section 1983 and state law (*see, e.g., Colon v. City of Rochester*, 419 F. Supp. 3d 586, 609 (W.D.N.Y. 2019) (holding that supervisor may be held liable for false arrest where the supervisor directed the on-scene officers to arrest plaintiff), and he also should have found that defendant Lockwood may be held liable under a failure-to-intervene theory of liability.  *See, e.g., Girard v. Howard*, No. 19-CV-673S, 2021 WL 1737758, at *4 (W.D.N.Y. May 3, 2021) (finding that personal involvement may be demonstrated through a lead policymaker's "creat[ion] [of] a policy or custom under which the deprivation occurred or allowing such a policy or custom to continue").

        Accordingly, the plaintiff respectfully requests that this Court reject the recommendation of the Magistrate to grant the defendants' Rule 12(c) motion with respect to defendants Lockwood, Santana, and McHugh based on any alleged pleading deficiencies

identified by the Court (not the defendants). Simply put, there is no adequate justification to

deny the plaintiff his right to a trial on the merits of his claims or for permitting the defendants to

obtain an unjustified windfall merely because their notice of motion included a request for relief

pursuant to Fed. R. Civ. P. 12(c). In the interests of justice, this Court should correct the error of

the Magistrate and deem the complaint amended to conform to the proof pursuant to Fed. R. Civ.

P. 15(b).

> ### B. The Court Should Grant Plaintiff's Request for Leave to Amend His Complaint.

In the alternative, if the Court does not agree that the complaint automatically was

amended based on the proof submitted in support of the parties' motions for summary judgment,

then it should find that the Magistrate erred in denying the plaintiff's motion to amend pursuant

to Fed. R. Civ. P. 15(a) and/or 15(b). Based on evidence obtained in discovery, the plaintiff

sought leave to amend his complaint to plead his claims against defendants the City of Buffalo,

Lockwood, Santana, and McHugh with greater specificity. The Magistrate granted the plaintiff's

motion to amend regarding his proposed allegations against the City of Buffalo, but it denied the

motion as it pertained to his proposed additional allegations against the remaining three

defendants. Respectfully, the Magistrate's decision in this regard also was made in error.

In his R&R, the Magistrate correctly found that where, as here, a scheduling order

governs amendments to the complaint, the lenient standard under Rule 15 must be balanced

against the requirement under Rule 16(b)(4) that the scheduling order shall not be modified

except upon a showing of good cause. (Dkt. No. 119, at pp. 4-7). Here, the plaintiff satisfied the

"good cause" requirement of Rule 16 because he was diligent in pursuing the discovery to obtain

the facts necessary for these amendments. *See, e.g., Mason Tenders Dist. Council of Greater

N.Y. v. Phase Construction Serv., Inc.*, 318 F.R.D. 28, 37 (S.D.N.Y. 2016). Indeed, from the

outset of this case, the plaintiff made diligent efforts to obtain the discovery needed to prove the personal involvement and liability of defendants Lockwood, Santana, and McHugh.  Plaintiff's original complaint included allegations against the fifth police officer shown in the surveillance video of the incident, and he specifically alleged that the unnamed fifth police officer was the supervisor of the four on-scene officers.  (Dkt. 1, at ¶¶ 85, 182, 184, 186, 187).  It took until nearly a year after the complaint was filed for the defendants to identify the fifth police officer seen in the surveillance video, and at no time did the defendants suggest in correspondence or in response to the plaintiff's discovery requests that the unidentified fifth on-scene officer was *not* the supervisor.  (Dkt. 53-1, at ¶¶ 4-13).

Additionally, in separate correspondence, the defendants identified "Buffalo Lieutenant Anthony McHugh, Lieutenant Derrick Banaszak, Joseph Slomba, and Joseph Beyers" as potentially "hav[ing] discoverable information."  (*Id.*, at ¶ 15).  This correspondence was the first time that the defendants mentioned defendant McHugh and his potential involvement in the incidents.  (*Id.*, at ¶ 16).  After that correspondence, the plaintiff was forced to make tremendous efforts to obtain information and evidence pertaining to the extent of the involvement for each defendant, including a motion to compel that resulted in the Magistrate ordering the defendants to identify the supervisor for the four on-scene officers.  (*Id.*, at ¶¶ 16, 18-19).  It was only after multiple requests, intervention by the Magistrate, and then the deposition of each witness identified by the defendants that the plaintiff obtained sufficient information to seek the amendments that support the personal involvement of each defendant.

Plaintiff did not immediately seek an amendment to his complaint after receiving the discovery because he honestly believed that the complaint's allegations were sufficient to establish the personal involvement and liability of defendants Lockwood, Santana, and McHugh.

As the defendants' request for judgment on the pleadings did not identify any *specific*
deficiencies with the complaint's allegations (Dkt. 69-1, at p. 11 (merely asserting that the
complaint "lacks any meaningful allegations that [Lockwood, Santana, and McHugh] had any
personal involvement in the events of January 1, 2017"), it was not until after the Magistrate's
R&R that the plaintiff realized his allegations may have been deficient and could be bolstered
with respect to the personal involvement issue for his Section 1983 claims.  Immediately after
receiving and analyzing the Magistrate's R&R, the plaintiff promptly sought leave to amend the
complaint.  In fact, in his R&R, the Magistrate recognized that "a plaintiff is unlikely to know
whether his complaint is actually deficient – and in need of revision – until after the District
Court has ruled."  (Dkt. 119, at p. 6, citing *United States ex rel. Customs Fraud Investigations,
LLC v. Victaulic Co.*, 839 F.3d 242, 250 (3d Cir. 2016)).  Thus, the perception that plaintiff
delayed in seeking to amend the complaint after receiving the discovery necessary to make the
proposed amendments should not weigh against a finding of "good cause" under Fed. R. Civ. P.
16(b)(4).

   This Court should not reward the defendants for their tactics—i.e., they cannot
obstruct discovery and then claim the plaintiff was not diligent.  Here, any claim of untimeliness
is belied by the plaintiff's discovery actions, the Magistrate's direction to obtain information
during depositions rather than written discovery for resolving the supervisor question, and the
defendants' thwarting of the plaintiff's reasonable discovery inquiries.  (Dkt. 53-1, at ¶¶ 4-13,
16, and 18-19).  There is no question that under these circumstances, the plaintiff acted diligently
in seeking the amendments in question in satisfaction of Fed. R. Civ. P. 16(b)(4)'s good-cause
requirement, and the Magistrate erred in concluding otherwise.

Moreover, there would be no prejudice to the defendants because the amendments sought by the plaintiff do not require the defendants to expend additional resources to conduct discovery and prepare for trial. Indeed, the defendants always were aware of the facts that the plaintiff sought to allege in the complaint, and in fact they opposed those same facts in their own summary-judgment motion. In addition, any prejudice to the defendants was not of the plaintiff's making; rather, the record before the Court demonstrates that the need to amend the complaint arose from the defendants' litigation lethargy in this matter and refusal to take Mr. Kistner's allegations of officer misconduct seriously. Thus, for these reasons, the Court should conclude that any delay by the plaintiff in seeking these amendments has not (and will not) cause any prejudice to the defendants. *See, e.g., Kreppin v. Celotex Corp.*, 969 F.2d 1424, 1427 (2d Cir. 1992) (holding defendants were not prejudiced by the addition of new claim for damages as defendants were on notice of the underlying facts relied upon).

Finally, the record before the Court demonstrates that the plaintiff's proposed amendments would not be futile. As the Magistrate recognized in his R&R, not only are the proposed allegations sufficient to survive a motion to dismiss under Rule 12, but the evidence submitted in support of these allegations was sufficient to demonstrate triable issues of fact with respect to the personal involvement and liability of defendants Lockwood, Santana, and McHugh. Because the allegations proposed by the plaintiff in his motion to amend merely sought to conform the complaint to the proof offered by the parties in support of their respective motions for summary judgment—proof that the Magistrate found precluded judgment in favor of these three defendants—this Court should find that the Magistrate erred in denying the plaintiff's

request to amend the complaint with respect to additional allegations bolstering the personal

involvement of defendants Lockwood, Santana, and McHugh.[3]

**C.     The Complaint's Allegations Are Sufficient to Allege a Plausible Basis**
**Regarding the Personal Involvement of Lockwood, Santana, and McHugh.**

Additionally, in reviewing the sufficiency of the complaint's allegations regarding

the personal involvement of each defendant, the Court should find that the allegations are

adequate to claim that defendants Lockwood, Santana, and McHugh each were sufficiently

involved in incidents giving rise to this action.  For example, in his R&R, the Magistrate found

that "Lockwood may have been personally involved, both by 'learning of the deprivation but

failing to remedy the wrong,' and by 'gross negligence in managing subordinates who caused the

deprivation.'" (Dkt. No. 108, at p. 27, citing *Girard*, supra).  Additionally, regarding the personal

involvement of Santana, the Magistrate found significant the evidence that Santana stood in the

street with the on-scene officers and helped them plan their next move.  The Magistrate

concluded that it would be reasonable to infer that during that time Santana would have learned

the basis for the on-scene officers charging the plaintiff with a felony, and further would have

realized that absent damage to McDermott's vehicle there was no crime to be charged.  (*Id.*, at p.

26).  Therefore, as the Magistrate found, Santana would be personally involved in the arrest and

prosecution of the plaintiff by "learning of the deprivation but failing to remedy the wrong."

---

[3] Additionally, for the sake of completeness, the Court also should consider whether the Magistrate erred in denying the plaintiff's motion to amend pursuant to Fed. R. Civ. P. 15(b).  Wright & Miller, *Issues Not Raised By Pleadings But Tried By Consent – In General*, Section 1493 (3d ed. 2021) ("a court's refusal to permit an amendment before trial under Rule 15(a) will not prevent the same amendment from being made under Rule 15(b)").  The Magistrate recommended denying the plaintiff's request for relief pursuant to Rule 15(b) because of his finding that the defendants did not impliedly consent to the presentation of evidence supporting the personal involvement of Lockwood, Santana, and McHugh.  (Dkt. No. 118, at p. 4).  For the reasons explained above, however, the defendants *did* impliedly consent to the presentation of evidence on this issue when they allowed the plaintiff to obtain discovery regarding the personal involvement of these three defendants without contesting the adequacy of the pleadings.  (*See* Point I.A, supra).  Thus, the Court should find that the Magistrate also erred in denying the plaintiff's motion to amend pursuant to Rule 15(b).

(*Id.*, citing *Girard*, supra).  And finally, regarding the personal involvement of McHugh, the Magistrate found that "by relying solely on what Schultz told him, rather than ordering a further investigation which could have revealed that there was no damage to McDermott's vehicle (and therefore no crime), McHugh could also be deemed to be personally involved in the malicious prosecution, by 'gross negligence in managing subordinates who caused the deprivation.'"  (Dkt. No. 108, at pp. 26-27, citing *Girard*, supra).

Applying the lenient standard that this Court must apply on a Rule 12 motion that attacks the allegations of a complaint, the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff.  *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (emphasis added).  And if the Court were to do that, the plaintiff's allegations are more than sufficient to allege a plausible basis regarding the personal involvement of defendants Lockwood, Santana, and McHugh.  For example, the following allegations in the complaint support that Lockwood "learn[ed] of the deprivation but fail[ed] to remedy the wrong" and exhibited "gross negligence in managing subordinates who caused the deprivation" (Dkt. No. 108, at pp. 26-27):

39.   As the Police Commissioner for the City of Buffalo, defendant . . . Lockwood was responsible for the hiring, training, supervision, discipline, and conduct of the defendant officers, and is further responsible for setting, reviewing, and/or enforcing the policies and regulations of the Buffalo Police Department. Defendant . . . Lockwood [is] also responsible for ensuring that the City of Buffalo Police Officers obey the laws of the State of New York and the United States of America.

40.   Upon information and belief, at all relevant times, defendant . . . Lockwood was a policymaker for the Buffalo Police Department in all matters that are alleged herein, and defendant . . . Lockwood participated in the promulgation of policies and/or customs for the Buffalo Police Department by defendant the City of Buffalo.  Defendant . . . Lockwood directly was responsible for policy and custom implementation (in whole or in part) at the City of Buffalo Police Department.

-14-

165.   During his deposition, BPD Commissioner Byron Lockwood could not explain the delay in commencing an IAD investigation into this incident, and confirmed that an IAD investigation should have commenced after Mr. Kistner filed his Notice of Claim on March 31, 2017. A public spokesman for the BPD, Captain Jeff Rinaldo, stated during an interview with WIVB Channel 4 that it is BPD policy to commence an IAD investigation whenever they receive a notice of claim regarding police misconduct.

166.   During his deposition, BPD Commissioner Lockwood testified that the IAD investigation was limited to one dispositive question: Did Officer McDermott intentionally strike Mr. Kistner with her patrol car? Defendant Lockwood dismissed the IAD complaint against the officers when he concluded there was no evidence that Officer McDermott intentionally struck Mr. Kistner with her vehicle.

167.   During his deposition, defendant Lockwood testified that he looked at the collision between Officer McDermott and Mr. Kistner "as an accident . . . [and] it is hard to say if he [Kistner] threw himself at the vehicle because both he and the vehicle are moving." He also testified that AIU and IAD should have been notified to investigate the accident, but it didn't happen in this case. Lockwood agreed that there are "no exception[s]" to the City of Buffalo Manual of Procedures which requires an investigation from AIU, IAD, and the on-duty lieutenant for any accident involving a city-owned vehicle, regardless of injury. Defendant Lockwood was clear during his deposition that AIU and IAD would still be called to the scene even for a criminal mischief or suicide attempt, as the officers alleged against Mr. Kistner.

168.   Defendant Lockwood admitted during his deposition that he was not even sure if he reviewed the video before deciding if charges or discipline against the officers was warranted. The videos of the incidents were not included in the Case Index of material reviewed and considered by IAD during its investigation of the on-scene officers' conduct.

169.   BPD Commissioner Byron Lockwood admitted during his deposition that there were numerous policy violations, and an unexplained significant delay in the IAD investigation. To date, however, defendant Lockwood has not taken any action to remedy these issues.

200.   At all relevant times, defendants, the City of Buffalo . . . Lockwood, and supervisory police officer McHugh, were aware that defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh were inadequately trained regarding the First, Fourth, and Fourteenth Amendment, yet defendants, the City of Buffalo . . . Lockwood, and McHugh maintained a policy or custom of failing to provide defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh training on the First, Fourth, and Fourteenth Amendment or adequate supervision.

201.  It was the policy, custom, or both of defendants the City of Buffalo . . .
Lockwood, and McHugh, inadequately to supervise and train its police officers,
including defendants McDermott, Velez, Schulz, Moriarty, Santana, and McHugh
thereby failing to prevent the constitutional violations against Mr. Kistner.

202.  Upon information and belief, defendants the City of Buffalo . . . Lockwood, and
supervisory police officer McHugh maintained a policy, custom, or practice of
retaliating against individuals who lawfully object to police actions or behave in a
way that officers perceive as disrespectful.

204.  Defendants the City of Buffalo . . . Lockwood and supervisory police officer
McHugh's policies, customs, and practices demonstrate a deliberate indifference
to the constitutional rights of persons within the City of Buffalo and caused the
violation of Mr. Kistner's rights alleged herein.

205.  Defendants the City of Buffalo . . . Lockwood, and supervisory police officer
McHugh also ratified and acquiesced in the unlawful conduct of the other
defendants herein, as is evidenced by their failure to discipline the other
defendants, by their refusal to properly investigate the underlying motor vehicle
accident, and by their granting permission to change the "log" regarding the
underlying motor vehicle accident.

(Dkt. No. 122, at ¶¶ 39-40, 165-69, 200-02, 204-05).

In addition, the following allegations in the complaint support that Santana

"learn[ed] of the deprivation but fail[ed] to remedy the wrong" (Dkt. No. 108, at p. 26):

48.  After striking Mr. Kistner with the vehicle, defendants McDermott, Velez,
Schulz, Moriarty, and Santana orchestrated a cover up of this New Year's Day
motor vehicle accident.

49.  In order to effectuate their cover up, Defendants McDermott, Velez, Schulz,
Moriarty, and Santana engaged in repeated violations of Mr. Kistner's
constitutional rights.

50.  Defendants McDermott, Velez, Schulz, Moriarty, and Santana unlawfully and
falsely arrested and maliciously prosecuted Mr. Kistner for causing damage to the
police vehicle that ran him over.

52.  Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty,
and Santana also unlawfully falsified records and documents, including Erie
County Medical Center admission documents and accusatory instruments, to
further cover up the motor vehicle accident and to intimidate and punish
Mr. Kistner.

86.     Upon information and belief, shortly after defendants Schultz and Moriarty canceled all calls for ambulances to their location, defendant Santana, believed to be a supervisory police officer with authority over defendants McDermott, Velez, Schultz, and Moriarty, arrived on the scene.

87.     Upon information and belief, defendants McDermott, Velez, Schultz, Moriarty, and Santana unlawfully failed to obtain proper medical treatment for Mr. Kistner.

102.    Upon information and belief, defendants McDermott, Velez, Schultz, Moriarty, and Santana violated the Buffalo Police Department's policies and procedures of documenting and recording a motor vehicle accident that involves a Buffalo police vehicle and/or a Buffalo police officer.

103.    Upon information and belief, defendants McDermott, Velez, Schulz, Moriarty, and Santana violated the policies and procedures in order to further their conspiratorial cover up of the motor vehicle accident and to avoid any investigation into their actions and conduct.

250.    On January 1, 2017, defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh responded to the scene of the incident giving rise to this complaint.

251.    Defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh were made aware of Mr. Kistner's unlawful detention and arrest in contravention of Mr. Kistner's constitutional rights, and they breached their duty to intervene when they aided, abetted, and participated in the scheme to deprive Mr. Kistner of his First, Fourth, and Fourteenth Amendment rights.

252.    Defendants McDermott, Velez, Schulz, Moriarty, Santana, and McHugh breach of their duty to intervene was the proximate cause of Mr. Kistner's damages by virtue of their failure to act and intervene on Mr. Kistner's behalf while his constitutionally protected rights were infringed.

(Dkt. No. 122, at ¶¶ 48-50, 52, 86-87, 102-03, 250-51).

Moreover, the following allegations in the complaint support that McHugh exhibited "gross negligence in managing subordinates who caused the deprivation" (Dkt. No. 108, at pp. 26-27):

41.     Defendant, Anthony McHugh, was and is a resident of the County of Erie, and State of New York.  He was and is a Lieutenant employed by the City of Buffalo at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a lieutenant at the time of the incident leading to this lawsuit.  As a Lieutenant, Mr. McHugh is in charge of supervising

the Police Officers employed in the C-District of Buffalo, and was the supervisor for the defendant officers at all times herein mentioned.  Defendant McHugh is being sued in his individual capacity as well for damages caused by his actions and/or conduct.

90.   After placing Mr. Kistner in the back of the police vehicle driven by defendants Schultz and Moriarty, defendant Schultz and one or more officers used their personal cell phone to call their supervisor, Lieutenant Anthony McHugh.

91.   Defendant Schultz and, upon information and belief, one or more of the other defendant officers at the scene, falsely told defendant McHugh that Mr. Kistner threw himself at defendant McDermott's police vehicle.

92.   Despite numerous complaints lodged against defendant Schultz by City of Buffalo citizens for police misconduct, and despite defendant McHugh's knowledge of these complaints against defendant Schultz, defendant McHugh did not question the veracity of the claim made by defendant Schultz that Mr. Kistner threw himself at defendant McDermott's vehicle.

98.   In the instant case, defendant McHugh did not go to the scene of the motor-vehicle accident involving a City of Buffalo police vehicle despite his obligation to do so under the City of Buffalo Police Department's policies and procedures as the immediate supervisor of the defendant officers on the day of the incident.

99.   In fact, defendant McHugh even recommended or directed the on-scene officers to use a particular penal code section to falsely charge Mr. Kistner.

100.  The defendant officers charged Mr. Kistner with criminal mischief in the third degree at the direction of defendant McHugh.

200.  At all relevant times, defendants, the City of Buffalo, Derenda, Lockwood, and supervisory police officer McHugh, were aware that defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh were inadequately trained regarding the First, Fourth, and Fourteenth Amendment, yet defendants, the City of Buffalo, Derenda, Lockwood, and McHugh maintained a policy or custom of failing to provide defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh training on the First, Fourth, and Fourteenth Amendment or adequate supervision.

201.  It was the policy, custom, or both of defendants the City of Buffalo, Derenda, Lockwood, and McHugh, inadequately to supervise and train its police officers, including defendants McDermott, Velez, Schulz, Moriarty, Santana, and McHugh thereby failing to prevent the constitutional violations against Mr. Kistner.

202.  Upon information and belief, defendants the City of Buffalo, Derenda, Lockwood, and supervisory police officer McHugh maintained a policy, custom, or practice

-18-

of retaliating against individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful.

204.    Defendants the City of Buffalo, Derenda, Lockwood and supervisory police officer McHugh's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Buffalo and caused the violation of Mr. Kistner's rights alleged herein.

205.    Defendants the City of Buffalo, Derenda, Lockwood, and supervisory police officer McHugh also ratified and acquiesced in the unlawful conduct of the other defendants herein, as is evidenced by their failure to discipline the other defendants, by their refusal to properly investigate the underlying motor vehicle accident, and by their granting permission to change the "log" regarding the underlying motor vehicle accident.

251.    Defendants McDermott, Velez, Schultz, Moriarty, Santana, and McHugh were made aware of Mr. Kistner's unlawful detention and arrest in contravention of Mr. Kistner's constitutional rights, and they breached their duty to intervene when they aided, abetted, and participated in the scheme to deprive Mr. Kistner of his First, Fourth, and Fourteenth Amendment rights.

252.    Defendants McDermott, Velez, Schulz, Moriarty, Santana, and McHugh breach of their duty to intervene was the proximate cause of Mr. Kistner's damages by virtue of their failure to act and intervene on Mr. Kistner's behalf while his constitutionally protected rights were infringed.

(Dkt. No. 122, at ¶¶ 41, 90-92, 98-100, 200-02, 204-05, 251-52).

In sum, it is the plaintiff's position that the Magistrate took an overly narrow reading of the allegations in the complaint, leading to his conclusion that the allegations were insufficient to allege a plausible basis regarding the personal involvement of defendants Lockwood, Santana, and McHugh. Affording the plaintiff every reasonable inference from the allegations against each defendant, the Magistrate should have concluded that the complaint's allegations were sufficient to survive a Rule 12 analysis. This Court should correct that error here, and it should deny the defendants' motion for judgment on the pleadings and consider the plaintiff's proof supporting the involvement of these three defendants.

**OBJECTION II**

**THE MAGISTRATE ERRED IN RECOMMENDING THE DENIAL OF PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT AGAINST DEFENDANTS VELEZ AND MORIARITY REGARDING HIS MALICIOUS PROSECUTION CLAIMS**

Additionally, the Magistrate erred in denying the plaintiff's request for summary judgment against defendants Velez and Moriarity for his malicious prosecution claims under Section 1983 and state law. (Dkt. No. 68; Dkt. No. 108, at pp. 28, 31-32; Dkt. No. 129, at p. 2). Defendants themselves admitted that defendant Velez had sufficient personal involvement to support her liability for the plaintiff's malicious prosecution claims. (Dkt. No. 69-1, at p. 23 ("The record is clear that McDermott signed on the criminal charges and Velez completed the request for mental health evaluation. Therefore, Lockwood, Derenda, Schultz, Moriarity, Santana, and McHugh lack sufficient personal involvement to establish liability for malicious prosecution.")). Defendants' concession aligns with well-established case law regarding an officer's personal involvement for purposes of a malicious prosecution claim, as the Second Circuit repeatedly has held that an officer who provides false statements in support of the alleged crime may be held liable under a malicious prosecution theory of liability. *See, e.g., Mangiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010); *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

Here, defendant Velez provided false evidence to the prosecutors by including unfounded statements in multiple official documents—including her request for Mr. Kistner's mental health evaluation—claiming that the plaintiff intentionally threw himself at defendant McDermott's vehicle with intent to damage the car. (*See, e.g.,* Dkt. No. 68-3, Exhibit N). The Magistrate, therefore, erred in denying the plaintiff's request for summary judgment on his malicious prosecution claims against defendant Velez under Section 1983 and state law.

Additionally, courts in the Second Circuit repeatedly have held that an officer is sufficiently involved for purposes of a malicious prosecution claim when the officer creates false information likely to influence a jury's decision and that information is forwarded to prosecutors. *See, e.g., Myers v. County of* Orange, 157 F.3d 66, 73-74 (2d Cir. 1998) (a prosecutor's exercise of independent judgment was not a superseding cause where the prosecutor was constrained by the police departments failure to investigate certain claims); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495, at *12 (S.D.N.Y. Jan. 7, 2009) (police officers may be held liable for malicious prosecution when they either "knew or should have known" that their "investigative techniques . . . would yield false information"). In this case, when defendant Moriarity approached the plaintiff after he was struck by defendant McDermott's vehicle, the officer lied and said he "saw the whole thing" and that he observed the plaintiff throw himself at the vehicle. (Dkt. No. 74-1, at pp. 117-18; *see also* Dkt. No. 89, at pp. 109-10, 115-16). He made these statements despite admitting during his deposition that he could not recall whether he personally witnessed the incident. (Dkt. No. 69-3, Exhibit H, at pp. 109-11, 113-17).

Moreover, defendant Moriarity can be seen with the other on-scene officers in the middle of the street for nearly 30 minutes discussing "the situation at hand and how [the officers] were going to move forward with dealing with it." (Dkt. No. 75-2, at p. 236). Put simply, the evidence before this Court is more than sufficient for it to find that there is no genuine issue regarding defendant Moriarity's participation in creating false evidence in the form of observations that he knew would be forwarded to the prosecutor as sham evidence to prosecute the plaintiff. Thus, the Court should enter judgment against defendant Moriarity for the plaintiff's malicious prosecution claims under Section 1983 and state law.

## OBJECTION III

### THE MAGISTRATE ERRED IN FINDING NO TRIABLE ISSUES REGARDING THE DEFENDANTS' PROBABLE CAUSE DEFENSE FOR PLAINTIFF'S CLAIMS RELATED TO THE DISORDERLY CONDUCT CHARGE

In his R&R, the Magistrate concluded that "the charge of disorderly conduct was supported by probable cause." (Dkt. No. 108, at p. 25). Based on this finding, the Magistrate recommended the dismissal of plaintiff's false arrest, false imprisonment, malicious prosecution, and First Amendment retaliation claims related to the disorderly-conduct charge. (*Id.*, at pp. 24-25, at p. 27).

However, there is no proof that anyone other than the officers were disrupted by his speech, and therefore there was no risk of public disorder created by his speech—which is a critical element of the disorderly-conduct charge that the defendants charged him with. *See* New York Penal Law § 240.20(3) ("[a] person is guilty of disorderly conduct when, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture"). Here, as the plaintiff explained, when he made the alleged statements, he was not in a public area of the hospital, but instead he was in a private room that did not contain any other patients. (Dkt. No. 83-4, at pp. 72-75). Thus, because the statements alleged did not take place in a public area, the statements created no risk of a public disturbance. *See People v. Baker*, 20 N.Y.3d 354, 359 (2013); *see, e.g., People v. Pierre-Louis*, 34 Misc. 3d 703, 709-10 (Dist. Co. Nassau Co. 2011). As such, the statements were protected speech under the First Amendment, and the evidence in the record demonstrates that the defendants retaliated against the plaintiff for his criticism of the arresting officers by charging him with an additional disorderly-conduct charge.

-22-

Even assuming, arguendo, that there were hospital staff present when the plaintiff made his statements, it must be remembered that ECMC is a public-benefit corporation managed by persons appointed by state officials.  For example, a notice of claim is required to be filed against ECMC prior to personal injury litigation because it is a governmental entity.  *See, e.g., Mosey v. Erie County Medical Center Corp.*, 32 Misc. 3d 240, 920 N.Y.S.2d 612 (Sup. Ct. Erie Co. 2011).  That being the case, ECMC employees are considered state actors for purposes of the First Amendment and whether members of the public were present when the plaintiff's alleged statements were made.[4]  Because the First Amendment upholds an individual's right to speak freely to government officials, there was no risk of public disturbance that existed when the plaintiff made his statements (*see, e.g., People v. Alcantara*, 53 Misc. 3d 1207(A), 2016 WL 6039128, at*2-3 (Crim. Ct. Queens Co. 2016)), and therefore there are at least triable issues of fact as to whether the defendants had probable cause to charge Mr. Kistner with disorderly conduct as they had *no* evidence to support a critical element of New York Penal Law § 240.20(3) ("[a] person is guilty of disorderly conduct when. . . *[i]n a public place*, he uses abusive or obscene language, or makes an obscene gesture") (emphasis added).  *See, e.g., Ackerson v. City of White Plains*, 702 F.3d 15, 20-21 (2d Cir. 2012) (holding that where there is a complete lack of evidence of conduct to satisfy an element of an offense an officer lacks probable cause to arrest).

Accordingly, the Magistrate erred in concluding that the defendants had probable cause to arrest and charge the plaintiff with disorderly conduct as a matter of law.  This Court

---

[4] Even if the Court disagrees that ECMC employees are considered state actors by virtue of their employment with a public-benefit corporation, it still should find that the hospital staff were acting as state actors on this occasion in providing a forensic examination of Mr. Kistner at the direction of the defendant officers over the plaintiff's protest during the process of an illegal arrest. *See, e.g., Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999) (holding that a police officer's "active" participation may transform otherwise private conduct into "state action").

should conclude that, based on the admissible evidence before it, there remain triable issues of fact as to whether the disorderly-conduct charge against the plaintiff was in violation of his rights under the First and Fourth Amendments.

## OBJECTION IV

### THE MAGISTRATE ERRED IN CONCLUDING THAT PLAINTIFF FAILED TO ASSERT A FAILURE TO INTERVENE CLAIM AGAINST DEFENDANT LOCKWOOD

In his R&R, the Magistrate incorrectly concluded that the plaintiff's failure-to-intervene claim was limited to defendants McDermott, Velez, Schultz, Moriarity, Santana, and McHugh.  (Dkt. No. 108, at p. 30).  It appears the Magistrate's conclusion was based on his finding that under the section of the complaint entitled "Twelfth Claim for Relief . . . Failure to Intervene," the plaintiff did not include sufficient allegations to support defendant Lockwood's responsibilty under a failure-to-intervene theory of liability.  However, it is important to note that the Federal Rules of Civil Procedure do not require pleading causes of action, and the relevant inquiry is whether the complaint, in its totality, alleges "factual allegations that plausibly give rise to an entitlement of relief."  *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015).

When viewed in its totality, the complaint gave sufficient notice to defendant Lockwood that he was being sued for his failure to take action to remediate the civil-rights violations by his subordinates and other defendants in this action.  (*See, e.g.*, Dkt. No. 61, at p. 43 (alleging that defendant Lockwood "ratified and acquiesced in the unlawful conduct of the other defendants herein, as is evidenced by [his] failure to discipline the other defendants, [and] by [his] refusal to properly investigate the underlying motor vehicle accident")).  Additionally, the proof before the Court is sufficient to demonstrate at least triable issues regarding defendant Lockwood's personal involvement and liability for the plaintiff's claims, and the Court should

deem the complaint amended to conform to that proof.  (*See* Point I.A, supra).  In the alternative,

even if this Court is unwilling to deem the complaint amended pursuant to Fed. R. Civ. P. 15(b),

it should find that the Magistrate erred in denying the plaintiff's motion to amend the complaint

pursuant to Fed. R. Civ. P. 15(a) and/or 15(b) to include sufficient allegations supporting

defendant Lockwood's personal involvement.  (*See* Point I.B, supra).  Finally, it is the plaintiff's

position that, irrespective of this Court's position on his request for amendment, the allegations

in his complaint are sufficient to demonstrate that defendant Lockwood's liability is plausible

(which thereby opens the door for this Court's consideration of the same proof that the

Magistrate determined was sufficient to raise a triable issue of fact regarding defendant

Lockwood's personal involvement).  (*See* Point I.C, supra).

## **CONCLUSION**

For the reasons stated above, it respectfully is submitted that the Court should

reject, or, in the alternative modify, the Magistrate's R&R, and grant to the plaintiff any and all

other relief that the Court deems just and proper.  In addition, there is a sufficient record for the

Court to conclude, following its de novo review, that judgment should be entered in favor of the

plaintiff as a matter of law.

Dated:  June 15, 2022
       Buffalo, New York

                           **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                           *Attorneys for Plaintiff*

                           By: _____
                                        R. Anthony Rupp III
                                        Chad A. Davenport
                                1600 Liberty Building
                                Buffalo, New York 14202
                                (716) 854-3400

4877-6790-4036, v. 1