UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
================================

JAMES KISTNER,

                              Plaintiff,

        v.                                                    18-cv-402-LJV-JJM

CITY OF BUFFALO, BYRON LOCKWOOD,
DANIEL DERENDA, LAUREN MCDERMOTT,
JENNY VELEZ, KARL SCHULTZ,
KYLE MORIARITY, JOHN DOE(S),
DAVID T. SANTANA and ANTHONY
MCHUGH,

                              Defendants.
================================

## REPLY RE: OBJECTIONS TO REPORTS AND RECOMMENDATIONS

        Defendants respectfully submit this memorandum in reply to plaintiff's

response [138] to defendants' objections [133] to two of the reports and

recommendations issued by Judge McCarthy [108; 119].

## I.

        The defendants agree that plaintiff's state law claims for false arrest

and false imprisonment are the same. Plaintiff's notice of claim also alleges battery.

Therefore, defendants agree to withdraw their argument that these claims should be

dismissed on the ground that they were not mentioned in plaintiff's notice of claim.

## II.

        Plaintiff argues that his *Monell* survives summary judgment.

Regardless of the particular theory upon which a *Monell* claim is based, the causal

link between the municipal policy and the constitutional violation must be satisfied

by more than a remote connection, since a tenuous connection would eviscerate

1

*Monell's* distinction between vicarious liability and liability predicated on the municipality's own constitutional harms.

Plaintiff's *Monell* claim is based on Lockwood's review of his IAD case (108 pp. 29-30). Courts have imposed *Monell* liability based on a single action by a municipal official who possesses final policymaking authority. However, the single act theory of *Monell* liability requires strict adherence "to rigorous requirements of culpability and causation" because, again, where a court fails to do so, "municipal liability collapses into respondeat superior liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 415 (1997) (it is not enough for plaintiff to merely identify conduct attributable to the municipality; he "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged") (*Id.* at 404) (emphasis in original).

For example, in *Brown*, the plaintiff alleged that a deputy used excessive force in arresting her. The Supreme Court recognized that Congress did not intend municipalities to be held liable under §1983 unless action attributable to the municipality "directly caused a deprivation of federal rights." *Id.* The court held that the county was not liable for the sheriff's department policymaker's isolated decision to hire the deputy without adequate screening because there was no link between the hiring decision and plaintiff's injury. *Id.* at 413. Specifically, the plaintiff did not show that the deputy's use of excessive force "would be a plainly obvious consequence" of the hiring decision. *Id.* at 412.

The causation evidence in this case is on much weaker footing since the plaintiff in *Brown* relied on a policymaker's decision that was made before the

incident in question, whereas plaintiff here relies on a post-incident investigation, which by definition can have no causal link to the alleged constitutional violations of the individual officers. Alleged wrongful conduct after an injury cannot be the cause of the same injury. In an attempt to get around this causation problem, plaintiff seems to argue that Lockwood's post-event, single course of action may shed some light on the policies that existed in the City on the date of the injury. But plaintiff's argument rests on an incorrect premise because there is no evidence of a pattern of undisciplined police misconduct under former BPD Commissioner Derenda, from which it may be inferred that Lockwood acquiesced in the continuation of any policy under Derenda that tolerated or ratified constitutionally offensive acts.

To be sure, a municipal policy "cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior <u>pattern</u> of conduct." *Lucite v. Cnty. of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (emphasis added); *accord Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (an inference that a municipal policy existed may be drawn from evidence "that the municipality had notice of but <u>repeatedly</u> failed to make any meaningful investigation into [excessive force charges]" (emphasis added); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("municipal inaction such as the <u>persistent</u> failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*") (emphasis added). Additionally, the reoccurring deficiencies in the administration of a municipal program must "reflect

3

a purposeful rather than negligent course of action." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).

Thus, not only is it difficult for *Monell* liability to spring from a single decision of a municipal policymaker generally, but the aforementioned cases make clear that a *Monell* claim predicated on a "failure to discipline" theory can never be based on a single incident of officer misbehavior. This theory requires evidence that the municipality had notice of widespread police misconduct but repeatedly and purposely failed to make any meaningful investigation into the charges. Such evidence is wholly lacking here.

The fact that plaintiff identifies a prior lawsuit and IAD complaints filed against one of the defendant officers does not support plaintiff's *Monell* claim. First, municipal liability depends on a "policy" as the moving force behind a constitutional violation, rather than on "factors peculiar to the officer involved in a particular incident." *Brown*, 520 U.S. at 408. It is also true of course that "[p]eople may file a complaint for many reasons, or for no reason at all[,] and [t]hat they filed complaints does not indicate that the policies [alleged to exist] do in fact exist and did contribute to [the] injury." *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985). Here, plaintiff does not explain how these other complaints are related to his incident, or how many of these other instances of alleged misconduct actually involved misconduct. The other lawsuit and complaints referenced by plaintiff—none of which resulted in findings or admissions of culpability, or even involved comparable conduct to that alleged here—are plainly insufficient to support a municipal liability claim.

4

Plaintiff's evidence falls far short of showing a direct causal connection between municipal conduct and the alleged deprivation of his civil rights.

III.

Defendants' argument in their objections that the court should look at the validity of the arrest and not the validity of the cited offense is not new [69-1 p. 19] [99 p. 6] but an expansion upon it. In response to whether his arrest was valid on fourth degree criminal mischief, plaintiff cites his expert's opinion that Schultz is not credible. However, the plaintiff cannot defeat summary judgment by simply attacking Schultz' credibility and saying that the jury might not believe him. *See McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999). To defeat summary judgment, the non-moving party must present evidence from which a reasonable jury could return a verdict in its favor.

Assuming arguendo that plaintiff's expert's testimony is admissible and could be believed by a jury—despite numerous questions raised concerning the reliability of the expert's analysis (83 pp. 3-4)—the expert does not conclude that McDermott or Moriarty did not observe what they described, i.e., that plaintiff threw himself into the police vehicle (68-4 pp. 34-35) (108 p. 3). And even giving plaintiff the benefit of every favorable inference, his expert's opinion is immaterial and should not preclude summary judgment because it is inappropriate to judge the officers' observations at the scene on the basis of 20/20 hindsight. That is, this court should not "second guess [plaintiff's] arrest" (*Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)) or "[the officers'] assessment, made on the scene . . . [w]ith the benefit of hindsight and calm deliberation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).

Additionally, with regard to the damage to the mirror, the video does not show one way or the other whether the vehicle was damaged, the "maintenance" record for the vehicle does not create a genuine dispute as to whether the vehicle was damaged or repaired, and the cellphone photograph taken by McDermott of her police vehicle on the scene could only indicate that the vehicle's mirror was in fact damaged (74-2 p. 251 lines 14-18). The photograph could not be produced because it was lost when McDermott got a new phone (Id. p. 248). The officers had at least arguable probable cause to arrest plaintiff for criminal mischief.

IV.

Because the probable cause that existed at the time of plaintiff's arrest for criminal mischief did not dissipate, probable cause to prosecute also existed. *See Biton v. City of New York*, 2022 WL 1448207, *1 (2d Cir. 2022) ("Probable cause that arises at the time of an individual's arrest continues to support her prosecution unless it dissipates because the police discover new information showing the groundless nature of the charge") (internal quotation marks omitted). Plaintiff argues that the officers should have made further inquiry because they were aware that the incident was recorded on plaintiff's surveillance cameras. However, it cannot be said that a reasonable police officer would have viewed the video of an incident that he witnessed with his own eyes (75-1 CM/ECF pp. 19-20).

V., VI.

The defendants have nothing to add to their prior arguments and submissions with regard to plaintiff's claims for battery and failure to intervene.

For these reasons, and the reasons previously set forth, the court should grant summary judgment in favor of the defendants.

Dated:  Buffalo, New York
       August 3, 2022

                                    Respectfully submitted,

                                    Cavette A. Chambers
                                    Corporation Counsel
                                    Attorney for Defendants

                                    By: s/David M. Lee
                                    Assistant Corporation Counsel
                                    City of Buffalo Department of Law
                                    65 Niagara Square, 1104 City Hall
                                    Buffalo, New York 14202
                                    (716) 851-9691
                                    dlee@city-buffalo.com