UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES C. KISTNER,

                Plaintiff,

vs.

                Civil No.: 18-CV-00402-LJV-JJM

THE CITY OF BUFFALO, *et al.*,

                Defendants.

---

# PLAINTIFF'S MEMORANDUM OF LAW IN
# <u>SUPPORT OF HIS MOTION FOR RECONSIDERATION</u>

**RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
*Attorneys for Plaintiff, James C. Kistner*
R. Anthony Rupp III, Esq.
Chad A. Davenport, Esq.
1600 Liberty Building
Buffalo, New York 14202
rupp@ruppbaase.com
davenport@ruppbaase.com
(716) 854-3400

## PRELIMINARY STATEMENT

Plaintiff, James C. Kistner, hereby submits this memorandum of law in support of his motion for reconsideration of this Court's November 8, 2022 Decision and Order ("Decision"), which ruled on, inter alia, Plaintiff's motion for partial summary judgment regarding the liability of defendants McDermott, Velez, Schultz, and Moriarity (collectively referred to as "Defendants") for his claims under Section 1983 and state law for false arrest, false imprisonment, and malicious prosecution relating to the criminal mischief charge. (*See* Dkt. 141). Plaintiff has reviewed and re-reviewed the Court's Decision several times. Although we understand the Court's ruling that it is the on-scene officers' perception (and not what is shown in the video) that controls the Court's probable-cause analysis, defendants McDermott and Moriarity did not view the collision, and plaintiff's expert, Jennifer L. Yaek, Ph.D., P.E., opined in unrebutted fashion that it was physically impossible for defendant Schultz to have viewed it either. Because defendants McDermott and Moriarity relied entirely on facts that could not possibly have been observed by defendant Schultz, the on-scene officers did not have probable cause to arrest Mr. Kistner on January 1, 2017, and the Court erred in denying Plaintiff's motion for summary judgment regarding his false arrest claim.

In addition, even assuming that Defendants had probable cause to arrest Mr. Kistner, they certainly did not have probable cause to continue to prosecute him thereafter. The evidence in the record demonstrates that there is no genuine dispute that, at the time of Mr. Kistner's initial arrest, Defendants were aware that the accident was recorded on surveillance cameras owned by Plaintiff. The video conclusively shows that Mr. Kistner did not "intentionally throw himself" at McDermott's vehicle with "intent to damage the property of another person," as alleged by Defendants in charging Mr. Kistner with criminal mischief in

-1-

violation of Section 145.05(2) of New York's penal code. (*See* Dkt. 69-4, at p. 6). Because the video negates the intent element of the crime for which Mr. Kistner was charged, no reasonable officer would have believed that he could have been found guilty of the felony charge that Defendants filed against him, and therefore the Court should have found that Defendants are liable for Plaintiff's malicious prosecution claim as a matter of law.

## **LEGAL STANDARD**

The Court may revisit and modify its earlier rulings pursuant to its inherent authority as well as Fed. R. Civ. P. 54(b). *See, e.g., In re Best Payphones, Inc.*, No. 01-15472, 2003 WL 1089525, at *1 (S.D.N.Y. Mar. 10, 2003) ("[a] court may nevertheless reconsider its prior interlocutory orders pursuant to its inherent authority . . . or under Fed. R. Civ. P. 54(b)"). Rule 54(b) unambiguously provides that a non-final "order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

A court should grant a motion for reconsideration when a moving party demonstrates that "it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result." *Mendez v. Radec Corp.*, 411 F. Supp. 2d 347, 350 (W.D.N.Y. 2006) (internal citations omitted). That standard must be applied in light of the summary judgment standard. Summary judgment is appropriate where the admissible evidence shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Whether a fact is "material" is determined by the substantive law defining

the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a party moves for summary judgment, the non-moving party bears the burden of coming forward with more than "[c]onclusory allegations, conjecture, and speculation." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation and citation omitted).

## ARGUMENT I

### IT APPEARS THE COURT MAY HAVE OVERLOOKED PLAINTIFF'S EXPERT EVIDENCE IN DECIDING THE SUMMARY JUDGMENT MOTION

It appears that the Court may have overlooked the expert report of Dr. Jennifer Yaek. Her report, as well as her expert opinions and conclusions described therein, are not mentioned in the Decision, but her unrebutted analysis and findings are highly relevant to what defendant officers claimed to have seen and perceived on the day of the incident. In its Decision, this Court indicated that on-scene officers besides Schultz observed the accident:

> The defendants argue, however, that from their viewpoints— different than the vantage point of the video—they saw Kistner throw himself at McDermott's vehicle and made contact with the driver's side mirror. Docket Item 133 at 4-5; *see also* Docket Item 75-1 at 8 (Schultz's deposition); Docket Item 74 at 102 (McDermott's deposition); Docket Item 73 at 114 (Moriarity's deposition).

(*See* Dkt. 141, at p. 20).

Thus, it appears that the Court found that Schultz, Moriarity, and Schultz all observed the accident. A review of Moriarity's testimony, however, demonstrates that he does not know if he was looking in the driver's side mirror at the time of the accident, and he merely assumes that he was because he had a conversation with Schultz after the collision:

> Q:    Were you looking at the driver's side mirror as the collision was made?
>
> Ms. Huggins:  Form.

-3-

A:     I don't -- I don't remember.  In order for me to have the conversation with Karl, I would say I was looking in the mirror at the time.

(Dkt. 73, at p. 113).  Based on this testimony from defendant Moriarity, it appears that his perception was based solely on his conversation with defendant Schultz, who could not have and did not see anything.

Respectfully, the Defendants cannot raise an issue of fact based on speculation that they *may* have seen something that led to the perceptions that they claim to have formed about the incident.    *See, e.g., Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (holding a court "may not rely on conclusory allegations or unsubstantiated speculation" in opposition to prima facie showing of entitlement to summary judgment by the moving party); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (concluding that the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through "mere speculation or conjecture").  In fact, in opposition to Plaintiff's motion for summary judgment, Defendants admitted themselves that there is insufficient evidence that Moriarity observed the accident, and instead they relied on Schultz's and McDermott's observations to support a finding of probable cause.  (*See* Dkt. 83, at p. 13 ("While Moriarity does not recall his personal observations of the contact, he does remember immediately thereafter discussing his impression with Schultz"); *see also* Defendants' Motion for Summary Judgment in which Defendants relied solely on McDermott's "perception" of the accident and Schultz's "observations" in support of their probable cause argument (*see* Dkt. 69-1, at p. 21)).

Similarly, although defendant McDermott initially stated in nothing but the most conclusory fashion that Plaintiff "purposely walked towards the vehicle and threw himself into it" (*see* Dkt. 74, at p. 101), upon further examination, McDermott was unable to specify what

-4-

observations led her to this conclusory assertion.  McDermott admitted that she checked her

mirrors and looked behind her moments before the accident as she backed up her BPD vehicle;

however, *she could not recall what direction she was looking when she put her vehicle in drive*

*and started to move forward.*  (*Id.*, at pp. 113-15, 171, and 173-78).  Notably, she testified that

she did not recall seeing Mr. Kistner after she shifted her vehicle into drive:

> A:    I -- I don't remember the exact moment I first saw him in the street, no.
>
> Q:    Okay.  So it may have been after you were already pulling the SUV forward.
>
> A:    I -- I don't remember the time.
>
> Q:    Okay.  But that means that you don't remember the time, it could have been after you started pulling the SUV forward after backing it up.
>
> A:    I don't -- I don't remember.

(*Id.*, at pp. 176-77).  Therefore, McDermott could not have seen what she claims she saw, and

her conclusory assertions and testimony should have been disregarded by the Court as a matter

of law.  *See, e.g., Bellsouth Telecommunications, Inc. v. W.R. Grace & Company-Conn.*,

77 F.3d 603, 615 (2d Cir. 1996) ("conclusory statements are insufficient to raise a triable issue of

material fact"); *Issac v. City of New York*, No. 16-CV-4729, 2020 WL 1694300, at *4 (E.D.N.Y.

Apr. 6, 2020) (same); *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 661 (W.D.N.Y. 2011).

> Thus, Defendants are left relying on the utterly incredible testimony of defendant

Schultz to support their claim that Mr. Kistner intentionally threw himself at McDermott's

vehicle.  Schultz, however, testified that he witnessed the accident through the driver's side

mirror while sitting in the front passenger seat of defendant Moriarity's vehicle, which already

was several hundred feet down the road from the point of the collision when the incident

occurred.  (*See* Dkt. 75-1, at pp. 93-94; *see also* Dkt. 75-2, at pp. 225-26).  As explained by the

unrefuted expert testimony of Dr. Yaek,[1] it would have been physically impossible for Schultz to view the subject incident through the driver's side mirror while sitting in the front passenger seat. (*See* Dkt. 68-4).  Instead, based on the Law of Reflection, Schultz would have observed lawns and houses on the west side of the roadway, not the subject incident.

Accordingly, because Plaintiff's uncontested expert demonstrates that it is physically impossible for Schultz to have observed what he claims to have seen, and because neither Moriarity nor McDermott testified that they saw anything, the defendant police officer could not have formed the perceptions that they claim to have had, and they did not raise sufficient evidence to rebut plaintiff's prima facie showing of his entitlement to summary judgment.  *See, e.g., Deutsche Bank AG v. Amba Credit Prods., LLC*, No. 04-CV-5594, 2006 WL 1867497, at *8 (S.D.N.Y. July 6, 2006) (noting that the evidence submitted to rebut the testimony of movant's experts was "flimsy at best" because it "relie[d] primarily on . . . [non-movant's] self-serving assertions"); *Calloway v. Richter*, No. 97-CV-0671, 1998 WL 3430142, at *4 (W.D.N.Y. Dec. 30, 1998) (granting summary judgment in favor of defendants where "the plaintiff ha[d] failed to present any evidence, other than his self-serving, conclusory statements, to rebut defendant's expert's conclusion that the September 3, 1994 letter could not have been written in 1994").  Plaintiff, therefore, respectfully believes that the Court erred in finding triable issues of fact regarding whether Defendants had probable cause to arrest Mr. Kistner for criminal mischief on January 1, 2017.

---

[1] Although it may not be significant to the Court's analysis, it should be noted that this is not a case where Plaintiff sandbagged Defendants with expert evidence to establish a fact that otherwise would be in dispute.  Rather, the case management order staggered expert discovery and required Plaintiff to disclose his expert witnesses first.  Plaintiff complied and timely disclosed Jennifer Yaek (and John Campanella) as expert witnesses, along with the subject matter of their anticipated testimony.  Defendants then had 42 days to go out and get their own expert to challenge the opinions of Dr. Yaek, and another two months to depose Dr. Yaek and potentially expose her expert opinions as unreliable.  (*See* Dkt. 42).  Defendants neglected this opportunity, and therefore the Court should find there is no genuine dispute that application of the Law of Reflection means it was physically impossible for Schultz to observe the accident while sitting in the front passenger seat and looking in the driver's side mirror.

## ARGUMENT II

### IT APPEARS THE COURT MAY HAVE OVERLOOKED FACTS IN THE RECORD DEMONSTRATING THAT PROBABLE CAUSE DID NOT PERSIST FOR PURPOSES OF PLAINTIFF'S MALICIOUS PROSECUTION CLAIM

As the Court correctly noted in its Decision, even if Defendants had probable cause to arrest Plaintiff, that does not automatically mean that they had probable cause to prosecute him. (*See* Dkt. 141, at p. 19 ("[C]ontinuing probable cause is a complete defense to a constitutional claim of malicious prosecution.") (citing *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted)). Indeed, it long has been settled law in this district that "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause . . . [i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotations and citations omitted). Moreover, this Court recently made clear that the probable-cause analysis for malicious prosecution requires the defendant officers to demonstrate that there was probable cause to believe that the plaintiff could have been found guilty of the crime that he actually was charged with, not merely some crime that the defendant officers *could have* charged him with. *Smith v. Town of Lewiston*, No. 17-CV-959, 2022 WL 3273241, at *10 (W.D.N.Y. Aug. 11, 2022) ("So the question is whether a reasonable officer would believe that [plaintiff] could have been found guilty of violating that law.") (Vilardo, D.J.) (citations omitted).

In this case, there is no genuine dispute that, at the time of Mr. Kistner's initial arrest, Defendants were aware that the accident was recorded on surveillance cameras owned by Plaintiff. (Dkt. 74, at pp. 275, 278; Dkt. 75-1, at pp. 127-28). In fact, the BPD "Complaint Summary Report" explicitly states that cameras on 37 Schmarbeck captured the incident. (Dkt.

69-5 (this entry to the BPD CAD report was made at 11:07 a.m. on January 1, 2017)).  However, no officer or City employee attempted to view or obtain copies of the surveillance footage.  For defendant Schultz's part, he testified that he did not attempt to obtain the surveillance footage because he "observed the incident through the mirror, like I said, from my vantage point, in its entirety."  (Dkt. 75-1, at pp. 128-29).  Because it is an established fact that Schultz *could not* have observed the incident, his failure to obtain the surveillance footage is unreasonable as a matter of law.

The law in this Circuit requires defendant officers to pursue "reasonable avenues of investigation" for potential exculpatory evidence, and the failure to do so demonstrates a lack of probable cause as a matter of law.  *Cannistraci v. Kirsopp*, No. 10-CV-980, 2012 WL 1801733, at *11-12 (N.D.N.Y. May 16, 2012) (citing *Lowth*, 82 F.3d at 571); *Korthas v. City of Auburn*, No. 5:04-CV-537, 2006 WL 1650709, at *5 (N.D.N.Y. June 9, 2006).  In this case, the video of the accident establishes that Mr. Kistner did not intentionally throw himself with intent to damage McDermott's vehicle, thereby undermining the essential "intent" element for Defendants' criminal charge against Plaintiff for criminal mischief in the third degree.  *See* N.Y. Pen. L. § 145.05(2).  Accordingly, even if the Court still concludes that there is a genuine dispute regarding whether Defendants had probable cause to arrest Plaintiff, the Court still should find that Defendants are liable as a matter of law for continuing the prosecution of Plaintiff for criminal mischief in the third degree when simply obtaining and watching the video would have demonstrated that no "reasonable officer would believe that [Mr. Kistner] could have been found guilty of violating that law."  *See Smith*, 2022 WL 3273241, at *10.

## CONCLUSION

For the above reasons, as well as those previously stated, Plaintiff's motion for summary judgment should have been granted, and Plaintiff requests that the Court reconsider its decision denying Plaintiff's motion for judgment as a matter of law regarding Defendants' liability in this case for arresting and prosecuting Mr. Kistner without probable cause.

Dated:      November 22, 2022
            Buffalo, New York

                              **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                              *Attorneys for Plaintiff, James C. Kistner*

                              By:   *s/R. Anthony Rupp III*
                                     R. Anthony Rupp III
                                     Chad A. Davenport
                                     1600 Liberty Building
                              Buffalo, New York 14202
                              (716) 854-3400
                              rupp@ruppbaase.com
                              davenport@ruppbaase.com

4891-9798-9183, v. 1