UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
==============================

JAMES KISTNER,

        Plaintiff,

  v.                                      18-cv-402-LJV-JJM

CITY OF BUFFALO, BYRON LOCKWOOD,
DANIEL DERENDA, LAUREN MCDERMOTT,
JENNY VELEZ, KARL SCHULTZ,
KYLE MORIARITY, JOHN DOE(S),
DAVID T. SANTANA and ANTHONY
MCHUGH,

        Defendants.
==============================

## ATTORNEY DECLARATION

        David M. Lee, declares under penalty of perjury and pursuant to 28 U.S.C. §1746 that the following is true and correct:

    1.    I am an attorney admitted to practice in this court, and an Assistant Corporation Counsel for the City of Buffalo, of Counsel to Cavette A. Chambers, Corporation Counsel and attorney for the defendants. As such, I am fully familiar with this case.

    2.    This declaration and the accompanying memorandum of law are offered in opposition to plaintiff's motion for reconsideration of this court's decision and order, which, inter alia, denied summary judgment to plaintiff on his claims for false arrest, false imprisonment and malicious prosecution arising from the criminal mischief charge. Docket Items 141 and 142.

1

3. Plaintiff makes two main arguments in support of his motion. First, he argues that the court overlooked his expert's opinion that it was impossible for Schultz to see plaintiff throw himself at McDermott's vehicle. Second, he argues that the even if the officers had probable cause to arrest and charge him, they did not have probable cause to continue to prosecute him in light of the video.

4. For the reasons set forth below, plaintiff's arguments lack merit, and his motion should be denied in its entirety.

Dated:     Buffalo, New York
           December 5, 2022
                                        s/David M. Lee

## MEMORANDUM OF LAW

The district court is authorized by Rule 54(b) to reconsider any interlocutory order or other decision before the entry of a final judgment. However, the Second Circuit has

> limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again. Thus, those decisions may not usually be changed unless there is [1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent a manifest injustice.

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks and citation omitted).

These criteria are strictly construed against the moving party, and a strong policy favoring finality impels courts to reconsider earlier rulings only sparingly. *See United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir. 1989); *Boyde v. Osborne*, 2013 WL 6662862, *1 (W.D.N.Y. 2013). "As to the third circumstance [that may justify reconsideration], [courts] will not review [a prior decision] unless [they] have a clear conviction of error on a point of law that is certain to recur; mere doubt will not suffice." *Adegbite*, 877 F.2d at 178.

Here, plaintiff argues that Moriarity's testimony that he was looking in his driver's side mirror at the time of the incident is speculative. Not so. Moriarity testified that from his perspective, it looked like plaintiff threw himself

3

on the vehicle. Docket Item 73 at p. 114. Moriarity testified throughout his deposition that he was looking in his driver's side mirror when the contact occurred. Id. at pp. 107, 112, 113, 114, 115, 190, 194, 195, 281, 282. At one point, Moriarity was specifically asked:

> Q. Were you going off what [Schultz] told you, or were you going off what you saw?
>
> A. No, no, no. From --- from what I saw. Like I said, from *my* perspective, that's what it looked like.

Id. at p. 115 (emphasis added). Clearly, Moriarity's conclusion that plaintiff threw himself into McDermott's vehicle was not based on speculation, but on what he perceived through his own eyes.

Plaintiff next argues that McDermott could not have seen what she claims she saw, because she does not recall seeing plaintiff in the street after she shifted her vehicle into drive. Even McDermott's testimony quoted in plaintiff's brief does not imply that. Moreover:

> Q. So you don't remember whether you saw [plaintiff] in the street or not?
>
> A. I saw him. I don't remember at what moment I first saw him, which is . . . what you asked.
>
> …
>
> Q. Okay. So it's possible then, if you don't remember, that you didn't see [plaintiff] at all before [the impact]?
>
> A. I --- I did see him. I told you earlier, I saw him coming at my vehicle.
>
> …

4

> Q. Okay. When is the first time you saw him [in the street]?
>
> A. I don't remember the first time I saw him [in the street]. I do --- but I do remember him coming at the vehicle.

Docket Item 74 at pp. 176-77. Therefore, there is no reason for the court to discredit McDermott's testimony that plaintiff "purposefully walked towards the vehicle and threw himself into it." Id. at p. 101.

Thus, the defendants are not "left to rely" on the testimony of Schultz that he also saw plaintiff come into contact with McDermott's vehicle. In any event, Judge McCarthy was correct to not consider Dr. Yaek's analysis. Docket Item 108 at p. 17, n. 10. Furthermore, Dr. Yaek's opinion that it was "impossible" for Schultz to have observed what he says he did is insufficiently reliable to be admissible. Docket Item 83 at pp. 3-4. Alternatively, at a minimum, the defendants should be free to explore the deficiencies they have identified in Dr. Yaek's report (Id.) through cross-examination at trial, so that the jury can either accept or reject Dr. Yaek's opinions based on its own informed assessment of her analysis.

Lastly, plaintiff argues that even if probable cause was present at the time of arrest, the video establishes that he did not intend to strike the mirror. But the video does not establish that. Docket Item 141 at pp. 20-21. In other words, the video does not "ma[k]e apparent" the "groundless nature of the charge" so as to dissipate probable cause. *Moore v. City of New York*, 854 F.App'x 397, 399 (2d Cir. 2021) (internal quotation marks omitted). In fact, the video only

supports the fact that plaintiff's actions caused or contributed to the impact, and underscores that the officers had at least arguable probable cause to arrest and prosecute plaintiff for criminal mischief.

Plaintiff's motion for reconsideration should be denied.

Dated:	Buffalo, New York
	December 5, 2022

                Respectfully submitted,

                Cavette A. Chambers
                Corporation Counsel
                Attorney for Defendants

                By: s/David M. Lee
                Assistant Corporation Counsel
                City of Buffalo Department of Law
                65 Niagara Square, 1104 City Hall
                Buffalo, New York 14202
                (716) 851-9691
                dlee@city-buffalo.com