UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES C. KISTNER,

        Plaintiff,

        v.

CITY OF BUFFALO, *et al.*,

        Defendants.

18-CV-402-LJV-JJM
DECISION & ORDER

_____

On March 30, 2018, the plaintiff, James C. Kistner, commenced this action against the City of Buffalo and several Buffalo Police Department ("BPD") officials and officers. Docket Item 1. His claims arise from an incident that began when defendant BPD Officer Lauren McDermott allegedly struck him with her patrol car and that ended when he was arrested and prosecuted for criminal mischief in the third degree, New York Penal Law § 145.05, and disorderly conduct, New York Penal Law § 240.20. *Id.*

On November 8, 2022, this Court issued a decision and order ("D&O") resolving several motions. Docket Item 141. Since then, Kistner moved for reconsideration of the D&O, Docket Item 142; some defendants filed a notice of appeal, Docket Item 144; and Kistner asked this Court to certify the defendants' appeal as frivolous or, alternatively, to bifurcate some of his claims for trial, Docket Item 145.

For the following reasons, Kistner's motions are denied.

## BACKGROUND

The Court assumes the reader's familiarity with the factual background as set forth in the D&O. Docket Item 141 at 3-6.

As relevant here, Kistner has sued the City of Buffalo; Byron Lockwood, Commissioner of the BPD; Daniel Derenda, former Commissioner of the BPD; Anthony McHugh, a BPD Lieutenant; and several named BPD Officers: McDermott, Jenny Velez, Karl Schultz, Kyle Moriarity, and David T. Santana.  Docket Item 61.  Kistner asserts claims under 42 U.S.C. § 1983 and New York State law for false arrest, false imprisonment, and malicious prosecution arising from both the criminal mischief charge and the disorderly conduct charge.  Docket Item 122.  He also asserts claims under section 1983 for failure to intervene; retaliation in violation of his First Amendment rights; and negligent hiring, supervision, and training of BPD officers.  *Id.*  Finally, he asserts claims for battery under New York State law.  *Id.*[1]

On June 20, 2018, the case was referred to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 5.  On April 28, 2021, Kistner moved for summary judgment against defendants McDermott, Velez, Schultz, and Moriarity on his federal and state law claims for false arrest, false imprisonment, and malicious prosecution arising from the criminal mischief charge.  Docket Item 68.  Two days later, the defendants moved for judgment on the pleadings on some claims and for summary judgment on the rest.  Docket Item 69.  After the parties briefed those motions, *see* Docket Items 82-100, Judge McCarthy heard oral argument, Docket Item 101, and issued three reports and recommendations (collectively, the "R&R"), Docket Items 108, 119, and 129.  Both Kistner and the

---

[1] Kistner asserted several other claims in his original complaint, Docket Item 1, but those claims have been either withdrawn or dismissed, *see* Docket Item 141 at 7 n.4, 36.

defendants objected to the R&R on several grounds and then briefed those objections. Docket Items 132-140.

On November 8, 2022, this Court issued a D&O accepting the R&R in part and respectfully rejecting it in part. Docket Item 141. More specifically—and as is relevant here—the Court denied Kistner's motion for summary judgment on his false arrest, false imprisonment, and malicious prosecution claims arising from the criminal mischief charge. *Id.* at 17-23. It also denied the defendants' motions for summary judgment on (1) Kistner's false arrest, false imprisonment, and malicious prosecution claims arising from both the criminal mischief charge and the disorderly conduct charge, *id.* at 17-28; (2) Kistner's retaliation claim, *id.* at 23-28; (3) Kistner's battery claim, *id.* at 28 n.13; (4) Kistner's failure-to-intervene claim, *id.* at 28-29; and (5) Kistner's *Monell* claims against the City of Buffalo, *id.* at 29-34.

On November 22, 2022, Kistner moved for reconsideration of a portion of the D&O, Docket Item 142; on December 5, 2022, the defendants responded, Docket Item 147; and on December 13, 2022, Kistner replied, Docket Item 148. In the meantime, on November 30, 2022, the individual defendants filed a notice of appeal on the issue of qualified immunity. Docket Item 144. That same day, Kistner asked this Court to certify the defendants' appeal as frivolous or, in the alternative, to bifurcate his *Monell* claims against the City of Buffalo and proceed to trial. Docket Item 145. On December 13, 2022, the defendants responded to those requests, Docket Item 149, and on December 21, 2022, Kistner replied, Docket Item 159.

## **DISCUSSION**

**I.      KISTNER'S MOTION FOR RECONSIDERATION**

Kistner has asked this Court to reconsider its denial of his motion for summary judgment on his federal and state false arrest, false imprisonment, and malicious prosecution claims arising from the criminal mischief charge.  Docket Item 142-1 at 2-10.

Although a court may reconsider the denial of a motion for summary judgment, *see, e.g.*, *Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 276 (E.D.N.Y. 2013), "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Id.*

###      **A.      The False Arrest and False Imprisonment Claims**

In the D&O, this Court found that questions of material fact preclude summary judgment for either side on Kistner's claims for false arrest and false imprisonment arising from the criminal mischief charge.  Docket Item 141 at 17-23.  The Court noted that while video surveillance footage of the collision between Kistner and McDermott's vehicle "conclusively disproves" the claim that the vehicle was stopped when the collision occurred, "there is a question of fact about whether Kistner[] caused or contributed to the collision."  *Id.* at 20-21.  The Court also noted that if the defendants reasonably believed that Kistner threw himself at the vehicle—as Schultz, McDermott, and Moriarity testified they did—they would be entitled to qualified immunity.  *Id.*  The

4

Court therefore concluded that there was a question of fact as to "whether Kistner was guilty of criminal mischief or whether the defendants at least reasonably believed that he was." *Id.* And that question of fact precluded summary judgment on Kistner's false arrest and false imprisonment claims relating to the criminal mischief charge. *Id.*

Kistner now argues that this Court erred in its analysis of the officers' perceptions of the collision. Docket Item 142-1 at 2. More specifically, he says that the officers could not have reasonably believed that he threw himself at the car because McDermott's and Moriarity's testimony establishes that they did not see the collision between Kistner and McDermott's vehicle. *Id.* at 4-6. But the officers' testimony is not as clear as Kistner suggests.

McDermott's deposition is far from a beacon of clarity: at one point, she said that she saw Kistner approach her vehicle and throw himself at it; at another, she suggested that she did not see the collision. *Compare* Docket Item 74 at 102 ("My assessment was that [Kistner] purposely walked towards the vehicle and threw himself into it."), *and id.* at 104 ("I saw [Kistner] walking towards my vehicle very fast or quickly, and he didn't stop."), *with* Docket Item 74-1 at 6 ("I don't know at what moment I would have first seen [Kistner]."). But rather than establishing that McDermott did not see Kistner throw himself at her vehicle, these statements—viewed in context and not "cherry-pick[ed]," *see* Docket Item 148 at 3—create an issue of fact as to what, exactly, McDermott saw. And that issue of fact must be resolved by a jury.

Moriarity's deposition is a bit clearer: when he testified, he did not explicitly recall viewing the collision, but he said that he must have seen it because he recalls discussing what he saw with Schultz. Docket Item 73 at 114-16. And he said that "from

5

[his] perspective," it "looked like [Kistner] threw himself on the vehicle."  *Id.* at 115.  So while Moriarity did not actually remember exactly what he saw, it certainly is possible that he viewed the collision—which happened very quickly.  Moreover, the defendants' purported admissions regarding the insufficiency of Moriarity's perceptions that Kistner raises in his reply, *see* Docket Item 148 at 2-3, are not incompatible with that possibility.  And for that reason, Moriarity's testimony about the collision is not clearly speculative, as Kistner claims.

Kistner also suggests that the Court "may have overlooked the expert report of Dr. Jennifer Yaek" in its assessment of Schultz's "utterly incredible testimony."  Docket Item 142-1 at 4-7.  Schultz, who was sitting in the passenger seat of Moriarity's vehicle, testified that he saw the collision "through the driver's side mirror" of the vehicle.  Docket Item 75 at 93-97.  Yaek, an accident reconstruction expert, analyzed the video of the collision and concluded—"based on physics" and the "Law of Reflection"—that Schultz could not have seen the collision between Kistner and McDermott's vehicle.  Docket Item 68-4 at 1, 28-33; *see* Docket Item 142-1 at 6-7.  While there may be merit to Yaek's technical analysis, it is the job of a jury—not this Court—to assess the credibility of Yaek and her report.  *See Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir. 2005) ("It is a well-recognized principle of our trial system that determining the weight and credibility of a witness's testimony belongs to the jury." (alterations, citations, and internal quotation marks omitted)).  And as the defendants argue, the defendants "should be free to explore the deficiencies they have identified in [the report] through cross-examination at trial."  Docket item 147 at 5.

In sum, there are questions of fact about the officers' perception of the collision and whether they reasonably believed that Kistner threw himself at McDermott's vehicle. For that reason, Kistner's motion for reconsideration of his false arrest and false imprisonment claims arising from the criminal mischief charge is denied.

### B.     The Malicious Prosecution Claim

Kistner also argues that this Court "may have overlooked facts in the record demonstrating that probable cause did not persist for purposes of [Kistner's] malicious prosecution claim." Docket Item 142-1 at 2-3, 8-9 (capitalization omitted). More specifically, he says that the defendants knew that there was surveillance footage of the collision and that if they had obtained and viewed that footage, they would not have had continuing probable cause to believe that Kistner threw himself at McDermott's vehicle. *Id.* at 8-9.

But as this Court explained in the D&O, the video neither conclusively proves nor disproves the officers' claim that Kistner threw himself into McDermott's vehicle. Docket Item 141 at 20-23. By asking the Court to find that the defendants would not have had probable cause to prosecute Kistner after viewing the video, Kistner asks the Court to find that the video proves that Kistner did not throw himself into the vehicle—an argument that the Court already addressed and rejected. *See id.*

Kistner's motion for reconsideration of his malicious prosecution claim arising from the criminal mischief charge therefore is denied as well.

## II.   KISTNER'S MOTION REGARDING THE DEFENDANTS' APPEAL

The individual defendants have appealed[2] the "denial of their motion for summary judgment on the issue of qualified immunity."[3]  Docket Item 144.  In response, Kistner moved this Court to certify the defendants' appeal as frivolous or, alternatively, to bifurcate his *Monell* claims for trial.  Docket Items 145 and 145-1.

### A.   Certifying the Appeal as Frivolous

In general, "[t]he filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  But under the dual jurisdiction rule, a district court may certify as "frivolous" an appeal from a denial of qualified immunity if the denial was based on a factual dispute.  *See Betances v. Fischer*, 140 F. Supp. 3d 294, 301-02 (S.D.N.Y. 2015).  The district court then "retain[s] jurisdiction pending summary disposition of the appeal."  *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996)).

Several circuits have embraced the dual jurisdiction rule, *see, e.g.*, *Rivera-Torres v. Ortiz Velez,* 341 F.3d 86, 95-96 (1st Cir. 2003); *Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992); *Yates v. City of Cleveland,* 941 F.2d 444, 448-49 (6th Cir. 1991); *Stewart v. Donges,* 915 F.2d 572, 576-77 (10th Cir. 1990); *Apostol v. Gallion,* 870 F.2d 1335,

---

[2] The City of Buffalo, which cannot assert a qualified immunity defense, *see Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012), is not a party to the appeal, *see* Docket Item 144.

[3] "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision.'"  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

1339-40 (7th Cir. 1989), as have a few district courts in this Circuit, *see, e.g.*, *Bean v. City of Buffalo*, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993). The Second Circuit has held that "an appellate court lacks jurisdiction to review a denial of qualified immunity by a district court based on the existence of . . . a factual dispute," *Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020), but it has never approved the dual jurisdiction rule, *see Betances*, 140 F. Supp. 3d at 302 ("[T]he Second Circuit has not specifically addressed dual jurisdiction over frivolous qualified immunity claims."); *Gray v. Fidelity Inv.*, 2022 WL 1503925, at *2 (N.D.N.Y. May 11, 2022) (noting that the Second Circuit "has not yet bestowed its blessing" on the dual jurisdiction rule).

Kistner argues that because this Court found that the defendants' qualified immunity defense hinges on questions of fact, it should certify the defendants' appeal as frivolous. Docket Item 145-1 at 2 (citing Docket Item 141 at 21). But because the Second Circuit has not endorsed the dual jurisdiction rule, this Court declines to do so. While the Court understands Kistner's eagerness to proceed to trial, it remains bound by the general rule that an appeal "divests the district court of its control over those aspects of the case involved in the appeal," *see Griggs*, 459 U.S. at 58, and leaves the question of appellate jurisdiction to the Second Circuit.

Kistner's motion to certify the defendants' appeal as frivolous therefore is denied.

### B.     Bifurcating the Claims

In the alternative, Kistner asks this Court to "retain jurisdiction over those portions of the case that do not involve the question of qualified immunity," *i.e.*, the *Monell* claims against the City of Buffalo, and to proceed to trial on those claims. Docket Item 145-1 at 9-11; *see New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir.

1989) ("[W]hen the judgment appealed from does not determine the entire action, . . . the district court may proceed with those matters not involved in the appeal."). He argues that a separate trial will "avoid prejudice" to him—one of the factors a court should consider when deciding whether to order a separate trial, see Fed. R. Civ. P. 42(b)—and that it will not undercut the purpose of qualified immunity because he "will not need to call any of the individual defendants to prove his *Monell* claim," Docket Item 145-1 at 11-12. And he says that "bifurcation is warranted because the [defendants] very clearly are attempting to use their purported right to appeal to stay a trial of this matter and force [Kistner] to wait at least another two years" for resolution of this action. *Id.* at 10-11.

But trying Kistner's *Monell* claims separately from the claims against the individual defendants would be inconvenient and inefficient, the other two factors a court should consider when ordering a separate trial. See Fed. R. Civ. P. 42(b). Indeed, as the defendants observe, a trial on the *Monell* claims would almost certainly involve the facts surrounding the collision and the rest of the events of January 1, 2017. *See* Docket Item 149 at 10-11. So considerations of judicial economy weigh against conducting two separate trials that will require proof of many of the same facts.

Kistner's motion to bifurcate his claims therefore is denied.

## **CONCLUSION**

For the reasons stated above, Kistner's motions for reconsideration, Docket Item 142, and to certify the defendants' appeal as frivolous or, alternatively, to bifurcate his *Monell* claims against the City of Buffalo, Docket Item 145, are DENIED.

10

SO ORDERED.

Dated:   January 3, 2023
         Buffalo, New York

                                              <u>  /s/ Lawrence J. Vilardo  </u>
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE

11