MANDATE

22-3058, 23-175
Kistner v. City of Buffalo

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of May, two thousand twenty-four.

PRESENT:
        REENA RAGGI,
        DENNY CHIN,
        MYRNA PÉREZ,
            *Circuit Judges.*

_____

JAMES C. KISTNER,

          *Plaintiff-Appellee*,

v.                                            No. 22-3058

THE CITY OF BUFFALO, BYRON LOCKWOOD, DANIEL DERENDA, individually and in his capacity as Police Commissioner of the Buffalo Police Department, LAUREN MCDERMOTT, individually and in her capacity as a Buffalo Police Officer, JENNY VELEZ, individually and in her capacity as a Buffalo Police Officer, KARL SCHULTZ, KYLE MORIARITY, JOHN DOE(S), individually and in his/their capacity as a Buffalo Police Officer(s), DAVID T. SANTANA, individually and in his capacity as a Buffalo Police Officer, ANTHONY

MANDATE ISSUED ON 07/16/2024

MCHUGH, individually and in his capacity as Lieutenant for the City of Buffalo Police Department,

                *Defendants-Appellants.*

―――――――――――――――――――

EARL KISTNER,

                *Plaintiff-Appellee*,

v.                  No. 23-175

THE CITY OF BUFFALO, BYRON LOCKWOOD, LAUREN MCDERMOTT, JENNY VELEZ, KARL SCHULTZ, KYLE MORIARITY,

                *Defendants-Appellants.*

―――――――――――――――――――

| | |
|---|---|
| **FOR PLAINTIFFS-APPELLEES:** | R. ANTHONY RUPP III, Rupp Pfalzgraf LLC (Chad A. Davenport, *on the brief*), Buffalo, NY. |
| **FOR DEFENDANTS-APPELLANTS:** | DAVID M. LEE, Assistant Corporation Counsel, City of Buffalo Department of Law, Buffalo, NY. |

Appeal from orders of the United States District Court for the Western District of New York (Vilardo, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeals of the district court's orders of November 8, 2022 (No. 22-3058) and January 10, 2023 (No. 23-175) are **DISMISSED**.

Father and son James and Earl Kistner each brought a separate lawsuit against the City of Buffalo, the City's Police Department, and several of its police officers[1] under 42 U.S.C. § 1983.

---

[1] The individual officer defendants relevant to these appeals are Lauren McDermott, Jenny Velez, Karl Schultz,

2

The claims in these lawsuits arose from an incident involving a collision between pedestrian James and a police vehicle and the events that followed. James brought claims against the Officer Defendants for: (1) unlawful seizure and arrest; (2) malicious prosecution; (3) First Amendment retaliation; and (4) failure to intervene. Earl brought claims against certain Officer Defendants for (1) unlawful seizure; (2) excessive force; (3) failure to intervene; and (4) First Amendment retaliation.

Defendant-Appellants moved for summary judgment in both cases on the grounds of qualified immunity. The district court denied Defendants-Appellants' motions, determining that genuine disputes of material fact precluded resolving the Officer Defendants' entitlement to qualified immunity as a matter of law. Because the district court relied on the existence of material factual disputes in denying qualified immunity and Defendants-Appellants continue to contest those facts on appeal, we lack interlocutory jurisdiction to consider both appeals. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal, which we recount only as necessary to explain our decision to dismiss both appeals.

## DISCUSSION

Before considering the merits of the appeal, we must first consider whether we have appellate jurisdiction. *Coollick v. Hughes*, 699 F.3d 211, 217 (2d Cir. 2012). Under 28 U.S.C. § 1291, our appellate jurisdiction is generally limited to reviewing "final decisions" of United States district courts. One exception to this rule is the "collateral order doctrine," which allows for an interlocutory appeal under certain circumstances. *Id.* "It is well-settled that a decision denying a defendant the defense of qualified immunity satisfies the collateral order doctrine 'to the extent that it turns on an issue of law . . . notwithstanding the absence of a final judgment.'"

---

Kyle Moriarity, Anthony McHugh, and David Santana (the "Officer Defendants").

3

*Id.* (citation omitted). However, this Court "lack[s] jurisdiction over interlocutory appeals 'from denials of qualified immunity *if resolution of the immunity defense depends upon disputed factual issues.*'" *Jok v. City of Burlington*, 96 F.4th 291, 295 (2d Cir. 2024) (emphasis added) (citation omitted); *Doninger v. Niehoff*, 642 F.3d 334, 352 (2d Cir. 2011) ("We do not . . . have jurisdiction to review a denial of qualified immunity to the extent it is based on a district court's finding that there is enough evidence in the record to create a genuine issue as to factual questions that are, in fact, material to resolution of the qualified immunity claim."). "Defendants wishing to obtain immediate review of a denial of qualified immunity may nonetheless do so by accepting, for purposes of the appeal only, plaintiff's version of the disputed facts." *Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020).

"[A]s the part[ies] seeking to invoke this Court's appellate jurisdiction," the Defendant-Appellants "bear[] the burden of establishing it." *Jok*, 96 F.4th at 293. Ultimately, we conclude that Defendants-Appellants "failed to satisfy [their] burden of establishing appellate jurisdiction over this interlocutory appeal" with respect to James and Earl's § 1983 claims. *Id.* at 298.

### I. This Court Lacks Jurisdiction Over the Appeal in James Kistner's Case.

Whether the Officer Defendants are entitled to qualified immunity from James's claims for unlawful seizure, malicious prosecution, First Amendment retaliation, and failure to intervene ultimately turns on whether they had arguable probable cause to arrest and charge James with criminal mischief and disorderly conduct.[2]

---

[2] James's claims for unlawful seizure and unlawful arrest, malicious prosecution, and failure to intervene relate to the criminal mischief and disorderly conduct charges levied against him, while his claim for First Amendment retaliation relates only to the charge of disorderly conduct.

4

### A. There Are Genuine Issues of Fact as to Whether the Officer Defendants Had Probable Cause to Arrest and Charge James with Criminal Mischief.

Under section 145.05(2) of the New York Penal Law, "[a] person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding two hundred fifty dollars."

The district court, in denying qualified immunity, concluded that "there are issues of fact as to whether [James] Kistner's arrest and prosecution for criminal mischief were supported by probable cause or arguable probable cause." Special App'x at 22–23. Indeed, the parties clearly dispute what caused the contact between James and McDermott's vehicle—an issue material to whether the officers had arguable probable cause to arrest and prosecute James for criminal mischief. Defendants-Appellants contend that they had arguable probable cause to arrest and charge James with criminal mischief for intentionally damaging the side mirror of the vehicle based on the testimony of the officers, who claim that James threw himself onto the vehicle. On the other hand, James testified that McDermott hit him with her vehicle and contends that he was arrested and charged with criminal mischief to cover up the accident. In discussing these competing accounts of the collision, the district court noted that "exactly what facts were available to the officers is in dispute" because although "[a] jury may find that the officers reasonably believed [that James threw himself into the car]; on the other hand, a jury may well find that the [surveillance] video [of the incident] casts doubt on the truth of what the officers say they perceived when [James] Kistner and McDermott's vehicle collided." Special App'x at 22.

On appeal, Defendants-Appellants purport to accept James's version of the facts for the purpose of establishing the officers' entitlement to qualified immunity but continue to maintain that the officers reasonably thought James threw himself at the vehicle. *See Jok*, 96 F.4th at 298.

5

But, as the district court correctly recognized, a jury would not be required to believe the officers' testimony, and thus there remain material questions of fact as to the existence of arguable probable cause. Because "resolution of the immunity defense depends upon disputed factual issues," *id.* at 295, Defendants-Appellants have "failed to satisfy [their] burden of establishing appellate jurisdiction over this interlocutory appeal," *id.* at 298, with respect to James's claims related to the criminal mischief charge.

### B. There Are Genuine Issues of Fact as to Whether the Officer Defendants Had Probable Cause to Arrest and Charge James with Disorderly Conduct.

"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance[,] or alarm, or recklessly creating a risk thereof . . . [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture." N.Y. Penal Law § 240.20(3). "Critical to a charge of disorderly conduct is a finding that [the offender's] disruptive statements and behavior were of a public rather than an individual dimension." *People v. Baker*, 984 N.E.2d 902, 905 (N.Y. 2013). In determining whether the offender intended to cause public harm or a risk of public harm, courts consider "many factors, including 'the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances.'" *Id.* at 906 (citation omitted).

The district court found that "questions of fact preclude the conclusion that the defendants had probable cause—or even arguable probable cause—as a matter of law to arrest [James] Kistner for disorderly conduct." Special App'x at 24. In particular, the district court noted:

> [T]he parties dispute the circumstances under which Kistner made his comments, who was nearby, and to whom Kistner directed his words. If hospital workers were there as the defendants contend, there may have been a risk of a public disturbance.

6

>And even if ECMC staff were present for Kistner's comments, Kistner's tone and volume, as well as the specific context in which he made his comments and how frequently he made them, are relevant to assessing whether he created a risk of public harm.

*Id.* at 26–27.

The record supports this conclusion. Defendants-Appellants argue that James used obscene and offensive language toward ECMC staff. Although James testified during his deposition that he yelled at one ECMC nurse for assuming that he had thrown himself onto McDermott's vehicle, he also testified that he neither cursed nor yelled during a subsequent interview examination with two other ECMC staff members and never threatened any ECMC staff. James further testified that, although he was "boisterous and loud," there were generally no other doctors or patients around him because he was kept in a private room. J. Kistner Joint App'x at 378–80.

Although Defendants-Appellants purport to adopt James's version of the events in their brief on appeal, they still assert that he directed his profanities at ECMC staff in a public way. Because Defendants-Appellants "continue[] to rely on disputed facts . . . , we are not presented with a question of law" as to their qualified immunity defense. *Jok*, 96 F.4th at 298. As such, Defendants-Appellants have "failed to satisfy [their] burden of establishing appellate jurisdiction over this interlocutory appeal," *id.*, with respect to James's claims related to the disorderly conduct charge.[3]

## II. This Court Lacks Jurisdiction Over the Appeal in Earl Kistner's Case.

Earl brought § 1983 claims against only Officer Defendants McDermott, Velez, Schultz, and Moriarity for unlawful seizure, excessive force, failure to intervene, and First Amendment

---

[3] Insofar as Defendants-Appellants argue that they are entitled to qualified immunity on James's failure to intervene claim because they "have qualified immunity from plaintiff's main claims" J. Kistner Appellant Br. at 6, 18, the argument is defeated by the disputed facts on those claims. *See supra* Sections I.A, I.B.

7

retaliation.  Disputed facts prevented the district court from finding these defendants entitled to qualified immunity on these claims and prevent this court from exercising jurisdiction.

### A. There Are Genuine Issues of Fact as to Whether McDermott, Velez, Schultz, and Moriarity Had Reasonable Suspicion to Seize Earl and His Property.

Earl's unlawful seizure claims are based on the officers' seizure of his person and his property—namely, his cell phone and his driver's license.

#### i. There Are Genuine Issues of Fact as to Whether McDermott, Velez, Schultz, and Moriarity Had Reasonable Suspicion to Stop Earl.

An officer who conducts a *Terry* stop must have "a reasonable basis to think that the person to be detained is committing or has committed a criminal offense." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (citation and internal quotation marks omitted).

McDermott, Velez, Schultz, and Moriarity contend that they are entitled to qualified immunity with respect to Earl's unlawful seizure claim because they had arguable reasonable suspicion to believe that Earl was obstructing governmental administration,[4] based on Earl's failure to follow instructions to stand back on the sidewalk while they investigated James's collision with McDermott's vehicle.  *See Kass*, 864 F.3d at 210 (noting individual interferes with government function when he "intrude[s] himself into, or get[s] in the way of, an ongoing police activity" (citation and internal quotation marks omitted)).  But, as the district court noted, the record "raise[d] questions about what Schultz told Earl to do" and, as a result, questions about whether Earl disobeyed the orders given to him.  E. Kistner Joint App'x at 182.  Specifically,

---

[4] "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs[,] or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." N.Y. Penal Law § 195.05; *see Kass v. City of New York*, 864 F.3d 200, 206–07 (2d Cir. 2017) (discussing elements of § 195.05).

8

Schultz testified that when Earl initially came into the street to check on his father, Schultz told Earl to "stay back . . . over there, on the sidewalk. Just to not interfere with, you know, what was going on." *Id.* at 82. However, Earl does not recall being told to stand on the sidewalk. This, in turn, gives rise to a factual dispute as to whether Earl in fact disobeyed police orders or whether officers could reasonably think he had.

On appeal, the officers continue to rely on their version of these disputed facts, asserting that Earl either did not stay on the sidewalk or generally disobeyed their instruction to stay back. As such, whether the officers are entitled to qualified immunity is "not a pure question of law that can be decided on interlocutory appeal because it depends on the resolution of a factual dispute." *Jok*, 96 F.4th at 297 (citation and internal quotation marks omitted).

        ii. <u>There Are Genuine Issues of Fact as to Whether McDermott, Velez, Schultz, and Moriarity Had Reasonable Suspicion to Seize Earl's Cell Phone and Driver's License.</u>

During a *Terry* stop, an officer may conduct "an accompanying frisk for weapons," but only if supported by "reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Dancy*, 843 F.3d at 107. "The purpose of this limited search" permitted during "a reasonable investigatory [*Terry*] stop" is to "allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972).

The officers contend that the seizure of Earl's phone during a *Terry* stop was permissible because a cell phone could be perceived as a threat to officer safety.[5] They further argue that obtaining Earl's license falls within the scope of a lawful *Terry* stop. But, as discussed previously, genuine disputes of fact exist that are material to whether the *Terry* stop of Earl was

---

[5] We have previously rejected a similar argument, noting that "[a] cell phone is not a weapon," where, as here, "[t]he crime [being investigated] did not involve a weapon and nothing about [the plaintiff's] behavior suggested that he had a weapon on his person." *Dancy*, 843 F.3d at 110 n.16.

9

lawful at all.  *See supra* Section II.A.i.  Because "resolution of the immunity defense depends upon disputed factual issues," *Jok*, 96 F.4th at 295, Defendants-Appellants have "failed to satisfy [their] burden of establishing appellate jurisdiction over this interlocutory appeal," *id.* at 298, with respect to Earl's unlawful seizure claims.

### B. There Are Genuine Issues of Fact As to Whether Schultz and Moriarity's Use of Force Was Reasonable.

Whether the force used to effect an arrest is "reasonable" or "excessive" turns on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and internal quotation marks omitted).  In conducting this balancing, we look to a number of factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The district court, in denying qualified immunity, found that there were "unresolved questions of fact as to whether Earl was 'actively resisting' the officers—questions for a jury to decide. . . . And depending on what the jury finds, the officers' use of force may or may not have been justified." E. Kistner Joint App'x at 191 (citation omitted).

The parties indeed dispute whether Earl was actively resisting Schultz and Moriarity, who pushed and pulled him in the course of obtaining Earl's cell phone.  Although Moriarity testified that Earl demonstrated "[a] little bit of resistance," J. Kistner Joint App'x at 1357, the video footage does not clearly show Earl pulling away or otherwise actively resisting the officers.  Moreover, Earl testified that after Schultz grabbed him and pulled him into the street, he "complied exactly how they wanted me to" by going limp "so they knew I wasn't resisting"

10

and giving them his phone. E. Kistner Joint App'x at 58–59.[6]

On appeal, the officers continue to take the view that Earl did not cooperate with them and thus do not accept Earl's version of the facts—as they must to establish appellate jurisdiction. Because "resolution of the immunity defense depends upon disputed factual issues," *Jok*, 96 F.4th at 295, we lack jurisdiction over this interlocutory appeal with respect to Earl's excessive force claim.

### C. There Are Genuine Issues of Fact as to Whether the Officers' Actions Were Motivated or Substantially Caused by Earl's Exercise of a First Amendment Right.

"To prevail on [a First Amendment retaliation] claim, [a] plaintiff must prove [that]: (1) he has an interest protected by the First Amendment; (2) [the] defendants' actions were motivated or substantially caused by his exercise of that right; and (3) [the] defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

The district court found genuine disputes of material fact that have yet to be resolved, including "whether Schultz's conduct was motivated or substantially caused by Earl's call or attempted call to 911." E. Kistner Joint App'x at 194 (internal quotation marks omitted). Defendants-Appellants do not address the disputed facts identified by the district court. Instead, they argue only that the officers necessarily have qualified immunity from Earl's First

---

[6] The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks and citation omitted)). The parties do not dispute that Earl suffered no physical injuries from Moriarity and Schultz's actions in pushing and pulling him prior to obtaining his cell phone. To be sure, "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Nevertheless, we have previously made clear that "[w]hile the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and potential damages from any misconduct, a district court should not grant summary judgment on this basis alone." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 151 (2d Cir. 2021).

11

Amendment retaliation claim because they have qualified immunity from his unlawful seizure claims. But, as discussed above, genuine disputes of material fact exist as to whether the officers are entitled to qualified immunity from Earl's unlawful seizure claim. *See supra* Section II.A.

Because "resolution of the immunity defense depends upon disputed factual issues," *Jok*, 96 F.4th at 295, Defendants-Appellants have "failed to satisfy [their] burden of establishing appellate jurisdiction over this interlocutory appeal," *id.* at 298, with respect to Earl's First Amendment retaliation claim.

### D. There Are Genuine Issues of Fact As to Whether McDermott and Velez Are Entitled to Qualified Immunity from Earl's Failure to Intervene Claim.

Earl's failure to intervene claim is premised on McDermott and Velez's failure to intervene with respect to Moriarity and Schultz's use of excessive force, as well as the officers' seizure of Earl's cell phone. The district court concluded that "the same questions of fact that preclude summary judgment for either side on the underlying violations of Earl's constitutional rights preclude summary judgment on Earl's failure-to-intervene claim." E. Kistner Joint App'x at 193. On appeal, the Defendants-Appellants argue only that the officers have qualified immunity from Earl's failure to intervene claim because they have qualified immunity from "Earl's main claims on the basis of qualified immunity." E. Kistner Appellant Br. at 10–11. As discussed previously, genuine disputes of material fact preclude resolving, on this interlocutory appeal, whether the officers are entitled to qualified immunity from Earl's unlawful seizure, excessive force, and First Amendment retaliation claims. *See supra* Sections II.A, II.B, II.C. As such, we also lack jurisdiction consider the denial of qualified immunity as to the failure to intervene claim.

\* \* \*

We have considered Defendants-Appellants' remaining arguments and find them to be without merit. Accordingly, we DISMISS both appeals for lack of appellate jurisdiction.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

*Catherine O'Hagan Wolfe*

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

13